1  CATHERINE E. HOLZHAUSER, SBN 118756
   CHRISTOPHER O. HAMMER, SBN 272543
2  BEESON, TAYER & BODINE, APC
   520 Capitol Mall, Suite 300
3  Sacramento, CA  95814-4714
   Telephone:    (916) 325-2100
4  Facsimile:    (916) 325-2120
   Email:        cholzhauser@beesontayer.com
5                chammer@beesontayer.com

6  Attorneys for Plaintiff Trustees on Behalf of General Employees Trust Fund

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11 TRUSTEES ON BEHALF OF GENERAL          Case No. 3:20-cv-06825
   EMPLOYEES TRUST FUND,
                                          **FIRST AMENDED COMPLAINT**
12                          Plaintiff,

13            v.

14 MERCHANTS BUILDING MAINTENANCE
   COMPANY,
15
                            Defendant.
16

17

18 PLAINTIFF ALLEGES AS FOLLOW:

19                    **JURISDICTION AND VENUE**

20        1.      This action arises under the National Labor Relations Act, 29 U.S.C. section 185, and

21 under the Employee Retirement Income Security Act, 29 U.S.C. sections 1132 and 1145 for the

22 administration of trust fund business.  This Court has jurisdiction as the Defendant's place of

23 business is conducted in multiple San Francisco Bay Area counties, including the counties of San

24 Francisco and Alameda.  29 U.S.C. §1132(e)(2).  Furthermore, the trust agreement, which is the basis

25 for Plaintiff's claim, provides that legal action based on the agreement will be proper in the U.S.

26 District Court for the Northern District of California. (Exhibit A, Section 8.07 (p.30))

27 ///

28 ///

2.     Intradistrict Assignment.  The acts and/or omissions alleged herein arose in San Francisco County and Alameda County and thus this matter is properly assigned to the San Francisco or Oakland Division of the Northern District Court.

**PARTIES**

3.     Plaintiff Trustees on Behalf of General Employees Trust Fund ("Plaintiff" or "Trust Fund") is an employee benefit plan within the meaning of 29 U.S.C. sections 1002 and 1132(d). Plaintiff is a "Trust Fund" originally established by a Trust Agreement.  A copy of the Agreement and Declaration of Trust (restated as of September 1, 2010), and all Amendments, are attached as Exhibit "A".

4.     Plaintiff is informed and believes and, on that basis, alleges that during all relevant times described in this first amended complaint, Defendant Merchants Building Maintenance Company ("Defendant" or "Merchants") was a corporation doing business in San Francisco, California in addition to several other cities in the San Francisco Bay Area.

**FACTUAL ALLEGATIONS**

5.     Defendant is a signatory to Collective Bargaining Agreements ("CBA") with Service Employees International Union ("SEIU") Local 87 and with United Service Workers West ("USWW"), which obligate Defendant to make contributions on behalf of its employees to the Trust Fund.  A true and correct copy of the CBA with Local 87 is attached as Exhibit "B" and is incorporated by reference.  A true and correct copy of the CBA with USWW is attached as Exhibit "C" and is incorporated by reference.

6.     Defendant is also a signatory to a Subscriber Agreement making Defendant a participant in the Plaintiff Trust Fund and binding Defendant to the terms and conditions of the Trust Agreement referenced herein.  A true and correct copy of the Subscriber's Agreement is attached as Exhibit "D" and is incorporated by reference.

7.     Pursuant to the terms of the CBA and the Subscriber's Agreement, Defendant is bound to make contributions to the Trust Fund on behalf of its eligible employees and their dependents for medical, dental, vision, prescription drug and life insurance coverage.

///

8.      Pursuant to the terms of the CBA and the Subscriber's Agreement, Defendant is bound to transmit the contributions described above to the Trust Fund's Administrative Office by the tenth (10th) day of the calendar month following the month in which the employee has worked.

9.      Transmission of contributions must be received by the twentieth (20th) day of the calendar month following the month in which the employee has worked.  Contributions are considered delinquent if not fully transmitted and received by the Trust Fund by the 20th calendar day.

10.     If a contribution is delinquent, the Employer is bound to pay liquidated damages and interest on the delinquent contributions.  Specifically, Article XIII, Section 8.06 provides for ten percent (10%) liquidated damages for delinquent contributions that are paid more than two days past the due date. If the Trust Fund files legal action to collect unpaid contributions, the liquidated damages for delinquent contribution amounts increases to twenty percent (20%) of the contributions which are due and unpaid.

11.     In addition to liquidated damages, Article XIII, Section 8.05 provides for the assessment of simple interest at the greater of (i) seven percent (7%) per annum, or (ii) the rate prescribed by Section 6621(a)(2) of the Internal Revenue Code, from the date such contributions were due until paid.  Interest also accrues on any assessed liquidated damages.

12.     Article XIII, Section 8.07 provides that if the employer fails to make any contributions timely, the Board of Trustees may take legal action to enforce collection and the employer shall be liable for all reasonable expenses incurred in taking such action, including but not limited to court costs, auditing fees, all legal expenses and costs, and attorneys' fees.

13.     Pursuant to the Trust Agreement and Subscriber Agreement the Trustees of the Fund are authorized to perform an audit of the records of any employer by an auditor of the Trustees' own selection for the purpose of determining the accuracy and sufficiency of payments made by the employer to the Trust Fund and otherwise determining whether the employer has complied with all Trust Fund requirements. (See Exhibit A at Section 8.13; Exhibit D at ¶ 5).

///

///

14.     On February 4, 2019, Plaintiff's auditor, National Compliance Services ("NCS"), issued a demand notice to Defendant requesting payment of delinquent contributions, liquidated damages, interest, and audit fees for the period January 1, 2017 to May 31, 2018 in the amount of $333,280.98.    A copy of the notice is attached as Exhibit "E" and is incorporated by reference.

15.     Plaintiff's counsel issued three follow-up demand notices to Defendant on December 12, 2019, January 31, 2020, and June 3, 2020.  Copies of the demand notices are attached as Exhibit "F" and are incorporated by reference.

16.      Defendant has failed to respond to Plaintiff's requests for payment of its delinquent contributions, liquidated damages, interest, and audit costs.

17.     On October 19, 2020, NCS determined that Defendant owed $391,149.92 to the Trust Fund in delinquent contributions, liquidated damages, claims paid, audit fee, and interest.

18.     On February 1, 2021, after holding discussions with Defendant, NCS revised the audit and determined that Defendant owed $374,899.11 to the Trust Fund in delinquent contributions, liquidated damages, claims paid, audit fee, and interest.  A copy of the audit listing the amounts owed the Trust Fund is attached as Exhibit "G" and is incorporated by reference.

## CAUSE OF ACTION

### Collection of Delinquent Contributions

19.     Plaintiff realleges and incorporates by reference the allegations set forth above as though fully set forth herein.

20.     Defendant has not paid all contributions owed on behalf of covered employees and their dependents for the period of January 1, 2017 through May 31, 2018.  This failure resulted in a deficiency of $253,039.93 in delinquent unpaid contributions owed to the Plaintiff.  A breakdown of the amount owed is attached as Exhibit "H" and is incorporated by reference.

21.     Defendant owes $50,607.99 (20% of $253,039.93) in liquidated damages for late payment of the contributions owed for the period of January 1, 2017 through May 31, 2018.  The interest amount is unknown at this time because the underlying contributions have not been paid.  A breakdown of the amounts owed is attached as Exhibit "H" and is incorporated by reference.

///

22.     Defendant owes $63,015.68 in interest, calculated at an annualized rate of 7%, on its unpaid delinquent contributions and liquidated damages for the period January 1, 2017 through May 31, 2018.  A breakdown of amounts owed is attached as Exhibit "H" and is incorporated by reference.

23.     Defendant owes $61.51 in claims paid for the period of January 1, 2017 through May 31, 2018.  The amount is set forth in Exhibit "H" and is incorporated by reference.

24.     Defendant owes Plaintiff $8,174.00 to conduct an audit of its unpaid delinquent contributions.  The amount is set forth in Exhibit "H" and is incorporated by reference.

25.     Despite repeated attempts by the Plaintiff to collect these amounts, Defendant has not paid the outstanding contributions, liquidated damages, claims paid, and audit fee. True and correct copies of the demand letters sent to Defendant are attached as Exhibits "E" and "F" and are incorporated by reference.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests a judgment ordering payment as follows:

1.  $253,039.93 in unpaid contributions now due and owing for January 1, 2017 through May 31, 2018;

2.  $50,607.99 in unpaid liquidated damages now due and owing for January 1, 2017 through May 31, 2018;

3.  $61.51 in unpaid claims paid now due and owing for January 1, 2017 through May 31, 2018;

4.  $63,015.68 in interest now due and owing on unpaid contributions and liquidated damages from January 1, 2017 through May 31, 2018;

5.  $8,174.00 in audit fees.

6.  Reasonable attorney's fees and costs in this action pursuant to 29 U.S.C. section 1132(g)(2)(D) and the Trust Agreement; and

7.  For such other and further relief as may be proper.

///

///

1

2

Dated:  February 12, 2021                          BEESON, TAYER & BODINE, APC

3

4                                                   By:   */s/ Catherine E. Holzhauser*
                                                    CATHERINE E. HOLZHAUSER
                                                    CHRISTOPHER O. HAMMER
5                                                   Attorneys for Trustees on Behalf of General
                                                    Employees Trust Fund

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

RESTATED

TRUST AGREEMENT

for

# GENERAL EMPLOYEES TRUST FUND

✿ ✿ ✿

Effective February 1, 1973

(Restated September 1, 2010)

✿ ✿ ✿

## GENERAL EMPLOYEES TRUST FUND TRUST AGREEMENT,
### Restated on September 1, 2010

THIS TRUST AGREEMENT for the General Employees Trust Fund, originally dated February 1, 1973 and entitled Trust Indenture and restated October 10, 1991 and July 1, 1999, is hereby restated effective September 1, 2010.

WHEREAS, the parties hereto are parties to certain collective bargaining agreements which expressly provide that the Employer agrees to make contributions to a trust fund to be jointly administered by an equal number of representatives of the Employer and the Union and to be applied pursuant to the provisions of this Trust Agreement to provide for insurance for medical care, prescription drugs and other benefits, such as dental care and life and disability insurance, as may be permitted by law, for employees of the Employer; and

WHEREAS, it is the intent and purpose of this Trust Agreement to provide for a plan setting forth the administration of the trust fund to be created by contributions, the benefits to be accorded to the employees and the general administration of the Trust Fund;

SO IT IS NOW HEREBY AGREED THAT THIS AMENDED AND RESTATED TRUST AGREEMENT BE ADOPTED, providing as follows:

## TABLE OF CONTENTS

**SECTION**                                                                **PAGE**

ARTICLE I - DEFINITIONS ........................................................................ 1

    Section 1.01 Agreement ........................................................................ 1

    Section 1.02 Association........................................................................ 1

    Section 1.03 Beneficiary ........................................................................ 1

    Section 1.04 Benefits............................................................................ 1

    Section 1.05 Board of Trustees .............................................................. 1

    Section 1.06 Collective Bargaining Agreement .................................... 1

    Section 1.07 Contributions .................................................................... 1

    Section 1.08 Employee .......................................................................... 2

    Section 1.09 Employer .......................................................................... 2

    Section 1.10 Employer Contributions.................................................... 2

    Section 1.11 Employer Trustees ............................................................ 2

    Section 1.12 ERISA .............................................................................. 2

    Section 1.13 Fund ................................................................................ 2

    Section 1.14 Interested Party or Parties ................................................ 3

    Section 1.15 Participant ........................................................................ 3

    Section 1.16 Plan ................................................................................ 3

    Section 1.17 Subscription Agreement .................................................. 3

    Section 1.18 Third Party Administrator ................................................ 3

    Section 1.19 Trust or Trust Fund .......................................................... 3

    Section 1.20 Trust Agreement .............................................................. 3

    Section 1.21 Trustee ............................................................................ 4

    Section 1.22 Union or Unions .............................................................. 4

    Section 1.23 Union Trustees ................................................................ 4

ARTICLE II - EMPLOYERS NOT MEMBERS OF THE ASSOCIATION ........................ 4

    Section 2.01 Non-Member Employers .................................................. 4

    Section 2.02 Union Considered to be Employer .................................. 4

ARTICLE III - GENERAL PROVISIONS .......................................................... 5

    Section 3.01 Trust Agreement Binding ................................................ 5

Section 3.02 Establishment and Continuation of the Fund ................................... 5

Section 3.03 Purpose of the Fund ....................................................................... 5

Section 3.04 Restriction of Fund to Trust............................................................ 6

Section 3.05 Restrictions of Participants' and Beneficiaries' Rights ................... 6

Section 3.06 Limitation on Interest...................................................................... 7

Section 3.07 Non-Liability for Debts.................................................................... 7

Section 3.08 Reliance on Authority of Trustees to Act ........................................ 7

ARTICLE IV - BOARD OF TRUSTEES - GENERAL PROVISIONS ............................... 8

Section 4.01 Administration by the Board of Trustees.......................................... 8

Section 4.02 Selection of Trustees ...................................................................... 8

Section 4.03 Employer Trustees.......................................................................... 8

Section 4.04 Union Trustees ............................................................................... 8

Section 4.05 Certification of Appointments .......................................................... 9

Section 4.06 Written Acceptance of Appointment as Trustee .............................. 9

Section 4.07 Resignation and Removal of Trustees; Vacancies .......................... 9

Section 4.08 Alternate Trustees........................................................................... 9

Section 4.09 Compensation of Trustees............................................................. 10

ARTICLE V - PROCEDURE OF BOARD OF TRUSTEES........................................... 10

Section 5.01 Chairman and Secretary; Minutes of the Meetings;

             Authority to Execute Certain Instruments ...................................... 10

Section 5.02 Time and Place of Trustee Meetings;

             Notice and Waiver of Notice  ....................................................... 11

Section 5.03 Quorum;  Majority Rule .................................................................. 12

Section 5.04 Action of Trustees without Meeting ............................................... 12

Section 5.05 Conflict of Interest  ....................................................................... 12

Section 5.06 Rules of Procedure for Meetings ................................................... 12

Section 5.07 Deadlock of Trustees; Appointment of Umpires; Arbitration ......... 12

ARTICLE VI - DUTIES AND POWERS OF TRUSTEES.............................................. 14

Section 6.01 Rights to Title and Interest of Trustees .......................................... 14

Section 6.02 Corporate Fiduciary ....................................................................... 14

Section 6.03 Trustees Empowered to Administer............................................... 15

Section 6.04 Adoption of Health and Welfare Plans .......................................... 21

Section 6.05 Finality of Decisions ......................................................... 22

Section 6.06 Amendments ................................................................ 22

Section 6.07 Trustees' Power to Borrow, Pledge, Assign and Hypothecate ..... 22

Section 6.08 Records and Information; Annual Audit and Report..................... 22

Section 6.09 Other Reports .............................................................. 22

Section 6.10 Fiduciary Duties; Standard of Care ............................................ 23

Section 6.11 Prohibited Transactions ..................................................... 23

Section 6.12 Addition of Participants Not Represented by the Union ............... 23

Section 6.13 Resolution of Disputes Concerning Beneficiaries ....................... 23

Section 6.14 Expedited Arbitration of Claims against Employers ..................... 24

ARTICLE VII - LIABILITY OF TRUSTEES ..................................................... 25

Section 7.01 Limitation on Trustee Liability; Indemnification of Trustees .......... 25

Section 7.02 Additional Limitation of Liability ............................................ 26

ARTICLE VIII - EMPLOYER CONTRIBUTIONS ........................................... 27

Section 8.01 Contribution Reports ...................................................... 27

Section 8.02 Contributions Required ................................................... 27

Section 8.03 Due Date for Contributions and Reports ...................................... 28

Section 8.04 Failure to Make Required Contributions......................................... 28

Section 8.05 Interest ...................................................................... 28

Section 8.06 Liquidated Damages ....................................................... 29

Section 8.07 Collection Actions.......................................................... 30

Section 8.06 Improper Payments......................................................... 30

Section 8.09 Scope of Employer Liability................................................. 30

Section 8.10 Continuation of Contributions During Negotiations;

               Employer Withdrawal ..................................................... 31

Section 8.11 Credit or Refund............................................................ 31

Section 8.12 Employer Information; Discrepancies in Data ............................... 32

Section 8.13 Auditing of Employer Contributions................................................ 32

ARTICLE IX - AMENDMENT AND TERMINATION ...................................................... 34

    Section 9.01 Amendment of Trust Agreement................................................... 34

    Section 9.02 Authorization of Trustees  ............................................................ 34

    Section 9.03 Limitations of Modifications and Amendments.............................. 35

    Section 9.04 Conformation of Trust Agreement to Governing Law .................. 35

    Section 9.05 Obligations of Employers  ............................................................ 35

    Section 9.06 Discharge of Obligations or Termination ...................................... 35

    Section 9.07 Distribution of Assets upon Merger; Successor Trust Fund .......... 36

ARTICLE X - REPORTS ................................................................................................ 36

    Section 10.01 Information to be Furnished to Participants and Beneficiaries ... 36

    Section 10.02 Information to be Filed with Secretary of Labor .......................... 36

ARTICLE XI - MISCELLANEOUS .................................................................................. 36

    Section 11.01 Federal and California Law Applicable ....................................... 36

    Section 11.02 Severability of Provisions............................................................ 37

    Section 11.03 Notice ......................................................................................... 37

    Section 11.04 Agreement Subject to Tax Regulations ...................................... 37

    Section 11.05 Confidentiality of Trust Fund Documents ................................... 38

    Section 11.06 Gender and Number.................................................................... 38

    Section 11.07 Claims; Exhaustion of Remedies................................................ 38

## ARTICLE I - DEFINITIONS

**Section 1.01** **Agreement** means this Trust Agreement and any modifications, amendments, extensions, or renewals thereof.

**Section 1.02** **Association** means any multi-employer association bound to a Collective Bargaining Agreement with the Union, under which Employer members of the Association are required to make contributions to the Trust Fund.

**Section 1.03** **Beneficiary** means a person designated by a Participant, or by the terms of the Plan, who is or may become entitled to benefits thereunder.

**Section 1.04** **Benefits** means such insurance coverage or other benefits incidental to the health and welfare of the Participants and Beneficiaries as the Trustees deem fit to procure or provide.

**Section 1.05** **Board of Trustees** means the Trustees acting collectively as a body as trustees of the Trust Fund.

**Section 1.06** **Collective Bargaining Agreement** means any agreement in writing between the Union and any Association, Employer or other employer as defined in the Labor Management Relations Act of 1947, as amended (29 U.S.C. §141, et seq.) which covers wages, fringe benefits, hours or other conditions of employment of employees and/or which requires Contributions to be made to this Trust Fund.

**Section 1.07** **Contributions** means any payments made, or required to be made, to the Trust Fund by an Employer pursuant to a Collective Bargaining Agreement or pursuant to any other written agreement or pursuant to any arrangement agreed to by the Board of Trustees, or by a Union or a related organization in accordance with Section 2.02 of this Agreement.

**Section 1.08     Employee** means any person who performs or has performed work covered under a Collective Bargaining Agreement and for whom the Employer is obligated to make a contribution to the Trust Fund; or any qualified employee, agent or representative of the Union or a related organization which is participating herein as an Employer pursuant to Section 2.02 of this Agreement, who performs employment for which the Employer has agreed to make contributions to the Trust Fund.

**Section 1.09     Employer** means any Association employer or other employer that is required to make payments to the Trust Fund pursuant to a Collective Bargaining Agreement, either between an Association and the Union or between an individual employer and the Union or any entity that is required to make payments to the Trust Fund pursuant to a Subscription Agreement between an individual employer and the Trust Fund.

**Section 1.10     Employer Contributions** means any payments made, or required to be made, to the Trust Fund by an Employer pursuant to a Collective Bargaining Agreement or pursuant to any other written agreement or pursuant to any arrangement agreed to by the Board of Trustees, or by a Union or a related organization in accordance with Section 2.02 of this Agreement.

**Section 1.11     Employer Trustees** means those Trustees appointed by the Employer Trustees.

**Section 1.12     ERISA** means the Employee Retirement Income Security Act of 1974, as amended from time to time, 29 U.S.C. §1001, et seq.

**Section 1.13.     Fund** means the General Employees Trust Fund and includes all of the assets and property of the Trust, real and personal, including but not limited to, Contributions required by the Collective Bargaining Agreements, Contributions required by the Subscription Agreements, and disbursements of funds from pre-existing trusts together with any accretions thereto.

**Section 1.14**      **Interested Party or Parties** means any persons, corporations, partnerships, trusts, associations or other organizations claiming any interest under the Trust Agreement, including but not limited to, the Associations, the Union, members of the Associations, Employers, and employees who are not members of the Union who are parties to the Trust Agreement under a Subscription Agreement, and Participants and other Beneficiaries hereunder.

**Section 1.15**      **Participant** means employees, including employees of the Union on whose behalf Contributions are required to be made.  Participant also includes partners, proprietors, and employees not covered under the terms of a Collective Bargaining Agreement, but only where a Collective Bargaining Agreement or Subscription Agreement exists and subject to rules for participation as determined by the Trustees.

**Section 1.16**      **Plan** means the plan or plans established by the Trustees from time to time, pursuant to this Agreement.

**Section 1.17**      **Subscription Agreement** means any written agreement between the Trust and an employer whereby an employer agrees to make payments to the Trust, and to be bound by the terms of the Trust Agreement.

**Section 1.18**      **Third Party Administrator** means the entity with which the Trustees may, from time to time, contract for administration of the Plan.

**Section 1.19**      **Trust or Trust Fund** means the General Employees Trust Fund and includes all of the assets and property of the Trust, real and personal, including but not limited to, Contributions required by the Collective Bargaining Agreements, Contributions required by the Subscription Agreements, and disbursements of funds from pre-existing trusts together with any accretions thereto.

**Section 1.20**      **Trust Agreement** means this Trust Agreement and any modifications, amendments, extensions, or renewals thereof.

**Section 1.21**　　　**Trustee** means any person designated as a Trustee, pursuant to Article IV, below.

**Section 1.22**　　　**Union** or **Unions** means Service Employees International Union, Local No. 87 and/or Local No. 1877, and/or any other labor organization as approved by the Board of Trustees.

**Section 1.23**　　　**Union Trustees** means those Trustees appointed by the Union.

## ARTICLE II - EMPLOYERS NOT MEMBERS OF THE ASSOCIATION

**Section 2.01**　　　**Non-Member Employers**

　　　Any employer who is not a member of an Association shall become bound to this Trust Agreement by (a) signing a Collective Bargaining Agreement with any of the Unions which provides for Contributions to be made to the Trust Fund or (b) signing a Subscription Agreement which is accepted by the Trustees.  Upon becoming bound to this Trust Agreement, such employer assumes all the obligations of the Trust Agreement and is entitled to all rights under it, and is subject to it in all respects as it now stands or as it may be hereafter amended.

**Section 2.02**　　　**Union Considered to be Employer**

　　　The Union shall be considered an Employer under this Trust Agreement solely and exclusively for the purpose of permitting the Union to contribute to the Fund on behalf of its employees in an amount fixed by the Trustees, and to permit such employees to be Participants in the Trust.  Such employees shall be limited to those persons who perform paid work for the Union or a related entity as officers, employees, agents or representatives.  A related entity means any labor organization, apprenticeship training school, or similar organization, which the Trustees determine, in their sole discretion, to be affiliated or associated with the Union, and which executes a Subscription Agreement with the Trust Fund, which describes the terms under which Contributions are to be made to this Trust Fund.  In this capacity as Employer, the Union and the related organizations shall

Page 4

have no rights, privileges or powers as an Employer under the Agreement or the Plan, except to make Contributions or to receive credits pursuant to Article VIII of this Agreement. If any situation shall arise in which the rules of the Plan are not applicable to the Union and/or the related organizations and their Employees, then the Board of Trustees shall have the power to make appropriate rules and regulations with respect to the Union, the related organizations, and their Employees, provided that such rules and regulations are not inconsistent with the Plan or this Agreement.

## ARTICLE III - GENERAL PROVISIONS

### Section 3.01    Trust Agreement Binding

This Agreement shall be binding upon all members of the Associations, any Employers who are not members of the Associations, the Union, the Trustees, and the respective successors and assigns of all the aforementioned, in perpetuity. In the event of a reorganization, by merger or otherwise, of any participating Union, the Agreement will be binding upon the labor organizations resulting from that reorganization. However, the duration of the Trust Fund shall not exceed any period established by law.

### Section 3.02    Establishment and Continuation of the Fund

The General Employees Trust Fund, created on February 1, 1973, and restated effective October 10, 1991, July 1, 1999 and September 1, 2010, is hereby continued in full force and effect. The Board of Trustees, and only the Board of Trustees, may use the name "General Employees Trust Fund" to designate the Trust Fund or the Board of Trustees, collectively, in transactions of, and on documents of, the Trust Fund.

### Section 3.03    Purpose of the Fund

(a)    It is the spirit and intent of this Trust Agreement that the General Employees Trust Fund is established solely for the benefit of Participants and Beneficiaries, and shall be devoted primarily to the purpose of purchasing and/or providing insurance benefits or other benefits for the health and welfare of its Participants and Beneficiaries; and for the creation of a reasonable surplus reserve to purchase such

Page 5

insurance benefits in the future when, because of economic conditions, the monthly Contributions might be insufficient for this purpose. All such benefits shall be provided in a nondiscriminatory manner.

(b)     The Trust Fund may provide benefits through a contract or contracts with, or a policy or policies issued by one or more licensed insurance carriers, or by means other than such contracts or policies, including, without limitation, direct payment of benefits to Participants and Beneficiaries or to providers of covered services or supplies from the Fund in accordance with a Plan. Notwithstanding the right of qualified Participants and Beneficiaries to receive such benefits, no Employee or member of an Employee's family shall be entitled to receive a distribution of the assets of the Trust except as provided in a Plan of the Fund or in the plan of another employee welfare benefit provided by the Fund, or to receive any part of a payment required to be made to the Fund in lieu of benefits provided under a Plan.

**Section 3.04     Restriction of Fund to Trust**

At no time, whether during or after the termination of this Trust, shall any part of the fund revert to any Employer, Association, Union, any other labor organization, any member of the Union, any Employee, any Participant, any Beneficiary or any other person or entity, except as specifically provided in this Agreement. However, nothing herein shall be construed to prevent the Trustees from contracting with a party-in-interest for services in connection with the administration of the Plan, to the extent permitted under Section 408(b) of ERISA, 29 U.S.C. §1108(b).

**Section 3.05     Restrictions of Participants' and Beneficiaries' Rights**

No Participant or Beneficiary entitled to any benefits under this Trust Agreement shall have the right to assign, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner these benefits, save and except an assignment to a physician, surgeon, hospital, medical laboratory, medical technician or other service provider as approved by the Trustees. The Trust Fund and the assets thereof shall not be liable for the debts of any Participant or Beneficiary entitled to any benefits under this Trust

Page 6

Agreement, nor be subject to attachment or execution or other process of any court. The Trustees shall have no power to make any payment or distribution to any person entitled to any benefits under this Trust Agreement or under any plan of benefits provided pursuant thereto, except as may otherwise be specifically provided in this Trust Agreement or such plan of benefits, or except to the Participant or Beneficiary personally.  Specifically, and without limitation, the Trust shall not be obligated to pay benefits to or on behalf of a Participant or Beneficiary when an Employer has failed to make timely Contributions to the Trust, except as provided by policies adopted by the Board of Trustees.

**Section 3.06      Limitation on Interest**

No Association, Employer, Union, Employee, Participant or Beneficiary shall have any right, title or interest in the Trust other than as specifically provided in this Agreement.

**Section 3.07      Non-Liability for Debts**

Neither any Association, any Employer, the Union, any Employee, nor any Participant or Beneficiary shall be liable or responsible for any debts, liability or obligations of the Trust or the Trustees.

**Section 3.08      Reliance on Authority of Trustees to Act**

No person or entity that has verified that he, she or it is dealing with the duly appointed Board of Trustees, or any authorized representative of them, shall be obligated to see to the application of any money or property of the Trust, or to see that the terms of the Trust Agreement have been observed, or to inquire as to the necessity or expediency of any act of the Board of Trustees.  Every instrument executed by the Board of Trustees shall be conclusive in favor of every person who relies on it, that (a) at the time of delivery of the instrument, this Trust Agreement was in full force and effect, (b) the instrument was executed in accordance with the terms and conditions of the Trust Agreement, and (c) the Board of Trustees was duly authorized and empowered to execute the instrument or direct its execution.

## ARTICLE IV - BOARD OF TRUSTEES - GENERAL PROVISIONS

**Section 4.01          Administration by the Board of Trustees**

The Trust Fund shall be administered by the Board of Trustees.  The Trustees are expressly designated as fiduciaries, and shall have exclusive authority and discretion, except as limited by the Collective Bargaining Agreements, to control and manage the operation and administration of the Fund and to establish, administer and interpret the Plan. The Board of Trustees, acting jointly, shall be the "administrator" of the Trust Fund, as that term is defined in ERISA [29 U.S.C. § 1002(16)(A)].

**Section 4.02          Selection of Trustees**

The Board of Trustees shall consist of four (4) Employer Trustees and four (4) Union Trustees.  The designation of a Trustee as Employer or Union is made only to comply with Section 302(c) of the Labor Management Relations Act of 1947, 29 U.S.C. §186(c), and shall in no way be interpreted to permit the Trustees to act as agents of the Union, the Employers, or any other entity, in derogation of their duty to act solely in the interest of the Participants and Beneficiaries of the Trust Fund.

**Section 4.03          Employer Trustees**

There shall be four (4) Employer Trustees who shall be appointed by the Employer Trustees.  Such appointment shall be in writing and deposited in the office of the Trust Fund.

**Section 4.04          Union Trustees**

There shall be four (4) Union Trustees.  SEIU Local No. 87 shall be entitled to appoint one (1) Trustee and SEIU Local No. 1877 shall be entitled to appoint three (3) Trustees.  Such appointment shall be in writing and deposited in the office of the Trust Fund.

**Section 4.05        Certification of Appointments**

The appointment of Trustees shall be certified in the following manner.  The appointment of Employer Trustees shall be certified by a letter signed by a majority of the Employer Trustees, notifying the Board of Trustees of the appointment.  The appointment of Union Trustees shall be certified by a letter signed by the principal officer of the Union from which the appointment is being made, notifying the Board of Trustees of the appointment.

**Section 4.06        Written Acceptance of Appointment as Trustee**

A written acceptance of the appointment of any Trustee agreeing to be bound by the terms of this Trust must be delivered to the office of the Trust Fund or by attending a meeting of the Board of Trustees and orally so stating. In either event, said Trustees shall be vested with all of the estate, rights, powers and discretion and shall assume all the duties and obligations of a Trustee.  Those Trustees and alternate Trustees who sign this restated Trust Agreement shall be deemed to have been duly and properly appointed.

**Section 4.07        Resignation and Removal of Trustees; Vacancies**

Any Trustee may resign at any time by delivering to the Board of Trustees a written resignation taking effect not later than thirty (30) days thereafter.  Any Trustee may be removed from his office at any time, for any reason, by the party or parties appointing him, which removal shall become effective upon delivery of notice thereof to the office of the Trust Fund. If a vacancy occurs for any reason, a successor Trustee shall be appointed in the same manner provided in this Trust Agreement for the appointment of Employer Trustees and Union Trustees, respectively.   No vacancy or vacancies shall impair the power of the remaining Trustees to administer the Trust Fund, provided there are sufficient Trustees to constitute a quorum.

**Section 4.08        Alternate Trustees**

Two (2) alternate Employer Trustees at-large may be appointed by the Employer Trustees and two (2) alternate Union Trustees at-large may be appointed by the Union Trustees.  The appointment of alternate Trustees shall be in writing and deposited in the

office of the Trust Fund.  Alternate Trustees shall be entitled to notice of all meetings of the Board of Trustees, and shall be entitled to attend such meetings.  If a primary Trustee is absent from a meeting, the alternate Trustee from the same side with the longest continuous service as an alternate Trustee may vote and act in his place.  In the event of multiple absences of primary Trustees, alternate Trustees from the same side shall be designated in accordance with seniority as provided herein to vote and act in their places.

**Section 4.09          Compensation of Trustees**

The Board of Trustees may provide for reasonable compensation for, and reimbursement of necessary expenses incurred by, Trustees in the performance of their duties as Trustees.  However, no person who already receives full-time pay from an Employer, an association of Employers, or the Union may receive more than reimbursement for expenses properly and actually incurred.

## ARTICLE V - PROCEDURE OF BOARD OF TRUSTEES

**Section 5.01          Chairman and Secretary; Minutes of the Meetings; Authority to Execute Certain Instruments**

(a)     The Trustees shall select from among themselves a Chairman and Secretary, one of whom shall be from the Employer Trustees and the other from the Union Trustees.  In the even-numbered years, the Chairman shall be a Union Trustee and the Secretary shall be an Employer Trustee.  In the odd-numbered years, the Chairman shall be an Employer Trustee and the Secretary shall be a Union Trustee.

(b)     The Chairman shall be responsible for the conduct of the meeting.  The Secretary shall be responsible for the minutes or records of all meetings, proceedings and acts of the Trustees.

(c)     Copies of all minutes and proceedings shall be mailed to all Trustees a reasonable time after the meeting or proceeding.  All other Interested Parties may contact their

respective Trustees for information regarding any minutes or proceedings of the Trustees.

(d)      The Trustees may authorize any two (2) of the Trustees to execute checks, instruments, contracts, and other documents on behalf of all the Trustees; but at all times one of the two so authorized to act shall be an Employer Trustee and the other shall be a Union Trustee.

**Section 5.02        Time and Place of Trustee Meetings; Notice and Waiver of Notice**

The Trustees shall determine the time and place for regular periodic meetings. Trustees shall hold meetings at least once every six (6) months.  Either the Chairman or the Secretary, or any two or more Trustees, may call a special meeting provided that at least one of such Trustees is an Employer Trustee and at least one of such Trustees is a Union Trustee.  Notice of the time and place of special meetings shall be accomplished by each of the two Trustees requesting the meeting contacting the Chairman and providing the Chairman with the requested meeting date.  The Chairman shall thereafter contact the Third-Party Administrator who shall immediately notify all Trustees of the special meeting by the most expeditious means available to ensure that actual notice is received.   The notice shall specify the purpose and place of the meeting and shall set forth the meeting agenda.  The transactions of any meeting of the Trustees, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular call and notice and if a quorum is present and if each Trustee present (a) has received notice of the meeting, or (b) attends the meeting without protesting before or at the beginning of the meeting, the lack of notice to such Trustee, or (c) before or after the meeting signs a waiver of notice, a consent to holding the meeting, or an approval of the minutes of the meeting. All such waivers, consents, and approvals shall be filed with the Trust Fund records or made a part of the minutes of the meeting.

**Section 5.03      Quorum; Majority Rule**

To constitute a quorum at any regular or special meeting of the Board of Trustees, there must be present in person at least two (2) Employer Trustees and at least two (2) Union Trustees.

Each Trustee shall have one (1) vote and all actions of the Trustees shall be by majority vote; provided that at any meeting where a Trustee is absent and the Alternate Trustee is also absent, then in such event, the vote of the absent Employer Trustee shall be divided equally among the present Employer Trustees and the vote of the absent Union Trustees shall be divided equally among the present Union Trustees.

**Section 5.04      Action of Trustees without Meeting**

Upon any matter which may properly come before the Trustees, they may act in writing without a meeting; but such action in writing without a meeting shall require the written concurrence of all Trustees.

**Section 5.05      Conflict of Interest**

No Trustee who is a Participant shall be allowed to vote on any question relating specifically to himself, except when the question relates to benefits generally.

**Section 5.06      Rules of Procedure for Meetings**

To the extent that procedures are not set forth herein, the procedure set forth in Roberts Rules of Order shall apply to meetings of the Board of Trustees.

**Section 5.07      Deadlock of Trustees; Appointment of Umpires; Arbitration**

(a)      In the event that the Trustees deadlock on any matter arising in connection with administration of the Trust, or within the power of the Board of Trustees, they shall agree upon a neutral person to serve as an impartial umpire to decide the dispute. The Employer Trustees and the Union Trustees may, by mutual agreement, select an equal number of representatives from their respective Trustee groups to sit with the umpire to constitute a board of arbitration.  The decision of a majority of the

board of arbitration or the decision of the impartial umpire, as the case may be, shall be final and binding upon the Trustees, the Employers, the Associations, the Unions, the Participants and Beneficiaries.

(b)     In the event that the Trustees deadlock on any matter arising in connection with the administration of the Trust, or within the power of the Board of Trustees, any three (3) Trustees may make a written demand for the appointment of an impartial umpire; if no decision on such appointment is reached within thirty (30) calendar days after such written demand, or within such further time as the Trustees mutually agree upon, either the Employer Trustees or the Union Trustees may petition the Chief Judge of the United States District Court, Northern District of California, for the appointment of an impartial umpire.

(c)     Any matter in dispute and to be arbitrated shall be submitted to the board of arbitration or the impartial umpire, as the case may be, in writing, and in making its or his decision, the board or umpire shall be bound by the provisions of this Trust Agreement and shall have no authority to alter or amend the terms thereof.  All pertinent evidence may be introduced in said arbitration.  If the Trustees cannot jointly agree upon a statement submitting said matter to arbitration, each group shall prepare and state in writing its version of the dispute and the question or questions involved, and submit it to the board or umpire within ten (10) calendar days of its or his appointment.  The board or umpire shall decide the dispute on the basis of the written statements, unless either side demands a hearing.  The decision of the board or umpire shall be rendered in writing within fifteen (15) calendar days after the submission of the dispute or within such additional time as authorized by the Trustees.

(d)     The reasonable legal fees and expenses of such arbitration, including any necessary court proceedings to secure the appointment of an umpire or the enforcement of the arbitration award (excluding the fees and expenses of witnesses called by the parties) shall be a proper charge against the Trust.  The Employer

Page  13

Trustees, collectively, shall be entitled to include in such costs expert witness fees and the reasonable costs and fees for employing one attorney to represent them in such arbitration.  The Union Trustees, collectively, shall be entitled to include in such costs expert witness fees and the reasonable costs and fees for employing one attorney to represent them in such arbitration.  No expense shall be deemed reasonable under this Section unless and until approved by the Board of Trustees.

(e)     No matter in connection with the interpretation or enforcement of any Collective Bargaining Agreement shall be subject to arbitration under this Section nor shall any matter in connection with the interpretation or enforcement of any provisions of this Trust Agreement be subject to the grievance procedure or any other arbitration procedure provided for in any of the Collective Bargaining Agreements.

## ARTICLE VI - DUTIES AND POWERS OF TRUSTEES

### Section 6.01          Rights to Title and Interest of Trustees

The Trustees shall be vested with all rights, title and interest in and to the Trust Fund and other properties of the Trust for uses, purposes and duties set forth in this Trust Agreement.

### Section 6.02          Corporate Fiduciary

The Board of Trustees may select a corporate fiduciary to receive, on behalf of the Trust, all Employer Contributions payable by Employers of this Trust. The Trustees may delegate appropriate fiduciary powers and duties to the corporate fiduciary, including, but not limited to, the following powers: to be co-holder of title to any assets of the Trust; to make distributions from the Trust, pursuant to instructions from, or other authority granted by, the Trustees; and to make investments for the Trust, pursuant to instructions from the Trustees or from an investment manager selected by the Trustees. The Trustees, subject to any contract with a corporate fiduciary, shall at all times have the power to amend this Trust Agreement so as to eliminate the corporate fiduciary, and to assume unto themselves, or to otherwise provide for, the exercise of any or all of the functions of such

Page  14

corporate fiduciary, provided, however, that the assets of the Trust shall at all times be in the custody of a custodian, selected by the Trustees, which shall be a corporation qualified to render trust and/or banking services in the State of California.

**Section 6.03        Trustees Empowered to Administer**

The Trustees shall have the power to administer this Trust.  In addition to the powers provided elsewhere in the Trust Agreement, the Trustees shall have all general and incidental powers appropriate to the administration of this Trust.  Any power reasonably necessary for this administration which is not to be exercised by others shall be vested in the Trustees.  Included within their powers, but not by way of limitation, shall be the power:

(a)     To adopt, amend, and terminate Plans within its sole discretion, in any manner not inconsistent with this Trust Agreement, and to interpret within its sole discretion any and all terms of the Plans.

(b)     To appoint and employ a Third-Party Administrator with the duties hereinafter defined.

(c)     To determine the type and amount of benefits to be procured for the Participants and their Beneficiaries, and, subject to any applicable laws, the manner and conditions of their payment, it being understood that an increase or decrease in the benefits, or a change in the type or nature thereof, may be made by the Trustees at such times as, within their discretion, they shall determine to be desirable or expedient.

(d)     To provide for such benefits through self-insurance and/or through the purchase of contracts of insurance or policies issued by licensed insurance carriers, by contracting with one or more health maintenance organizations or preferred provider organizations, or through any combination of the same, or by any other lawful method or methods as may be necessary and proper to place in effect and maintain

Page  15

such Plans, for the purchase of the type and amount of benefits so determined, or otherwise to provide for benefits.

(e)     To verify claims for the payment of benefits and to determine whether the conditions for the payment of benefits have been fulfilled.

(f)     To determine the manner of payment of benefits.

(g)     To decide all questions relating to eligibility, amount and kind of benefits, and any similar or related questions arising in the administration of this Trust Fund and the Plan.

(h)     To collect, receive, hold and disburse all sums of money which are payable to or by the Trust Fund, and to establish reserve funds as they deem necessary to provide for the administrative expenses and other obligations of the Trust Fund.

(i)     To deposit any funds received by the Trust Fund in such bank or banks as the Board of Trustees may select, and to withdraw such funds for the purposes permitted by this Agreement.

(j)     To pay out of the Fund such sums as may be necessary for the purposes of the Trust Fund, including all sums necessary to establish and administer the Trust.

(k)     To offset future claims for benefits from the Trust Fund against claims paid pursuant to the fraudulent conduct of any Participant or Beneficiary.

(l)     To terminate participation in the Trust Fund by any Participant or Beneficiary for partaking in fraudulent conduct towards the Trust Fund.

(m)     To establish an administrative office; to lease, purchase or otherwise secure premises necessary for such purposes; to purchase, lease or otherwise acquire

Page  16

furniture, fixtures, equipment and supplies necessary or desirable for the maintenance of such offices and the administration of the Trust and the Plans.

(n)     To employ and retain actuaries, brokers, consultants, attorneys, accountants, investment advisers, office staff and other suitable agents, experts and employees and/or other persons as the Trustees in their discretion may deem necessary or appropriate, whether to perform tasks for the Trust Fund or to render advice with respect to any responsibility of the Trustees; to pay or cause to be paid compensation and expenses in connection therewith; and to delegate any appropriate powers and duties to those parties, including fiduciary duties, to the extent permitted by the laws of the United States.

(o)     To sell, exchange, lease, convey and otherwise dispose of any property of the Trust Fund, upon such terms as they may deem proper; to execute and deliver any and all instruments of conveyance in connection therewith; and to delegate, in writing, to the corporate fiduciary, Administrator, Chairman or Secretary of the Board of Trustees, or other agents the power to execute such instruments.

(p)     To pay or provide for the payment of all real and personal property taxes, and other taxes or assessments of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust, or any money or property forming a part thereof, or the Plans.

(q)     To incur and pay any other expense properly incurred in connection with the establishment and administration of the Trust Fund.

(r)     To invest or reinvest such portions of the Fund as are not required for current expenditures or reserves in any manner as appropriate under the standard of care required in this Agreement. Those investments may include every kind of property, real, personal or mixed, as may be legal for the investment of trust funds under the laws of the United States, including ERISA, as amended.

(s)     To enter into, and to cause to be entered into, any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust and to do all acts as the Trustees, in their discretion, may deem necessary or advisable.

(t)     To exercise their full discretionary authority to interpret the provisions of this Agreement and the terms used herein.  Any interpretation adopted by the Trustees in good faith shall be binding upon the Unions, the Associations, the Employers, the Participants and Beneficiaries.

(u)     To prepare, and cause to be prepared, such annual reports concerning the affairs of the Trust and/or the Plan, as the Trustees in their discretion may deem necessary or advisable, and to furnish such reports to such parties, in addition to the Union, Employers and the Trustees, as the Trustees in their discretion may deem appropriate and advisable.

(v)     To purchase insurance, including fidelity bonds, to cover liability or losses occurring by reason of the act or omission of any individual Trustee, other fiduciary, or agent of the Trust Fund, and to secure fidelity bonds for all fiduciaries and for all other people who handle money, as required by the laws of the United States; provided, however, that such insurance must permit recourse by the insurer against the Trustee or other fiduciary whose breach of a fiduciary obligation results in such loss or liability.  Nothing herein shall be construed, however, to prohibit any Trustee or other person or entity in a fiduciary relationship under the Trust from purchasing insurance to cover liability for his or her own account; or the Union, Employers, or Associations from purchasing insurance to cover liability of persons who serve in a fiduciary capacity pursuant to appointment by them.

(w)     To adopt and prescribe, to change from time to time, and to enforce, reasonable rules and procedures, which shall not be inconsistent with the provisions of this Trust Agreement, governing the reporting and paying of Contributions, the

entitlement to benefits, the method of applying for benefits, and any and all other matters in connection with the Fund and the Plan. The Trustees may require any Association, any Employer, any Union, and any Participant and any Beneficiary of the Trust, to provide any reasonable information, data and documents relevant and suitable for the purposes of the administration of the Trust.

(x)     To delegate to the Third-Party Administrator of said Trust or the attorneys of said Trust authority to enforce the provisions of subsection (w) above by lawsuits or otherwise.

(y)     To exercise their full discretionary authority to decide all claims or disputes regarding the right, type, amount or duration of benefits, eligibility for benefits, and claims to any payment from this Trust, which decision of the Board of Trustees on any matter within its discretion shall be final and binding on all parties as to the rights of any Participant or Beneficiary, and/or the obligations of any Employer.

(z)     To enforce the payment of any Contributions or other amounts payable or recoverable hereunder and otherwise to enforce the obligations of Employers hereunder.

(aa)    To authorize any person or group of persons who may be serving in one particular fiduciary capacity with respect to the Plan (as fiduciary is defined in ERISA) to serve, at the same time, in another fiduciary capacity with respect to the Plan; and to authorize any fiduciary with respect to the Plan to employ one or more persons to render advice with regard to any responsibility of such fiduciary under the Plan; and to authorize any person serving in a fiduciary capacity with respect to control or management of the assets of the Plan to engage or appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of the Plan.

Page 19

(bb)    To authorize attendance by specified Trustees and alternate Trustees and Trust employees and agents at conferences, seminars and other educational programs pertaining to ERISA or pertaining to any other aspect of proper trust fund operation or administration; and to reimburse such Trustees, employees and agents for reasonable expenses incurred in that regard.

(cc)    To negotiate and enter into merger agreements with other trust funds in accordance with applicable law.

(dd)    To recover monies paid on behalf of persons who are not eligible Participants or Beneficiaries.

(ee)    To delegate duties as the Trustees reasonably deem appropriate to individual Trustees, subcommittees of the Board of Trustees, or to persons other than named fiduciaries.

(ff)    To maintain any and all actions or legal proceedings which may be deemed necessary for the protection of the Trust Fund, or to effectuate the administration of the Trust or the Plan, or to secure the benefits contemplated hereby, and in connection therewith to compromise, settle or release claims on behalf of or against the Trust Fund and/or the Trustees upon such terms and conditions as the Board of Trustees determines would be in the interests of the Trust Fund and its Participants and Beneficiaries; provided, however, that no such compromise or release shall in any way compromise, settle or release any Employer from any liability incurred by breach of a Collective Bargaining Agreement, except as to the liability to this Trust Fund.

(gg)    To amend the Trust Agreement to remove any association that fails to remain signatory to a Collective Bargaining Agreement as a party to the Trust Agreement and to terminate any and all rights which such non-signatory association may have under the Trust Agreement.

(hh)    To adopt rules and regulations as appropriate for the administration of the Trust Fund and the Plan and for any and all matters affecting the Trust Fund or the Plan.

(ii)    To adopt procedures under which audits of Employer Contributions will be conducted pursuant to this Trust Agreement.

(jj)    To adopt procedures and policies governing the collection of all Employer Contributions, including delinquent Contributions, which shall be binding upon the Associations, the Employers and the Union.

(kk)    To contract with the Union for services necessary for the administration of the Trust Fund, and to compensate it the costs and expenses for such services, including such pro rata part of its general operating costs as the Board of Trustees shall determine to result directly from the performance of services for the Trust Fund, provided that such compensation shall be on a strictly budgeted basis and accounted for periodically by the Union.

(ll)    To determine whether it will accept participation of any Employer pursuant to a Collective Bargaining Agreement if it is determined that such participation would be inconsistent with the purposes and structure of the Trust Fund or would negatively impact the financial condition of the Trust.

**Section 6.04        Adoption of Health and Welfare Plans**

The Trustees are expressly empowered to amend or terminate the Plans now offered or to adopt other plans, provided that such other plans are in full compliance with applicable federal laws.

**Section 6.05          Finality of Decisions**

Any decisions or determinations of the Board of Trustees, which are not inconsistent with this Agreement or with the Plan, on any matter within their powers, including the adoption of any and all terms and provisions of the Plan, and the rights of any Participant or Beneficiary or any other person asserting a claim under a Plan, shall be final and binding upon all parties.  The Board of Trustees will have the fullest possible discretion in making all such decisions and determinations.

**Section 6.06          Amendments**

The Trustees shall have the power to make such amendments to this Trust Agreement as in the discretion of said Trustees appear reasonable or necessary.

**Section 6.07          Trustees' Power to Borrow, Pledge, Assign and Hypothecate**

The Trustees shall have power to borrow money to carry out the purposes of this Trust Agreement and may pledge, assign, or hypothecate any of the rights or assets of the Trust to secure the loan by majority vote of the Trustees.

**Section 6.08          Records and Information; Annual Audit and Report**

The Board of Trustees shall maintain proper books of account and records of its administration of the Trust.  The books of account and records of the Trustees shall be audited at least once each year by a qualified certified public accountant to be selected by the Trustees.  The Trustees shall also make all other reports required by law.  A statement of the results of the annual audit shall be available for inspection by persons who have a legal right to do so, at the office of the Trust Fund or at such other place as they may designate from time to time.

**Section 6.09          Other Reports**

From time to time the Trustees may report to the Interested Parties under this Trust Agreement any action taken or omitted, or any events occurring in the administration of this Trust.

**Section 6.10        Fiduciary Duties; Standard of Care**

The Trustees, and any other fiduciaries (as defined in ERISA) with respect to the Plan, shall discharge their duties solely in the interest of the Participants and Beneficiaries and for the exclusive purposes of providing benefits to such Participants and Beneficiaries and defraying reasonable expenses of administering the Plan.  Such duties shall be discharged with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.  Such duties shall include the diversification of investments of the Plan so as to minimize the risk of large losses, unless, under the circumstances, it is clearly not prudent to do so.

**Section 6.11        Prohibited Transactions**

Anything herein to the contrary notwithstanding, this Plan and Trust shall not engage in any prohibited transaction described in ERISA.

**Section 6.12        Addition of Participants Not Represented by the Union**

The Board of Trustees shall have the power to vote from time to time to permit the participation of Employees working under the collective bargaining agreements of labor organizations other than the Union.  Participation on this basis will:

(a)     require a written request by the labor organization that will specify the benefit package being requested for the new Participants;

(b)     be permitted only upon execution of a Subscription Agreement by each employer, in a form approved by the Trustees; and

(c)     be subject to such other rules as are adopted from time to time by the Trustees.

**Section 6.13        Resolution of Disputes Concerning Beneficiaries**

If any dispute or question arises concerning the Participants or Beneficiaries to whom any benefits should be paid, or to whom any other assets of the Trust Fund should

be delivered, the Trustees may withhold action until the dispute or question is determined under the appropriate provisions of this Trust Agreement and applicable provisions of law.

### Section 6.14        Expedited Arbitration of Claims against Employers

The Trustees, in their sole discretion and pursuant to procedures established by them, may refer any claim against an Employer to final and binding expedited arbitration subject to the following:

(a)    At least twenty (20) calendar days prior to referral to arbitration, an Employer shall receive a written notice of the claim with a statement of the requested remedy, including a statement of any amount due.  If no settlement is reached during such period, the Employer shall be notified either by personal service or certified mail of the Trustees' referral of the claim to arbitration, and such notice shall contain the date, time and place set for the arbitration hearing.  If, after such notice, any Employer fails to appear or show cause why the arbitration should not proceed, the arbitrator shall be, and is, hereby empowered to enter a default award against said Employer, which award shall include costs of collection, costs of the action, and fees including collection fees and attorneys' fees.

(b)    The arbitrator for each case referred to arbitration shall be selected from a panel established by the Trustees.   The Trustees will maintain a current list of the arbitrators on the panel at the offices of the Third Party Administrator.  The Trustees shall fill any vacancy which may occur on the panel.  Cases shall automatically be assigned to the arbitrators in the order their names are listed; provided that, in the discretion of the Trustees, the arbitrator who is next in order at any time may be assigned more than one case to be heard on the same or succeeding days; and provided further that, if the arbitrator next in order is unavailable to conduct the arbitration within sixty (60) days, then the case or cases referred to arbitration shall be assigned to the next available arbitrator following in order.

(c)     The arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Trust Agreement, including, but not limited to, any claim that all or any part of this Trust Agreement is void or voidable.  The arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any dispute concerning the arbitrability of any claim.

(d)     The arbitrations hereunder shall be conducted in an expedited manner and no transcripts shall be prepared or briefs filed.  The arbitrator's award shall be in writing and shall be issued no later than ten (10) calendar days following the close of the hearing.  Except as otherwise provided by this Trust Agreement, all such arbitrations shall be conducted pursuant to the California Arbitration Act (CCP §§ 1280, *et seq.*).

(e)     All arbitration awards shall provide that the loser shall pay all fees and costs, including costs of collection, attorneys' fees and the arbitrator's fees.  If the arbitrator rules that any monies are due or that the Employer has not fully complied with all Trust Fund requirements, the Employer shall be deemed the "loser" for purposes of this provision.

## ARTICLE VII - LIABILITY OF TRUSTEES

### Section 7.01       Limitation on Trustee Liability; Indemnification of Trustees

(a)     The Trustees shall incur no liability in acting upon any papers, documents, data, or information believed by them to be genuine and accurate and to be made, executed, delivered, or assembled by the proper parties.  The Trustees shall incur no liability for any act concerning which they rely upon the opinion of legal counsel and/or other professionals employed by the Trust.  The Trustees shall not be liable for any action taken or omitted by them in good faith, nor for the act of any agent, employee, consultant, or attorney selected by the Trustees with reasonable care.  The Trustees may delegate any of their ministerial powers to any of their agents or employees.  No Trustee shall be liable for any act or omission of any other Trustee.

Page  25

(b)     Nothing in this Agreement shall be construed to enlarge the liabilities of the Trustees beyond what is required of them under the provisions of ERISA, as amended. The Fund shall exonerate, reimburse, indemnify and hold harmless the Trustees individually and collectively against any and all liabilities and reasonable expenses arising out of the Trusteeship, including attorneys' fees for a defense against civil or criminal liability, to the fullest extent permitted by law, save and except as to the individual Trustee or Trustees, only such liabilities and expenses as may arise out of their misconduct or their failure to perform the fiduciary duties of their trust as defined in ERISA. Any final judgment against the Trust Fund, the Plans, or the Trustees which requires the payment of any benefits, credits or other monies to a Participant, a Beneficiary, or their heirs or assigns shall, to the extent not covered by another source of recovery, be the sole liability of the Trust Fund. If an investment manager has been appointed pursuant to this Trust Agreement, no Trustee or Third-Party Administrator shall be liable for the acts or omissions of such investment manager or be under an obligation to invest or otherwise manage any assets of the Plans which are subject to the management of such investment manager. Nothing in this Section shall relieve any Trustee or Third-Party Administrator from liability for any judgments based on breaches of fiduciary duty by said Trustees or Third-Party Administrators. The Trustees shall take all necessary steps to ensure that appropriate fiduciary insurance is in place at all times to protect the Trust Fund and the Plan from losses.

**Section 7.02      Additional Limitation of Liability**

Neither the Associations, the Employers, the Union, nor any of the Trustees shall be responsible for or liable for:

(a)     The validity of this Trust Agreement, or the Plan.

(b)     The form, validity, sufficiency, or effect of any contract or policy for benefits which may be entered into or purchased.

(c)     The act of any person or persons which may cause the termination, rescission or other invalidity of any of the instruments mentioned in this Section.

(d)     The inability of the insurance carrier or the Trust Fund, or the insufficiency of the assets of either, to pay any benefits.

(e)     Any delay occasioned by any restriction, or provision in the Trust Agreement, the rules and regulations issued thereunder, any contract procured in the course of the administration of the Trust, or by any other proper procedure in the administration of the Trust.

(f)     The making, retention, or sale of any investment or reinvestment made as provided in this Trust Agreement, nor for any loss or diminution of the Trust corpus, except due to the willful misconduct of a Trustee.

### ARTICLE VIII - EMPLOYER CONTRIBUTIONS

**Section 8.01     Contribution Reports**

By the due date, each Employer shall submit accurate monthly contribution reports along with the required Contributions.  Any and all monies paid in benefits by the Trust Fund resulting from inaccurate reporting by an Employer are the responsibility of, and are recoverable from, the Employer.

**Section 8.02     Contributions Required**

(a)     Each Employer shall contribute to the Fund such sums of money as shall be required by Collective Bargaining Agreements, by Subscription Agreements, by this Agreement, and by such rules of the Board of Trustees as are not inconsistent with this Agreement.

(b)     Each Employer is solely responsible for transmitting to the Trust Fund the entire Contribution, including any employee share.  The Employer shall be responsible for

collecting the employee share, if any. Failure by the Employer to obtain the employee share, by payroll deduction or otherwise, does not relieve the Employer of its obligation to transmit to the Trust Fund the entire Contribution amount for eligible employees.

(c)     The payment of money by an Employer to an Employee as an attempt to create a substitute for the payment of Contributions to this Trust Fund shall not relieve the Employer of any obligation to this Trust Fund.

**Section 8.03          Due Date for Contributions and Reports**

All Employer Contributions to the Trust Fund shall be due on the tenth (10th) day of the calendar month following the month in which the employee has worked. Any Contributions not received at the Trust Fund's designated lock box by the twentieth (20th) day of the calendar month following the month in which the employee has worked shall be considered untimely and delinquent.

**Section 8.04          Failure to Make Required Contributions**

The failure of any Employer to make any required Contributions to the Trust Fund prior to delinquency shall be deemed a breach of this Trust Agreement, and a breach of the Collective Bargaining Agreement or Subscription Agreement, by such Employer, and such Employer shall thereupon be personally and directly liable to each of his employees for whatever benefits such employees may be denied by reason of such failure. However, no Employer shall have any personal or individual liability to any employee by reason of the failure to make required Contributions to the Trust Fund, if such failure is due to an honest mistake or inadvertence and does not deprive any employee of the benefits to which he is entitled under this Trust.

**Section 8.05          Interest**

Any Employer who fails to pay any Contributions timely or who fails to pay any other obligations to the Trust shall be liable to the Trust Fund for the full amount thereof, plus simple interest thereon at the greater of (i) seven percent (7%) per annum, or (ii) the rate

prescribed by Section 6621(a)(2) of the Internal Revenue Code, from the date such Contributions or other monies were due until paid.

**Section 8.06      Liquidated Damages**

(a)     The regular and prompt payment of Contributions and other monies to the Trust Fund is essential to the maintenance of the Trust Fund, and it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Trust Fund which would result from the failure of an Employer to pay the required monies timely and in accordance with this Trust Agreement and the policies and procedures adopted by the Trustees.  Therefore, it is agreed that the amount of damage to the Trust Fund resulting from any such failure shall be presumed to be (i) $200, if the Contributions or other monies are received by the Trust Fund within two business days of the date on which such monies were due and unpaid, or (ii) ten percent (10%) of the Contributions or other monies, if such monies are not received by the Trust Fund within two business days of the date on which they were due and unpaid. This amount shall become due and payable to the Trust Fund by such Employer as liquidated damages and not as a penalty immediately following the date the Contributions become delinquent, and shall be in addition to the required Contributions, and any other charges, interest, collection costs and attorneys' fees. Interest shall accrue on such liquidated damages at the rate set forth in Section 8.05 above.  The Employer shall remain liable for the payment of all liquidated damages and interest, even if it makes full payment of the delinquent Contributions or other monies.

(b)     If the Trust Fund files a legal action to collect unpaid Contributions or other monies, unpaid liquidated damages or unpaid interest, the liquidated damages for any Contributions still unpaid on the date the legal action is filed shall be increased to twenty percent (20%) of the Contributions which are due and unpaid.  Interest shall accrue on such liquidated damages at the rate set forth in Section 8.05 above. For any late Contributions to be deemed paid prior to the filing of a legal action, the Trust Fund must have received cash, a cashier's check, a certified check, or a

money order, or, in the case of an ordinary check, actual payment into the Trust Fund's account from the Employer's bank by the end of the last business day before the day on which the lawsuit is filed.

**Section 8.07        Collection Actions**

If any Employer fails to make any Contributions timely or to pay any other obligations to the Trust, the Board of Trustees may take such legal or other action as it sees fit to enforce collection.  In such event, the Employer shall be liable for all reasonable expenses incurred by the Board of Trustees in taking such action, including but not limited to court costs, arbitration fees, costs or fees of collection agents, auditing fees, accountants' fees, costs of attachment bonds, all legal expenses and costs, attorneys' fees and reasonable compensation for employees or agents of the Trust Fund incurred in connection therewith.   If the Trust Fund files a legal action to collect Contributions, liquidated damages, interest and/or other monies owed to the Trust or to compel an audit, venue shall be proper in the United States District Court for the Northern District of California.

**Section 8.08        Improper Payments**

If it is determined by the Board of Trustees that an Employer has paid monies to the Trust Fund on behalf of a person who was not eligible as a Participant ("Improper Payments"), the Employer shall be liable to the Trust Fund for the cost of any benefits provided in excess of the payments made by the Employer on behalf of such person, and such amount, plus liquidated damages, interest, attorneys' fees and costs as provided in this Article shall be recoverable from the Employer.  If the Trust Fund incurs any loss or damages as a direct or indirect result of such Improper Payments by an Employer, including but not limited to the payment of benefit claims for ineligible persons, the Board of Trustees has sole authority to charge the Employer for such loss and/or damages.

**Section 8.09        Scope of Employer Liability**

The liability to the Trust of any Employer shall be limited to the payments required to be made under the Collective Bargaining Agreement or under a Subscription Agreement,

monies paid on behalf of persons who are not eligible Participants or Beneficiaries, and the additional lost benefits, interest, liquidated damages, costs and expenses expressly specified in this Trust Agreement. In no event shall any Employer be liable or responsible for any portion of any Contribution due from any other Employer. However, if any Employer joins with one or more employers that are not Employers under this Agreement, to perform work covered under the Employer's Collective Bargaining Agreement, that Employer shall be liable for the payment of Contributions to this Trust Fund as though all the employees of all the employers so joined were employees of the Employer.

## Section 8.10    Continuation of Contributions During Negotiations; Employer Withdrawal

Each Employer agrees that, in consideration of participating in the Trust Fund, it shall continue to make Contributions to the Trust Fund on behalf of its employees at the rate set by the Trust Fund following termination of any of its Collective Bargaining Agreements while negotiations continue for a new Collective Bargaining Agreement and until impasse is reached or a new Collective Bargaining Agreement is signed. Further, the Employer shall continue to make such Contributions until such time as the Employer notifies the Trust by certified mail (with a copy to the Union) that the Employer is no longer under a legal duty to make Contributions to the Trust. The Employer shall set forth in the required written notice to the Trust the specific basis upon which the Employer is relying in terminating its obligation to make Contributions to the Trust. The Trust Fund may enforce the Employer's obligation to continue making Contributions through an action to collect delinquent Contributions and/or other monies due filed in the United States District Court for the Northern District of California or through a charge filed with the National Labor Relations Board.

## Section 8.11    Credit or Refund

(a)    An Employer shall be entitled to a credit for or a refund of money paid to the Trust by reason of clerical or administrative error as to the amount owed to the Trust Fund, if that Employer has no unpaid obligations to the Trust Fund, to the extent

Page 31

permitted by law and to the extent that such refunds do not adversely affect the actuarial soundness or administration of the Plan.

(b)     The Board of Trustees may prescribe reasonable regulations and limitations as to the time for filing requests for refunds and the manner or procedure for making credits or refunds, including a formula for calculating the amount of credit or refund due.  All contributing employers shall be bound by the determinations of the Board of Trustees regarding credits and refunds.

(c)     The Trust Fund has no obligation to attempt to obtain from a service provider any credit or refund of monies paid to such provider as a result of an Employer's error.

**Section 8.12          Employer Information; Discrepancies in Data**

Each Employer shall furnish the Trustees such information as the Trustees may require or the corporate fiduciary may need in connection with the administration of the Trust.  In the event of an alleged discrepancy in Employer Contributions to the Trust or in any other data required from the Employer by this Agreement, the Trustees shall, in writing, notify the Employer of such alleged discrepancy and the period of time that the discrepancy is claimed to cover.  On receipt of such notice, the Employer shall promptly furnish to the Trustees any data requested that pertains to such alleged discrepancy.

**Section 8.13          Auditing of Employer Contributions**

(a)     The Trustees are hereby authorized from time to time to cause an audit of the records of any Employer by an auditor of the Trustees' own selection for the purpose of determining the accuracy and sufficiency of payments made by the Employer to the Trust Fund and otherwise determining whether the Employer has complied with all Trust Fund requirements.  Upon notice in writing from the Board of Trustees or an authorized agent of the Board, each Employer shall permit any auditor appointed by the Board to enter upon his, her or its premises at a reasonable time during business hours, to examine and copy such books, records and documents of such Employer as may be necessary to determine whether the

Employer has made full payment of all sums required to be paid by that Employer to the Fund. As the purpose of such an audit would be defeated if it were limited in any way, the Employer may not limit the scope of the audit to the records concerning those employees the Employer deems to be performing covered employment.

(b)    The following documents are necessary for the completion of an audit pursuant to this Section:  the Employer's quarterly tax returns to the state and federal government, including California Forms DE-6 and IRS Forms 941; payroll journals; individual earnings records and time cards for all employees; general check registers; and workers' compensation insurance reports for all employees.  Upon the auditor's certification that further documents are necessary to complete an audit, the Employer shall be required to produce any of the following documents as specified by the auditor and approved by the Board of Trustees:  general ledgers; bank statements; canceled checks; IRS Forms W-2, W-4, 1096, and 1099; cash receipts journals; cash disbursement journals; financial statements; invoices; contracts; federal and state income tax returns; and any other records which the auditor deems necessary or relevant to complete the audit.

(c)    In the event the Employer refuses to voluntarily submit to said audit, the Employer shall be liable for all court costs and attorneys' fees incurred by the Trustees in compelling the conduct of said audit.  If such audit discloses any deficiency in Contributions and/or other monies owed to the Trust Fund, the Employer shall immediately pay to the Trust Fund the amount found due, plus liquidated damages and interest at the rates set forth above in this Article VIII.  The entire cost of such audit shall be paid by the Trust Fund, except that if the amount found due by the audit is ten percent (10%) or more of the Contributions which should have been made, the costs of such audit shall be paid by the Employer.  Any Employer who cancels an audit without at least two (2) business days' notice, or who fails to provide the required documents, shall be liable for the costs caused by that delay or that failure whether or not the audit reveals any further Contributions due.  In the

event that an audit is performed at a location more than 150 miles from the Trust Fund office, the Employer shall pay all costs incurred by the Trust Fund's auditor for transportation, meals and lodging in connection with the audit.

## ARTICLE IX - AMENDMENT AND TERMINATION

**Section 9.01        Amendment of Trust Agreement**

This Trust Agreement may be amended at any time by a written instrument duly executed by the Trustees, provided that no such amendment shall:

(a)     Invest or reinvest any part or interest in the Trust Fund in any Employer, the Union, any employee, any Participant, Beneficiary or any other Interested Party.

(b)     Cause the assets of the Trust Fund to be diverted for any purposes other than those stated in Section 3.03 of this Trust Agreement.

(c)     Discriminate in favor of employees of any Employer who are officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or highly compensated employees of such Employer.

Any amendment shall be effective as of the date on which it is approved in writing by the Trustees, or as of any other date selected by the Trustees as the circumstances require.

**Section 9.02        Authorization of Trustees**

Each Employer who is or becomes a party hereto, and the Union, and each present and prospective Participant or Beneficiary who is or may become at any time entitled to receive benefits, authorizes the Trustees to amend or terminate this Trust Agreement as herein provided.

**Section 9.03          Limitations of Modifications and Amendments**

If the Trust Agreement is modified or amended, then the Trustees and each of them shall have the option to accept the modification or amendment and continue in office, or to resign.  No modification or amendment shall retroactively increase the duties, obligations, responsibilities or liabilities of the Trustees or any of them.  No modification or amendment shall prospectively increase the duties, responsibilities or liabilities of the Trustees, or any of them, without their consent.

**Section 9.04          Conformation of Trust Agreement to Governing Law**

It is contemplated that the provisions of this Trust Agreement shall at all times be and remain in compliance with all applicable Federal and State laws, rules and regulations. Accordingly, this Trust Agreement will be promptly amended in any respect necessary to make its provisions conform with these laws, rules and regulations.  Any such amendment shall be made effective on the date it is approved in writing by the Trustees or shall be made effective retroactively as of an earlier date as the circumstances require to conform with said laws, rules and regulations.

**Section 9.05          Obligations of Employers**

This Trust is irrevocable.  However, no Employer who now or hereafter becomes a party hereto shall, by reason of the fact, assume any contractual obligation as to the continuance of the Trust and each Employer at any time and for any reason may discontinue participation in the Trust and the making of Contributions to the Trust Fund, unless such Employer is contractually bound to do otherwise under a Collective Bargaining Agreement or a Subscription Agreement.

**Section 9.06          Discharge of Obligations or Termination**

This Trust may be terminated at any time by a written instrument duly executed by the Association and the Union Trustees.  Upon receipt of satisfactory proof that this Trust has been terminated for any reason, the Trustees shall promptly pay and discharge all existing obligations and shall expend and use the balance of the Trust Fund for the continuance of one or more benefits of the type theretofore provided the Participants and

Beneficiaries.  If the obligation of all Employers to make Contributions shall terminate, the Trustees shall apply the assets of the Fund for the purposes stated in Section 3.03 of this Agreement.

**Section 9.07**　　　　**Distribution of Assets upon Merger; Successor Trust Fund**

In lieu of termination of the Trust Fund under Section 9.06 of this Agreement, the Board of Trustees shall have the power to merge the Fund with another health and welfare trust fund established by the Unions and by Employers of the employees represented by the Unions, for the purpose of providing the types of benefits which the Participants and Beneficiaries would have received under the Plan.  The Board may also distribute any surplus assets to a successor health and welfare trust fund established by the Union and Employers.

## ARTICLE X - REPORTS

**Section 10.01**　　　　**Information to be Furnished to Participants and Beneficiaries**

The Third-Party Administrator (or if there is none, the Trustees) shall cause to be furnished to each Participant and to each Beneficiary receiving benefits under the Plan a summary plan description, and such other information as is required by ERISA and other applicable law and regulations.

**Section 10.02**　　　　**Information to be Filed with Secretary of Labor**

The Third-Party Administrator (or if there is none, the Trustees) shall cause to be filed with the Secretary of Labor annual reports and such other reports as are required by ERISA and other applicable law and regulations.

## ARTICLE XI – MISCELLANEOUS

**Section 11.01**　　　　**Federal and California Law Applicable**

The interpretation of this Agreement and of the Plan shall be governed by the laws of the United States to the extent applicable and otherwise by the laws of the State of

California. This Agreement and the Plan shall be construed to be in accordance with those laws if at all possible.

### Section 11.02    Severability of Provisions

If any provisions of this Trust Agreement, the rules and regulations made pursuant thereto, or any other procedure concerning the administration of this Trust Agreement is held illegal or invalid for any reason, then this illegality or invalidity shall not affect the remaining portions of the Trust Agreement, the rules and regulations or procedures adopted by the Trustees. The Trust Agreement, the rules and regulations and procedures shall be construed and shall remain in force as if the illegal or invalid portions had never been inserted or established, if the remaining portions will enable the objectives and purposes of the Trust Agreement to be accomplished. Should any of the provisions of the Trust Agreement, or rules and regulations or procedures, be declared illegal or invalid, the appropriate parties shall immediately adopt a new provision to take the place of the provision declared illegal or invalid.

### Section 11.03    Notice

Any notice required to be given under the terms of this Agreement shall be deemed to have been duly given if delivered personally to the person or organization to be notified, or if sent by first-class mail to such person or organization at his, her or its last known address as shown in the records of the Board of Trustees. The Trust Fund's record of any mailing shall be conclusive record of receipt.

### Section 11.04    Agreement Subject to Tax Regulations

The payments into the Trust Fund are being made by Employers upon the condition and understanding that all payments made by the Employers into the Fund are, and will continue to be, legally deductible and allowable as business expenses for tax and all other purposes, and that the same are not taxable to the employees concerned as compensation. In the event that it is determined by any appropriate agency or court, or in the event that any applicable law, regulation, ruling or policy provides that such payments are not so deductible or allowable, or are taxable to the employee, then the Employer

Trustees or the Union Trustees may reopen this Trust Agreement, upon ten (10) calendar days' written notice to the other group of Trustees, for negotiation of any amendment to, or modification of, to said Agreement as may be necessary to accomplish the objective herein stated.

**Section 11.05        Confidentiality of Trust Fund Documents**

Except as necessary for the proper administration of the Trust Fund and the Plan, all documents and information in the possession of the Trust Fund are confidential, and shall not be made public or used for any purpose except as the Board of Trustees may find necessary to, or useful in, the administration of the Trust Fund or of the Plan.   This provision shall not be construed to prohibit any Trustees from examining documents of the Trust Fund, or to prohibit the preparation and publication of statistical data and summary reports as required by law, or to prohibit delivery of copies of the minutes of the meetings of the Board of Trustees to the individual Trustees or to the Union for the information of the members.

**Section 11.06        Gender and Number**

Under this Trust Agreement the masculine shall include the feminine. The singular shall include the plural, and the plural the singular, as the sense of the provision may suggest.

**Section 11.07        Claims; Exhaustion of Remedies**

No person shall have any legal or equitable right or claim against the Associations, the Employers, the Union, the Trustees, or any other signatory to this Agreement unless the right or claim is specifically provided in this Trust Agreement, as it may be amended from time to time, or is conferred by affirmative action of the appropriate Trustees by authority specifically delegated to them.  No Interested Party may bring any action in any court on any matter arising out of this Trust Agreement, the determination of which is otherwise provided for in this Trust Agreement, until the procedure provided in this Trust Agreement shall have been exhausted and a decision made with respect to it.

IN WITNESS WHEREOF we have executed this Restated Trust Agreement on the day and year first written above.

This Agreement may be signed in multiple counterparts.

**UNION TRUSTEES:**                    **EMPLOYER TRUSTEES:**

Andrea Dehlendorf                      Tim Brekke

Charles Gilchrist                      George Hernandez

Olga Miranda                           Ray Nann

Mark Sharwood

EXHIBIT B

**COLLECTIVE BARGAINING AGREEMENT**

**BETWEEN**

**SAN FRANCISCO MAINTENANCE CONTRACTORS ASSOCIATION**

**("Employer")**

**AND**

**SEIU LOCAL #87,**
**SERVICE EMPLOYEES INTERNATIONAL UNION**

**("Union")**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| SECTION 1 | RECOGNITION………………………………….. | 4 |
| SECTION 2 | NO DISCRIMINATION………………………….. | 4 |
| SECTION 3 | UNION MEMBERSHIP AND HIRING………………… | 4-7 |
| SECTION 4 | VISITS BY UNION REPRESENTATIVES…………….. | 7 |
| SECTION 5 | WORKING CONDITIONS…..……………………….. | 7-8 |
| SECTION 6 | SENIORITY……………………………………….. | 9 |
| SECTION 7 | HOURS AND OVERTIME……………………………. | 9-10 |
| SECTION 8 | WAGES……………………………………………. | 11-13 |
| SECTION 9 | PAYMENT FOR TRAVEL………………………….. | 13-14 |
| SECTION 10 | VACATIONS……………………………………. | 14-15 |
| SECTION 11 | HOLIDAYS…………………………………….... | 15-16 |
| SECTION 12 | SICK LEAVE………………………………………. | 16-18 |
| SECTION 13 | BEREAVEMENT LEAVE………………………….. | 18 |
| SECTION 14 | LEAVE OF ABSENCE……………………………… | 19-20 |
| SECTION 15 | GROUP INSURANCE…………………………….... | 20 |
| SECTION 16 | PENSION PLAN……………………………………. | 20-21 |
| SECTION 17 | SAFETY……………………………………………. | 22 |
| SECTION 18 | MILITARY SERVICE………………………………. | 22 |
| SECTION 19 | DISCIPLINE………………………………………. | 22-23 |
| SECTION 20 | GRIEVANCE PROCEDURE……………………….. | 23-25 |
| SECTION 21 | SAVINGS CLAUSE………………………………. | 25 |

SECTION 22        MANAGEMENT RIGHTS……………………………………        25

SECTION 23        IMMIGRANT WORKERS………………………………        25-26

SECTION 24        ASSIGNMENTS…………………………………………..        26-27

SECTION 25        BIDDING PROCEDURES……………………………        27-28

SECTION 26        SUBCONTRACTING…………………………………...        28

SECTION 27        NEW WORK AND CONTRACTS…………………………        28

SECTION 28        WORKING CONDITIONS………………………………        28-29

SECTION 29        OTHER AGREEMENTS…………………………………        29-30

SECTION 30        NO STRIKE/LOCKOUT…………………………………        30

SECTION 31        SHOP STEWARDS    ………………………………………        30-31

SECTION 32         ENTIRE AGREEMENT    ………………………………        31

SECTION 33        TERM OF AGREEMENT…………………………………        31

EXHIBIT A…………………………………………………………………        32

EXHIBIT B…………………………………………………………………        33-34

EXHIBIT C…………………………………………………………………        35-38

ATTACHMENT 1…………………………………………………………...        39

LETTER OF UNDERSTANDING…………………………………………...        40-41

LETTER OF UNDERSTANDING (2)………………………………………        42-44

LETTER OF UNDERSTANDING (3)………………………………………        45-49

This agreement is made and entered into this 1st day of August, 2016 by and between the San Francisco Maintenance Contractors Association, designated as the "Employer", and SEIU Local 87, Service Employees International Union, hereinafter designated as the "Union".  It is understood that "Employer" as used below includes individual employers where appropriate.

**SECTION I       RECOGNITION**

1.1          The employer recognizes the Union as the sole collective bargaining agent for all employees under the provisions of this Agreement.

**SECTION 2       NO DISCRIMINATION**

2.1          No employee of job applicant shall be discriminated against by the Employer or by the union because of race, color, creed, age, sex, sexual orientation, national origin, union membership, lawful union activities or for any other reason inconsistent with applicable state or federal law including the laws regarding sexual harassment.  There shall be no difference in wages paid janitors because of their sex.

2.2          Employee means all persons covered by this Agreement whether male or female and the use of masculine terms or pronouns shall include the feminine.

**SECTION 3       UNION MEMBERSHIP, HIRING, CHECK-OFF**

3.1          The Employer shall, at the time of hire, inform each new employee who comes under the scope of the Agreement, of the existence and terms of the Agreement. Membership in good standing in the Union not later than the thirty first (31st) day following the beginning of employment shall be a condition of employment covered by this Agreement. As a condition of continued employment all Employees employed by an Employer subject to this Agreement shall become and remain members of the Union not later than thirty-one (31) days following the beginning of their employment, or the execution date of this Agreement, whichever is the later. Upon notice from the Union that any employee is not in good standing, the Employer shall discharge said employee within ten (10) days after receiving such notice, unless the employee puts himself/herself in good standing with the Union before the expiration of the ten (10) day period herein mentioned, and before such discharge.

The Union and the employees shall forever hold and save the Employer harmless from any action or cause of action from this Section 3.1 .

4

3.2     Upon receipt of employee's written authorization, the employer will deduct from employee wages the union's membership initiation fee as follows: (a) one-half of the initiation fee will be deducted from the employee's first paycheck received after completing 30 days of employment; and (b) one-half of the initiation fee will be deducted from the employee's next paycheck. The employer must inform the new employee of their obligation to attend the union orientation. If the employee does not attend within their first sixty (60) days of employment they will be returned to the hiring hall.

3.3     (a) There shall be a sixty (60) shift probationary period for a new employee. This probationary period shall be applicable to each Employer for which the employee works until the new employee works more than sixty (60) shifts for one Employer. Thereafter, the new employee's probationary period shall be twenty (20) shifts for every other employer for whom the new employee works. An employer may consider a new employee to be subject to the sixty (60) shift probationary period unless the employee presents written confirmation from an Employer that he worked sixty (60) shifts. An Employer shall also provide a copy of such written confirmation to the Union.

(b) Shifts worked for an Employer prior to the signing of this Agreement shall count toward the fulfillment of the probationary periods set forth above in (a).

(c) During the probationary period, the Employer may discharge the employee without cause and without recourse to the grievance procedure.

(d) The union shall be entitled to grieve terminations of probationary employees under a just cause standard if the union can establish that the employer is engaged in a pattern or practice of terminating probationary employees in order to prevent such employees from completing their probationary period, contractor shall have to demonstrate good cause before terminating probationary workers. As used herein, the term "pattern or practice" may only be established by the union proving that the employer, in the preceding twelve month period, has terminated probationary employees in a number which equals or exceeds 10 percent of the employer's workforce covered by this Agreement. In any proceeding arising from this section, the threshold issue to be decided is whether above-described pattern or practice exists, and only upon deciding that issue in favor of the union shall the employer be required to establish just cause.

3.4     When a new employee is hired, the Employer shall give such employee a written statement setting forth the union membership obligation stated in Section 3.1 and 3.2 above. The Union shall supply the Employer with forms for this purpose.

3.5     A copy of Exhibit C and a copy of this Section 3 shall be posted in the office of both Union and the employer where notice of employee and job applicants are customarily posted.

3.6     Should any dispute arise concerning the rights of the Employer, the Union, or the employees under this Section, the dispute shall be submitted to a neutral arbitrator in accordance with the arbitration procedure provided in this Agreement.  Such decision shall be final and binding on the said Employer, Union, and employees..

3.7     Committee on Political Education (COPE) and or American Dream Fund.  The Employer shall honor voluntary payroll deduction for COPE and or American Dream Fund for employees who have on record with the Employer current, written and signed authorization Cards for such payroll deductions. Such payroll deductions shall be made the first pay day period in April and the first pay period in September each year and remitted to the Union.  The Union and the employees shall forever hold and save the Employer harmless from any action or cause of action resulting from this section 3, or from the Employer's reliance upon the authenticity or effectiveness of such authorization cards.

3.8     The Employer agrees to deduct from the pay of each employee the membership dues required to maintain good standing as defined by the Constitution and Bylaws of the Union. The Union shall advise the Employer of any adjustments made in membership dues in accordance with the Constitution and Bylaws of the Union.

3.9     Membership dues shall be deducted in the following manner: Monthly dues shall be deducted one (1) month in advance; that is, February dues shall be deducted from the January paycheck and so on in a like manner. Deduction for monthly dues shall be made from the first paycheck of each calendar month commencing with the second month employment.

3.10    Deduction for initiation fees, in the cases of new employees not members of the Union, shall be deducted from the first paycheck received by such employees during the second month of their employment.

3.11    All sums deducted for monthly dues and initiation fees shall be remitted to the Secretary- Treasurer of the Union not later than the twenty-fifth (25th) day of the calendar month in which such deductions are made, together with a list showing the names and addresses of employees and the amount of deduction made.

3.12    It is understood and agreed between the parties that deduction of Union membership dues shall be made only on the basis of written authorizations from the individual affected.

3.13 Once written employee authorization is received, the union and employees shall forever hold and save the employer harmless from any action or cause of action resulting from Section 3 herein, or from employer's reliance upon the authenticity or effectiveness of such authorization cards.

## SECTION 4 VISITS BY UNION REPRESENTATIVES

4.1 The Union Representative shall be allowed to visit the Employer's building for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The Union Representative shall report to the Contractor's representative before proceeding through the building. If prior approval is needed for visitation, the Employer will set up the procedure for visitation. In the event the Union Representative wishes to go through the building, the employer may send a representative to accompany him or her. Said Union Representative shall not interfere with normal course of work in the building. The union will notify the employer via email with a minimum of four (4) hours notice in advance of such visits. It shall be the Employer's responsibility to provide the Union with a list of accounts which require prior approval. The Employer shall notify the Union of any special requirements of entry to a building and will make its best efforts to arrange for such entry for the Union official.

4.2 The Union shall be required to inform the Employer whenever a business representative begins or ends employment with the Union. The Union shall make this notification to the Employer's President or to his designee.

## SECTION 5 WORKING CONDITIONS

5.1 If any employee is required or instructed by the Employer to wear a uniform or any specifically designated article of clothing or footwear (other than standard street shoes), the Employer shall furnish and maintain such apparel. All permanent employees will be provided five (5) shirts once a year. Temp employees will be provided 2 shirts upon being hired

5.2 Employees on their part agree to take good care of such apparel and not to wear same except in the course of their duties during working hours, rest periods, and at lunchtime. The Union insignia may be worn by employees.

5.3 Adequate locker space, containing a table and chairs or bench, shall be provided for the employees and shall be adequately heated and ventilated by any method authorized by the State of California. If necessary, the Union and employer shall determine where the employees may have their meal in the building. Employees shall be allowed to keep personal belongings in janitor closets located on the floors. These items will be taken home everyday.

Employees will be allowed to drink water on their floor from any appropriate personal container. Employees will be allowed to get water from the faucet or

water cooler. In the event that it becomes an issue that the janitor does not have access to drinking water at a particular site the parties agree to meet and discuss this issue.  The parties agree that, subject to existing rules on theft or other misconduct, no employee will be subject to discipline relating to personal drinking water.

The Employer will provide a reasonable amount of break time and use of a room or other location in close proximity to the employee's work area to express breast milk in private.  The parties will work collaboratively on any client property issues that might arise.

5.4     No employee under this Agreement shall be required to clean cuspidors.  This exemption, however, shall not apply to receptacles regularly used by patients in doctors' or dentists' offices nor sand boxes wherever located.

5.5     The employer agrees not to utilize or require any employee to take any lie detector test under any circumstances or for any reason whatsoever.

5.6     Bulletin Board.  The Employer shall provide a bulletin board at a place designated by the Employer for the purpose of posting notices of official business of the Union. The Employer will provide a receptacle at or near such bulletin board in which the Union may place such notices of official business.   The Union agrees that it will not distribute handbills, posters, or other literature on the Employer's property.

5.7     The Employer shall be required to furnish to an employee information concerning the amount of that employee's accrued vacation and sick leave under the following conditions:
(a)The employee must request from the Employer information concerning his accrued vacation and/or sick leave; and
(b)The employee may make a request for this vacation information no more than four times per calendar year.  The employee may make a request for this sick leave information no more than four times per calendar year and the request must be made at the time an employee takes sick leave.
(c) All Employers must reflect on the payroll checks the employees accrued vacation & sick leave hours at the end of the first year of this contract, August 1, 2017. Employers at their discretion may implement before August 1, 2017.

## SECTION 6     SENIORITY

6.1        Seniority is the right that has accrued to employees through length of service under the terms of the collective bargaining agreement which entitles them to appropriate preference in layoffs, rehiring and vacation.

Seniority shall be terminated by discharge for cause, resignation, retirement or failure to return from an authorized leave of absence or failure to return from vacation unless good cause for such failure is shown.  In addition, seniority with an employer for a temporary employee excluding temporary employees who are paid the top wage rate shall be terminated if that temporary employee fails to work at "least three (3) shifts for that Employer during any twelve (12) month period.  Seniority with an Employer for an employee (excluding permanent employees regularly assigned to a building making the top wage rate) shall be terminated if that employee turns down a permanent assignment on the third time for which the employee is qualified and which assignment has been offered to the employee.   Documentation of the refusal will be verified by the employer to the Union via email.  Union will have five business days to verify the rejection of the offer by the employee, and if the union has not responded within that time period, the employee's rejection of the offer shall be deemed final.  When a contractor takes over a particular building seniority for permanent employees will transfers to the new Employer.

6.2        In a case of layoff, the Employer shall give a minimum of five (5) days' notice to the affected employee(s) or pay the employee an amount equivalent to the employee's wages for five (5) business days, based on the employee's normal wage, in lieu of such notice.

6.3        Employees on layoff shall receive preference over all new hires in the event the Employer hires employees.

6.4        When a permanent position becomes available, the Employer shall follow the provisions set forth in Exhibit C.

## SECTION 7     HOURS AND OVERTIME

7.1        Seven and one-half (7 ½) hours within not more than eight and one-half (8 ½) hours shall constitute a day's work.  A week's work shall consist of thirty-seven and one-half (37 ½) hours divided into five (5) consecutive seven and one-half (7 ½) hour working days, followed by two (2) consecutive days off.  All employees who work in excess of seven and one-half (7 ½) hours per day within eight and one-half (8 ½) hours or thirty-seven and one half (37 ½) hours worked per scheduled work week, or five (5) consecutive days shall be paid at the rate of time and one-half (1 ½) for such excess.

7.2        Employees shall be entitled to a ten (10)  minute rest period approximately in the middle of the first half-shift and a ten (10) minute rest period approximately in the middle of the second half-shift.

7.3        The Employer shall endeavor to distribute all scheduled overtime equally in each building insofar as practical among all the employees in a particular job classification. In each building, a schedule shall be maintained and posted, setting forth for a period of at least a week in advance the days off, starting and quitting times, scheduled overtime and lunch period for each employee.  A posted schedule shall not be changed with less than two (2) week's notice, except in circumstances beyond the control of the Employer or a mutual agreement between the parties.  The Employer shall notify the Union if it changes the starting times for any shift or changes the days of the week in which the work will be performed.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## SECTION 8      WAGES

8.1       All full-time employees who currently receive $19.45 per hour shall receive a seventy ($.70) cents per hour increase effective August 1, 2016.  This rate shall remain in effect until August 1, 2017.  On that date the above rate will increase by sixty ($.60) cents per hour.  This rate shall remain in effect until August 1, 2018.  On that date, the above rate will increase another fifty-five ($.55) cents per hour.  This rate shall remain in effect until August 1, 2019.  On that date the above rate will increase by another fifty ($.50) cents per hour.  This rate shall remain in effect until August 1, 2020.

8.2       PROGRESSION RATE FOR ALL EMPLOYEES:
The progression rate shall apply to all employees not covered by section 8.1. Employees shall be placed in the following categories based on the amount of hours they worked for an Employer since June 1, 1983.  (Hours worked for different Employers may not be totaled to gain higher placement on the progression rate.)  As the employee reaches the minimum hours in the next highest category, said employee shall receive the next highest rate.  The wage rates shall be as follows:

## JANITOR

Effective   August 1, 2016

| | 0-1950 hrs | 1951-3900 hrs | 3901-4850 hrs | over 4850 hrs |
|---|---|---|---|---|
| | $14.11 | $16.12 | $18.14 | $20.15 |

Effective August 1, 2017

| | 0-1950 hrs | 1951-3900 hrs | 3901-4850 hrs | over 4850 hrs |
|---|---|---|---|---|
| | $15.00 | $16.60 | $18.68 | $20.75 |

Effective August 1, 2018

| | 0-1950 hrs | 1951-3900 hrs | 3901-4850 hrs | over 4850 hrs |
|---|---|---|---|---|
| | $15.25 | $16.91 | $19.10 | $21.30 |

Effective August 1, 2019

| | 0-3900 hrs | 3901-4850 hrs | over 4850 hrs |
|---|---|---|---|
| | $17.29 | $19.42 | $21.80 |

FOREPERSON:  One ($1.00) dollar per hour see Section 8.11

RESTROOM ATTENDANT: Twenty-five ($.25) per hour effective 8/1/16 see Section 8.13.
Effective 5/1/17 an additional five ($.05) cents per hour will be implemented for a total of thirty ($.30) cents per hour.

RECYCLING COORDINATOR:  See Letter of Understanding #2

8.3    Part time employees shall be paid as follows for a call of two (2) hours or less...two hours straight time pay.  For a call of more than two (2) hours pay for actual hours worked.  It is not the intent of the parties to utilize 2 part time employees to fill a permanent, full time janitor station position. A part time employee will NOT be expected to clean a full time station only fifty (50%) percent of a full time station. For jobs less than 4 hours, the work should be proportionate to that of hours being worked. Employers may not have more than one part time employee per site

8.4    All disbursements for wages shall be made by voucher check, which shall show the total number of hours worked, the rate of pay, and an itemized list of all deductions made there from.

8.5    At the Employer's discretion, wages may be paid either weekly or biweekly or semimonthly.  However, any Employer which is not now paying on a semi-monthly basis and which wishes to do so must give the Union ninety (90) days notice of its intent to change to paying wages on a semi-monthly basis.

       All Employers must reflect on the payroll checks the employees accrued vacation & sick leave hours at the end of the first year of this contract August 1, 2017. Employers at their discretion may implement before August 1, 2017.

8.6    The Employer shall not be prevented from paying in excess "of the minimum rates. Any employee earning a wage higher than their progression rate in the contract will continue to receive the higher rate and including any negotiated wage increase. If a foreperson has less than five years as a foreperson and are removed by the Employer for business need, they lose the premium pay.  If a foreperson has more than 5 years as a foreperson and are removed by the Employer for business need, they shall retain their foreperson pay.  If a foreperson voluntarily steps down, then he/she will forfeit the foreperson pay.  Forepersons have the right to request the union be present in any meeting with the Employer that might involve disciplinary action.

8.7    The Union shall have the right to inspect the paycheck of any employee covered by this Agreement after the same has been returned to the Employer by the bank.  The Union shall have the right to inspect all payroll records and time sheets and all other records, papers, or documents of the Employer which relate to the terms and conditions of this Agreement.

8.8    In the event the Employer intentionally violates this Agreement by failing to pay the proper wage rate to an employee (except in cases of recognized clerical error), said Employer shall pay the employee an amount equal to double the proper wage rate for the period of violation.

       If an employee is owed vacation or sick leave pay they must file a grievance. Upon the Union informing the Employer via e-mail or grievance the Employer has two weeks to verify the claim and pay the member.  If the member is not paid

within the two weeks the Employer will pay a penalty to the member of five percent (5%) on top of amount owed.

8.9      Utility work is defined as carpet and rug cleaning including Wet Shampooing, Dry Cleaning, Dry Foam Shampooing, Steam Shampooing, Rider Operated Power sweeper, Rider Operated Scrubber, Floor Machines and Power Washers.  Effective August 1st, 2016 dedicated utility workers will receive premium pay of fifty ($.50) cents per hour. Additionally, janitors performing utility ruties described above Hill recive fifty ($.50) per hour for the hours worked perfroming tose functions, training included.

8.10     Forepersons with ten (10) or fewer employees shall receive a one ($1.00) dollar per hour in addition to the wage rate for which they are eligible.  Forepersons with more than ten (10) employees shall receive a one ($1.00) dollar per hour in addition to the wage rate for which they are eligible.

8.11     A forepersons main responsibility is to direct cleaning operations.  The Employer shall not authorize forepersons to impose discipline or perform the following supervisory duties which includes: hiring, assigning permanent schedules or work areas, evaluating employees, adjusting grievances, or determining rates of pay in excess of the levels specified in this Agreement.  Forepersons are not allowed to authorize employees who request to work their vacation. Foreperson need not be present when disciplinary action is imposed.  Unless it is an emergency beyond the control of the Employer, forepersons who lead ELEVEN (11) or more janitors shall not be required to clean a tenant floor station as part of their daily duties.

8.12     When the regular foreperson is out on vacation, leave of absence, sick leave or disability for more than 5 days, the Employer's designated replacement, if necessary, to perform the duties of the foreperson shall receive the foreperson pay rate as designated in the contract.

8.13     **Restroom Attendant Pay**
Full-time, fully dedicated restroom attendants will be paid an additional twenty-five ($.25) cents per hour effective 8/1/2016. Effective 5/1/17 an additional five ($.05) cents per hour will be implemented for a total of thirty ($.30) cents per hour.

## SECTION 9   PAYMENT FOR TRAVEL

9.1      An employee who is required to move from location to location in the course of performing a day's or night's work assignment shall be paid for all time spent in traveling between such locations.

9.2     An employee who is requested or required by the Employer to furnish his/her own vehicle to carry any equipment or supplies between locations shall be reimbursed at the established actual federal rate per mile at the time of reimbursement for use of the vehicle.

9.3     All payments due to reimburse employees for the use of their own vehicles shall be paid at each pay period, either by separate check or together with payroll check, the amount of such payment to be specified on the check stub.

9.4     The Employer shall carry non-ownership (Property Damage) liability insurance on the vehicles of all employees who are requested or required to use their own vehicles in connection with their work.  In the event the Employer fails to secure such insurance, they shall assume full responsibility for all legal fees, court costs, or damages incurred by the use of such vehicle during the course of his work.

9.5     Should an employee receive a traffic citation while using his own vehicle at the request of the Employer, the circumstances of the citation will be investigated by the Union and the Employer.  Whether the Employer or the employee will be responsible for any payments will be determined by mutual agreement between the Union and the Employer.

## SECTION 10   VACATIONS

10.1    All employees who have, been in the service of the Employer continuously for one (1) year shall be granted two (2) weeks vacation with pay annually.  All employees who have been in the service of the Employer continuously for five (5) years or mare shall be granted three (3) weeks vacation with pay annually.  All employees who have been in the service of the Employer continuously for twelve (12) years or more shall be granted four (4) weeks vacation with pay annually.  Absence from services of not more than sixty (60) days because of illness, temporary layoff or leave of absence shall not interrupt the continuity of service for the purpose of this section.  In the event of such an absence of more than sixty (60) days, the first year of employment shall be completed for the purposes of this section by the completion of fifty-two (52) weeks actually worked from the original date of employment.  After the first year of service when such absence from service extends beyond sixty (60) days per year, the pay for vacation shall be prorated on the basis of the actual weeks worked.

10.2    Any employee who has been in the service of an Employer continuously for more than six (6) months whose employment terminates shall receive the prorata vacation due him. Vacation pay on termination shall not count as hours worked towards contributions to Health & Welfare except when an employee is on a paid vacation at the time the account changes contractors, in which case the prior Employer shall make contribution if hour requirement is satisfied.

10.3    If a holiday falls within an employee's vacation period, the employee will receive an additional day of vacation with pay, or and extra day's pay in lieu thereof.

10.4    Employees are entitled to paid vacations after each year of service, even though there has been more than one Employer during the year.  It is understood and agreed that an employee's vacation credits shall accumulate at the rate of one-twelfth of his annual vacation allowance each month.  If the services of a building maintenance contractor are discontinued on any job, the accumulated vacation credits of the employees of such contractor shall immediately become due and payable.

10.5    Vacation pay shall be calculated on the basis of the employee's regular straight time hourly rate at the time he/she takes the vacation times the number of hours the employee has coming under this vacation clause.

10.6    The Employer reserves the right to limit the number of employees taking vacations at the same time in order to maintain operations.

10.7    When an employee submits a vacation request to his supervisor in writing at least thirty (30) days in advance of said vacation or in accordance with company policy if less, the Employer will have the vacation check available prior to the first day of vacation observance.

## SECTION 11    HOLIDAYS

11.1    The following days shall be observed as holidays:

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| President's Day | *Day After Thanksgiving |
| Memorial Day | Thanksgiving Day |
| Independence Day | Christmas Day |
| Labor Day | Employee's Birthday |

11.2    Eligibility:  The Birthday holiday does not apply to birthdays falling within an employee's first twenty-five consecutive working days of employment with an Employer.

For all other holidays, the employee must work on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday and, unless the employee so works, he shall receive no pay for such holiday unless such absence on the regular working days before and after said holidays is due to the express permission of the Employer, or a bona fide illness confirmed by a doctor's certificate, or on vacation.

11.3    Floating Holiday: The Employer shall have the right tot replace the Day After Thanksgiving with one floating holiday to be determined by the Employer, with the Employer giving notice to the employee and Union at least thirty (30) days prior to the Day After Thanksgiving.

15

11.4    The individual employee shall provide the employer with not less than two (2) calendar weeks advance notice of date upon which the employee's birthday falls. The employee shall be allowed to observe the holiday on the birthday or such other day during the calendar year as may be determined by mutual agreement between the Employer and the individual employee. This may not be combined with any recognized holidays referenced in section 11.1.

11.5    If a holiday falls on a Sunday, it shall be observed on the following Monday. If a holiday falls on a Saturday it shall be observed on the preceding Friday. No deduction shall be made from the pay of employees for the observance of said holidays.

11.6    Holiday pay shall be at time and one-half (1-1/2) hours' straight time pay. Any employee working on a holiday shall be paid, in addition to this straight time rate, a premium rate of time and one-half the straight time rate of pay. A holiday not worked, which falls within an employee's regularly scheduled work week shall be considered as a day worked for the purpose of computing a week's work. If a employee's day off falls on a holiday, he shall receive an additional day of within two (2) weekends with full straight time pay, or an extra day's pay in lieu thereof. If an employee replaces a regular employee who is absent for reasons other than vacation, and worked the regularly scheduled work day before and after a holiday, the replacement shall receive the holiday pay instead of the regular employee. Vacation relief employees who work at least twenty (20) consecutive days shall be conferred by all provisions of this section.

11.7    The holidays recognized in the Agreement shall be observed in conformance with the observances of Federal and State holidays; provided in the event of conflict between State and Federal observances, holidays shall be observed on the same date observed by the Federal government.

## SECTION 12   SICK LEAVE

12.1    Regular employees who work continuously for the same Employer for at least one (1) full year shall thereafter be entitled to six (6) days sick leave with one pay after each year of continuous service and shall accumulate sick leave at the rate of six (6) days per year. Sick leave shall be paid at the rate of seven and one-half (7 ½) straight time hours per day and the annual allowance of six (6) days shall be forty-five (45) straight hours. After the first year of employment, benefits accrue, and may be used based on one-half (1/2) day per month. Effective 8/01/09 regular employees who work continuously for the same Employer for at least one (1) full year shall thereafter be entitled to seven (7) days sick leave with pay after each year of continuous service, and shall accumulate sick leave at rate of seven (7) days per year. Effective 9/01/12 employees with twelve years of service shall begin accruing sick leave pay at eight (8) days per year.

12.2   Earned but unused sick leave may be accumulated for five (5) years. A regular employee who has worked continuously for five (5) or more years for the same Employer and has not used sick leave for the five (5) previous years and shall, together with the employee's current year's allowance, be entitled to a maximum of thirty- six (36) days sick leave. Any employee who has used sick leave shall be entitled to a lesser amount determined by deducting the number of days of sick leave used in the five (5) previous years, but in no event deducting more than thirty (30) days.

12.3   Earned sick leave pay shall be granted only in cases of bona fide illness or accident. Any employee found accepting or claiming benefits under this Section by reason of false statements or documents shall be subject to disciplinary action. A doctor's certificate or other reasonable proof of illness may be required by the Employer, provided, however, in cases of bona fide illness requiring no more than three (3) consecutive work days' absence from the job where the illness is of such nature as not to require the employee to be attended by a physician, the doctor's certificate referred to above shall be waived. However, such waiver shall be conditioned upon notification to the Employer by the employee not later than four (4) hours before the employee's regular starting time on the first work day's absence that the employee shall not report to work on that day due to said illness and further notification to the Employer by the employee on the day before he plans to return to work of such intention to return to work. Earned sick leave pay is not convertible to cash bonus.

12.4   Earned sick leave benefits shall be paid in the following manner. First work day's absence, no pay, provided, however, that the sick benefit allowance for bona fide illness or accident shall commence with the first work days' absence if the employee's illness or accident results in his being hospitalized before he returns to work or if the employee has twelve (12) or more days of accumulated sick leave. Effective October 5, 2016 employees shall be eligible for first day pay for fifty (50%) for their annual accrual.  They shall not be eligible for first day pay in excess of the fifty (50%) of their accrual unless the illness or accident is a result of being hospitalized or the employee has 12 or more days accumulated. Succeeding work days' absences, full pay until earned sick leave benefits are exhausted. The waiting periods herein provided before full pay commences shall apply for each illness or accident in case the earned sick benefits allowance has not been exhausted in previous illnesses. For the purpose of this Section, full pay shall mean pay for the regular day or night shift schedule working hours, for those days, which the employee would have worked, had the disability not occurred, calculated at straight time.  Provisions of section 8.8 will not apply to this section until 8/1/17.

12.5   In industrial or disability cases, Worker's Compensation or Unemployment Disability payments and sick benefit allowance shall be paid separately, but in the event Worker's Compensation payments or Unemployment Disability payments cover all or part of the period during which sick benefit allowances are paid, the

sum of the two shall not exceed the sick benefit payable for said period, and the unused portion of accumulated sick leave will continue to be credited to the employee. Integration of sick leave benefits with Worker's Compensation or Unemployment Disability payments is to be automatic; the Employer may not waive integration, and any employee entitled to Workers' Compensation or Unemployment Disability payments must apply thereof (in order that the principle of integration may be applied) before sick benefits are payable.

12.6    Explicit waiver language as recommended by the City of San Francisco and to be agreed by the parties as follows:

"WAIVER OF SAN FRANCISCO PAID SICK LEAVE ORDINANCE"

San Francisco Administrative Code, Chapter 12W, Paid Sick Leave Ordinance, is expressly waived in its entirely with respect to employees covered by this agreement.

## SECTION 13   BEREAVEMENT LEAVE

13.1    In the event of a death in the immediate family of an employee covered by this Agreement, who has at least ninety (90) days of service with his Employer, he shall, upon request, be granted such time off with pay as is necessary to make arrangements for the funeral and attend same, not to exceed three (3) regularly scheduled working days. This provision does not apply if death occurs while the employee is on leave of absence, layoff or sick leave. For the purpose of this provision, the immediate family shall be restricted to Father, Mother, Brother, Sister, Spouse, Child, current Mother-in-Law, Father-in-Law, Son-in-Law, Daughter-in-Law and Legal Guardian and domestic partners. At the request of an Employer, the employees shall furnish a death certificate and proof of relationship. Bereavement leave applies only in instances in which the employee attends the funeral or is required to make funeral arrangements, but is not applicable for other purposes, such as settling the estate of the deceased. The Employee may use vacation days or unpaid leave of absence for the additional time after the first three (3) days off up to six months.

## SECTION 14   LEAVE OF ABSENCE

14.1   An employee who has worked one (1) or more years for an Employer shall be granted, upon request, an unpaid leave of absence up to six (6) months, provided that he has given the Employer acceptable proof that such leave of absence is necessary to recover from personal disability (including personal physical disability due to pregnancy). Leaves of absence up to twelve (12) months shall be granted in cases of industrial illness or injury. The Employer and/or Union may initially fill the temporary vacancy resulting from the granting of this leave under sub-section 14.1 with a Union member according to seniority, similar classification, and who possesses the similar skills and ability required of the vacant position. The employer will comply with the Family Medical Leave Act and any applicable San Francisco County family leave ordinance.

14.2   All leave of absence requests shall be done in writing to the union and employer. The Union will submit the request to the Employer.  The Employer agrees to notify the union in writing when an employee is granted a leave of absence.  The Union does not approve the leave of absence however it does document them. Requests for leaves should be submitted in writing at least two weeks prior to the time being requested.   If an employee requests a Leave of Absence while on vacation they must notify the union and Employer in writing. A leave request shall not be denied for a reason which would violate Section 2.1 of this Agreement.

14.3   No accrued rights shall be forfeited by reason of a leave of absence. No benefits shall accrue during such leave. Leaves of absence shall not result in adjustment of anniversary date.

14.4   Any employee who fails to report to work on expiration of a leave of absence shall be considered as having voluntarily quit, unless the employee notifies the Employer and the Union in writing within 90 days of extenuating circumstances beyond the control of the Employee.

14.5   Upon request a full rate employee shall be entitled to a leave, up to twenty four (24) months, pursuant to this paragraph no more than once every thirty (30) months.  From the date of return from such a leave, an employee shall be required to work an additional thirty (30) months before requesting another leave.  If an employee requests another extended leave within the thirty months due to a different circumstance he or she shall be granted additional leave according to the situation.  The Employer may fill the temporary vacancy resulting from the granting of this leave with a union member of the Employer's choice up to a maximum of one (1) year.  After one (1) year, the position will be filled according to the seniority rule under Exhibit C.

14.6   Employees will be responsible for notifying the Employer and the union in writing within the first ninety (90) days to request an extension.

FIRST EXTENSION:  Employees will be granted one extension for ninety days (90) for extenuating circumstances and shall be returned to their prior position (at their permanent position) upon returning from the leave of absence. If notification occurs after the ninety-first (91) day the Employer at its election may terminate the employee.

SECOND EXTENSION:  Shall be up to nine months.  Employees requesting a second extension of their Leave of Absence understand that upon their return from the leave of absence the employee shall be returned to dispatch at the hiring hall with existing seniority. All combined leave of absence extension shall not exceed a total of one (1) year.  At which point the employee will be considered terminated.

## SECTION 15   GROUP INSURANCE

15.1   Group insurance shall be as set forth in Exhibit "B", which is attached hereto and made a part thereof.

## SECTION 16   PENSION PLAN

16.1   For the purpose of establishing and maintaining a pension plan, the Employer shall contribute as follows for all employees covered by this Agreement.

The parties acknowledge that the SEIU National Industry Pension Fund ("Fund") has been certified to be in critical status and has adopted a rehabilitation plan containing two schedules of benefit reductions and supplemental employer contributions for which no benefit credit is given, under the authority of Section 305 (b) of ERISA.  The bargaining parties adopt the current Preferred Schedule of the rehabilitation plan of the Fund.  Pursuant to that Preferred Schedule, effective August 1, 2016, Employer agrees to make base contributions to the Fund for which benefit credit is given at a rate of $1.15 per hour worked or paid and, in addition, a supplemental contribution equal to 72.1%of said base rate of contributions per hour worked or paid, for which no benefit credit will be given.

Effective August 1, 2017 Employer agrees to make base contributions to the Fund for which benefit credit is given at the rate of $1.15 per hour worked or paid and, in addition, a supplemental contribution equal to 85.5% of said base rate of contributions per hour worked or paid, for which no benefit credit will be given.

Effective August 1, 2018 Employer agrees to make base contributions to the Fund for which benefit credit is given at the rate of $1.15 per hour worked or paid and,

in addition, a supplemental contribution equal to 99.9% of said base rate of contributions per hour worked or paid, for which no benefit credit will be given.

Effective August 1, 2019 Employer agrees to make base contributions to the Fund for which benefit credit is given at the rate of $1.15 per hour worked or paid and, in addition, a supplemental contributions equal to 115.4% of said base rate of contributions per hour worked or paid, for which no benefit credit will be given.

Paid vacations, paid holidays, and paid sick leave, and straight time hours worked, excluding overtime hours, are considered as hours worked in computing pension contributions.

16.2      Between the first and tenth day of each month, the Employer shall make irrevocably the required payment for the preceding calendar month to the trustees of the pension plan and shall continue such payments for the term of this Agreement or as required by any subsequent and succeeding Agreement.

16.3      The Employer shall comply with all provisions of the Pension Trust Indenture and shall maintain, furnish and make available for audit at Employer's office such data and records as the Trustees may require as provided in the Pension Trust Indenture.

16.4      The Employer accepts the terms of that certain trust indenture made and executed in San Francisco, California October 30, 1953 as amended, creating BUILDING SERVICE EMPLOYEES PENSION TRUST and accepts the Terms of BUILDING SERVICE EMPLOYEES PENSION PLAN, and further hereby becomes a party to said trust indenture subject to the terms thereof as indicated in Section 3.01 of Article III of said trust indenture.

16.5      The Employer further agrees to be bound by all of the provisions of said trust indenture and said pension plan as amended and hereby acknowledges prior receipt of copies of said trust indenture and said pension plan.

16.6      The employer hereby authorizes and directs the Union to deposit with the Pension Plan Trustees a duplicate original of this collective bargaining agreement, which, when so deposited, shall indicate the Employer's acceptance of the terms of said trust indenture and the terms of said pension plan, by virtue of the provision of this section and in accordance with said Section 3.01 of Article III of said trust indenture.

16.7      The parties agree to re-open the agreement for the purpose of negotiating Pension Fund contributions at the three year point of this agreement, namely on August 1, 2019.

21

## SECTION 17   SAFETY

17.1        The Employer shall comply with all applicable Federal and CAL-OSHA laws and regulations pertaining to occupational health and safety, including the Hazardous Substance Information and Training Act.

17.2        In the event that the Property Management has identified an infectious disease hazard and has closed the facility, or portion thereof to its normal tenants/occupants, employees assigned to work in any closed portion of the facility will be: a) reassigned to other available work; or b) sent home with pay for the balance of their shift.  If the facility remains closed beyond the first day, affected employees will be dispatched per Exhibit C.  Employees will not be required to return to the facility until the facility is cleared for occupancy.  The union will be notified immediately of any such occurrence.

17.3        The Employer, the Union and all employees shall cooperate fully in all efforts to maintain a safe and sanitary work place.

17.4        Training shall not be conducted during the Employee's break or lunch hour.

17.5        The employer shall make a good faith effort to provide all training in the employee's primary language.

## SECTION 18   MILITARY SERVICE

18.1        In the event any employee covered by this Agreement is called for active duty in the Army, Navy, Marine Corps, or any other branch of the United States Military Service, he shall retain, consistent with his physical and mental abilities, the right to his former position or its equivalent for the period of this Agreement or any further agreement, and shall receive his former position or a job of equal rank, provided application for reemployment is made within ninety (90) days after release from military service. Any questions that may arise concerning return to work shall be settled in accordance with Section 20.

## SECTION 19   DISCIPLINE

19.1        The Employer shall have the right to discharge or discipline any employee for just cause.

19.2        At the time that an employee is notified of being discharged, the Union shall normally receive notification in writing of the discharge. However, where circumstances make it impossible or impractical to provide written notification to the Union at the time of the discharge, the Employer shall have until 5:00 PM of the business day following notification to the employee to provide written notification of the discharge to the Union.  An employee may request the presence

of a Union steward or representative for any meeting or discussion with the employer that may lead to discipline.

## SECTION 20   GRIEVANCE PROCEDURE

20.1   Any difference between the Employer and the Union involving the meaning or application of the provisions of this Agreement shall constitute a grievance and shall be taken up in the manner set forth in this Section. Before filing a grievance in writing, a grievant and/or his representative may discuss the grievance with a representative of the other party to attempt to resolve the grievance informally.

20.2   If the aggrieved party chooses not to attempt to resolve the grievance informally or if the grievance is not resolved through informal meeting, the aggrieved party shall serve upon the other party a written statement setting for the facts constituting the alleged grievance.

20.3   **STEP 1. Grievance** A grievance need not be considered unless the aggrieved party serves upon the other parties a written statement setting forth the facts constituting the alleged grievance. For a discharge case grievance, such notice must be served within fifteen (15) days from that date of discharge. Such written statement concerning any other type of grievance must be served within fifteen (15) days of its occurrence or the discovery thereof by the aggrieved party.  The Employer shall respond to the grievance within ten (10) days. If there is no response within ten (10) days the grievance will automatically advance to the next step.

20.3   **STEP 2 Informal meeting** It is the intent of the parties that reasonable diligence be used in the discovery and reporting of alleged grievances so they may be adjusted or dismissed without undue delay. The Employer and the Union agree to use, their best endeavors by informal conferences between their respective representatives to settle any grievance within ten (10) days after service of such written statement . For a grievance regarding discipline of an Employee, the Employer will make every effort to provide to the Union upon request any document the Employer relied upon to discipline the Employee no later than 48 hours before the Board of Adjustment Hearing.  For a grievance regarding monetary issues the Employer will make every effort to provide no later than 48 hours before the Board of Adjustment Hearing to the Union upon request applicable payroll records and timesheets. Discovery that is provided at the Board of Adjustment does not preclude the union or company from providing additional documents at the mediation or arbitration hearing.

20.4   **STEP 3 Board of Adjustment** If the grieving party wishes to take the grievance to the Adjustment Board, the grieving party must submit the request for an Adjustment Board within thirty days from the date the grievance was filed. If the

grieving party fails to submit this request within thirty (30) days, from the date the grievance was filed, the grievance shall be deemed waived.

20.5    Within ten (10) days upon receipt of a timely written request, there shall be an Adjustment Board consisting of two (2) representatives designated by the Union who have not participated in earlier steps of the Grievance Procedure and two (2) representatives designated by the Employer who have not participated in earlier steps of the Grievance Procedure. The Adjustment Board shall meet as required and shall consider fully all aspects of the issue presented. If there is no Board of Adjustment held within ten (10) days from the request for an Adjustment Board Hearing and there is no written agreement between the employer and the Union to extend the time limit the grievance shall automatically advance to the next step.

20.6    Any decision by majority of the four (4) members of the Board of Adjustment shall be final and binding upon all parties, subject to limitations of jurisdiction and authority contained in the contract. If during the period that the Adjustment Board can meet, no majority decision can be reached, either party may, within ten (10) days following a such period, request in writing that the matter be referred to Federal Mediation and Conciliation Service

    a.  STEP 4 Federal Mediation  The mediator shall meet with the parties including affected employee(s) to assist and offer advisory opinions in an effort to help the parties reach an agreement that resolves the grievance. If there is no decision then either party may advance the grievance to arbitration within twenty (20) days following the mediation.

20.7    If the parties cannot agree upon a person to act as an impartial arbitrator within five (5) days after service of such demand, then an impartial arbitrator shall be selected by agreement from the following  list of three (3)arbitrators: Tom Angelo, Matthew Goldberg, and Union to submit arbitrator . The union will set dates with each of the arbitrators and the arbitrations will be held when the arbitrators are available on a rotation basis. If an arbitrators date goes unused and is not cancelled by the union then the union shall bear the entire expense. By mutual agreement, the parties can add one more arbitrator to the rotation.

The above procedure will be on a trial basis for two years. If there is no mutual agreement to extend the procedure for the utilization for arbitrators then the following shall apply.

If necessary, an impartial arbitrator shall be named by agreement from the names listed above, if there is no agreement then the parties shall request a list supplied by either the State or Federal Mediation and Conciliation Service. Either party may reject in its entirety any list of arbitrators supplied by the State or Federal Mediation and Conciliation Service, and thereafter request a new list.

20.7    The decision of the arbitrator shall be final and binding on both parties hereto. In the event of a willful failure by either party to appear before the Arbitrator, the Arbitrator is hereby authorized to render his decision upon the evidence produced by the party appearing.

20.8    Each party shall bear all costs of presenting its case to the Arbitrator. The Arbitrator's fee and all incidental expenses of the arbitration shall be borne equally by the parties hereto.

20.9    Proposals to add to or change this Agreement shall not be subject to arbitration. Neither an arbitrator nor a panel of representatives shall have any authority or power to add, alter or amend this Agreement.

20.10    The arbitrator shall render a decision in writing within thirty (30) days if possible and in any event no later than sixty (60) days after the close of the hearing. It is understood that a hearing is not "closed" within the meaning of this provision until the post-hearing briefs are filed.

20.11    The parties agree that Step Two and Step 3 in the Grievance Procedure herein may be waived in discharge cases, and in cases involving Section 6 and Section 29 of this Agreement may automatically proceed from Step One to Step Four.

## SECTON 21   SAVINGS CLAUSE

21.1    If any provision of this Agreement or the application of such provision to any person or circumstances be ruled an "Unfair Labor Practice", or in any other way contrary to law, by any Federal or State Court or duly authorized agency, the remainder of this Agreement or the application of such provisions to other persons or circumstances shall not be affected thereby.

## SECTION 22   MANAGEMENT RIGHTS

22.1    All rights of management not expressly limited by the language of this Agreement are expressly reserved to the Employer, and the express provisions of this Agreement constitute the only limitations upon the Employer's rights. The exercise of any right reserved to management herein in a particular manner or the non- exercise of any such right shall not be deemed a waiver of the Employer's right or preclude the Employer from exercising the right in a different manner.

## SECTION 23   IMMIGRANT WORKERS

23.1    The Union is obligated to represent all employees without discrimination based upon national or ethnic origin.  The Union is therefore obligated to protect employees against violations of their legal rights occurring in the workplace, including unreasonable search and seizure.

23.2    The Employer shall notify the Union by phone and give oral notice to the Union steward, as quickly as possible, if any Department of Homeland Security or SSA agent appears on or near the premises to enable a Union representative or attorney to take steps to protect the rights of employees.

23.3    The employer shall reinstate any employee who is absent from work due to court or agency proceedings relating to immigration matters and who returns to work within one (1) year of commencement of the absence. If the bargaining unit member does not remedy the issue within one (1) year, the bargaining unit member may be discharged and the Employer shall no further obligation to hold a bargaining unit member's position.

23.4    In the event that an employee is not authorized to work in the United States of America and his or her employment is terminated for this reason, the Employer agrees to immediately reinstate the employee to his or her former position, without loss of prior seniority (i.e., seniority, vacation or other benefits do not continue to accrue during the period of absence) upon the employee providing proper work authorization within one (1) year from the date of termination.

If the employee needs additional time the Employer will rehire the employee into the next available opening in the employee's former classification.  Upon the employee providing proper work authorization within a maximum of one (1) year.

23.5    Errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control. Employees shall not be discharged, disciplined or suffer loss of seniority or any other benefit or be otherwise adversely affected by a lawful change of name or Social Security number.  These changes shall not be considered new employment or a break in service.

23.6    In the event an employee is displaced due to disqualification from employment due to the application by the employer of an E-verify, or similar employment eligibility verification program, including background check, the incoming replacement employee will be paid at the wage rate and benefit eligibility levels of the employee who is being replaced.

23.7    Leave of absence will be for two (2) years.  Members will be allowed to return to their jobs after renewing work permits and TPS.


## SECTION 24    ASSIGNMENTS

24.2    The parties agree that in the event that the ownership or management of any plant or company is changed by sale, merger or in any other manner, this Agreement shall be included as a condition of such change or transfer, and shall run to its conclusion as the contract of the successor company, applicable to the particular plant thus sold, merged or transferred. The Union likewise binds itself to hold this

contract in force to its termination, and agrees that no part of this Agreement shall be assigned to any labor organization other than those which are parties hereto, without consent of the parties hereto.

**SECTION 25   BIDDING PROCEDURES**

25.1    Whenever the Employer bids or takes over the servicing of any job location, building or establishment covered by this Agreement, and where the daily work being performed amounts to seven and one-half (7½) hours or more, the Employers agrees to do the following:

(a)    Retain all permanent employees at the job location, building or establishment including those who might be on vacation or off work time because of illness, injury or authorized leave of absence; and recognize that the work time and overall employment service of all such employees shall be considered as continuous, regardless of change of Employers, for all purposes, including seniority, sick leave and vacation benefits, so that no such permanent employee will lose any such benefits because of the change of Employers.

(b) Contact the Union for the number of permanent employees, all job classifications, starting and quitting times, the number of daily hours worked, the rates of pay, and the number of hours each such employees is credited with for purposes of the Progression Rate at such location. The Union agrees to supply such requested information within five (5) working days or the Employer is free to bid the job as he sees fit.

25.2    Within the 30 days of a building changing contractors, the current contractor will not be allowed to transfer anyone into the building. The outgoing contractor, at its discretion, can transfer out an employee within the 30 days of a building transfer.

25.3    **BIDDING PROCEDURES FOR DIRECT TENANT SPACES**

Effective August 1st, 2016, all direct tenant contracts will be bid at the highest tier wage rate. Permanent employees already working within the building may be transferred to the affected floors being put out to bid. In these situations the following shall apply:

a.  The first sentence of Article 25.2 will be waived to ensure that all employees are top tier wage rate employees. In addition, section c.5 shall apply to the selection and assignment of only forepersons & dayporters.

b.  For office buildings being serviced by a contractor not signatory to this Agreement, all new work involving set up and clean up, including

27

dishwashers, special event staff and client concierge, shall be bid at the lowest tiered wage rate. For purposes of this clause, the term "signatory" includes any employer which has agreed to be bound by this agreement.

c. For office buildings being serviced by a contractor signatory to this Agreement, all work involving set up and clean up, including dishwashers, special event staff and client concierge, shall be bid based on the top wage rate.
d. The Union shall be entitled to audit contractor compliance with these provisions. Contractors shall be obligated, upon request to provide the union with all payroll records of affected employees.

e. Employers may not bid existing full time work as part-time work.

## SECTION 26   SUBCONTRACTING

26.1   The Employer agrees not to subcontract work normally performed by the employees covered by the terms of this Agreement except to persons, firms or companies meeting not less than the terms and conditions of this Agreement relating to wages, hours and conditions of employment.

26.2   The Employer shall not contract out to avoid its obligations under this Agreement nor as a means of reducing the scope of the Union. The Employer will notify the Union prior to any subcontracting, and shall include in its notification the name of the subcontractor, nature of the subcontracted work, and location of the work.

## SECTION 27   NEW WORK AND CONTRACTS

27.1   The Employer shall notify the Union, in writing, of any new job where the daily work consists of seven and one-half (7 ½) hours or more, specifying the name of the job and the address of the job location. Such notice shall be given at least two (2) weeks prior to the commencement of the job or if the Employer has less than two (2) weeks notice the Union shall be notified within forty-eight (48) hours after the Employer received notice to start the job.

## SECTION 28   WORKING CONDITIONS

28.1   When vacancy is verified by the building, staff reduction shall be automatic and the affected employee(s) shall be placed on the temporary list pending placement into an open permanent position, per Exhibit C.

28.2   The Employer shall have the right to determine and change the assignment of employees within a building and where, what and how the work is to be performed within a building. Any such decision shall be based on business need and shall not be for punitive, discriminatory or personal favoritism reasons.

28.3    At its discretion, the Employer shall have the right to determine and change starting times, provided that the Union shall receive at least ten (10) working days notice of any change in starting times. and, provided further, that no shift may begin in any day after 6:00p.m. unless the Union is notified in writing. However, it is understood that the Employer may continue to begin a shift after 6:00p.m. if the Employer is currently beginning a shift after 6:00p.m.

28.4    The Employer shall have the right to transfer employees from one building to another. Any such decision shall be based on business need and shall not be for punitive, discriminatory or personal favoritism reasons. The Union and the affected employee shall be given twenty-four (24) hours notice of any transfer.

28.5    The Union shall have the right to conduct an investigation, in order to determine whether any provisions of this Section have been violated.

## SECTION 29   OTHER AGREEMENTS

29.1    In the event the Employer employs employees in industries or locations where there is an agreement involving the Union, the Employer shall pay the wages rates and provide the benefits contained in such agreement. Employees are entitled to paid vacations after each year of service at any location in accordance with the provisions of the appropriate agreement, even though there has been more than one Employer during the year. An employee's vacation credits shall accumulate at the rate of one-twelfth (1/12th) of his annual vacation allowance each month. Employer are discontinued at any location, the accumulated vacation credits of the employee shall immediately become due and payable.

29.2    In the event the Employer is discontinued at any location, the accumulated vacation credits of the employee shall immediately become due and payable. However, in those cases where vacation is billed, the client has the option to request vacation accruals to be transferred to the new contractor. The Employee, the outgoing Employer and the new Employer shall mutually agree to the amount of roll over with a printed copy for each employee of accrued sick leave and vacation.

29.3    The outgoing contractor must POST the employees accumulated vacation and sick leave credit hours, when the building is placed out to bid.  Any discrepancies on vacation or sick leave credits MUST be resolved before the end of the contract for that building.  In other cases where vacation is billed, the client may request that employees be cashed out of their accrued vacation prior to assuming a permanent open position.

## SECTION 30    NO STRIKE/LOCKOUT

30.1    The language and spirit of this Agreement guarantees the prompt and faithful performance by the Employer and the Union of all obligations imposed by the terms of this Agreement. The parties, therefore mutually agree that during the term of this agreement, the Employer shall not lockout it's employees, nor shall the Union or it's members either cause, sanction, or engage in any strike, diminution or interruption of the Employer's business. In the event of a violation of the provisions of this Section, the Union shall upon notice from the Employer, immediately resume normal operations.

30.2    It is understood that the observance by an individual member of the Union of a lawful picket line of another labor organization, which picket line has been sanctioned by the San Francisco Labor Council, shall not constitute a breach of this agreement.

30.3    Neither the offer nor the withdrawal of any proposal during the negotiations preceding the execution of this agreement which proposal, was not incorporated therein, shall be used in the construction of this agreement.

## SECTION 31    SHOP STEWARDS

31.1    The Employer recognizes the right of the Union to designate or elect shop stewards and alternates.

31.2    The Employer recognizes the shop stewards or alternates, so designated or elected, as the representatives of the Union.

31.3    Upon oral request, Shop Stewards will be provided copies of dispatches, the SEIU card and or names in the event of any emergency basis replacement.

31.4    Upon employees request, Shop Stewards, when available, will be present, if there is no Shop Steward then the Employer will call the Union to send a representative, when disciplinary action is being imposed on an employee. If no representative from the union is available the employer may proceed with the disciplinary action.

31.5    When an Employee or Employer requests a shop steward to be present at a meeting called by the Employer and the meeting lasts longer than twenty (20) minutes the employer will provide assistance from the building staff to assist the shop steward at his or her station.

31.6    Shop Stewards shall be allowed twenty (20) minutes per month to perform any needed Shop Steward responsibilities when necessary.

## SECTION 32 ENTIRE AGREEMENT

32.1    The Employer shall not be bound by any requirement which is not clearly, explicitly and specifically stated in this Agreement. Specifically, but exclusively, the Employer is not bound by any past practices of the Employer or understandings with any labor organization, unless such practices of the Employer or understandings are specifically stated in this Agreement. The foregoing does not eliminate the accepted use of past practice when issues arise as to interpretation of ambiguities in the express language of the Agreement.

32.2    The Union agrees that this Agreement is intended to cover all matters affecting wages, hours and other terms and all conditions of employment and similar or related subjects, and that during the term of this Agreement neither matters affecting these or any other subjects not specifically set forth in this Agreement.

32.3    Neither the offer nor the withdrawal of any proposal during the negotiations preceding the execution of this agreement which proposal, was not incorporated therein, shall be used in the construction of this agreement.

## SECTION 33   TERM OF AGREEMENT

33.1    Unless expressly stated otherwise all parts of this Agreement will be effective **August 1, 2016** and shall remain to and including **July 31, 2020** and shall continue in effect thereafter from year to year unless either party serves notice in writing at least sixty (60) days prior to the expiration of this Agreement of the desire to terminate the Agreement or modify its terms.


DATED: _4/18/17_

SAN FRANCISCO MAINTENANCE
CONTRACTORS ASSOCIATION


DATED: _4/18/17_

SEIU LOCAL 87
SERVICE EMPLOYEES
INTERNATIONAL UNION

**EXHIBIT A**

## MEMBERS OF THE SAN FRANCISCO MAINTENANCE CONTRACTORS

1.  Able Building Maintenance Company

    Signature: _____  Date: 4/18/17

2.  American Building Maintenance Company

    Signature: _____  Date: 4/18/17

3.  Lewis and Taylor Maintenance Company

    Signature: _____  Date: 4/18/17

4.  Genesis Building Services

    Signature: _____  Date: 4/18/17

5.  Clean-A-Rama Building Maintenance

    Signature: _____  Date: 4/18/17

32

**EXHIBIT B**

**HEALTH AND WELFARE COVERAGE:**

This Section expresses the understanding of the parties concerning Employer contributions to the General Employees Trust Fund on behalf of employees and their eligible dependents covered by this Agreement.

B. 1      The Employer agrees to maintain Plan C26 covering medical, dental, vision, prescription drug and life insurance coverage for employees and their eligible dependent(s) in its entirety through October 31, 2012. The cost of Plan C26 is one thousand two hundred seven dollars and four cents ($1,207.04) per month per eligible employee.

Effective September 2012 hours for October 2012 deposit for November 2012 coverage, employees participating in Plan C26 will be transferred into Plan C26 (A) at the cost of one thousand one hundred fifty four dollars and thirty one cents ($1,154.31) per month per eligible employee.

For employees hired after August 1, 2012 they shall be eligible after four (4) months for Plan C26 (B) at the cost of nine hundred thirteen dollars and fifty two cents ($913.52) per month per eligible employee.

After thirty-nine-hundred (3900) hours an employee hired after August 1, 2012 shall be eligible for Plan C26 (A).

For new employees hired after August 1st, 2016 working at least 105 hours in two (2) consecutive months shall be eligible for a contribution in the third (3rd) month, with coverage commencing on the first (1st) day of the fourth (4th) month.

The employer agrees to maintain the amended benefits of the plan (MOB) during the term of the agreement.

B.2      All Employer contributions referred to in this Section shall be paid into the General Employees Trust Fund in accordance with the procedure set forth below.

B.3      For the purpose of this Section, Permanent and Top Rate employees (A and B List) are eligible for a contribution if they have worked at least ninety (90) hours in the month prior to the month in which previous contribution is due. "Ninety (90) hours worked" includes straight time hours only, not overtime, and it includes compensable straight hours paid but not worked.

In addition for the purpose of this section Progression Rate Employees (C list Employees) and new hires after August 1, 2012 are eligible for a contribution if they have worked for 105 hours in the month prior to the month in which the previous contribution is due. "One hundred five hours (105) worked "includes straight time hours only, not overtime, and it includes compensable straight hours paid but not worked.

B.4    If any employee works their qualifying hours or more in the month but is not listed by the Employer, the Employer shall be personally liable and fully responsible for all claims that may be incurred by such employee in the same amounts as though the employee had in fact been listed. This personal liability, however, does not in any way relieve the Employer of his liability to make payments under this Agreement.

B.5    The Employer shall comply with all provisions of the above-mentioned Health and Welfare Trust Funds and shall maintain, furnish and make available for audit at Employer's office such data and records as the Trustees may require as provided in the Health and Welfare Trust Fund.

B.6    The Union and the Employer will discuss alternative Health and Welfare plans. Any proposed changes will only be implemented by mutual agreement from all parties.

# EXHIBIT C
## THE FILLING OF AVAILABLE POSITIONS

Notwithstanding any other provision of the Agreement, this provision shall cover the filling of available positions by each Employer (Contractor) covered by the Agreement.

C.1   Each Employer agrees to maintain four separate lists. The first list will be the Permanent Employee list that will include all Permanent Employees and their building assignments. (Permanent employees are defined as those employees who are assigned by the Employer to a particular workstation on a daily and permanent basis.) The second list will include temporary employees who were permanent for a particular Employer but are now laid off and shall be known as the "A List". The third list will include top wage rate temporary employees for a particular Employer and shall be known as the "B List". (Top wage employees are defined as those employees who have never been permanent.)  The fourth list will consist of temporary employees who are earning less than top wage rate for a particular Employer and shall be known as the "C list".  To be included on any Employer's "C list", an individual must have worked at least one (shift) in the last twelve (12) months for that Employer.

C.2   The placement of employees on the "A through C list" will be as follows:

(a)   Employees, who were permanent for a particular Employer but are now laid off, will be at the top of the list for that Employer (A list). The ranking among these employees will be by seniority date.

(b)   The next ranking will be of employees who are earning the top wage rate for a particular Employer who have never been permanent (B list). The ranking among these employees will be by seniority date.

(c)   The next ranking will be of those employees who are earning less than top rate for a particular Employer (C list). The ranking among these employees will be based on the number of accumulated hours worked for that Employer.

C.3   When a permanent position becomes available the most senior employee on the A list will be offered said permanent position.  If there is no A list employee then the most senior employee on the B list shall be offered said permanent position. If there is no B list employee available then the most senior employee on the C list shall be offered said permanent position. For day porter and foreperson positions, client and Employer approval will also be a determining factor.  For janitorial positions that require specific skills, the Union/Employer will do it's best to dispatch/place a member with the required capabilities.

C.4     (C.3 original) On any given day, the Employer shall  fill available temporary positions with the  employee on its A, B or C List who is not working that day in the order of seniority,  except for day porter,  foreperson positions, and for janitorial positions that require specific skills. However, if the employee filling a temporary  position chosen by the employer is on the C list the most senior employee from the A, B or C list can bump the lesser wage temporary Employee, with 24-hour notice, except under extended leaves of absence of 12 months or longer covered in Section 14.5 of this Agreement.

C.5     In hiring, the Employer may consider individuals recommended by the Union. For day porter and foreperson positions, client and Employer approval will also be a determining factor.

C.6     The employer will notify the union when there is a permanent open position in the day porter classification.

C.7     On an emergency basis that does not exceed three (3) days for day porters and forepersons and two (2) days for other positions, the employer may fill the temporary vacancy by an employee of their choice.

C.8     An employee will be removed permanently from an Employer's A, B or C list for any of the following reasons.

- Termination for Just Cause
- Not working three shifts within the last twelve (12) months, except for employees on the A or B list.
- Refusing to accept three (3) dispatches, without just cause, within a thirty (30) day period will be considered a voluntary quit, except for employees on the A or B list.
- Not responding to three (3) Employer notifications for dispatch without just cause within a thirty (30) day period will be considered a voluntary quit, except for employees on the A or B list. It is understood that an employee will be considered to have not responded to a notification for dispatch on a given day only if the notification was given at some time from 3:00 p.m. to 4:30 p.m. on that day, except under extenuating circumstances. It is further understood that this paragraph does not in any way restrict the Employer's right to notify for dispatch at any time before 3:00 p.m. or after 4:00 p.m.

C.9     Each Employer shall supply the Union with a copy of the lists stated in C.1. Thereafter, each Employer shall supply the Union with a daily report concerning the filling of temporary vacancies no later than 3:00 p.m. following the completion of the previous workday. For Friday, Saturday and Sunday reports, they shall be supplied to the Union the following Monday, unless Monday is a holiday, in which case the requirement unless there are extenuating circumstances such as phone line being down, in that case the Employer is required to supply the

daily report as soon as possible.) This report shall contain the following information:

- Employee Name
- Name and address of new hires
- Current Assignment, if any
- Date of assignment, if any
- Employee being replaced
- Reasons for Open Position
- Estimated Duration

In addition, each Employer shall supply the Union with an updated version of its permanent list once every six months and an updated version of its A, B and C list once every month.

C.10    New Construction: For any new jobs that are the result of new construction, an Employer may fill one-half (1/2) of the needed number of employees with employees whose wage rate is the lowest on the progression wage rate. The other half must be filled first with qualified employees on the Employer's A and B list . Once the building is 90% occupied, the property will revert to the standard contract terms.

C.11    The mediation procedure set forth in Section 20.6a of this Agreement shall be available for a dispute concerning whether or not an employee has the correct ranking on the A, B, or C list. In the event that it is found that the ranking for a particular employee is incorrect, the exclusive remedy which may be ordered is that the ranking be corrected. In the event that there is a monetary claim related to the ranking claim, the monetary claim may be pursued under the regular grievance procedure.

C.12    The existing Labor Management committees may also discuss Exhibit C and may make any non-binding recommendations.

C. 13   If an employer agrees to only use the Union hiring hall to fill all positions, both permanent and temporary, it can sign a side letter to opt out of Exhibit C provisions applicable to filling of available positions by the hiring hall.

C. 14   The Employer agrees to participate in a union hiring hall pursuant to written procedures and responsibilities established by a labor-management committee. The labor-management committee establishing such procedures and responsibilities shall consist of two management representatives appointed by the San Francisco Maintenance Contractors Association, and two union representatives appointed by Union.   Employer may subsequently cease participation in the hiring hall if it is unable to efficiently obtain and assign qualified staff.

C.15    For any one time or reoccurring "tag" work of four hours or more which is above base contract specification, the employer may assign such "tag" work to an employee from the C List. The contractor will notify the union if the "tag" will exceed more than one month. If a permanent utility worker is utilized at another building for tag work for more than two days, the contractor will fill his/her position with a C list employee who is: (a) qualified to perform the utility work; and (b) working at the lowest rate in the progression schedule as set forth in Section 8 of this Agreement.

C.16    Contractors are willing to interview graduates from San Francisco Community college Pargnership Program for potential employment at reasonable times and places to be agreed upon by the parties.

ATTACHMENT 1

**Recycle/Green Buildings**

City and Union will participate in joint labor-management committee to identify best
practices with respect to janitorial services.  Committee will be facilitated by Mayoral
designee from the Department of the Environment, and may include other stakeholders.

FOR the Contractors,                                    FOR SEIU Local 87,

By: _____                          By: _____

Date: _____4/18/17_____                            Date: _____4/18/17_____

Able Building Maintenance Company

Signature: _____        Date: 4/18/17

American Building Maintenance Company

Signature: _____        Date: 4/13/17

Lewis and Taylor Maintenance Company

Signature: _____        Date: 4/18/17

Genesis Building Services

Signature: _____        Date: 4/18/17

Clean-A-Rama Building Maintenance

Signature: _____        Date: 4/18/17

LETTER OF UNDERSTANDING
BACKGROUND CHECKS

At client request employees shall be subject to security background checks. Employees shall cooperate with the Employer as necessary for obtaining security background checks. Employees who fail such security background checks shall be subject to termination, if there is just cause. Any employee may elect not to participate in the requested background checks and will be reassigned based on seniority. No bumping of permanent employees shall be allowed.

For the purpose of this provision, just cause to terminate an employee who has failed a security background check exists only if it is established:

1. That one or more of the findings of the background security check is directly related to the employee's job functions or responsibilities, or
2. That the continuation of employment would involve an unreasonable risk to property or to the safety or welfare or specific individuals or to the general public.

If the customer or Employer determines that the employee has failed a security background check, but the Employer lacks just cause for termination under this provision, then the employee may be transferred or reassigned based on seniority. No bumping of permanent employees shall be allowed. Employees who failed a background check will have a right to a copy of the report and can appeal through the grievance procedure.

FOR the Contractors,                           FOR SEIU Local 87,

By: _James A Beard_                            By: _____

Date: _4/18/17_                                Date: _4/19/17_

Able Building Maintenance Company

Signature: _A. L_                              Date: _4/18/17_

American Building Maintenance Company

Signature: _____                     Date: _4/19/17_

Lewis and Taylor Maintenance Company

Signature: _____                     Date: _4/18/17_

Genesis Building Services

Signature:_____   Date:_____

Clean-A-Rama Building Maintenance

Signature:_____   Date: 4/18/17

## LETTER OF UNDERSTANDING

### A. New Position Definition: RECYCLING COORDINATOR

The purpose of a RECYCLING COORDINATOR shall be to hand sort the landfill, recycling, and compost waste streams generated in the property/properties in which they are employed to assist properties in meeting or exceeding City mandated waste diversion rates.

### B. RECYCLYING COORDINATOR Hiring Requirements

Contractors may hire a RECYCLING COORDINATOR(s) from the SEIU Local 87 hiring hall to allow hand-sorting, of all landfill, recyclable and compostable material generated in the building(s) in which they are employed.

### C. RECYCLING COORDINATOR Training

Contractors agree to train RECYCLING COORDINATOR. Training shall include, in addition to instruction on the proper sorting of all waste streams, detailed information on the safe handling and disposal of hazardous materials such as sharps and chemicals. Training will be provided in English and in the Recycling Coordinator's native language.

### D. RECYCLING COORDINATOR Safety

Contractors shall provide sorters with protective gear reflecting best practice in the recycling industry, including safety goggles, respiratory protection, protective aprons, hair nets, puncture-proof and waterproof work gloves, and safety boots.

### E. RECYCLING COORDINATOR wages and benefits

Effective August 1, 2016 the Employer will pay the second tier rate of the pay scales of this contract.  Employers shall not be prevented from paying in excess of the minimum rates indicated in the pay scales of this contract.  Recycling coordinator with a minimum of one year's experience shall be eligible to bid on non-sorter janitor positions according to seniority and their placement on the Employers temporary list.

Health and Welfare: Effective on August 2016 hours for September 2016 deposit, recycling coordinators shall be transferred to C23a to C26B after four months of consecutive 115 hours. Thereafter 115 hours per month qualifier.

Pension: Effective August 1, 2016, the Employer shall make the appropriate pension contributions on the recycling coordinators behalf.

# LETTER OF UNDERSTANDING

## Hiring Hall/Dispatch

On and after January 1, 2017 the following processes will be applicable regarding dispatch of employees from the Union:

1. Employer may follow it's normal screening and hiring processes for all potential new hires, including background checks, interviews, etc.  Successful candidates will be offered employment subject to all hiring requirements.
2. Once a candidate has successfully completed the Employer's hiring process, the Employer will refer the candidate to the union hiring hall for dispatch to future jobs in compliance with Exhibit C.  Union will not dispatch those employees to a different signatory employer other than the employer who previously processed candidate.  Employees working with two different employers will be sent out to work according to Exhibit C.
3. The Employer will notify the Union for dispatch of temporary employees, with the understanding that Union will dispatch only those candidates who have been referred by the employer.
4. The Employer and the Union will review the above process after January 1, 2020 and negotiate whether the process will continue.
5. Day Porters are excluded from this process.

FOR the Contractors,                                    FOR SEIU Local 87,

By: _Janu O Beend_                                     By: _____

Date: _4|18|17_                                        Date: _4/10/17_

Able Building Maintenance Company

Signature: _____          Date: _4/18/17_

American Building Maintenance Company

Signature: _____          Date: _4/18/17_

Lewis and Taylor Maintenance Company

Signature: _____          Date: _4/18/17_

43

Genesis Building Services

Signature: _____          Date: _4/18/17_

Clean-A-Rama Building Maintenance

Signature: _____          Date: _4/18/17_

# LETTER OF UNDERSTANDING

## SEXUAL HARRASSMENT

## NON-DISCRIMINATION

**General Agreement on Non-Discrimination.** The provisions of this Agreement shall be applied to all employees without regard to race, color, religion, sex, gender, age, national origin, ancestry, physical or mental disability, medical condition, genetic information, marital status, military and veteran status, sexual orientation, gender identity, gender expression, or pro union activity. The Employer and the Union further agree to comply with all applicable federal, state, and local laws intended to prevent discrimination against any employee or applicant for employment because of race, color, religion, sex, age, national origin, disability, veteran status, Shop Steward and/or Union activity. The Employer and Union agree that they will not retaliate against any person who makes or assists a person complaining about a violation of any such law.

## APPENDIX

A. **Special Provisions Regarding of Sexual Harassment or Misconduct.** The Union and the Employer agree that male and female workers should have access to information about their rights in the workplace, including rights to be free from sexual harassment in the workplace. Accordingly, the Employer and the Union agree to the following concerning sexual harassment and complaints of sexual harassment in the workplace:

1. The Employer prohibits sexual harassment in the workplace of its employees and applicants for employment by any employee, non-employee, or applicant. Such conduct may result in disciplinary action up to and including dismissal.

2. The Employer will not tolerate, condone, or allow sexual harassment, whether engaged in by fellow employees, supervisors, or non-employees who conduct business with the Employer.

3. Sexual harassment is any behavior that includes unwelcome sexual advances and other verbal or physical conduct of a sexual nature when:

45

(a)   Submission to, or rejection of, such conduct is used as the basis for promotions or other employment decisions;

(b)   The conduct unreasonably interferes with an individual's job performance or creates an intimidating, hostile or offensive work environment.

(c)   Sexual assault is a criminal offense which may be immediately reported to the police and to the Employer if it is any way work related.

Employees are entitled to work in an environment free from sexual harassment and a hostile or offensive working environment. Sexual harassment is unlawful discrimination, as is severe and pervasive conduct that belittles or demeans any individual on the basis of race, religious creed, color,
national origin, ancestry, physical and/or mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual preference, or other similar characteristics or circumstances.

No manager or supervisor shall threaten or imply that an employee's refusal to submit to sexual advances will adversely affect that person's employment, compensation, advancement, assigned duties, or any other term or condition of employment or career development. Sexual joking, lewd pictures, and any conduct that treats employees of one gender as sex objects are prohibited.

4.   Employees who have complaints of sexual harassment may (and are encouraged to) report such complaints to their supervisor. If this person is the cause of the offending conduct, the employee may report the matter directly to the person designated by the Employer to receive such reports or through other proper channels established by the Employer, such as an employee hotline. Employer personnel will abide by proper standards of professionalism and respectful conduct towards employees while taking reports and performing investigations of sexual harassment. Confidentiality of reports and investigations of sexual harassment will be maintained to the greatest extent possible.

In the event that an employee makes a report involving persons not employed by the Employer, e.g. a building tenant or visitor, the Employer will forward copies of such report to the property owner or manager and request that they take immediate and appropriate steps to assure that any harassment stops.

In the case of investigations which involve one (1) or more employees covered under this Agreement, the Employer will make all possible efforts to complete the investigation within two (2) weeks, and both the Employer and the Union shall cooperate with one another in such investigations. Such cooperation shall include full access to all non-privileged investigatory documents prepared by the Employer. The employer shall ensure that the union receives all material information to thoroughly evaluate the underlying facts.

Employer will maintain a hotline through which employees should file initial reports of sexual harassment or work-related assault.

5.     Upon receiving a report of sexual harassment or assault, the Employer will take reasonable steps to ensure the accused does not have contact with the person(s) they are alleged to have harassed or assaulted, until such time as the Employer has completed its investigation and made a determination as to the claim. The Employer may suspend accused employees without pay pending investigation. The Employer also may transfer accused employees between work sites on a temporary basis in order to comply with this Section. If an employee is suspended after being accused of sexual harassment at work, he/she will be paid for all hours lost if following the investigation the complaint is determined to have been unsubstantiated. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

6.     Any manager, supervisor or employee who, after appropriate investigation, is found to have engaged in sexual harassment of another employee will be subject to disciplinary action, up to and including dismissal. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

7.     Employer will not in any way retaliate against any individual who makes a report of sexual harassment nor permit any employee to do so. Retaliation is a serious violation of this sexual harassment policy and should be reported immediately. Any person found to have retaliated against another individual for reporting sexual harassment will be subject to appropriate disciplinary action, up to and including dismissal. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

Examples of such retaliation include, but are not limited to, the following: discipline, unfavorable or disparate treatment, ostracization/isolation, or transfer to another worksite (except for voluntary transfers,). If an employee is suspended after reporting having been the target of sexual harassment at work, he/she will be paid for all hours lost when the report is verified to be correct.

8.  The Employer shall provide to all new bargaining-unit employees an orientation on the policies and rules regarding Sexual Harassment and Sexual Assault reasonably soon after the employees commence employment, within sixty days. Training shall be conducted in conformity with standards to be established by the State of California, Department of Industrial Relations (DIR), and shall cover at least the following topics:

    (a)  definitions of workplace sexual harassment and assault;

    (b)  potential consequences for perpetrators of workplace sexual harassment and assault;

    (c)  information on representatives of the Employer to whom an employee can report cases of workplace sexual harassment and assault;

    (d)  community and mental health resources locally available for survivors of workplace sexual harassment or assault; including the East L.A. Women's Center Hotline;

    (e)  strategies of defense.

    In addition, the Employer shall provide updated training on the topics listed above to all bargaining-unit employees at least once per year.

    The Employer shall maintain records to document the trainings listed above and participation by bargaining-unit employees.

9.  The Employer shall provide the trainings listed above to all supervisory personnel, and in addition shall train them on their role in taking corrective action when incidents occur.

10.  The Employer shall adopt and implement a workplace sexual assault and sexual harassment prevention plan which complies with California law, in conjunction with the Union.

11.  The Union will maintain and distribute to its members a list of organizations which provide assistance to survivors of sexual harassment or assault.

12.  Employees who in good faith report sexual harassment or assault will be permitted to take any accrued paid leave time to seek assistance from a listed organization. The Employer may, at its discretion, require written evidence of such assistance.

13.   Employees with supervisory authority as defined by Section 2(11) of the National Labor Relations Act may not engage in sexual or romantic relationships with a subordinate employee.

FOR the Contractors,

By: _____

Date: __4/18/17__

FOR SEIU Local 87,

By: _____

Date: __4/18/17__

Able Building Maintenance Company

Signature: _____     Date: __4/18/17__

American Building Maintenance Company

Signature: _____     Date: __4/18/17__

Lewis and Taylor Maintenance Company

Signature: _____     Date: __4/18/17__

Genesis Building Services

Signature: _____     Date: __4/18/17__

Clean-A-Rama Building Maintenance

Signature: _____     Date: __4/18/17__

# EXHIBIT C

# NORTHERN CALIFORNIA MAINTENANCE CONTRACTORS AGREEMENT

## with

# SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED SERVICE WORKERS WEST

## May 1, 2016 through April 30, 2020

## PRE-PRINT FINAL

# **TABLE OF CONTENTS**

STRUCTURE OF THIS AGREEMENT ..................................................................................... 1

PREAMBLE ........................................................................................................................ 2

ARTICLE I – NON DISCRIMINATION AND NON HARASSMENT ............................................... 2

ARTICLE II – UNION RECOGNITION ...................................................................................... 3

ARTICLE III – HIRING AND EMPLOYMENT ............................................................................. 4

ARTICLE IV– CHECK OFF ..................................................................................................... 6

ARTICLE V – ENFORCEMENT ............................................................................................... 7

ARTICLE VI – NO STRIKE/LOCKOUT ..................................................................................... 8

ARTICLE VII – MANAGEMENT RIGHTS .................................................................................. 9

ARTICLE VIII – WAGES AND MILEAGE ..................................................................................10

ARTICLE IX – WORKING CONDITIONS AND JOB EXPENSE ......................................................12

ARTICLE X – HOLIDAYS .......................................................................................................14

ARTICLE XI – VACATION ......................................................................................................14

ARTICLE XII – LEAVES OF ABSENCE ......................................................................................14

ARTICLE XIII – HEALTH AND WELFARE ..................................................................................16

ARTICLE XV – TRAINING AND INVESTIGATION FUNDS ...........................................................18

ARTICLE XVI – DISCIPLINE AND DISCHARGE ..........................................................................18

ARTICLE XVII – GRIEVANCE AND ARBITRATION PROCEDURE ..................................................19

ARTICLE XVIII – EXPEDITED ARBITRATION ............................................................................21

ARTICLE XIX – CHECKOFF FOR VOLUNTARY POLITICAL CONTRIBUTIONS ...............................23

ARTICLE XX - JOINT LABOR MANAGEMENT COMMITTEE ......................................................23

ARTICLE XXI – INDIVIDUAL LEGAL RIGHTS ............................................................................24

ARTICLE XXII - HEALTH AND SAFETY .....................................................................................25

ARTICLE XXIII - ALCOHOL AND DRUG TESTING ......................................................................26

ARTICLE XXIV - SAVINGS CLAUSE .........................................................................................26

ARTICLE XXV - MOST FAVORED NATIONS .............................................................................26

ARTICLE XVI – HOURS – BAY AREA .......................................................................................27

ARTICLE XVII – HOURS – SACRAMENTO AREA .......................................................................29

ARTICLE XXVIII – MAINTENANCE OF WORKING CONDITIONS – BAY AREA ..............................30

ARTICLE XXIX – MAINTENANCE OF WORKING CONDITIONS – SACRAMENTO AREA ................34

ARTICLE XXX – SENIORITY, TRANSFER, AND LAYOFF – BAY AREA ..........................................37

ARTICLE XXXI – SENIORITY, TRANSFER, AND LAYOFF – SACRAMENTO AREA ........................41

ARTICLE XXXII – SUBCONTRACTING – BAY AREA ...................................................................43

ARTICLE XXXIII – SUBCONTRACTING – SACRAMENTO AREA ..................................................44

ARTICLE XXXIV - WORK PRESERVATION – BAY AREA .............................................................44

ARTICLE XXXV - ENTIRE AGREEMENT ...................................................................................45

ARTICLE XXXVI – DURATION OF AGREEMENT .......................................................................47

APPENDIX A - AREA 1: BAY AREA ECONOMIC PROVISIONS ................................................49

ECONOMIC AREA DESIGNATIONS – BAY AREA.....................................................................49

Section 1 – Areas 1A/1B: Master Contract Sites .....................................................................50

Section 2 – Areas 1C/1D: Small Master Contract Sites 150k sq ft or greater but less than 200k sq ft...56

Section 3 – Areas 1E/1F: Small Master Contract Sites Below 150,000 Square Feet .................62

Section 4 – Pension – Santa Clara County ...............................................................................67

Section 5 - Areas 1G/1H/1J: Former Bay Area Zone Provisions................................................68

Section 6 – Area 1L: New/Former Non-Union Sites (200,000 Square Feet or Greater) .......................73

Section 7 – Area 1M: New and Former Non-Union Sites below 200,000 Square Feet ..............76

Section 8 – Additional Provisions applying to Areas 1L/1M .....................................................79

Section 9 – Area 1N: Former Zone 5, Tier 1 Buildings ............................................................79

Section 10 – Vacations .........................................................................................................82

Section 11 – Holidays ..........................................................................................................83

Section 12 – Sick Leave .......................................................................................................84

Section 13 – Other Benefits and Wages .................................................................................84

Section 14 – Training and Industry Funds ..............................................................................86

Section 15 – Window Cleaner Wage Rates .............................................................................86

Section 16 – Duration ..........................................................................................................87

PART SIX – BAY AREA SIDE LETTERS OF UNDERSTANDING................................................87


APPENDIX B - AREA 2: SACRAMENTO AREA ECONOMIC PROVISIONS...................................89

ECONOMIC AREA DESIGNATIONS – SACRAMENTO AREA......................................................90

Section 1 – Areas 2A/2B: Master Contract Sites and Small Master Contract Sites ......................91

Section 2 – Area 2C: New/Former Non-Union Small Sites .......................................................98

Section 3 – Vacations .........................................................................................................101

Section 4 – Holidays...........................................................................................................102

Section 5 – Other Benefits and Wages .................................................................................103

Section 6 – List of Sacramento Appendix Sites......................................................................105

Section 7 – Training and Industry Funds ..............................................................................106

Section 8 – Uniforms ..........................................................................................................106

Section 9 – Maintenance of Greater Benefits ........................................................................106

Section 10 – Duration .........................................................................................................106


APPENDIX C – SEIU NATIONAL INDUSTRY PENSION FUND...................................................107

APPENDIX D – MAINTENANCE INDUSTRY COOPERATION TRUST FUND..............................110

APPENDIX E – MINORITY BUSINESS ENTERPRISE SUBCONTRACTORS ...............................111

APPENDIX F-1 – SICK LEAVE / CALIFORNIA HEALTHY WORKPLACES HEALTHY FAMILIES ACT ...111

APPENDIX F-2 – MINIMUM VALUE COVERAGE PURSUANT TO HEALTH CARE LEGISLATION .......111

APPENDIX G –SEXUAL HARASSMENT OR MISCONDUCT, WAGE AND HOUR PROTOCOL.............111

APPENDIX H – WAIVER OF CERTAIN PROVISIONS OF CALIFORNIA LABOR CODE 238.5 ......111

APPENDIX I – LIST OF SIGNATORY EMPLOYERS ................................................................111

**NORTHERN CALIFORNIA MAINTENANCE CONTRACTORS AGREEMENT**
**MAY 1, 2016 THROUGH APRIL 30, 2020**

---

**STRUCTURE OF THIS AGREEMENT**

The Northern California Maintenance Contractors Agreement covers both the Bay Area and the Sacramento Area, as defined below. The Agreement is divided into the following principal sections:

1.  Main Body of the Agreement: Non-Economic Language Provisions. All language shown in regular typeface applies to both the Bay Area and the Sacramento Area. Articles, Sections and Subsections which apply to only one of the two areas follow a statement indicating which of the two areas applies.

2.  Appendix A: Bay Area Economic Provisions. Appendix A shows the total economic package for each type of worksite, as well as provisions applying to all Bay Area sites. The Bay Area Side Letters specifying conditions at particular sites are published separately.

3.  Appendix B: Sacramento Area Economic Provisions. Appendix B shows the total economic package for each type of worksite, as well as provisions applying to all Sacramento Area sites. The Sacramento Appendices specifying conditions at particular sites are published separately.

4.  Additional Appendices. These apply to both the Bay Area and the Sacramento Area. The following Appendices are included:

| | |
|---|---|
| Appendix C | SEIU National Industry Pension Fund |
| Appendix D | Maintenance Industry Labor-Management Cooperation Trust Fund |
| Appendix E | Side Letter on Subcontracting to Minority Business Enterprise Contractors |
| Appendix F | Benefit Provisions pursuant to Legislation |
| F-1 | Paid Sick Leave |
| F-2 | Minimum Value Coverage Pursuant to Health Care Legislation |
| Appendix G | Special Provisions Regarding Sexual Harassment and Misconduct, and Wage and Hour Protocol |
| Appendix H | Waiver of Provisions of California Labor Code 238.5 |
| Appendix I | List of Signatory Employers |

## AGREEMENT

This Agreement is made and entered into effective May 1, 2016, by and between those signatory Employers hereinafter referred to as the "Employer" and the Service Employees International Union, United Service Workers West, hereinafter referred to as the "Union" (successor to SEIU Local 1877, also referred to as "SEIU-USWW").

The Employer recognizes the Union as the sole collective bargaining representative for its employees within the specifically defined counties of Santa Clara, San Mateo, Alameda, and Contra Costa (hereinafter referred to as the "Bay Area"), and Sacramento, Yolo, and Placer (hereinafter referred to as the "Sacramento Area"), in the State of California. This Agreement is the successor to the previous Northern California Maintenance Contractors Agreement and to the previous Bay Area Maintenance Contractors Agreement and the Sacramento Area Agreement. Any other Collective Bargaining Agreement between any signatory Employer and the Union within the geographic jurisdiction of this Agreement shall remain separate from this Agreement.

## ARTICLE I – NON DISCRIMINATION AND NON HARASSMENT

1.1    The Union and the Employer agree they shall not discriminate against any applicant or employee in hiring, promotions, assignments, recall or lay off status, because of race, color, ancestry, religion, creed, national origin, age, sex, gender, age, ancestry, physical or mental disability (as defined by the Americans with Disabilities Act), marital status, military and veteran status, maternity status, sexual orientation, genetic information, gender identity, or gender expression. No employee or applicant for employment covered by this Agreement shall be discriminated against because of membership in the Union or activities on behalf of the Union.

The Employer and the Union further agree to comply with all applicable federal, state, and local laws intended to prevent discrimination against any employee or applicant for employment because of race, color, religion, sex, age, national origin, disability, veteran status, Shop Steward and/or Union activity. The Employer and Union agree that they will not retaliate against any person who makes or assists a person complaining about a violation of any such law.

Whenever the masculine gender is used in the Agreement it shall be deemed to include the feminine gender and vice versa as the case may be.

1.2    The Union, the employees and the Employer are committed to providing a work environment that is free of unlawful harassment. This would include harassment based on any of the following categories: race, color, religion, sex, national origin, ancestry, age, sexual orientation or marital status. Any employee who believes

that harassment has taken place, should immediately report the facts to the Employer. Any person found by the Company to have harassed another in violation of this policy will be subject to discipline.

## ARTICLE II – UNION RECOGNITION

2.1     Scope of Bargaining Unit
        The Employer recognizes the Union as the sole collective bargaining agent for all persons that come under the jurisdiction of the Union, in all establishments or places of business which the Employer is now, or may in the future be servicing under contract or otherwise, and the Employer agrees to pay the wages and to work his employees under the terms and conditions of employment hereinafter set forth. The parties have agreed that the classifications covered by this Agreement are exclusive of clerical, supervisory and management employees. See the Appendices to this Agreement for the classifications covered in each geographic area.

2.2     Authority of Forepersons
        The Employer shall not authorize Forepersons or other bargaining-unit employees to impose discipline or perform the following supervisory duties: hiring, assigning permanent schedules or work areas, evaluating employees, adjusting grievances, or determining rates of pay in excess of the levels specified in this Agreement.

2.3     The Employer and the Union agree to establish a joint Committee to discuss potential organizing by the Union of non-union Janitorial employees in Northern California counties not covered by this Agreement.

**The following Sections 2.4 and 2.5 apply only to the Bay Area:**

2.4     The parties have agreed that the classifications covered by this Agreement shall include Janitor, Utility and Power Sweeper, Waxer, Window Cleaner, Matron and Foreperson.

2.5     It is hereby agreed by and between the Service Employees International Union United Service Workers West and those firms signatory to this Collective Bargaining Agreement with SEIU-USWW that the work entitled "pressure washing" is excluded from Union jurisdiction.

**The following Section 2.6 applies only to the Sacramento Area:**

2.6     The Sacramento Area Employers agree to the concept of a Regional Contract provided that they retain the right to negotiate on Non-Economic and Economic

terms separate from the Bay Area Maintenance Contractors. In addition, they retain the right to conduct these negotiations in the Sacramento Area.

## ARTICLE III – HIRING AND EMPLOYMENT

3.1    Union Security

A.    As a condition of continued employment, all employees employed by the Employer in the unit which is the subject of this Agreement shall become and remain members of the Union not later than thirty-one (31) days following the beginning of their employment, or the execution date of this Agreement, whichever is the later. Upon notice from the Union that any employee is not in good standing the Employer shall discharge said employee within ten (10) days after receiving such notice, unless the employee puts himself/herself in good standing with the Union before the expiration of the ten (10) day period, herein mentioned, and before such discharge.

B.    The Union and the employees shall forever hold and save the Employer harmless from any action or cause of action resulting from this Article 3 or from the Employer's reliance upon the authenticity or effectiveness of such authorization cards.

3.2    Hiring

A.    When new or additional employees are needed, the Employer shall notify the Union of the number and classifications of employees needed.

B.    Part-time employees shall have priority over new hires in filling any full-time jobs that become vacant or newly created provided such employee is qualified to perform the work. Employees not regularly scheduled shall be given consideration for full time positions provided they are qualified to perform the work.

C.    Applicants for jobs shall be referred by the Union to the Employer for employment on a nondiscriminatory basis without reference to their Union membership or lack of such membership, provided that such referral shall not be affected in any way by Union rules, regulations, by laws, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements.

D.    In hiring, the Employer shall consider giving preference to applicants previously employed in the Service Employees industry in the local labor

market area. The Employer shall be the sole judge of applicants and reserves the right to reject any applicant referred by the Union.

E.     The Employer shall give the Union equal opportunity with all other sources to refer suitable applicants for employment, provided the Employer on the date of hiring shall notify the Union of the name and address of each person hired. If the Employer utilizes a fee employment agency for the purpose of securing janitorial employees, the entire fee of said employment agency covering each employee shall be borne solely by the Employer.

F.     During the employment of any person while such person is not yet a member of the Union, the Employer shall pay said person so employed the contract wage rates and provide all other benefits the employee is entitled to. The Employer shall in all other aspects require said employee to work under and live up to all rules and regulations specified in the Agreement.

3.3    Retention of Employees at Non-Union Sites
When an Employer takes over the servicing of an establishment not being serviced by a Union Contractor and the Union can demonstrate that the changeover of contractor was a direct result of the Union organizing efforts, the Employer shall employ employees of the prior contractor at the site within the specifications of the site. The Employer will give consideration to employees not so retained being hired elsewhere in the company.

3.4    Probationary Period
All new employees shall be probationary for a period of sixty (60) work days and shall have no recourse to the grievance procedure. Employees shall not attain building site seniority until they have completed a probationary period of sixty (60) work days. This probationary period may be extended by mutual agreement between the Union and the Employer. Termination for any cause during this period shall not be subject to the Grievance Procedure.

3.5    Temporary Positions
If a laid off employee indicates his/her interest in accepting a temporary position(s) in writing to the Employer, and the position is of at least ninety (90) days in length of a documented leave, then the Employer will make reasonable efforts to call employees from such list based on existing practices.

3.6    Agency Employees
The Employer is prohibited from using employees paid by Temporary agencies to fill positions under this Agreement for longer than the first thirty (30) days on the job, except in circumstances where subcontracting is allowed as defined in this Agreement. If an Employer can show proof that it would incur a penalty from the

Temporary Agency due to hiring an employee of the Temporary Agency after thirty (30) days, it may use the Temporary Agency employee for up to ninety (90) days, or until it would no longer incur such penalty, whichever occurs first.

## ARTICLE IV– CHECK OFF

4.1   Payment of Membership Initiation and Dues
The Employer shall, at the time of hire, inform each new employee who comes under the scope of the Agreement, of the existence and terms of the Agreement and of such employee's obligations of Union membership. Further, the Employer shall, at the time of hire, give each new employee a copy of the Notice to New Employees, an authorization and membership application form. The Union agrees to provide the Employer with copies of these notices.

4.2   Monthly Remittance
The Employer will furnish the Union with an alphabetical check-off list each month, indicating thereon the amount due for each employee and worksite. The Employer shall add to this list, the name and address and home phone number if available and social security number and worksite of any new employee whose name does not appear on the check-off list, and shall submit union membership forms completed by such new employees. The Employer shall delete the names of employees no longer employed.

Authorization cards will be distributed with employee packet. New employees who refuse to sign an authorization card will be listed with the check-off list.

4.3   Upon signed authorization of the employee, the Employer agrees to deduct from the pay of each employee, union dues, initiation fees, assessments and COPE contributions. The dues shall be deducted on the first pay period of each month and shall be submitted to the Secretary-Treasurer of SEIU, United Service Workers West by the 20th of the following month. The Union shall notify the Employer of the amounts that are to be deducted from the employee for dues, initiation fees, assessments, and COPE contributions.

4.4   The regular monthly dues for regular employees shall be deducted from the first paycheck of each calendar month. By mutual agreement between the Employer and employee, monthly dues may be deducted from the first and second paychecks of each calendar month. For newly hired regular employees, one fourth of the full initiation fee and the first month's dues shall be deducted from the employee's first paycheck in the second month of employment. The balance of the initiation fee shall be deducted in three installments, to be deducted along with each month's regular dues.

4.5     The Union agrees and the employees agree to forever hold and save the Employer harmless from any action or cause of action resulting from such possible withholdings.

## **ARTICLE V – ENFORCEMENT**

5.1     <u>Union Access</u>
        The Union Representative shall be allowed to visit the Employer's building for the purpose of ascertaining whether or not this Agreement is being observed. This right shall be exercised reasonably. The Union Representative shall report to the Contractor's representative before proceeding through the building. If prior approval is needed for visitation, the Employer will set up the procedure for visitation. In the event the Union Representative wishes to go through the building, the Employer may send a representative to accompany him or her. Said Union Representative shall not interfere with normal course of work in the building. The Union will notify the Employer twenty-four (24) hours in advance of such visits. It shall be the Employer's responsibility to provide the Union with a list of accounts which require prior approval.

5.2     <u>Union Steward</u>

        A.      The Employer recognizes the Union's right to elect or appoint Union Stewards on all shifts for the purpose of monitoring this Agreement and representing employees in attempts to resolve all problems or disputes before they are referred to the grievance procedure. The Union shall notify the Employer, in writing, and with at least ten (10) days' notice, as to who the Steward and alternates may be in each location.

        B.      The employee may request the presence of a Union Steward when being suspended or terminated. The Employer must grant such request except when circumstances are such that require immediate action. In the absence of the Union Steward, the employee may request the presence of another employee. The employee shall have the freedom to select the Union Steward of his/her choice among the Stewards available at the time of the meeting (at the same work site and on the same shift).

5.5     The Union recognizes the responsibility imposed upon it as the exclusive bargaining agent of all employees covered under the terms of this Agreement, and, therefore, agrees that it will cooperate with the Employer and lend its support to assure a full day's honest effort on the part of each of its members in return for a day's pay; that it will support the Employer in its efforts to conserve materials and supplies, improve the quality of performance, help in preventing accidents, and strengthen good will between the Employer, employee, and the Union.

5.3   Union Bulletin Board
      The Employer shall allow a section of the main bulletin board located at the Employer's office or headquarters to be used by the Union for the purpose of posting notices of official business of the Union. The Employer further agrees to allow the posting of official notices at sites where there are four (4) or more employees covered by this Agreement where it will be reasonably convenient for the employees to observe them, subject to the approval of the client. The Union agrees that it will not distribute handbills, posters or other literature within the building of the client.

5.4   The Union recognizes the responsibility imposed upon it as the exclusive bargaining agent of all employees covered under the terms of this Agreement, and, therefore, agrees that it will cooperate with the Employer and lend its support to assure a full day's honest effort on the part of each of its members in return for a day's pay; that it will support the Employer in its efforts to conserve materials and supplies, improve the quality of performance, help in preventing accidents, and strengthen good will between the Employer, employee, and the Union.

**The following Section 5.5 applies only to the Bay Area:**

5.5   The Employer will make reasonable efforts to meet with Union Stewards up to thirty (30) minutes a week on company time to review items of concern. Union Stewards may also speak with employees in their own worksites within this thirty (30) minute period. It is understood that the thirty (30) minutes referred to does not have to be at one time but it may be spread throughout the week.

## ARTICLE VI – NO STRIKE/LOCKOUT

6.1   For the duration of this Agreement, the Union, its agents, and its members agree, both individually and collectively, that they shall not authorize, cause, sanction, aid, engage in or assist in any strike, boycott, slowdown of operations, or stoppage of work for any reason, including honoring an unsanctioned picket line of another union, that has not been properly sanctioned by the appropriate Central Labor Council nor shall they attempt to prevent access of any person to any job site. The Employer agrees that during the same period it will not engage in, cause, or aid in a lockout of Union employees.

6.2   In the event of any violation of this Section, the violating party, whether it be the Union or the Employer will, in good faith and without delay, publicly disavow the violation and attempt to bring about a quick termination of the violation.

6.3   <u>Honor Union Picket Lines</u>: It shall not be a violation of this Agreement and it shall not be cause of disciplinary action for any employee covered by this Agreement to refuse to go through or work behind any picket line established because of a strike authorized by the appropriate Central Labor Council or the Teamsters Joint Council #7.

6.4   The Union agrees not to utilize Union Access visits scheduled with prior notification to the Employer for the purpose of activities directed to the Employer's client or the client's tenants or employees (including activities or communication related to the Employer); however, this shall not restrict or limit the Union's right to communicate directly with members of the Union.

## ARTICLE VII – MANAGEMENT RIGHTS

7.1   It is expressly agreed that all rights which ordinarily vest in and are exercised by the Employer, except as such as clearly relinquished herein by the Employer, are reserved to and shall continue to vest in the Employer. This shall include, this enumeration being merely by way of illustration and not by way of limitation, the right to: manage the company and direct the working forces, including the right to hire and to suspend, discipline or discharge employees for just cause, the right to transfer employees from one department and/or classification to another based on the needs of the employer; layoff or relieve employees from work because of a lack of work or for other legitimate reasons based upon the needs of the employer; promote and/or transfer employees to positions and classifications not covered by this Agreement, it being understood that employees in the bargaining unit cannot be forced to take a position outside the bargaining unit; make such operating changes as are deemed necessary by the Employer for the efficient and economical operation of the company, including the right to change the normal work week, the number of hours normally worked during the work week, the length of the normal work day, the hours of work, the beginning and ending time of each shift or assignment and the number of shifts to be operated; the right of the Employer to assign duties and tasks; transfer persons from positions and/or classification not covered by this Agreement to positions and/or classifications covered by this Agreement; maintain discipline and efficiency; determine the type of machines and/or equipment to be used or furnished by the Employer, the location of work assignments, within work periods and the methods and means to conduct the business of the Employer; the right of the Employer to establish, eliminate, combine jobs and classifications; in addition to the rights specified above, the right of the Employer to evaluate all employees covered by this Agreement, and the right of the Employer to subcontract work based upon the needs of the company as permitted under this Agreement.

7.2   In the event of any conflict between a provision in this Article VII and another provision of this Agreement, or between a provision in this Article VII and a provision of the National Labor Relations Act, the other provision of this Agreement or of the National Labor Relations Act shall prevail.

## ARTICLE VIII – WAGES AND MILEAGE

8.1   Payment for Travel

A.   An employee who is required to move from location-to-location in the course of performing his work assignments shall be paid for all time spent in traveling between such locations.

B.   An employee who is requested or required by the Employer to furnish his own vehicle between locations shall be reimbursed. The mileage allowance shall be thirty five cents ($0.35) per mile.

Computation of such reimbursed mileage shall begin with the first location and shall include all distances traveled to each location thereafter.

C.   The Employer shall carry non-ownership liability insurance on the vehicles in connection with their work.

**The following subsections D and E apply only to the Bay Area:**

D.   All payments due to reimburse employees for the use of their own vehicles shall be paid at each pay period, either by separate check or together with the payroll check, the amount of such payment to be specified on the check stub.

E.   In the event the Employer fails to secure non-ownership liability insurance, he shall assume full responsibility for all legal fees, court costs, or damages incurred by the employee by the use of such vehicle during the course of his work.

**The following subsection F applies only to the Sacramento Area:**

F.   All payments due to reimburse employees for the use of their own vehicles shall be paid at least one time per month either by separate check or together with the payroll check, the amount of such payment to be specified on the check stub.

8.2 <u>Working out of Classification</u>
Any employee required to work out of his/her job classification and/or pay rate into a higher pay classification, shall be paid the higher classification rate for all hours worked, after two (2) hours, in that classification.

8.3 <u>Wage scale</u>: refer to Appendix A (page 48) for the appropriate wage rates, differentials and wage increases applying to the Bay Area. Refer to Appendix B (page 89) for the appropriate wage rates and wage increases applying to the Sacramento Area.

8.4 <u>Payment of Wages</u>
Employees shall be paid the minimum of two (2) times per month and each Employer shall establish definite paydays and the employees shall be informed of the paydays. If payday falls on a weekend the Employer will make a reasonable effort to pay employees on the preceding Friday during the business day.

8.5 <u>Disbursements for Wages</u>
All disbursements for wages shall be made by voucher check, which shall show the total number of hours worked, the rate of pay, and an itemized list of all deductions made therefrom. The Employer may also offer alternate methods of payment consistent with current practice.

8.6 <u>Union Inspection of Paychecks</u>
The Union shall have the right to inspect the paycheck of any employee covered by this Agreement after the same has been returned to the Employer by the Bank, and the Employer shall make the time card and payroll records available to the representative of the Union upon request at any time within six (6) months from the date of issuance. It is agreed that this section shall only be used in case of a dispute between the Employer and the employee over wages, hours or working conditions.

8.7 <u>Government Wage Determination</u>
When an Employer bids or provides service at a location covered by either a State, Federal, local government agency, or City wage determination and that determination is different from the salary and benefit schedule of this Agreement, then the wage and benefit determination established by the government shall apply.

8.8 <u>No Reduction of Hours</u>
No full shift employee or part time employee shall have his hours reduced as a result of the signing of this Agreement.

8.9     Correction of Paycheck Errors

**The following subsection A applies only to the Bay Area:**

A.      Any employee whose pay check is short due to the Employer's error shall be reimbursed as soon as possible. The Employer will make a reasonable effort to give out paychecks the day before a holiday if the payday falls on that holiday.

**The following subsection B applies only to the Sacramento Area:**

B.      If there is a payroll error reported to the Company, the Employer agrees to correct such error as soon as reasonably practical. The Employer will make a reasonable effort to give out paychecks the day before a holiday if the payday falls on that holiday.

8.10    Construction Cleanup

**The following subsection A applies only to the Bay Area:**

A.      Any clean-up work on any new construction shall be covered under this Agreement after the building has been turned over to the new owner.

**The following subsection B applies only to the Sacramento Area:**

B.      Any clean-up work on any new construction contracted by the building owner or manager shall be covered under this Agreement.

## **ARTICLE IX – WORKING CONDITIONS AND JOB EXPENSE**

9.1     Non Solicitation
The Employer agrees that no member of the Union shall be permitted or requested to solicit customers or work which is being performed by a fair competitor or by any Union member or members.

9.2     Uniforms and Safety Equipment
If special uniforms, safety equipment, overalls, or coveralls are required, it is agreed that such must be furnished by the Employer without cost to the employee and the cost of upkeep and maintenance of them must be paid for by the Employer.

The employees agree to take good care of such uniforms, safety equipment, overalls, or coveralls, and not to wear same except in the course of their working

hours, meal time excepted. Employees who fail to wear safety equipment may be disciplined.

The Employer will supply those materials necessary for the employees to perform their work.

The Employer shall supply and store a first aid kit at each job site.

9.3     Work Rules

**The following subsection A applies only to the Bay Area:**

A.      Rules and regulations for the conduct of business as the Employer shall consider necessary and proper and which do not conflict with the terms and conditions of this Agreement shall be observed by all employees. All work rules for which an employee may be disciplined or discharged shall be either posted or supplied to employees so that they may become familiar with such regulations. A copy of these rules and regulations shall be submitted to the Union at least ten (10) days prior to the effective date of said rules. Should the Union consider any rule unreasonable, the parties shall meet and attempt to resolve the differences. If no resolution can be made, then it shall be treated through the grievance procedure.

**The following subsection B applies only to the Sacramento Area:**

B       The Employer's work rules are incorporated into this section. Work rules shall be distributed to each employee with a copy to the Union.

9.4     Non-Bargaining Unit employees
Non-bargaining unit employees will not perform work of the bargaining unit except for the purposes of training or in emergency situations. Supervisors may perform work as provided in the foregoing sentence or when assisting bargaining unit employees which does not result in a reduction of hours.

9.5     No Sexual Harassment
The Employer, Union and employees agree to cooperate in maintaining an environment free from sexual harassment in accordance with the Employer's policy concerning sexual harassment. See Appendix G for policies and rules regarding Sexual Harassment and Misconduct.

**The following Sections 9.6 and 9.7 apply only to the Bay Area:**

9.6    No Window Cleaner shall be allowed to work on an extension ladder more than four (4) hours in any one day. Only in case of extreme emergency, where an employee can finish a job, one (1) more hour will be permitted.

There will be two (2) employees required on all jobs where a ladder of eighteen (18) feet or longer is used, one (1) employee will hold and protect the base of the ladder.

All other safety conditions, not specified herein, but which form a part of the rules and regulations of the California Industrial Accident Commission for Window Cleaners shall be observed by the Employer.

9.7    <u>Part-Time Employees</u>
The Employer may employ part time employees. Two or more part time employees shall not work on the same job and thus reduce work opportunities for one employee. (Example: On an eight (8) hour job, only one (1) employee can work... not two (2) four (4) hour employees. On a six (6) hour job only one (1) employee can work... not two (2) three (3) hour employees).

**The following Section 9.8 applies only to the Sacramento Area:**

9.8    The Employer agrees to continue cooperating with the Union to seek means to provide free parking for employees covered under this Agreement where this is an issue.

## ARTICLE X – HOLIDAYS

See Appendix A (page 48) for Holiday benefits and provisions applying to the Bay Area. See Appendix B (page 89) for Holiday benefits and provisions applying to the Sacramento Area.

## ARTICLE XI – VACATION

See Appendix A (page 48) for Vacation benefits and provisions applying to the Bay Area. See Appendix B (page 89) for Vacation benefits and provisions applying to the Sacramento Area.

## ARTICLE XII – LEAVES OF ABSENCE

12.1    An employee returning from an authorized leave of absence shall be placed in his former job.

12.2   Maternity Leave

Maternity leave up to four (4) months shall be granted for any worker with six (6) or more months of continuous work. The worker shall report back to work within sixty (60) days after the date of delivery. Extension of the leave shall be granted for medical reasons with verification of the employee's doctor. Upon return to work, the employee will present a statement verifying her ability to return to her normal work. Any replacement for an employee on maternity leave shall perform the work on a temporary basis. This section shall be in compliance with current State and Federal law.

12.3   Personal Leave of Absence

Any employee with one (1) or more years of continuous service shall be eligible to request an unpaid leave of absence up to a maximum of thirty (30) days in one (1) calendar year for personal reasons without a break in continuity of seniority. Employees may also request an extended leave. Their request for leave of absence must be in writing and the Employer's acceptance must also be in writing. The Employer shall make the ultimate determination as to the total number of employees who will be granted a leave of absence at any one time. When an employee returns to work after completing an authorized leave of absence, he shall be reinstated to his same classification and work sites where he was employed before his absence.

Failure to return from an authorized leave on the date specified, including extensions granted by the Employer, shall be considered a voluntary quit.

The Employer shall make reasonable efforts to approve Personal Leaves of Absence requested with sufficient advance notice.

12.4   Unpaid Union Leave

Leave of absence with accumulative seniority and no pay shall be granted in the event an employee is elected or requested by the Union to take time off from work for official Union business. The leave shall be for a maximum of thirty (30) days but the Union may request an extension. No more than one person per site may be requested at any one time and the Employer reserves the right to refuse a request for day persons and forepersons and for other business necessities. The Union agrees to notify the Employer in a reasonable advanced notice as to the time needed and nature of the time off requested.

**Sections 12.5 through 12.7 apply only to the Sacramento Area.**

12.5   Absence of less than sixty (60) days because of illness, accident, or injury shall be considered as time worked for purposes of seniority, including vacation seniority.

12.6     Medical Leave
         Employees with at least six (6) months of service shall be granted leaves of
         absence for bona fide illness, accident, or injury, up to six (6) months, and shall
         be restored to their regular job upon presentation of a doctor's certificate that they
         are able to return to work. If such leaves of absence exceed sixty (60) days, the
         employee's former seniority shall be restored upon return to work by the employer,
         but no seniority shall have accrued during the period of absence.

12.7     Notification of Personal Leave
         For any non-emergency, the employee will give at least two weeks notification for
         such leave to his/her immediate supervisor. In the event of an emergency,
         delaying the expected return of an employee from leave, an employee shall give
         2 days' notice prior to the last day of the approved leave, verbally and to be
         confirmed, if requested, in writing an extension of the leave beyond the 30 days.
         In extreme emergencies the employer may grant extensions of leaves with one
         day notice.

## ARTICLE XIII – HEALTH AND WELFARE

13.1     Health and Welfare
         This Section covers employees of the Employer who are covered by this
         Agreement. It expresses the understanding of the Employer and the Union
         concerning Employer contributions to the Health and Welfare Plan on behalf of
         such employees and their dependents, as applicable.

13.2     Trust Fund
         All Employer contributions referred to in this Article shall be paid into the General
         Employees Trust Fund, at the address designated by the Trustees. It is understood
         that all questions concerning eligibility of employees for coverage, including the
         commencement and termination of coverage, shall be determined by the Trustees
         of said Trust Fund.

         The Employer agrees to be bound by all the terms and provisions of the Agreement
         and Declaration of Trust (as amended) of the General Employees Trust Fund, and
         any plan documents or summary plan description thereof, as each of these may
         from time to time be amended by the Board of Trustees, and hereby acknowledges
         prior receipt of a copy thereof.

         The Employer shall comply with all the provisions of the General Employees Trust
         Fund and shall maintain, furnish and make available for audit such data and
         records as the Trustees may require, as provided in the Agreement and Declaration
         of Trust of the General Employees Trust Fund.

An Employer which requests that an audit take place out of the jurisdictional area of this Agreement shall reimburse the Trust Fund for all additional costs incurred by the Fund Auditors to include travel and out of pocket expenses.

13.3    Health Plan, Eligibility and Contributions
For the appropriate Health and Welfare Plans, Employer contributions and eligibility rules, see Appendix A (page 48) for the Bay Area and Appendix B (page 89) for the Sacramento Area.

To the extent that this Agreement changes Health and Welfare benefits, the effective date of any such change shall be subject to the rules of the General Employees Trust Fund.

For employees covered under Health and Welfare Plans with Kaiser option, until an employee has affirmatively enrolled in the Kaiser benefit plan, he/she shall be covered under the default medical plan (Indemnity Plan) as specified by the Trust Fund rules.

13.4    Family and Medical Leave Act
The Employer agrees to comply with its obligations to make Health and Welfare payments pursuant to the Federal or California Medical Family Leave Act (FMLA).

13.5    Responsibility of the Employer
If any employee works the required number of hours in the month but is not listed by the Employer, the Employer shall be personally liable and fully responsible for all claims that may be incurred by such employee in the same amounts as though the employee had in fact been listed. This personal liability, however, does not in any way relieve the Employer of his liability to make payments under this Agreement.

13.6    IRS Code 125
When possible the Employer agrees to implement IRS Code 125 upon effectuating this Agreement. This allows employees to set aside a portion of their compensation before taxes to make contributions toward the cost of health insurance.

13.7    Health Care Legislation
In the event that the federal Patient Protection and Affordable Care Act is invalidated, repealed, or otherwise modified as a result of court decision or congressional action, or in the event that a similar law is subsequently enacted by state or federal legislation, the following shall apply:

(a)     The parties shall meet and discuss the effects upon the bargaining unit, and

(b)     Upon the Employer's request, the economic provisions of this Agreement, including wages and fringe benefits, shall be re-opened for all purposes.  In the event that the re-opening occurs, and in the further event the parties are unable to reach agreement within a reasonable period of time, not to exceed six (6) months, of the Employer's request for re-opening, and impasse shall be deemed to have occurred and the Employer shall be privileged to implement its last, best, and final offer on economics.

## ARTICLE XIV – PENSION

See Appendix A (page 48) for Pension benefits and provisions applying to the Bay Area.

## ARTICLE XV – TRAINING AND INVESTIGATION FUNDS

See Appendix A (page 48) for Employer contributions in the Bay Area. See Appendix B (page 89) for Employer contributions in the Sacramento Area.

## ARTICLE XVI – DISCIPLINE AND DISCHARGE

16.1    No employee shall be disciplined without just cause. The reason for discharge or other disciplinary action must be given to the employee and the Union Representative or the Steward.

The employee may request the presence of a Union Steward when being suspended or terminated. The Employer must grant such request except when circumstances are such that require immediate action. In the absence of the Union Steward, the employee may request the presence of another employee.

16.2    Discipline will consist of up to four (4) steps:

1.     Documented verbal warning
2.     First written warning
3.     Suspension or Final written warning
4.     Termination

Proceeding through the foregoing discipline steps, subject to the grievance procedure, shall constitute just cause.

The type of discipline imposed in any instance depends on the nature and seriousness of the offense involved.

All discipline notices shall be retained in the employee's personnel file for no longer than eighteen (18) months, and thereafter shall be removed from the file and shall no longer count for the purpose of progressive discipline.

Disciplinary steps taken need not be for the same infraction.

16.3   Copies to Union. A copy of all written warnings and reprimands shall be provided to the employee. Copies in regards to steps 2, 3 and 4 above shall be provided to the Union within five (5) working days.

16.4   Union Representation. In case of discharge, an employee may request to have a Union Representative present before the action becomes final except when circumstances require immediate action.

16.5   Appeal of Discipline. Should the employee desire to contest discipline or termination, the matter shall be processed under the grievance procedure.

## ARTICLE XVII – GRIEVANCE AND ARBITRATION PROCEDURE

17.1   Procedure
Any difference between the Employer and the Union involving the meaning or application of the provisions of this Agreement shall constitute a grievance and shall be taken up in the manner set forth in this section. A grievance need not be considered unless the aggrieved party serves upon the other party a written statement setting forth the facts constituting the alleged grievance. For a discharge case grievance, such notice must be served within fifteen (15) days from the date of discharge. Such written statement concerning any other type of grievance must be served within fifteen (15) days of its occurrence or the discovery thereof by the aggrieved party. Probationary employees do not have recourse to the grievance procedure to grieve disciplinary matters. It is the intent of the parties that reasonable diligence be used in the discovery and reporting of alleged grievances so that they may be adjusted or dismissed without undue delay.

17.2   Steps 1 and 2
The Employer and the Union agree to use their best endeavors by informal conferences between their respective representatives to settle any grievance within ten (10) days after service of such written statement. Upon receipt of a timely written request there shall be an Adjustment Board consisting of two (2) representatives designated by the Union and two (2) representatives from the Employer. Said board shall meet within thirty (30) days from the filing of the written grievance, or the grievance is automatically waived, unless the time limit is mutually extended by both parties in writing.

Either party may request the following procedure for any Adjustment Board meeting. The chairperson of the Adjustment Board shall be a representative designated by the Federal Mediation and Conciliation Service. The chairperson shall be a non-voting member of the Adjustment Board but shall meet with the panel to assist and offer advisory opinion(s) in an effort to help the panel reach a decision. The Board shall render a decision upon adjournment of the hearing, or by mutual agreement extend such hearing for a period not to exceed ten (10) days.

The mediator shall be chosen from the following list of mediators from the Federal Mediation and Conciliation Service:

      Erin Spalding
      Lydia Baca
      Gregory Lim
      Joel Schaffer
      Stephen Kessler

Whichever mediator from the above list who is available on the earliest date available to the parties shall be selected to attend the Board of Adjustment. The parties shall agree upon on a timeline for the mediated Board of Adjustment to be held at the time that either party requests the above procedure. The parties may also mutually agree to modify the list of mediators.

The Employer reserves the right to request a mediator not named above, and the parties shall utilize the services of such mediator by mutual agreement.

It is expressly understood that if operating conditions do not allow non-adversary participants, this rule may be modified by mutual agreement as well as time limits.

The Adjustment Board shall meet as required and shall consider fully all aspects of the issues presented. Any decision by the majority of the four (4) members of the Board of Adjustment shall be final and binding upon all parties subject to the limitations of jurisdiction and authority contained in this Contract.

17.3   <u>Arbitration</u>
If during the period that the Adjustment Board can meet, no majority decision is reached either party may within fifteen (15) days following such period request in writing that the matter be referred to arbitration. The referral to arbitration must be done within thirty (30) days after the Board of Adjustment or the right to arbitrate is waived. If the parties cannot agree upon a person to act as an impartial arbitrator within five (5) days after service of such demand, then an impartial arbitrator shall be named by agreement from a list of five (5) arbitrators supplied

by the State Conciliation Service. The decision of the arbitrator shall be final; and binding on both parties hereto. The arbitrator shall have no power to amend or modify the terms of this Agreement. In the event of willful failure by either party to appear before the Arbitrator he is hereby authorized to render his decision upon the evidence produced by the party appearing. Each party shall bear all costs of presenting its case to the Arbitrator. The Arbitrator's fee and all incidental expense of the arbitration shall be borne by the parties hereto.

The Arbitrator shall not award to an employee back pay for a period beginning more than thirty (30) days prior to the date on which the employee made a written claim or filed a grievance; the Employer must make available a means by which employees can make written claims of pay disputes. This provision shall not apply to scheduled wage increases or benefit increases under this Agreement.

17.4    Expedited Arbitration

A.    Differences between the Employer and the Union shall be referred to the (new) Expedited Arbitration provisions upon mutual agreement of both the Union and the Employer.

B.    The Employer and the Union shall each designate two (2) representatives who shall meet and work out all the details of an Expedited Arbitration system, such as arbitrator selections, calendaring logistics, billing/notification arrangements, and all other logistics.

## ARTICLE XVIII – EXPEDITED ARBITRATION

18.1    In order to provide for the timely and informal resolution of disputes, grievances filed pursuant to Article XVII of this Agreement may be filed to this Expedited Arbitration Procedure. There shall be a panel of not more than three permanent arbitrators on a rotating basis. If the parties cannot agree on the number of panelists, then the Panel shall consist of three (3) arbitrators. The initial panel shall be selected as provided in 18.2. Either party may remove a member of the panel by serving written notice of its intention to do so on the other party within thirty (30) calendar days preceding April 1, 2001, or any subsequent April 1st during the term of this Agreement, Neither party may remove more than two (2) members of the panel during the term of this Agreement. In the event that a member of the panel is removed by one of the Parties, or a position on the panel becomes vacant due to death, disability or resignation, the parties shall meet within ten (10) days of such removal, or the creation of such vacancy for the purpose of selecting a replacement as provided in Section 18.2.

18.2    The procedure for selecting the members of the initial panel and for filling vacancies shall be as follows:

    1)    The parties shall meet promptly to select mutually acceptable arbitrators.

    2)    If they are unable to agree within thirty (30) days of the date of ratification of this Agreement, or the opening on the panel, they shall then exchange lists of five (5) arbitrators each within the following seven (7) days. An arbitrator whose name appears on both lists shall be considered mutually acceptable. If the initial exchange does not result in the selection, the parties shall exchange additional lists within succeeding seven (7) day period until the required number of arbitrators has been selected.

18.3    The Arbitrator shall be the sole arbitrator to hear and determine the matter. Such hearing shall be held within ten (10) days after the arbitrator receives notification of the dispute. The arbitrator shall consider and decide the grievance and shall render a decision immediately after hearing and consideration of all evidence presented. The arbitrator may request and upon mutual agreement of both parties to the dispute receive additional time to deliberate on the matters presented but in no case shall the decision be delayed beyond the forty-eight (48) hours following the close of the hearing.

18.4    The Arbitrator shall orally advise the parties of his decision with a brief explanation of the basis thereof. He shall make a brief, signed note upon the written grievance stating his disposition of the matter. Such decision shall be final and binding on all parties to the dispute and the aggrieved employee, but shall not be considered as a precedent in any future proceeding.

18.5    Any arbitration held under the provisions of this Step Three shall be conducted as informally as possible, consistent with a full and fair hearing of the issues. The parties to the proceeding shall be permitted to participate only through full-time operating officials who are not lawyers. The Arbitrator shall establish appropriate informal arbitration procedures and have the authority to exclude any representative of either party who does not meet the qualifications set forth in this Section.

18.6    Any expense incurred for the production of witnesses, or other evidence, shall be borne by the party seeking to produce such evidence or testimony. For the purposes of this Section, time spent as a witness shall not be construed as working time under the provisions of this Agreement.

18.7   The Arbitrator shall have no authority to modify, add to, or subtract from any of the terms of this Agreement. Any expenses incidental to the conduct of the hearing, and the fee of the Arbitrator, shall be borne equally by the parties.

18.8   No grievance concerning an employee's discharge shall be considered unless the aggrieved employee files a complaint with the Union, in writing, not more than ten (10) days after the date of his/her discharge or other disciplinary action.

18.9   In the event either party believes the matters raised by a grievance are of such importance as to override the desirability of the expedited and informal arbitration procedures contained in this Article, such party shall advise the other in writing of its desire to proceed to arbitration under the provisions of Article XX of this Agreement, wherein the parties are not limited to representation by any person of their choice.

18.10  The Arbitrator shall not award to an employee back pay for a period beginning more than thirty (30) days prior to the date on which the employee made a written claim or filed a grievance; the Employer must make available a means by which employees can make written claims of pay disputes. This provision shall not apply to scheduled wage increases or benefit increases under this Agreement.

## ARTICLE XIX – CHECKOFF FOR VOLUNTARY POLITICAL CONTRIBUTIONS

If an employee voluntarily signs a check-off form, the Employer agrees to deduct from the employees paycheck the amount authorized by the check-off authorization in increments of $1.00 and this amount shall be transmitted to the SEIU Committee on COPE Funds, Property Services Civic Engagement (PSCE) Fund, or any other authorized Political Action Fund. It is expressly understood that this voluntary contribution is not a condition of employment.

The Union agrees and the employees agree to forever hold and save the Employer harmless from any action or cause of action resulting from such possible withholdings.

## ARTICLE XX - JOINT LABOR MANAGEMENT COMMITTEE

The Employer and the Union agree that mutual interests are advanced in a climate of respect, mutuality and open communication. Therefore, the parties hereto agree to establish a Joint Labor-Management Committee. The Committee shall meet not more than every three months for a one (1) hour time period, which may be extended by mutual agreement, to discuss mutual concerns; provided that this shall not either expressly or by implication result in any obligation to reopen any

of the terms of Agreement or otherwise to bargain with respect to any particular subject. The committee meeting shall be by individual Employer.

## ARTICLE XXI – INDIVIDUAL LEGAL RIGHTS

21.1   The Union is obligated to represent all employees without discrimination based upon national or ethnic origin. The Union is therefore obligated to protect employees against violations of their legal rights occurring in the workplace, including unreasonable search and seizure.

21.2   The Employer shall notify the Union by phone or fax and give oral notice to the Union steward, as quickly as possible, if any Department of Homeland Security, or successor agency, agent appears on or near the premise, or otherwise notifies the Employer of an audit of employee records, so as to enable a Union representative or attorney to take steps to protect the rights of employees.

In the extent legally permissible and unless prohibited by an agent of the federal government, the Employer agrees to cooperate with the Union in these circumstances, including: providing all relevant information to the Union (including the names of all affected employees), cooperation in requesting extensions by the government, and ensuring access by representatives of the Union to affected employees during meetings with the Employer.

Notwithstanding the above, this Section shall not require the Employer to take any action prohibited by law or specifically prohibited by a government agency.

21.3   The Employer shall reinstate any employee who is absent from work due to court or agency proceedings relating to immigration matters and who returns to work within six (6) months of commencement of the absence. To be eligible for such absence the employee must initiate the court or agency proceedings within the first thirty (30) working days of the absence. The Employer shall not withhold a reasonable extension of the period of absence for an additional six (6) months if the request is made within the initial six (6) month period. The Employer may grant an additional extension to the absence at its discretion if the employee request is made in writing with proof that additional time is required. The Employer may require documentation of appearance at such proceedings.

In addition the Employer shall reinstate to the layoff list, with original seniority, any employee who was terminated for work eligibility issues and who returns with verifiable documentation within six (6) months of the date of termination.

21.4   Except as may be prohibited by law, employees shall not be discharged, disciplined or suffer loss of seniority or any other benefit or be otherwise adversely affected

by a lawful change of name, Social Security number, or employment authorization document. Such legal change of name, Social Security number, or employment authorization document shall not be considered a change of employment nor an interruption of continuous employment.

21.5    Unless otherwise established by law, A "No-Match" letter from the Social Security Administration shall not itself constitute a basis for taking adverse action against an employee or for requiring an employee to reverify work authorization. The Employer shall promptly forward a copy of any "No-Match" letter that it receives to the Union and to affected employee(s).

21.6    In the event an employee is displaced due to disqualification from employment due to the application by the Employer of e-Verify, or similar employment eligibility verification program, including background check, the incoming replacement employee will be paid at wage rate of the employee who is being replaced.  Benefit levels will be established by replacement employee's seniority date and site eligibility requirements.

The Employer agrees to provide copies of "Tentative Non-Confirmation" (TNC) notices to the individual for whom the notice is issued.

21.7    Privacy. The Employer shall not violate the privacy rights of employees, without their express consent, by revealing to third parties, including the DHS, any employee's name, address or other similar information, unless required by law.  The foregoing does not apply to the furnishing of information necessary to provide benefits required under this Agreement such as Health and Welfare or Pension benefits.

21.8    Notwithstanding any other provision herein, an employee may not be discharged or otherwise disciplined because the employee has been granted work authorization through the Federal Deferred Action for Childhood Arrivals (DACA) or the Federal Action for Parents of Americans (DAPA) program since being hired, if such authorization is accompanied by an unexpired work authorization document.

## ARTICLE XXII - HEALTH AND SAFETY

The Employer and the employee shall abide by applicable State and Federal Laws regarding Health and Safety. The Union agrees to cooperate with the Employer in this effort. No employees shall be compelled to work on unsafe equipment or under dangerous conditions.

## ARTICLE XXIII - ALCOHOL AND DRUG TESTING

The Employer reserves the right to establish any lawful policy concerning employee use, possession or transfer of alcohol, controlled substances or drugs as a condition of employment. Said policies include, but are not limited to, reasonable suspicion testing and post-accidental testing.

In the event there are reasonable grounds to suspect an employee is using, possessing or distributing alcohol, controlled substances or non-prescription drugs on the job, the Employer reserves the right to impose any and all discipline, including termination for refusal to submit to lawful testing.

Employees who are terminated as a result of the policy may request reinstatement after completion of a certified drug and/or alcohol rehabilitation program, which must be paid for by the employee.

## ARTICLE XXIV - SAVINGS CLAUSE

If any provision of this contract or the application of such provision to any person or circumstances be ruled as an "unfair labor practice", or in any other way contrary to law, by any Federal or State court or duly authorized agency, the remainder of this contract or the application of such provision to other persons or circumstances shall not be affected thereby, and the parties will negotiate to replace such provision.

## ARTICLE XXV - MOST FAVORED NATIONS

25.1    If, during the term of this Agreement, the Union enters into a Collective Bargaining Agreement in the area defined in AGREEMENT with another Employer or group of Employers covering employees in the classifications covered hereunder, which provides for a compensation package of wage rates, economic fringe benefits, union recognition, or any other provisions which are more favorable to any Employer than the corresponding or similar provisions of this Agreement, then it is agreed that those more favorable conditions will become effective under the terms and conditions of this Agreement on the same date that they become effective under the other Collective Bargaining Agreement.

25.2    Agreements providing more favorable conditions such as "phase-in" schedules at specified worksites or groups of worksites shall not affect other worksites covered under this Agreement; however, any Employer signatory to this Agreement is entitled to bid on or perform work at such worksites under the agreements providing such more favorable conditions.

25.3   The parties agree that upon execution of this Agreement, and every six (6) months thereafter, the Union will supply a Committee, made up of two (2) Employers, with the status of all Employers signatory to "Me-Too" agreements to the Northern California Maintenance Contractors Agreement, or to any modified versions of this Agreement.  This shall include information related to "Me-Too" status, phase-in status, separate negotiation status, and/or Site Agreements.  The Employers agree to notify the Union as quickly as possible upon the execution of this Agreement of the members of the Employer Committee and of any changes thereto. The Union agrees to meet with the Employers Committee to provide this information.

## ARTICLE XVI – HOURS – BAY AREA
**Article XVI applies only to the Bay Area.**

26.1   <u>Days Work</u>
Eight (8) hours within nine (9) consecutive hours shall constitute a day's work. All employees who work in excess of a day's work shall be paid at the rate of time and one half (1 1/2) the employee's regular rate of pay for such excess time. In cases when there is a change of shift or similar major change affecting an entire group of employees at a worksite (for example, change to day shift or change to "green cleaning" methods), the Employer shall notify the Union.

26.2   <u>Week's Work</u>
A week's work shall consist of five (5) days followed by two (2) consecutive days off; the sixth (6th) day shall be paid at time and one half (1 1/2); the seventh (7th) day shall be paid at double time. All employees required to work on their day off shall be paid at the rate of one and one half (1 1/2) times the employee's regular rate of pay.

Part-time: The work week for part-time employees shall be up to five (5) consecutive days then have two (2) consecutive days off. After a part-time employee works five (5) days or eight (8) hours in a day, additional time worked shall be at time and one-half (1 1/2). If a part-time employee works seven (7) consecutive days, the seventh day shall be paid at double time (2x) for the actual number of hours worked.

Five (5) Day Cleaning sites: Any employee who is absent without pay during his or her regular straight-time work week and who voluntarily works on what otherwise would have been his or her sixth (6th) or seventh (7th) day shall, for that week only, be paid overtime at a rate of time and one-half (1 ½ ) for all straight-time hours worked or paid for in excess of eight (8) hours in any one (1) work day or forty (40) hours in that work week.

Seven (7) Twenty-Four (24) Hour A Day Cleaning Sites: Any employee who is absent without pay during his or her regular straight-time work week and who is required or voluntarily works on what otherwise would have been his or her sixth (6th) or seventh (7th) day shall, for that week only, be paid overtime at a rate of time and one-half (1-½) for all straight-time hours worked or paid for in excess of eight (8) hours in any one (1) work day or forty (40) hours in that work week.

26.3   Overtime

Overtime connected with the regular shift and duties of an employee and which is normally performed by on-site employees, shall be first offered to the employee who regularly performs that work, and secondly, to other employees working at the site and shall be spread by rotation as equally as is reasonable among employees at a given site.

26.4   Rest Periods

Every employee shall be authorized by the Employer to take rest periods which insofar as practical shall be in the middle of each work period. Rest periods shall be computed on the basis of ten (10) minutes within each four (4) hours working time or major fractions thereof for San Mateo and Santa Clara, fifteen (15) minutes for East Bay.

26.5   Minimum Time Off Between Shifts

Except in bona fide emergencies, the minimum time off between shifts shall be ten (10) hours and the employees called to work sooner than ten (10) hours from the end of their last work period shall be paid time and one-half (1 1/2) for all work performed up to the time of said ten (10) hour period shall have elapsed.

26.6   Minimum Hours

Should an employee be called for work and no work is available, he shall be paid for two (2) hours work. Should an employee be called for work and start work, he shall be paid for at least four (4) hours work. Should he be worked over four (4) hours, he shall be guaranteed at least eight (8) hours work. If an employee voluntarily leaves his place of employment, he shall be paid for actual hours worked.

26.7   Window Cleaners

In case of Window Cleaners unable to work five (5) consecutive days because of rain, they may if they so request, be allowed to work on the scheduled days off for that week at straight time to the extent required to make up time lost. In no event, however, shall the Employer lay off a Window Cleaner during the week in order to avoid overtime pay on regularly scheduled days off.

26.8 Replacement of Absent Employees
When an employee is absent from a worksite due to vacation, leave of absence or similar reasons, the Employer may assign another employee to the worksite temporarily to work the shift of the absent employee.

## ARTICLE XVII – HOURS – SACRAMENTO AREA
**Article XVII applies only to the Sacramento Area.**

27.1 Day's Work: Eight (8) hours within not more than a period of nine (9) hours shall constitute a day's work. Time and a half (1-1/2) shall be paid to all employees working in excess of eight (8) hour days. All work performed over eight (8) hours per day, forty (40) hours per week, on the sixth consecutive day in any work week, shall be paid at the rate of time and one-half (1-1/2) the regular rate of pay. Relief persons and part-time employees may work a split work week. Hours other than herein stated may be established by mutual agreement between the parties.

27.2 Reporting Pay: Should an employee be called for work and no work is available, he/she shall be paid for two (2) hours of work. If an employee, in this situation, works over two (2) hours, he/she shall be paid for four (4) hours of work.

27.3 Accumulation for Benefits: All paid leaves, including sick leave, vacation, holidays, and any other paid leaves, will be considered as time worked for purposes of contributions for Health and Welfare and contributions to the pension program.

27.4 Rest Periods: Every employee shall be authorized by the Employer to take rest periods which insofar as practical shall be in the middle of each work period. Rest periods shall be computed on the basis of ten (10) minutes within each four (4) hours working time or major fractions thereof.

27.5 In cases when there is a major change affecting an entire group of employees at a worksite, the Employer shall notify the Union in advance, if it has knowledge of the change in advance.

27.6 Full-Time Work Schedules. The Employers and the Union hereby agree that the Joint Labor-Management Committee shall meet to discuss and identify sites within the Sacramento Area where full-time work schedules can be established and maintained, as well as Union participation in protecting established union work. Any decisions made by the Joint Labor-Management Committee shall be by mutual consent of the parties, and the failure to reach agreement on a particular topic shall not in itself be subject to the grievance procedure. Criteria that the Committee uses for sites where full-time work opportunities exist would include building/site size, percentage of space cleaned by union contractors within specific geographic areas, and sites with current full-time work schedules.

**ARTICLE XXVIII – MAINTENANCE OF WORKING CONDITIONS – BAY AREA**
**Article XXVIII applies only to the Bay Area.**

28.1   Registration of all Job Locations

A.   The Employer shall furnish the Union with a written list of all jobs of the Employer, including the exact address and location of each job. Lists will be delivered to the Union in January of each contract year.

As new persons are hired, the Employer will submit to the Union the following information:

1.   Employee name, address, and last four (4) digits of Social Security Number.
2.   Address of employment
3.   Wage rate
4.   Date of hire
5.   Contract Appendix/Section

Information provided by the Employer on newly hired employees pursuant to Section 28.1.A, item 5 (Contract Appendix/Section), shall distinguish between the following six (6) types of worksites as defined in Appendix A (page 48):

1.   Master Contract Sites (Areas 1A/1B)
2.   Small Master Contract Sites of 150,000 square feet or greater and less than 200,000 square feet (Areas 1C/1D)
3.   Small Master Contract Sites below 150,000 sq. feet (Areas 1E/1F)
4.   New and Former Non-Union Sites (Area 1L)
5.   New and Former Non-Union Small Sites (Area 1M)
6.   Former Zone 5 Tier 1 sites (Area 1N)

The Union agrees to maintain all of the information submitted pursuant to this Section as confidential and only for internal use by the Union.

B.   Upon receipt of such information the Union will treat the information on a confidential basis and will release it to another Employer in accordance with the provisions of this Agreement only when it has been determined that bona fide bids are being requested and that said Employer requesting the information is also signatory to a SEIU-USWW Agreement covering this jurisdiction.

28.2   Job Bidding Procedures
The following rules shall be observed when an Employer is bidding on or taking over the servicing of an establishment where Union members are employed:

1.      When requesting staffing information from the Union, the requesting Employer must provide the clients RFQ or like documentation to the Union that the client is out to bid.

2.      The Employer shall request and based upon that request, the Union shall provide in writing information regarding the number and names of all permanent employees, number of hours worked, seniority dates, wage rates, Health and Welfare Plan #, Pension rate and the amount of accrued vacation and sick leave of employees.

The Employer shall provide staffing information to the Union upon its request for jobs out to bid within four (4) working days of the request.

The Union agrees to supply such requested information within eight (8) working days of said request to any Union contractor requesting such information or the Employer is not obligated to any staffing levels. Only when a building is going out to bid shall the Employer be obligated to supply this detailed information.

The appropriate staffing shall be considered as the number of employees at the job sixty (60) days prior to such building being put out to bid. Employees working at the job site for less than sixty (60) days shall be considered probationary.

If a contract other than this document is in force at a location going out to bid, the Union will supply a copy of that contract to all bidding parties.

In addition to the above, upon request by the Union staffing information will be provided up to two (2) times per year for major worksites. This information shall be provided either in electronic format or by mail. Following the execution of this Agreement, the parties shall agree upon a list of worksites to which this provision is applicable.

In the event of a dispute regarding the wage rate of an employee who is retained at the work site, if the employee can produce three (3) months of payroll stubs showing the claimed wage rate (not taking into account contractual increases), the new Employer shall honor the claimed wage rate for such employee. The dispute must be raised within thirty (30) days of the date when the new Employer begins servicing the site.

3.   The incoming Employer shall recognize the work time and overall employment service of all permanent employees retained at the job location, building or establishment, including those who might be on vacation or off work because of illness, injury, Workers' Compensation or authorized leave of absence and shall be considered as continuous regardless of change of employers, for all purposes including seniority, sick leave and vacation benefits, so that no employee will lose any such benefits because of the change of Employers.

In the event of a dispute regarding the seniority date of an employee retained in a work site during a change of contractors, the new Employer and the Union shall agree to review and determine appropriate means to verify the seniority date of the employee. The dispute must be raised within thirty (30) days of the date when the new Employer begins servicing the site.

Discipline records shall in no case be transferred from the previous Employer to the new Employer.

In the event of a change of contractors during a calendar month, the Employers will prorate their contributions based on calendar days in the month provided that the employee meets requirements for eligibility between the two Employers. In this circumstance each Employer will report the hours of affected employee(s) to the General Employees Trust Fund (GETF), and the GETF will confirm eligibility for such employee(s) based upon the total hours reported by the two Employers.

In the event of a change of contractors immediate before or after a paid Holiday, the Employer which is providing service at the beginning of the shift in which the Holiday falls shall be responsible for the payment of the Holiday to eligible employees taking into account the hours worked with the two Employers.

The new Employer shall assume responsibility for the Sick Leave accumulated by the employees with the previous Employer.

Employees transferred to a site or building where the incumbent contractor lost the service contract shall in all instance be informed that such a transfer shall be voluntary and that they can refuse such a transfer; this notification shall be in writing and the employee shall at all times be informed that they are on probationary status under the incoming contractor for a period of sixty (60) work days.

If the Employer fails to notify the employee that they are on probation because of the transfer, the employee is to be returned to previous or other site without loss of wages or benefits.

4. The following provisions shall apply specifically to the process of bidding and Employers taking over the servicing of accounts from the previous Employers. The Employer shall not cut the work schedules of any employee which would reduce the number of working hours per day or per week. Only when it is verified in writing by the client that service specifications of a job are altered by the client or that the client requires cost changes that would result in an alteration of service specifications, the Employer may increase or decrease the work force pursuant to the terms of this Agreement.

5. Employees retained by the Employer shall receive the wages and fringe benefits as established in this Agreement based on the employee's seniority at that work location.

6. When necessary based on business need, the Employer shall have the right to determine and change the assignment of employees within a building or site and where, what and how the work is to be performed.

7. When necessary for the operation of its business, the Employer may alter the starting time of work and may change the days of work by up to one (1) day.

8. These rules do not apply to window cleaning.

9. The Employer agrees to notify the Union of all new jobs and also to give written notice to the Union of all job cancellations.

10. <u>Partnerships</u>: In the case of partnerships, firms or companies, all persons working with the tools of the trade shall become and remain members of the Union while so performing such work.

28.3 <u>Operational Changes</u>
When an Employer needs or is required to make changes and these changes are not connected to the process of bidding or taking over the servicing of an account from a previous Employer, the following provisions shall apply:

A. The Employer shall notify the Union in writing in advance of the proposed changes at least one (1) week before the date of the changes provided that the Employer has one (1) weeks' notice; however, such notification does not imply that the Employer must seek the Union's consent to the changes;

B.   The Employer agrees to meet with the Union to discuss the changes;

C.   Any employees laid off as a result of such changes shall retain recall rights as defined in this Agreement;

D.   The Employer shall provide training or orientation to employees affected by such changes;

E.   Once the changes have taken effect, the Employer shall meet upon request with the Union to review the changes.

28.4   The Employer agrees to inform the Union as soon as reasonably possible when a site is being bid by a non-union contractor(s) and/or is in danger of being lost as a result.

28.5   Termination of Employer's Services
The Employer losing a job shall remove the employees working at that job from its payroll on the last day of service. The Employer will pay the employees at the time of removal from payroll their earned and unpaid wages and any accrued and unpaid vacation pay. This Section does not apply to situations described in Section 30.13.

## ARTICLE XXIX – MAINTENANCE OF WORKING CONDITIONS – SACRAMENTO AREA
**Article XXIX applies only to the Sacramento Area.**

29.1   Registration of all Job Locations

A.   The Employer shall furnish the Union with a written list of all jobs of the Employer, including the exact address and location of each job. Lists will be delivered to the Union in January of each contract year.

As new persons are hired, the Employer will submit to the Union the following information:

1.   Employee name, address, and last four (4) digits of Social Security Number
2.   Address of employment
3.   Wage rate
4.   Date of hire
5.   Contract Appendix/Section

Information provided by the Employer on newly hired employees pursuant to Section 29.1.A, item 5 (Contract Appendix/Section), shall distinguish

between the following three (3) types of worksites as defined in Appendix B (page 89):

1.     Master Contract Sites (Area 2A)
2.     Small Master Contract Sites (Area 2B) of less than 150,000 square feet
3.     Former Non-Union Small Sites (Area 2C)

The Union agrees to maintain all of the information submitted pursuant to this Section as confidential and only for internal use by the Union.

B.     Upon receipt of such information the Union will treat the information on a confidential basis and will release it to another Employer in accordance with the provisions of this Agreement only when it has been determined that bona fide bids are being requested and that said Employer requesting the information is also signatory to a SEIU-USWW Agreement covering this jurisdiction.

29.2   The following rules shall be observed when an Employer is bidding on or taking over the servicing of an establishment where the Union represents the existing employees:

A.     When requesting staffing information from the Union, the requesting Employer must provide the Union with the client's RFQ cover page or similar documentation demonstrating that the account is out to bid.

When staffing is requested for a building which has been put out to bid, the incumbent contractor shall provide the Union within four (4) work days the number of employees, names, weekly hours worked, vacation and sick leave accrual, medical plan and wage rates, including regular employees temporarily off work with Employer authorization.

Only when the Union has received the client's RFQ cover page or similar documentation that a building is going out to bid, and can provide that documentation to the incumbent Employer, shall the incumbent Employer be obliged to supply this detailed information.

The Union agrees to supply such requested information within eight (8) calendar days to any Union contractor requesting such information or the Employer is not obligated to any staffing levels. The appropriate staffing levels shall be considered as the number of employees on the job sixty (60) days prior to such building being put out to bid. In any case, the new

Employer shall be held harmless from any errors and omissions by the Union.

B.      The Employer shall not reduce the number of working hours per day or per week except when it is verified that the service specifications of a job are altered by the client; then the Employer may increase or decrease the work force pursuant to the terms of the new specifications.

C.      Previous employees shall be continued on the job as probationary employees for a sixty (60) day period. During this probationary period, the Employer may terminate the employment of any such employee with just cause and such termination shall be subject to the grievance and arbitration provisions of this Agreement. The Employer agrees to implement this Probationary Period in a good faith manner and not as a means to terminate employees continued from a predecessor Employer. Employees who complete the probationary period shall maintain seniority from their original date of hire at the job site secured by the Employer.

D.      Employees retained by the Employer shall receive the wage and fringe benefits as established by this Agreement or any Appendices listed in this Agreement based on the employee's seniority at that work location. No employee will suffer a reduction in wages or fringe benefits as a result of the changeover to a new contractor signatory to this Agreement. If there is a collective bargaining agreement in effect at that work location other than this agreement, the Union must provide the client and signatory bidders competing for that work location with a copy of that collective bargaining agreement along with any staffing information provided by the incumbent Employer.

E.      The service record of employees retained by the Employer shall not be broken by reason of such change in Employer. Vacation and sick leave seniority dates shall be honored from the prior Employer.

In the event of a dispute regarding the seniority date of an employee retained in a work site during a change of contractors, the new Employer and the Union shall agree to review and determine appropriate means to verify the seniority date of the employee. The dispute must be raised within thirty (30) days of the date when the new Employer begins servicing the site.

Discipline records shall in no case be transferred from the previous Employer to the new Employer.

In the event of a change of contractors during a calendar month, the Employers will prorate their contributions based on calendar days in the month provided that the employee meets requirements for eligibility between the two Employers. In this circumstance each Employer will report the hours of affected employee(s) to the General Employees Trust Fund (GETF), and the GETF will confirm eligibility for such employee(s) based upon the total hours reported by the two Employers.

In the event of a change of contractors immediate before or after a paid Holiday, the Employer which is providing service at the beginning of the shift in which the Holiday falls shall be responsible for the payment of the Holiday to eligible employees taking into account the hours worked with the two Employers.

The new Employer shall assume responsibility for the Sick Leave accumulated by the employees with the previous Employer. The Employer reserves the right to request verification of accrued Sick Leave, and such request for verification must be made within thirty (30) days of the date when the new Employer begins servicing the site.

29.3   When service specifications of a worksite are altered, the process or system of cleaning is changed, or the square footage to be cleaned increases or decreases, the Employer may decrease or increase the workforce.

29.4   The Employer will furnish to the Union, in writing, the name and address of any job where the Employer's services have been terminated, together with the number of employees, the amount of daily person hours worked and the rates of pay at such job. Such information is to be furnished to the Union at least two (2) weeks prior to the date such services are terminated, where possible.

29.5   The Employer agrees to inform the Union as soon as reasonably possible when a site is being bid by a non-union contractor(s) and/or is in danger of being lost as a result.

29.6   Termination of Employer's Services
The Employer losing a job shall remove the employees working at that job from its payroll on the last day of service. The Employer will pay the employees at the time of removal from payroll their earned and unpaid wages and any accrued and unpaid vacation pay.

**ARTICLE XXX – SENIORITY, TRANSFER, AND LAYOFF – BAY AREA**
**Article XXX applies only to the Bay Area.**

30.1    Seniority is the right accruing to employees through continuous length of service at a particular work site which entitles the employee to preference in layoffs, recalls from layoff and vacation time.

30.2    Seniority shall also apply in filling permanent vacant station assignments within the same building site providing the person applying for said vacancy is qualified to perform the work as determined by the Employer.

30.3    Definition of Seniority. An employee's seniority date is defined as the earliest date after which the employee worked continuously for the same Employer or series of successor Employers at a particular location.

30.4    An employee shall transfer his or her seniority upon transfer to another work site.

30.5    Workers who request a transfer to another site shall be paid at the wage and benefit level in effect at that job site, provided the vacant position is equal to or better than their current wage and benefit level, corresponding to their level of seniority.

30.6    Loss of Seniority
        Seniority rights shall be lost for the following reasons:

        1.    Quit
        2.    Discharge
        3.    A lay-off for a continuous period of six (6) months.
        4.    Retirement
        5.    Promotion out of the unit after sixty (60) calendar days.
        6.    Failure to report to work for three (3) consecutive work days without notice, unless it is beyond the reasonable control of the employee, shall be considered a voluntary quit. Failure to return from an authorized Leave of Absence (LOA) without having an extension approved in writing, unless is beyond the reasonable control of the employee, shall be considered a voluntary quit.

30.7    Transfers to a different worksite by the Employer shall be for legitimate reasons only and not be used a means of discipline. Employees transferred to a different worksite shall be informed of the reason for the transfer.

30.8    Transfers and Job Advancement
        All employees desiring either more hours, a full time job, a job in a specific location or geographic area, or a job with higher pay and benefits shall indicate such specifics, in writing, to the Employer. The Employer will keep such requests on file on a list for at least one year.

When vacancies occur at existing worksites, where part-time employees decline seniority rights as stated in Section 3.2.B, or the Employer secures a new account where hiring will occur, all current employees who have a written transfer request on file, and who meet the reasonable qualifications for the position, will be given preference by seniority for such employment opportunities before workers are hired from the street.

The Employer will communicate all vacant positions at job sites covered under this Agreement by notification to employees at the Employer's office, and in an additional Employer office in the County where the position(s) are located if the Employer has an office in that County. Upon written request by Union, the Employer may provide copies of announcements of vacant positions.

30.9    Removal of Employees by Client Request
In the event that the building management requests the removal of an employee from a site without just cause, the Employer retains the responsibility to transfer the employee to another site without loss of wages, benefits or seniority for such employee.

If the Employer cannot place the removed employee in another position utilizing the above procedures, the Employer shall pay five (5) days' pay to employees with less than one (1) year and ten (10) days' pay to employees with one (1) year or more of service, which may be for work performed during all or part of that period, and the employee shall go onto Layoff status.

If the employee refuses a transfer within the county where the employee is working, then the Employer shall have no obligations to make the employee whole. Employees transferred as provided here shall not be guaranteed the same schedule either in terms of time of shift or days off.

30.10   Notice of Layoff
The Employer agrees to provide five (5) days' notice to employees of a permanent layoff, or the time in which the employer has knowledge of the layoff, if it is less than five (5) days. The Union shall receive copies of such notices.  The affected employees shall have the right to be paid for the full notification period as defined above, whether for time worked or while laid off.

30.11   Recall from layoff shall be handled in the following manner.

Lay-off and Recalls will be based upon seniority. Employees will be laid off and recalled after lay-offs on the basis of their seniority at that site or with the company whichever is greater, provided the senior employee possesses the ability to do the work required.

A.      Any employee who has been employed for six (6) months or more at a particular site and who is laid off, shall have the right of recall to that site, provided that the period of layoff does not exceed six (6) months.

B.      In addition laid off employees shall have an opportunity to fill permanent vacant positions with the Employer within the County in the following manner.

Employees with less than five (5) years of seniority shall be called by seniority to fill vacant permanent positions to buildings with more than five workers and excluding New-Non Buildings and buildings covered under Areas 1L, 1M or 1N (the previous Zones 5 and 5A), based on the new employee wage rate at the worksite, but with no loss of any other benefits. Employees with five years or more seniority shall be placed on the basis of seniority in permanent vacant positions at their wage and benefit levels at the time of lay-off.

C.      The Employer shall provide the Union with a list of all employees on the recall list on a monthly basis.

30.12  Recalls of laid-off employees to the site from which they were laid off shall be handled in the following manner:

A.      The Employer will contact the most senior qualified employee.

B.      If the most senior qualified employee does not respond, the Employer will notify all laid off employees that a vacancy exists. The employees shall then be given seven (7) days from the date of mailing of the letters in which to express, in person, or by certified mail, his or her desire to accept the available job. During this entire process, the Employer may assign a temporary employee to fill the vacancy until a senior person is selected.

C.      Recall shall be by seniority and qualifications as determined by the Employer of those responding.

D.      Those not responding shall be dropped from the seniority list.

30.13  <u>Lost Accounts to Non-Union or In-House</u>
Employees who lose their jobs due to loss of the account to a non-union firm or to in-house service shall be treated as any other laid off employee who shall have preference prior to the Employer hiring new employees.

**ARTICLE XXXI – SENIORITY, TRANSFER, AND LAYOFF – SACRAMENTO AREA**
**Article XXXI applies only to the Sacramento Area.**

31.1    In the reduction of forces due to the slackness of work, the last employee hired shall be the first employee laid off, and in rehiring, the last employee laid off shall be the first employee rehired, until the list of former employees is exhausted, provided those employees remaining are capable of performing the work required.

31.2    Definition of Seniority. Seniority is defined as an employee's continuous service with his/her Employer or predecessor Employer(s) signatory to this Agreement or other SEIU-USWW Agreement since date of hire. When layoffs occur in a building site, the most junior employee will be the first person laid off. Seniority shall not be used for bumping purposes.

31.3    In filling higher paid positions covered by this Agreement, employees working in other classifications covered by this Agreement shall be given a reasonable trial on the basis of seniority where merit, ability, and physical fitness are equal as determined by the Employer.

31.4    Loss of Seniority
         Seniority rights shall be lost for the following reasons:

         1.    Quit
         2.    Discharge
         3.    A lay-off for a continuous period of six (6) months.
         4.    Retirement
         5.    Promotion out of the unit after sixty (60) calendar days.
         6.    Failure to report to work for three (3) consecutive work days without notice, unless it is beyond the reasonable control of the employee, shall be considered a voluntary quit. Failure to return from an authorized Leave of Absence (LOA) without having an extension approved in writing, unless is beyond the reasonable control of the employee, shall be considered a voluntary quit.

31.5    Transfers to a different worksite by the Employer shall be for legitimate reasons only and not be used a means of discipline.

31.6    Employees transferred to a different worksite shall retain their original seniority, and shall be informed of the reason for the transfer.

31.7    An employee's pay and benefit rate shall not be reduced as a result of a transfer within the same classification from one location to another, unless the transfer is

as a result of a request by building management for just cause, in which case the employee will be transferred to another site at the wage and benefits of that site.

31.8    The guarantee to maintain wage and benefit levels does not apply in the case of transfer from a Government Wage determination site, or a site covered under an Appendix in the Sacramento Area, with or without cause. This provision shall only apply to any wage or benefit level which is specified in the applicable Appendix or Government Wage determination.

31.9    An employee who voluntarily requests a transfer to another work site agrees to accept the wage rate and benefits offered at that site corresponding to his/her level of seniority, and the Employer must notify the employee of such different wage rate or benefit level before the employee transfers to the new work site.

31.10   Transfers and Job Advancement
All employees desiring either more hours, a full time job, a job in a specific location or geographic area, or a job with higher pay and benefits shall indicate such specifics, in writing, to the Employer. The Employer will keep such requests on file on a list for at least one year.

When vacancies occur at existing worksites, where part-time employees decline seniority rights as stated in Section 3.2.B, or the Employer secures a new account where hiring will occur, all current employees who have a written transfer request on file, and who meet the reasonable qualifications for the position, will be given preference by seniority for such employment opportunities before workers are hired from the street.

An employee shall transfer his or her seniority upon transfer to another work site, except for disciplinary transfer involving just cause initiated by the client.

The Employer will communicate all vacant positions at job sites covered under this Agreement by notification to employees at the Employer's office.

31.11   Removal of Employee by Client Request. When the building management requests removal of an employee without just cause, the Employer will transfer the employee to a work site of equivalent wage rate and benefits as soon as is reasonably possible, not to exceed five (5) working days. Transfers of employees required by clients shall be stated in writing by the Employer.

If the Employer cannot place the removed employee in another position utilizing the above procedures, the Employer shall pay five (5) days' pay to employees with less than one (1) year and ten (10) days' pay to employees with one (1) year or

more of service, which may be for work performed during all or part of that period, and the employee shall go onto Layoff status.

If the employee refuses a transfer within the same County then the Employer shall have no obligation to make the employee whole. Employees transferred as provided here shall not be guaranteed the same schedule either in terms of time of shift or days off.

31.12   Notice of Layoff
The Employer agrees to provide five (5) days' notice to employees of a permanent layoff, or the time in which the employer has knowledge of the layoff, if it is less than five (5) days. The Union shall receive copies of such notices.  The affected employees shall have the right to be paid for the full notification period as defined above, whether for time worked or while laid off.

31.13   Employees on layoff and regular part time and extra employees shall receive preference over all newly hired employees, in the event the Employer hires employees. Employees laid off from a worksite shall receive first preference for filling openings at another worksite with the same salary schedule as the worksite from which the employee was laid off, based on the total length of service with the Employer, with the exception of Government Wage determination sites or Sacramento Appendix sites as specified above. For the purposes of salary determination, that employee shall not be considered a replacement employee.

31.14   The Employer shall provide the Union with a list of all employees on the recall list upon request by the Union, no more than three (3) times per year.

31.15   Lost Accounts to Non-Union or In-House
Employees who lose their jobs due to loss of the account to a non-union firm or to in-house service shall be treated as any other laid off employee who shall have preference prior to the Employer hiring new employees.

## ARTICLE XXXII – SUBCONTRACTING – BAY AREA
**Article XXXII applies only to the Bay Area.**

32.1   The Employer will not contract out bargaining unit work, except when the Employer lacks special equipment or tools for performing the work. The Employer shall not contract out to avoid its obligations under this Agreement nor as a means of reducing the scope of the Union. The Employer will notify the Union prior to any subcontracting, and shall include in its notification the name of the subcontractor, nature of the subcontracted work, and location of the work.

32.2   No employee of the Employer shall be requested or allowed to subcontract any work from the Employer or his agents.

See additional subcontracting provisions in Appendix E (page 111).

## ARTICLE XXXIII – SUBCONTRACTING – SACRAMENTO AREA
**Article XXXIII applies only to the Sacramento Area.**

In the event that the Employer determines that it is financially necessary to subcontract work or in the event there is not a sufficient number of qualified employees or applicants, the Employer may, under these circumstances, sub-contract work performed by bargaining unit members to other contractors or individuals. The Employer shall not contract out to avoid its obligations under this Agreement nor as a means of reducing the scope of the Union. The Employer will notify the Union of any sub-contractors used to perform work in any classification covered by this agreement, and of the specific reasons why the subcontracting is required.

See additional subcontracting provisions in Appendix E (page 111).

## ARTICLE XXXIV - WORK PRESERVATION – BAY AREA
**Article XXXIV applies only to the Bay Area.**

34.1   Neither the Union nor any Employer signatory to this Agreement will modify its terms nor undertake any conduct in derogation of its terms and conditions while it remains in effect.

34.2   However, the parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market areas and will endeavor by mutual agreement to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the individual Employers.

34.3   Notwithstanding the provisions of Section 34.1 above, the parties to this Agreement hereby establish a committee composed of two representatives of the Employer and two representatives of the Union.

34.4   This committee will review requests for changes in the terms and conditions of this Labor Agreement that may be necessary to preserve work opportunities for the individual Employer and the employees covered by the Agreement. The committee is authorized to approve such changes as it deems to be in the best interest of the parties to the Agreement.

34.5   The committee, upon such a request for a change in the terms of the Agreement, shall forthwith make the terms of the requested changes known, in writing, to all signatory Employers and to the Union.

34.6   The committee, upon granting any such request, shall forthwith notify all signatory Employers and the Union of the terms of its decision and shall not unreasonably withhold such modifications from other Employers similarly situated.

34.7   The committee shall be empowered to develop rules and procedures, subject to the approval of the bargaining parties, to carry out the intent of these provisions.

## ARTICLE XXXV - ENTIRE AGREEMENT

35.1   The parties acknowledge that during the negotiations which resulted in this Agreement, all had the unlimited right and opportunity to make demands and proposals with respect to any subject matter not removed by law from the area of collective bargaining, and that all understandings and agreements applicable to covered employees arrived at after the exercise of that right and opportunity are set forth in this Agreement.

35.2   In the event of any conflict between the language in the main body of this Agreement or in any of the Appendices attached to this Agreement, and any Table of Contents or Wage and Benefit charts shown in Appendices A (page 48) or B (page 89), the language of this Agreement shall prevail.

**The following Sections 35.3 and 35.4 apply only to the Bay Area:**

35.3   Neither the offer nor the withdrawal of any proposal during the negotiations preceding the execution of this Agreement, which proposal was not incorporated therein, shall be used in the construction of this Agreement.

35.4   The parties agree to meet upon conclusion of negotiations for this new collective bargaining agreement to work out the details of providing contractually obligated information via disk, tape, or e-mail generated by particular computer software. The parties agree that the Employer will not need to change its software applications in order to comply with this section. There shall be no additional cost to the Employer.

**The following Section 35.5 applies only to the Sacramento Area:**

35.5   This Agreement represents the complete and final understanding of all bargainable issues between the Employer and the Union. It is the intent of the parties that the

provisions of this Agreement will supersede all prior agreements, understandings and practices, oral or written, express or implied, between the parties and shall govern their entire relationship and shall be the sole source of all rights or claims which may be asserted in arbitration hereunder or otherwise.

Therefore, the Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement unless by mutual agreement of the parties, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Agreement.

## ARTICLE XXXVI - DURATION OF AGREEMENT

This Agreement shall become effective as of May 1, 2016, and shall remain in effect until April 30, 2020 and shall continue from year-to-year thereafter; provided, however, that each party reserves the right to give notice to the other at least sixty (60) days prior to April 30, 2020 of its desire to change or terminate said Agreement.

**FOR THE EMPLOYERS:**

By: _____

Date: __4/22/2017__

**FOR THE UNION:**

**Service Employees International Union, United Service Workers West**

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

By: _____

Date: __4/17/2017__

**APPENDIX A**
**AREA 1: BAY AREA ECONOMIC PROVISIONS**

Definition
Area 1 (Bay Area) consists of the following Counties: Santa Clara, San Mateo, Alameda and Contra Costa in the State of California.

Appendix A is divided into the following major Parts:

Page #          Part

P. 50           Part One (Sections 1 through 4)
                Part One contains economic provisions applying to Master Contract sites. Sections 1 through 3 specify the entire economic package applying for each type of site based on square footage. Section 4 specifies Pension benefits in Santa Clara County only.

P. 68           Part Two (Section 5)
                Part Two contains economic provisions applying only to employees hired prior to certain dates (June 1, 2000 or before) under the former Bay Area "Zone" provisions.

P. 73           Part Three (Sections 6 through 9)
                Part Three contains economic provisions applying to New and Former Non-Union Sites based on square footage and the date when the site was first bid by a signatory Employer. Each Section specifies the entire economic package applying to that type of site.

P. 82           Part Four (Sections 10 through 13)
                Part Four contains eligibility rules and other provisions applying to all wages and benefits specified in Sections 1 through 9.

P. 86           Part Five (Sections 14 through 16)
                Part Five contains additional economic provisions which apply to all sites in the Bay Area.

P. 88           Part Six (Side Letters of Understanding)
                Part Six lists the Side Letters specifying economic packages applying to particular sites in the Bay Area.

## ECONOMIC AREA DESIGNATIONS – BAY AREA

### Part One: Master and Small Master Contract Sites

| Section | Area | Definition |
|---|---|---|
| 1 | 1A | Master Contract Sites (Santa Clara and San Mateo Counties, Downtown Oakland) |
| 1 | 1B | Master Contract Sites (East Bay outside Downtown Oakland, San Mateo New Work) |
| 2 | 1C | Small Master Contract Sites (150k-200k) in geographic Area 1A |
| 2 | 1D | Small Master Contract Sites (150k-200k) in geographic Area 1B |
| 3 | 1E | Small Master Contract Sites below 150,000 square feet in geographic Area 1A |
| 3 | 1F | Small Master Contract Sites below 150,000 square feet in geographic Area 1A |

### Part Two: Former Bay Area Zone Provisions for employees hired prior to 6/1/2000

| Section | Area | Definition |
|---|---|---|
| 5 | 1G | Former Bay Area Zone Provisions, Santa Clara County (Zone 1) |
| 5 | 1H | Former Bay Area Zone Provisions, East Bay (Zone 3) |
| 5 | 1J | Former Bay Area Zone Provisions, San Mateo County (Zone 4) |

### Part Three: New and Former Non-Union Sites

| Section | Area | Definition |
|---|---|---|
| 10 | 1L | New/Former Non-Union Sites of 200,000 square feet or greater |
| 11 | 1M | New/Former Non-Union Sites below 200,000 square feet |
| 12 | 1N | Former Zone 5, Tier 1 Sites |

### (Part Four does not contain any additional Economic Areas)

### Part Five: Additional Economic Provisions

| Section | Area | Definition |
|---|---|---|
| 15 | 1P | Window Cleaners, Santa Clara County |
| 15 | 1Q | Window Cleaners, San Mateo County |
| 15 | 1R | Window Cleaners, East Bay |

### Bay Area Side Letters (published separately)

| Section | Area | Definition |
|---|---|---|
| SL1 | 1S | Genentech South San Francisco Side Letter |
| SL2 | 1T | Serramonte Center Side Letter |
| SL3 | 1U | Google Side Letter |
| SL4 | 1V | eBay Side Letter |
| SL5 | 1W | Apple Side Letter |
| SL6 | 1X | Stanford University Side Letter |

See the appropriate Sections for more exact Area definitions.

## PART ONE: MASTER AND SMALL MASTER CONTRACT SITES

## Section 1 – Areas 1A/1B: Master Contract Sites

The definition of a Master Contract Site shall be a site of 200,000 total cleanable square feet or greater at full occupancy. An individual building of less than 200,000 total square feet which is part of a complex or group of buildings which totals 200,000 square feet or more, and which is serviced under a contract between the Employer and a single client, shall be considered a Master Contract site.

1.A     MASTER WAGE RATES – AREA 1A
        Area 1A consists of the following geographic areas:

(1)     Santa Clara County (former Zone 1, Area 1)

(2)     Downtown Oakland (former Zone 3, Areas 1, 2, 5, and 6 – defined as the area bounded by Martin Luther King Jr. Way, 30th Street, Richmond Blvd, I-580, Lakeshore Ave, Lake Merritt Channel, Oakland Inner Harbor), plus the additional buildings listed

(3)     The following additional East Bay locations (former Zone 3, Area 2):
        (a)     1947 Center Street, Oakland
        (b)     C.W.A. Hall, Oakland
        (c)     Holy Name College, Oakland
        (d)     I.B.E.W. Hall, Oakland
        (e)     Newpark Mall, Newark
        (f)     St. Mary's College, Moraga
        (g)     Sanwa Bank, 3001 East 14th St., Oakland (Fruitvale Branch)
        (h)     U.P.S., Oakland

(4)     San Mateo County plus the City of Palo Alto to the north of Oregon Expressway and Page Mill Road (former Zone 4, Area 1)

Minimum Master Wage Rates for Area 1A shall be as follows:

|              | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|--------------|----------|----------|----------|----------|
| Minimum Rate | $15.00   | $15.60   | $16.10   | $16.50   |

Minimum wage increases for all employees in Area 1A who have completed three (3) years of service shall be as follows:

|              | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|--------------|----------|----------|----------|----------|
| Wage Increase | $0.76   | $0.60    | $0.50    | $0.40    |

1.B    MASTER WAGE RATES – AREA 1B
       Area 1B consists of the following geographic areas:

       (1)    Locations in Alameda County outside Downtown Oakland as defined above plus locations in Contra Costa County, but not including the locations specified in 1.A(3) above.

       (2)    Locations under the San Mateo County New Work Agreement (former Zone 4, Area 2) bid prior to May 1, 2003.

       Minimum Master Wage Rates for Area 1B shall be as follows:

|              | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|--------------|----------|----------|----------|----------|
| Minimum Rate | $14.80   | $15.40   | $16.00   | $16.50   |

       Minimum wage increases for all employees in Area 1B who have completed three (3) years of service shall be as follows:

|               | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---------------|----------|----------|----------|----------|
| Wage Increase | $0.76    | $0.60    | $0.60    | $0.50    |

1.C    NEW HIRE WAGE RATES – AREAS 1A/1B
       Effective May 1, 2016, all new employees as well as employees with less than three (3) years of service in Areas 1A/1B, based on the anniversary date of each employee, shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

       Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | New Hire Wage Rate |
|----------------|--------------------|
| 5/1/2016       | $10.30             |
| 1/1/2017       | $10.80             |
| 1/1/2018       | $11.30             |
| 1/1/2019       | $12.30             |
| 1/1/2020       | $13.30             |

       Upon completion of three (3) years of service, employees will be paid the Area 1A or 1B Master Wages Rates and Wage Increases, based upon their work location. The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees

with less than 3 years earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

See Section 5 (page 68) for wage rates of certain employees hired prior to June 1, 2000.

1.D   <u>HEALTH AND WELFARE PLANS – AREAS 1A/1B</u>
Coverage for eligible employees pursuant to this Section, except for site-specific agreements, shall be under the following plans provided through the General Employees Trust Fund: Plans E28 (Employee Only) and C28A (Composite) as appropriate for those participating Employers.

### **<u>PLAN E28 (EMPLOYEE ONLY)</u>**

<u>Medical – choose one</u>:
Kaiser $25 Non-Deductible Plan (with $100 Emergency Room)
Indemnity Plan MP111: no annual maximum (as of 2016)

UHC Dental Plan 2
Prescription Solutions Plan G: $10 generic prescription, $25 brand-name
Life Insurance: $10,000 benefit

### **<u>PLAN C28A (COMPOSITE)</u>**

<u>Medical – choose one</u>:
Kaiser $25 Non-Deductible Plan (with $100 Emergency Room)
Indemnity Plan MP115: no annual maximum (as of 2016)

UHC Dental Plan 1
Prescription Solutions Plan G: $10 generic prescription, $25 brand-name
Life Insurance: $10,000 benefit

Effective May 1, 2018 (based on April hours), Vision Service Plan benefit will be added to Plan C28.

The costs of the above plans as of the effective date of this Agreement are $620.43 per month for Plan E28, and $1,229.48 per month for Plan C28A.

1.E   <u>HEALTH AND WELFARE ELIGIBILITY – AREAS 1A/1B</u>

<u>Employee-Only coverage - Eligibility Defined</u>. Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E28) after completing twelve (12) consecutive months at one hundred ten (110) hours per month.

Composite Coverage –Eligibility Defined. Employees shall be covered under Composite Health and Welfare coverage (Plan C28A) after completing twenty four (24) months of service

The waiting periods specified above shall apply to all employees hired prior to May 1, 2016 based on their existing length of service, as well as employees hired on or after May 1, 2016.

The employee will be required to work one hundred ten (110) hour per month for the six (6) months prior to the initial month of a Composite contribution. If the employee does not work one hundred ten (110) hours in one (1) of the last six (6) months then the employee will restart his/her six (6) consecutive month requirement in the following month in order to qualify for a Composite contribution.

Example. An employee who was hired on January 1, 2016 will be covered under Plan E28 effective February 1, 2017 (with the first Employer contribution due in January 2013 based on December hours) if he/she worked one hundred ten (110) hours per month from January through December 2016, and will be covered under Plan C28A effective February 1, 2018 (with the first Employer contribution to Plan C28A due in January 2018 based on December hours) if he/she worked one hundred ten (110) hours per month from July through December 2017.

Continuing eligibility shall be based upon working one hundred ten (110) straight time hours per month. Paid holidays, paid sick leave and paid funeral leave shall be counted as hours worked for the purpose of eligibility. Paid vacation hours shall be counted as hours worked for the purpose of eligibility unless they are paid in advance.

See Section 5 (page 68) for Health and Welfare eligibility of certain employees hired prior to June 1, 2000.

1.F    HEALTH AND WELFARE EMPLOYER CONTRIBUTIONS – AREAS 1A/1B
The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plans listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E28 (Employee Only) | $620.43 | +6% | +6% | +6% |
| C28A (Composite) | $1,229.48 | +6% | +6% +VSP | +6% |

*(based on March hours)

Effective April 1, 2017 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2018 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less, and in addition the Employer will contribute the additional amount necessary to add Vision Service Plan benefit to Plan C28A. Effective April 1, 2019 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less.

1.G   PAID VACATION – AREAS 1A/1B
All employees hired on or after June 1, 2000 shall be entitled to one (1) week of vacation per year upon completion of one (1) year of service. All employees shall be entitled to two (2) weeks of vacation per year upon completion of three (3) years of service. Effective May 1, 2019 and thereafter, all employees shall be entitled to three (3) weeks of vacation per year upon completion of fifteen (15) years of service.

However, an employee who receives a payment of unused accrued vacation upon termination shall receive such payment based on one (1) week's accrual per year until he/she has completed three (3) years of service.

See Section 5 (page 68) for Vacation benefits of certain employees hired prior to June 1, 2000. See Section 10 (page 82) for Vacation eligibility rules.

1.H   PAID HOLIDAYS – AREAS 1A/1B
All eligible employees hired on or after June 1, 2000 shall be entitled to the following paid holidays: New Years Day, 4th of July (Independence Day), Labor Day, Thanksgiving Day, and Christmas Day.

See Section 5 (page 68) for Holiday benefits of certain employees hired prior to June 1, 2000. See Section 11 (page 83) for Holiday eligibility rules.

1.I   PAID SICK LEAVE AND FUNERAL LEAVE – AREAS 1A/1B
All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as mother, father, spouse, son, daughter, brother, sister, grandmother, grandfather, grandson, granddaughter, and registered domestic partner.

See Section 5 (page 68) for Sick Leave and Funeral Leave benefits of certain employees hired prior to June 1, 2000. See Appendix F-1 (page 112) for Sick Leave eligibility rules.

1.J    PENSION – SANTA CLARA COUNTY
       See Section 4 (page 67) for Pension provisions applying to Santa Clara County.

## **Section 2 – Areas 1C/1D: Small Master Contract Sites of 150,000 square feet or greater but less than 200,000 sq. ft.**

The definition of a Small Master Contract Site shall be a site of less than 200,000 total cleanable square feet, but at least 150,000 total cleanable square feet, at full occupancy. An individual building of less than 200,000 total square feet which is part of a complex or group of buildings which totals 200,000 square feet or more, and which is serviced under a contract between the Employer and a single client, shall not be considered a Small Master Contract site.

The provisions in this Section 2 apply only to employees hired on or after May 1, 2008; employees hired prior to May 1, 2008 at Small Master Contract Sites are covered under the provisions of Section 1 above (Areas 1A/1B).

2.A    MASTER WAGE RATES – AREA 1C
Area 1C covers the same geographic areas as Area 1A, as follows:

(1)    Santa Clara County (former Zone 1, Area 1)

(2)    Downtown Oakland (former Zone 3, Areas 1, 2, 5, and 6 – defined as the area bounded by Martin Luther King Jr. Way, 30th Street, Richmond Blvd, I-580, Lakeshore Ave, Lake Merritt Channel, Oakland Inner Harbor)

(3)    San Mateo County plus the City of Palo Alto to the north of Oregon Expressway and Page Mill Road (former Zone 4, Area 1)

Minimum Master Wage Rates for Area 1C shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Minimum Rate | $13.42 | $13.72 | $13.97 | $14.17 |

Minimum wage increases for all employees in Area 1C who have completed three (3) years of service shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Wage Increase | $0.38 | $0.30 | $0.25 | $0.20 |

2.B    MASTER WAGE RATES – AREA 1D
Area 1D covers the same geographic areas as Area 1B, as follows:

(1)    Locations in Alameda County outside Downtown Oakland as defined above and locations in Contra Costa County.

(2)    Locations under the San Mateo County New Work Agreement (former Zone 4, Area 2).

Minimum Master Wage Rates for Area 1D shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Minimum Rate | $13.22 | $13.52 | $13.87 | $14.17 |

Minimum wage increases for all employees in Area 1D who have completed three (3) years of service shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Wage Increase | $0.38 | $0.30 | $0.35 | $0.30 |

See Section 5 (page 68) for wage rates of certain employees hired prior to June 1, 2000.

2.C    NEW HIRE WAGE RATES – AREAS 1C/1D
Effective May 1, 2016, all new employees as well as employees with less than three (3) years of service in Areas 1C/1D, based on the anniversary date of each employee, shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | New Hire Wage Rate |
|---|---|
| 5/1/2016 | $10.30 |
| 1/1/2017 | $10.80 |
| 1/1/2018 | $11.30 |
| 1/1/2019 | $12.30 |
| 1/1/2020 | $13.30 |

Upon completion of three (3) years of service, employees will be paid the Area 1C or 1D Master Wages Rates and Wage Increases, based upon their work location. The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees with less than 3 years earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

2.D    HEALTH AND WELFARE PLANS – AREAS 1C/1D

Coverage for eligible employees pursuant to this Section, except for site-specific agreements, shall be under the following plans provided through the General Employees Trust Fund: Plans E33 (Employee Only) and C28A (Composite) as appropriate for those participating Employers.

### PLAN E33 (EMPLOYEE ONLY)

Indemnity: 80%/50% coverage, 100% coverage after $20,000; no annual maximum (as of 2016)

Prescriptions included as part of Indemnity Medical coverage

Life Insurance: $10,000 benefit

### PLAN C28A (COMPOSITE)
(See Section 1.D for description of benefits in this Plan)

The costs of the above plans as of the effective date of this Agreement are $418.24 per month for Plan E33, and $1,229.48 per month for Plan C28A.

2.E    HEALTH AND WELFARE ELIGIBILITY – AREAS 1C/1D

Employee-Only coverage – eligibility defined. Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E33) after completing twenty four (24) consecutive months at one hundred thirty (130) hours per month.

Composite Coverage – eligibility defined. Employees shall be covered under Composite Health and Welfare coverage (Plan C28A) after thirty six (36) months at one hundred thirty (130) hours per month. New employees who have qualified for Employee Only coverage as stated above will be required to work an additional twelve (12) consecutive months at one hundred thirty (130) hours per month, and have completed at least thirty six (36) months of service,  prior to the initial month of a Composite contribution.

Continuing eligibility for employees shall be based upon working one hundred thirty (130) straight time hours per month. Employees hired prior to May 1, 2012 shall have continuing eligibility based upon one hundred ten (110) straight time hours per month.

Example. An employee who is hired on January 1, 2016 will be covered under Plan E33 effective February 1, 2018 (with the first Employer contribution due in January 2018 based on December 2017 hours) if he/she has worked one hundred thirty (130) hours per month for twenty four (24) consecutive months, and will be

covered under Plan C28A effective February 1, 2019 (with the first Employer contribution to Plan C28A due in January 2019 based on December 2018 hours) if he/she has worked one hundred thirty (130) hours per month from January through December 2018.

Paid holidays, paid sick leave and paid funeral leave shall be counted as hours worked for the purpose of eligibility. Paid vacation hours shall be counted as hours worked for the purpose of eligibility unless they are paid in advance.

For employees in these sites who currently have wages and benefits greater than what is defined above, the Employer reserves the right to transfer employee to an equal or greater benefit site in an effort to retain their current benefit status. Those employees who refuse a transfer within the same county, will be placed on the lay-off list or will adhere to the aforementioned benefits. Notwithstanding, employees current wage rate will not be affected.

In the event there is not an available position to transfer to an equal or greater benefit site, the employee may select the option stated above or be put on the layoff list. The Employer will notify the Union when it is in an uncompetitive situation due to non-union competition bidding on the site, and it is understood that this paragraph applies to this situation.

See Section 5 (page 68) for Health and Welfare eligibility of certain employees hired prior to June 1, 2000.

2.F    <u>HEALTH AND WELFARE EMPLOYER CONTRIBUTIONS – AREAS 1C/1D</u>
The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plans listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E33 (Employee Only) | $418.24 | +6% | +6% | +6% |
| C28A (Composite) | $1,229.48 | +6% | +6% +VSP | +6% |

*(based on March hours)

Effective April 1, 2017 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2018 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or

the percentage increase of the Plan premium, whichever is less, and in addition the Employer will contribute the additional amount necessary to add Vision Service Plan benefit to Plan C28A.  Effective April 1, 2019 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less.

2.G    PAID VACATION – AREAS 1C/1D
All employees hired on or after June 1, 2000 but prior to May 1, 2012 shall be entitled to one (1) week of vacation per year upon completion of one (1) year of service. All employees shall be entitled to two (2) weeks of vacation per year upon completion of three (3) years of service. However, an employee who receives a payment of unused accrued vacation upon termination shall receive such payment based on one (1) week's accrual per year until he/she has completed three (3) years of service.

Employees hired on or after May 1, 2012 shall be entitled to one (1) week of vacation per year upon completion of one (1) year of service.

See Section 5 (page 68) for Vacation benefits of certain employees hired prior to June 1, 2000. See Section 10 (page 82) for Vacation eligibility rules.

2.H    PAID HOLIDAYS – AREAS 1C/1D
All eligible employees hired on or after June 1, 2000 but prior to May 1, 2012 shall be entitled to the following paid holidays: New Years Day, 4th of July (Independence Day), Labor Day, Thanksgiving Day, and Christmas Day.

See Section 5 (page 68) for Holiday benefits of certain employees hired prior to June 1, 2000. See Section 11 (page 83) for Holiday eligibility rules.

2.I    PAID SICK LEAVE AND FUNERAL LEAVE – AREAS 1C/1D
All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as mother, father, spouse, son, daughter, brother, sister, grandmother, grandfather, grandson, granddaughter, and registered domestic partner.

See Section 5 (page 68) for Sick Leave and Funeral Leave benefits of certain employees hired prior to June 1, 2000. See Appendix F-1 (page 112) for Sick Leave eligibility rules.

2.J     PENSION – SANTA CLARA COUNTY
        See Section 4 (page 67) for Pension provisions applying to Santa Clara County.

## Section 3 – Areas 1E/1F: Small Master Contract Sites Below 150,000 Square Feet

This section shall apply only to sites of less than 150,000 total cleanable square feet at full occupancy. An individual building of less than 150,000 total square feet which is part of a complex or group of buildings which totals 150,000 square feet or more, and which is serviced under a contract between the Employer and a single client, shall not be covered under this Section.

The provisions in this Section 3 apply only to employees hired on or after May 1, 2008; employees hired prior to May 1, 2008 at Small Master Contract Sites are covered under the provisions of Section 1 above (Areas 1A/1B).

3.A    MASTER WAGE RATES – AREA 1E
Area 1E covers the same geographic areas as Area 1A, as follows:

(1)    Santa Clara County (former Zone 1, Area 1)

(2)    Downtown Oakland (former Zone 3, Areas 1, 2, 5, and 6 – defined as the area bounded by Martin Luther King Jr. Way, 30th Street, Richmond Blvd, I-580, Lakeshore Ave, Lake Merritt Channel, Oakland Inner Harbor)

(3)    San Mateo County plus the City of Palo Alto to the north of Oregon Expressway and Page Mill Road (former Zone 4, Area 1)

Minimum Master Wage Rates for Area 1E shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Minimum Rate | $13.42 | $13.72 | $13.97 | $14.17 |

Minimum wage increases for all employees in Area 1E who have completed three (3) years of service shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Wage Increase | $0.38 | $0.30 | $0.25 | $0.20 |

3.B    MASTER WAGE RATES – AREA 1F
Area 1F covers the same geographic areas as Area 1B, as follows:

(1) Locations in Alameda County outside Downtown Oakland as defined above, and locations in Contra Costa County.

(2)     Locations under the San Mateo County New Work Agreement (former Zone 4, Area 2).

Minimum Master Wage Rates for Area 1F shall be as follows:

|                | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|----------------|----------|----------|----------|----------|
| Minimum Rate   | $13.22   | $13.52   | $13.87   | $14.17   |

Minimum wage increases for all employees in Area 1F who have completed three (3) years of service shall be as follows:

|                | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|----------------|----------|----------|----------|----------|
| Wage Increase  | $0.38    | $0.30    | $0.35    | $0.30    |

See Section 5 (page 68) for wage rates of certain employees hired prior to June 1, 2000.

3.C     NEW HIRE WAGE RATES – AREAS 1E/1F
Effective May 1, 2016, all new employees as well as employees with less than three (3) years of service in Areas 1E/1F, based on the anniversary date of each employee, shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | New Hire Wage Rate |
|----------------|--------------------|
| 5/1/2016       | $10.30             |
| 1/1/2017       | $10.80             |
| 1/1/2018       | $11.30             |
| 1/1/2019       | $12.30             |
| 1/1/2020       | $13.30             |

Upon completion of three (3) years of service, employees will be paid the Area 1E or 1F Master Wages Rates and Wage Increases, based upon their work location. The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees with less than 3 years earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

3.D     HEALTH AND WELFARE PLANS – AREAS 1E/1F

Coverage for eligible employees pursuant to this Section, except for site-specific agreements, shall be under Plan E33 (Employee Only) provided through the General Employees Trust Fund.

**PLAN E33 (EMPLOYEE ONLY)**
(see Section 6.D for description of benefits under Plan E33)

The cost of the above plan E33 as of the effective date of this Agreement is $418.24 per month.

3.E   HEALTH AND WELFARE ELIGIBILITY – AREAS 1E/1F

Employee-Only coverage. Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E33) after completing forty eight (48) months of service. There shall be no requirement to work a certain number of consecutive months with a certain number of hours per month.

Employees who have already qualified for Employee Only or Composite Coverage will retain their level of benefits (Plans E28 or C28A, with Employer contributions as specified in Section 1 above).

Continuing eligibility shall be based upon working one hundred thirty (130) straight time hours per month.

Example. An employee who was hired on January 1, 2016 will be covered under the Plan E33 effective February 1, 2020 (with the first Employer contribution due in January 2020 based on December hours).

Paid holidays, paid sick leave and paid funeral leave shall be counted as hours worked for the purpose of eligibility. Paid vacation hours shall be counted as hours worked for the purpose of eligibility unless they are paid in advance.

For employees in these sites who currently have wages and benefits greater than what is defined above, the Employer reserves the right to transfer employee to an equal or greater benefit site in an effort to retain their current benefit status. Those employees who refuse a transfer within the same county, will be placed on the lay-off list or will adhere to the aforementioned benefits. Notwithstanding, employees current wage rate will not be affected.

In the event there is not an available position to transfer to an equal or greater benefit site, the employee may select the option stated above or be put on the layoff list. The Employer will notify the Union when it is in an uncompetitive

situation due to non-union competition bidding on the site, and it is understood that this paragraph applies to this situation.

3.F   HEALTH AND WELFARE EMPLOYER CONTRIBUTIONS – AREAS 1E/1F
The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plans listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E33 (Employee Only) | $418.24 | +6% | +6% | +6% |

*(based on March hours)

Effective April 1, 2017, April 1, 2018, and April 1, 2019 (based on the respective March hours) the Employer shall increase its contribution for the Plan by six percent (6%) or the percentage increase of the Plan premium in that year, whichever is less.

3.G   PAID VACATION – AREAS 1E/1F
Employees hired on or after May 1, 2012 shall be entitled to one (1) week of vacation per year upon completion of one (1) year of service.

See Section 10 (page 82) for Vacation eligibility rules.

3.H   OTHER BENEFITS
Employees hired prior to May 1, 2012 shall retain the Vacation, Holiday and Sick Leave benefits as specified above in Section 2.

See Section 5 (page 68) for Vacation, Holiday or Sick Leave benefits of certain employees hired prior to June 1, 2000.

3.I   PAID SICK LEAVE AND FUNERAL LEAVE – AREAS 1E/1F
All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as mother, father, spouse, son, daughter, brother, sister, grandmother, grandfather, grandson, granddaughter, and registered domestic partner.

See Section 5 (page 68) for Sick Leave and Funeral Leave benefits of certain employees hired prior to June 1, 2000. See Appendix F-1 (page 112) for Sick Leave eligibility rules.

3.J   PENSION – SANTA CLARA COUNTY
      See Section 4 (page 67) for Pension provisions applying to Santa Clara County.

**Section 4 – Pension – Santa Clara County**

The following Pension Benefits apply only to Master Contract and Small Master Contract sites in Santa Clara County excluding Palo Alto north of Page Mill Road and Oregon Expressway (Areas 1A, 1C and 1E – former Zone 1, Area 1), and excluding site-specific Agreements.

Effective May 1, 2016, the Employer shall contribute the following amounts on behalf of eligible employees for each straight-time hour worked or paid:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| Base Contrib. | 0.15 | 0.15 | 0.15 | 0.15 |
| Supplem. Contrib. | 72.10% | 85.50% | 99.90% | 115.40% |
| Total Contribution | $0.2582 | $0.2783 | $0.2999 | $0.3231 |

The contributions specified above shall be made on behalf of eligible employees covered by this Section 4 and as defined in Appendix C, Section 3(d).

The parties agree to adopt such increases (Pension Supplemental Contributions) as are required pursuant to the Preferred Schedule attached to the Rehabilitation Plan for the SEIU National Industry Pension Fund.

With respect to the contributions specified in this Section, the Employer reserves the right to withdraw from the SEIU-NIPF at any time during the term of the Agreement.

## **PART TWO – WAGES AND BENEFITS OF CERTAIN BAY AREA EMPLOYEES**

## **Section 5 - Areas 1G/1H/1J: Former Bay Area Zone Provisions**

5.A   TABLES OF FORMER BAY AREA ZONE PROVISIONS
Please refer to the following tables for Wages and Benefits applying to "grandfathered" employees covered under the former Bay Area "Zone" provisions. For each Zone/Area, apply the information in the following columns as follows:

(1)   DOH< indicates the "cutoff" Hire Date for wage and benefit levels. For example, wages and benefits in a table row following "6/1/2000" would apply only the employees hired prior to June 1, 2000. If there are several rows within a particular Zone/Area, each successive row indicates greater wages or benefits applying to employees hired prior to the date shown in that row.

(2)   Minimum Wage Rates indicates the minimum wage rates applicable to employees hired prior to the dates shown effective May 1 of each year of the Agreement.

(3)   H&W indicates monthly hours for Health and Welfare eligibility, including where the Master Agreement applies. All other Health and Welfare eligibility rules apply.

(4)   Additional Holidays indicates holiday benefits of applicable employees in addition to the standard holidays in the Agreement. See eligibility rules for Floating Holidays and Personal Days following the chart. All other Holiday eligibility rules apply. F/H refers to Floating Holiday.

(5)   Vac, S/L, and F/L indicate paid benefits of applicable employees in weeks (vacation) or days (sick and funeral leave). All other eligibility rules for these benefits apply.

(6)   Pns indicates Pension benefits of applicable employees. Total contributions including Fund Improvement Supplemental Contributions are shown following the chart.

(7)   If a particular square is blank, the Area 1A/1B Master Contract wages and benefits apply (Section 1)

The following tables contain all relevant information on former Bay Area Zone provisions. A verbal description of those provisions can be found in the predecessor Agreements (Northern California Maintenance Contractors Agreement 2008-2012, Section 12; or the Bay Area Maintenance Contractors Agreement 2003-2008).

| AREA 1G: SANTA CLARA COUNTY "ZONE" PROVISIONS | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Zone/Area | | Zone Name | DOH< | Minimum Wage Rates | | | | | H&W | Additional Holidays | Vac | S/L | Pns | F/L |
| | | | | 2015 | 2016 | 2017 | 2018 | 2019 | | | | | | |
| 1 | 1 | Santa Clara County (south of Page Mill Road) | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 90 | Presidents Day, Memorial Day, Day after Thanksgiving | 3 | 5 | | |
| | | | <6/1/2000 | 14.57 | 15.33 | 15.93 | 16.43 | 16.83 | 90 | | | | | |
| | | | <6/1/2000 | 15.07 | 15.83 | 16.43 | 16.93 | 17.33 | 90 | | 3 | 5 | | |
| | | | <6/1/2000 | 16.33 | 17.09 | 17.69 | 18.19 | 18.59 | 90 | | 3 | 5 | | |
| | | | <5/11/1988 | 16.33 | 17.09 | 17.69 | 18.19 | 18.59 | 90 | Presidents Day, Memorial Day, Day after Thanksgiving, Personal Day | 4 | 5 | | |

| AREA 1J: SAN MATEO COUNTY "ZONE" PROVISIONS | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Zone/Area | | Zone Name | DOH< | Minimum Wage Rates | | | | | H&W | Additional Holidays | Vac | S/L | Pns | F/L |
| | | | | 2015 | 2016 | 2017 | 2018 | 2019 | | | | | | |
| 4 | 1 | San Mateo Co. (plus Palo Alto north of Page Mill Road and Oregon Expwy) | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 90 | Memorial, Personal Day, Floating Holiday, Employee Birthday | 4 | 5 | | |
| | | | <1/1/1986 | 14.96 | 15.72 | 16.32 | 16.82 | 17.22 | 90 | | 4 | 5 | | |
| 4 | 2 | San Mateo County "New Work" | <6/1/2000 | 14.04 | 14.80 | 15.40 | 16.00 | 16.50 | 110 | Memorial Day, Personal Day | | 4 | | |

| Zone | Area | Zone Name | DOH< | 2015 | 2016 | 2017 | 2018 | 2019 | H&W | Additional Holidays | Vac | S/L | Pns | F/L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Minimum Wage Rates | | | | | | | | | | |
| 3 | 1 | Specified Downtown Oakland Buildings | <12/1/1983 (others in Zone 3 Area 2) | 16.33 | 17.09 | 17.69 | 18.19 | 18.59 | 80 | Washington's Birthday, Memorial Day, Veteran's Day, Employee's Birthday | 5 | 8 | 0.35 | 5 |
| 3 | 2 | Downtown Oakland plus other Buildings | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Floating Holiday | | | | |
| | | | <1/27/1988 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 88 | Washington's Birthday, Memorial Day, 2 F/H | 4 | 5 | 0.20 | 3 |
| | | | <12/1/1983 | 15.85 | 16.61 | 17.21 | 17.71 | 18.11 | 80 | | 4 | 5 | 0.20 | 3 |
| 3 | 3 | East Bay outside Down-town Oakland | <6/1/2000 | 14.04 | 14.80 | 15.40 | 16.00 | 16.50 | 110 | Floating Holiday | | | | |
| | | | <1/27/1988 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 88 | Washington's Birthday, Memorial Day, F/H | 4 | 5 | 0.15 | 3 |
| | | | <12/1/1983 | 15.15 | 15.91 | 16.51 | 17.01 | 17.41 | 80 | | 4 | 5 | 0.15 | 3 |
| 3 | 4 | East Bay New Work | 6/1/2000 | 14.04 | 14.80 | 15.40 | 16.00 | 16.50 | 110 | Floating Holiday | | | | |
| | | | <1/27/1988 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | | | | | |
| 3 | 5 | 1901 Harrison, Old World, Prentiss Prop. | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Floating Holiday | | 5 | | |
| | | | <7/1/1988 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 88 | | | 5 | | 3 |
| | | | <1/27/1988 | 14.50 | 15.26 | 15.86 | 16.36 | 16.76 | 88 | | | 5 | | 3 |
| | | | <12/1/1983 | 14.50 | 15.26 | 15.86 | 16.36 | 16.76 | 80 | | | 5 | | 3 |
| 3 | 6 | 1999 Harrison, 2101 Webster | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Floating Holiday | | | | |
| | | | <4/1/1990 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | | | | | 3 |
| | | | <4/1/1989 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Washington's B-day, Memorial Day, 2 F/H | 4 | 5 | 0.15 | 3 |
| | | | <1/27/1988 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 88 | | 4 | 5 | 0.15 | 3 |
| 3 | 7 | 300 Lakeside | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Floating Holiday | | 5 | | |
| | | | <1/27/1988 | 15.28 | 16.04 | 16.64 | 17.14 | 17.54 | 80 | | | 5 | | |
| | | | <12/1/1983 | 15.28 | 16.04 | 16.64 | 17.14 | 17.54 | 80 | | 4 | 5 | 0.15 | |
| 3 | 8 | 1 Kaiser Plaza | <6/1/2000 | 14.24 | 15.00 | 15.60 | 16.10 | 16.50 | 110 | Floating Holiday | | 5 | | |
| | | | <1/27/1988 | 15.78 | 16.54 | 17.14 | 17.64 | 18.04 | 80 | | | 5 | | |

5.B   <u>DEFINITIONS OF ZONES AND AREAS</u>
The former Bay Area Zones and Areas are defined as follows:

Zone 1 Area 1:   Santa Clara County excluding the City of Palo Alto south of Page Mill Road and Oregon Expressway.

Zone 3 Area 1:   The following buildings: Watergate Towers Complex; United California Bank Building; 1330 Broadway; Civic Center Plaza [Wells Fargo - 1333 Broadway, Clorox - 1221 Broadway, & Office Building #3- 475 14th Street]; World Savings - 1970 Broadway; and Kaiser Permanente - 1950 Franklin, Oakland. For employees hired on or after 12/1/1983 but prior to 1/27/1988 or 6/1/2000, the benefits and wages of Zone 3 Area 2 shall apply based on Date of Hire.

Zone 3 Area 2:   All buildings in Downtown Oakland (excluding buildings in Zone 3 Area 1), defined as the area bounded by Martin Luther King Jr. Way, 30th Street, Richmond Blvd, I-580, Lakeshore Ave, Lake Merritt Channel, Oakland Inner Harbor; plus the following buildings: 1947 Center Street, C.W.A. Hall, Holy Names College, I.B.E.W. Hall, Sanwa Bank (3001 E. 14th St.), U.P.S. in Oakland; plus Newpark Mall, Newark, and St. Mary's College, Moraga.

Zone 3 Area 3:   East Bay (Alameda and Contra Costa Counties) outside Downtown Oakland as defined above, and excluding New Work (Zone 3, Area 4).

Zone 3 Area 4:   East Bay "New Work" Agreement (only sites bid prior to 5/1/2003).

Zone 3 Area 5:   The following buildings: 1901 Harrison St.; Old World; and Prentiss Property, Oakland.

Zone 3 Area 6:   The following buildings: 1999 Harrison Street and 2101 Webster Street, Oakland.

Zone 3 Area 7:   The following building: 300 Lakeside, Oakland.

Zone 3 Area 8:   The following building: 1 Kaiser Plaza, Oakland.

Zone 4 Area 1:   San Mateo County plus the City of Palo Alto from the north side or Oregon Expressway and the north side of Page Mill Road.

Zone 4 Area 2:   San Mateo County "New Work" Agreement (only sites bid prior to 5/1/2003).

5.C   EXPLANATIONS OF CERTAIN BAY AREA ZONE WAGES AND BENEFITS

Any application or eligibility rule not shown below shall be based on the other Sections of this Appendix A.

Santa Clara County Wage Rates
In Zone 1, Area 1 (Santa Clara County), employees earning the wages shown in the "2015" column would receive the across-the-board wage increases for Area 1A as specified in Section 1. For example, an employee hired prior to June 1, 2000 currently earning $14.57 per hour would earn at least the wage rates shown in the columns headed 2016, 2017, 2018 and 2019 on the appropriate dates.

Floating Holidays
Floating Holidays (also referred to in table as "F/H") shall be determined by the Employer for each individual job at least thirty (30) days prior to the observance day, and the employees affected shall be so notified. The Employer agrees to furnish the Union with a list of employees who had received their floating holiday upon the loss of the account

Personal Days
One Personal Day in each calendar year is to be scheduled by arrangement between the Employee and the Employer not less than thirty (30) days prior to said day off. In case where an eligible employee fails to make a selection by September 1st of any year, the Employer will then assign the Personal Day off with two (2) weeks' notice.

Pension
All pension contributions shown shall be subject to the Preferred Schedule Funding Improvement Supplemental Contributions shown in the Section 4.

Total Pension contributions for each year of the Agreement by Base Pension contribution shall be as follows:

|                  |      | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|------------------|------|----------|----------|----------|----------|
| Supplem. Contrib: |      | 72.10%   | 85.50%   | 99.90%   | 115.40%  |
| Base Pension:    | 0.15 | $0.2582  | $0.2783  | $0.2999  | $0.3231  |
| Base Pension:    | 0.20 | $0.3442  | $0.3710  | $0.3998  | $0.4308  |
| Base Pension:    | 0.35 | $0.6024  | $0.6493  | $0.6997  | $0.7539  |

The contributions specified above shall be made on behalf of eligible employees for whom such contributions are required and as defined in Appendix C, Section 3(d).

## PART THREE – NEW AND FORMER NON-UNION SITES

### Section 6 – Area 1L: New/Former Non-Union Sites (200,000 Square Feet or Greater)

Former Non-Union Sites (Area 1L) include all sites being serviced by a non-union janitorial contractor at the time of bidding, with the exception of buildings covered under the New Non-Union Small Site Provisions (Area 1M) below. Also included are sites bid under Zone 5 or Zone 5A prior to May 1, 2008.

Wages and benefits at Former Non-Union Sites are as follows:

6.A     Effective May 1, 2016, all new employees as well as employees with less than four (4) years of service in Area 1L, based on the anniversary date of each employee, shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | New Hire Wage Rate |
|----------------|--------------------|
| 5/1/2016 | $10.30 |
| 1/1/2017 | $10.80 |
| 1/1/2018 | $11.30 |
| 1/1/2019 | $12.30 |
| 1/1/2020 | $13.30 |

Upon completion of four (4) years of service, employees will be paid the Area 1A or 1B Master Wages Rates and Wage Increases, based upon their work location. The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees in Area 1L sites with less than 4 years earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

6.B     Health and Welfare:
Coverage for eligible employees pursuant to this Section shall be under Plan E28 (Employee Only) and Plan C28A (Composite) provided through the General Employees Trust Fund.

**PLAN E28 (EMPLOYEE ONLY)**
(See Section 1.D for description of benefits in this Plan)

**PLAN C28A (COMPOSITE)**
(See Section 1.D for description of benefits in this Plan)

The costs of the above plans as of the effective date of this Agreement are $620.43 per month for Plan E28, and $1,229.48 per month for Plan C28A.

Employees shall be covered under Employee Only Health and Welfare coverage (Plan E28) after completing twenty four (24) consecutive months at one hundred (110) hours per month. Employees shall be covered under Composite Health and Welfare coverage (Plan C28A) after thirty six (36) months at one hundred ten (110) hours per month. Employees who have qualified for Employee Only coverage will be required to work an additional twelve (12) consecutive months at one hundred ten (110) hours per month, and have completed at least thirty six (36) months of service, prior to the initial month of a Composite contribution.

Example. An employee who was hired on January 1, 2016 will be covered under Plan E28 effective February 1, 2018 (with the first Employer contribution due in January 2018 based on December 2017 hours) if he/she has worked one hundred ten (110) hours per month for twenty four (24) consecutive months, and will be covered under Plan C28A effective February 1, 2019 (with the first Employer contribution to Plan C28A due in January 2019 based on December 2018 hours) if he/she has worked one hundred ten (110) hours per month from July 2018 through December 2018.

Paid holidays, paid sick leave and paid funeral leave shall be counted as hours worked for the purpose of eligibility. Paid vacation hours shall be counted as hours worked for the purpose of eligibility unless they are paid in advance.

Employees who have already qualified for Employee Only or Composite Coverage will retain their level of benefits (with Plans E28 and C28A) as defined by the months of service indicated above. All other employees shall be eligible for Health and Welfare benefits as stated above.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E28 (Employee Only) | $620.43 | +6% | +6% | +6% |
| C28A (Composite) | $1,229.48 | +6% | +6% +VSP | +6% |

*(based on March hours)

Effective April 1, 2017 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2018 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less, and in addition the Employer will contribute the additional amount necessary to add Vision Service

Plan benefit to Plan C28A.  Effective April 1, 2019 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less.

6.C   <u>Other Benefits.</u> All other benefits shall be the same as in the Master Contract sites (Areas 1A/1B) as specified in  Section 1 (page 50).

## Section 7 – Area 1M: New and Former Non-Union Sites below 200,000 Square Feet

The definition of a New/Former Non-Union Small Site shall be a multi-tenant office building or single-tenant office building of less than 200,000 total cleanable square feet at full occupancy, which was serviced by a non-union janitorial contractor at the time of bidding. An individual building of less than 200,000 total square feet which is part of a complex or group of buildings which totals 200,000 square feet or more, and which is serviced under a contract between the Employer and a single client, shall not be covered under this Provision.

Wages and benefits at New/Former Non-Union Small Sites are as specified below.

7.A   Minimum Wage Rates
Employees in Area 1M sites shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

Based on expected increases in the California Minimum Wage, minimum wage rates for employees in Area 1M sites will be:

| Effective Date | Area 1M Wage Rate |
|---|---|
| 5/1/2016 | $10.30 |
| 1/1/2017 | $10.80 |
| 1/1/2018 | $11.30 |
| 1/1/2019 | $12.30 |
| 1/1/2020 | $13.30 |

The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees in Area 1M sites earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

7.B   Health and Welfare
Coverage for eligible employees pursuant to this Section shall be under Plan E25 provided through the General Employees Trust Fund.

### PLAN E25 (EMPLOYEE ONLY)

Indemnity: 70%/50% coverage, 100% coverage after $50,000; no annual maximum (as of 2016)

Prescriptions included as part of Indemnity Medical coverage

The cost of the plan E25 as of the effective date of this Agreement is $388.49 per month.

Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E25) after completing forty eight (48) months of service. There shall be no requirement to work a certain number of consecutive months with a certain number of hours per month.

Continuing eligibility shall be based upon working one hundred thirty (130) straight time hours per month.

Example. An employee who was hired on January 1, 2016 will be covered under the Employee Only plan (E25) effective February 1, 2020 (with the first Employer contribution in January 2020 based on December hours).

Paid vacation hours shall be counted as hours worked for the purpose of eligibility unless they are paid in advance.

For employees in these sites who currently have wages and benefits greater than what is defined above, the Employer reserves the right to transfer employee to an equal or greater benefit site in an effort to retain their current benefit status. Those employees who refuse a transfer within the same county, will be placed on the lay-off list or will adhere to the aforementioned benefits. Notwithstanding, employees current wage rate will not be affected.

In the event there is not an available position to transfer to an equal or greater benefit site, the employee may select the option stated above or be put on the layoff list. The Employer will notify the Union when it is in an uncompetitive situation due to non-union competition bidding on the site, and it is understood that this paragraph applies to this situation.

The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plan listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E25 (Employee Only) | $388.49 | +6% | +6% | +6% |

*(based on March hours)

Effective April 1, 2017, April 1, 2018, and April 1, 2019 (based on the respective March hours) the Employer shall increase its contribution for the Plan by six percent (6%) or the percentage increase of the Plan premium in that year, whichever is less.

7.C    <u>Vacation:</u> Effective May 1, 2008, employees shall be entitled to one (1) week vacation per year, with such vacation time being prorated for part-time employees.

7.D    <u>Sick Leave:</u> All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as mother, father, spouse, son, daughter, brother, sister, grandmother, grandfather, grandson, granddaughter, and registered domestic partner.

## Section 8 – Additional Provisions applying to Areas 1L/1M

The following additional provisions apply to Former Non-Union Sites in Areas 1L and 1M.

8.A     If the Union organizes a job location or has pressured the potential account to accept bids by Union firms only, the Master Agreement shall apply. In order for this section to be operative, the Union must have notified the Employer prior to the bidding process that it is through the Union's efforts that the job is being bid by signatory firms only.

8.D     Wage Rates of Employees Retained from Non-Union Contractors
        If the Employer takes over a non-union site where incumbent employee wage rates may be reduced pursuant to the New Non-Union Building provisions specified above, the Union may request a meeting with the Employer to discuss such wage rates.

## Section 9 – Area 1N: Former Zone 5, Tier 1 Buildings

The former Zone 5, Tier 1 includes buildings of 150,000 square feet or less which were bid from non-union contractors prior to May 1, 2008. No new work locations were to be bid under the provisions of Zone 5, Tier 1 after May 1, 2008.

9.A     Employees in Area 1N sites shall be paid no less than thirty cents ($0.30) above the California Minimum Wage.

        Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | Area 1N Wage Rate |
|----------------|-------------------|
| 5/1/2016 | $10.30 |
| 1/1/2017 | $10.80 |
| 1/1/2018 | $11.30 |
| 1/1/2019 | $12.30 |
| 1/1/2020 | $13.30 |

        The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees in Area 1N sites earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

9.B     Health and Welfare
        Coverage for eligible employees pursuant to this Section shall be under Plan E25
        provided through the General Employees Trust Fund.

### **PLAN E25 (EMPLOYEE ONLY)**

Indemnity: 70%/50% coverage, 100% coverage after $50,000; no annual
maximum (as of 2016)

Prescriptions included as part of Indemnity Medical coverage

The cost of the plan E25 as of the effective date of this Agreement is $388.49 per
month.

Employees shall be covered under Employee-Only Health and Welfare coverage
(Plan E25) after completing forty eight (48) months of service. There shall be no
requirement to work a certain number of consecutive months with a certain
number of hours per month.

Continuing eligibility shall be based upon working one hundred thirty (130) straight
time hours per month.

Example. An employee who was hired on January 1, 2016 will be covered under
the Employee Only plan (E25) effective February 1, 2020 (with the first Employer
contribution in January 2020 based on December hours).

Paid vacation hours shall be counted as hours worked for the purpose of eligibility
unless they are paid in advance.

For employees in these sites who currently have wages and benefits greater than
what is defined above, the Employer reserves the right to transfer employee to an
equal or greater benefit site in an effort to retain their current benefit status. Those
employees who refuse a transfer within the same county, will be placed on the
lay-off list or will adhere to the aforementioned benefits. Notwithstanding,
employees current wage rate will not be affected.

In the event there is not an available position to transfer to an equal or greater
benefit site, the employee may select the option stated above or be put on the
layoff list. The Employer will notify the Union when it is in an uncompetitive
situation due to non-union competition bidding on the site, and it is understood
that this paragraph applies to this situation.

The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plan listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E25 (Employee Only) | $388.49 | +6% | +6% | +6% |

*(based on March hours)

Effective April 1, 2017, April 1, 2018, and April 1, 2019 (based on the respective March hours) the Employer shall increase its contribution for the Plan by six percent (6%) or the percentage increase of the Plan premium in that year, whichever is less.

9.C     Sick Leave: All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as mother, father, spouse, son, daughter, brother, sister, grandmother, grandfather, grandson, granddaughter, and registered domestic partner.

## **PART FOUR – ELIGIBILITY RULES AND OTHER PROVISIONS**

### **Section 10 – Vacations**
The following provisions apply to all Vacation benefits specified in this Appendix A.

10.A   Any employee receiving vacation privileges better than those mentioned in this Agreement shall not have them reduced.

10.B   An employee must give the Employer at least thirty (30) days' notice of his desire to take a vacation at a particular time.

10.C   An employee returning from an authorized vacation shall be placed in his former job.

10.D   Prorated Vacation. After six (6) months of employment, any employee whose employment terminates as well as any employee who is laid off for lack of work, shall receive pro-rated vacation benefits on the basis of calendar months worked.

10.E   The employee's choice of a vacation period shall be based strictly on seniority and length of tenure of employment. The Employer shall post or send to each employee a sign-up sheet of vacation preference at a time mutually agreed upon and a cut-off date will be established for said vacation preference. Seniority shall not apply to choice of vacation period for those employees signing up after the cut-off date. The cut-off date shall be no later than March 1 of any calendar year.

10.F   Part-time employees shall be granted a vacation except that the vacation will be prorated on the basis of the normal hours worked by them as compared with hours of a regular full-time employee.

10.G   Time off from work for any reason not exceeding thirty (30) calendar days during any one year shall not interrupt the continuity of employment, so as to deprive an employee of his vacation rights. Absences exceeding thirty (30) calendar days shall subject the employee to a prorated vacation based on 1/12 for every thirty (30) calendar day's absence. In case of industrial accident for which the employee is receiving Workers Compensation benefits, absences not exceeding sixty (60) calendar day's during any one year shall not interrupt the continuity of employment.

10.H   Employees receiving advances on their vacation pay shall not have those hours counted toward eligibility for health insurance if they take an unpaid vacation at a later date unless otherwise agreed to by the employee and the Employer in writing.

Vacation payments shall be made on the employee's anniversary date unless the employee has requested payment at the time of the vacation period. The "Vacation Preference" form will contain information concerning the possible loss of health insurance eligibility (Section 6.E) with this method of payment.

## Section 11 – Holidays

The following provisions apply to all Holiday benefits specified in this Appendix A.

11.A    Employees who work less than full-time shall have Holiday benefits pro-rated based on hours worked.

11.B    Eligibility: All regular employees who have worked for a period not less than sixty (60) working days shall receive holiday pay at the employee's regular straight time hourly rate, even though no work is performed on the above mentioned holidays; provided, further, that such employees must work on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express permission of the Employer, or bona fide illness confirmed by a doctor's certificate.

11.C    If an employee's day off falls on a designated holiday, said employee shall receive an additional day off with pay within two (2) weeks. If a holiday falls during an employee's vacation period, the employee shall receive an additional day's vacation with pay.

11.D    When an Employer starts servicing a new account within seventy-two (72) hours of a paid holiday and the outgoing Employer does not have an obligation to pay the holiday benefit, then the incoming Employer shall be obligated to provide the holiday pay for those affected employees.

11.E    Any holiday falling on a Sunday shall be observed on the following Monday.

If a holiday falls on a Saturday, it may be celebrated either on Friday or Saturday as determined by the Employer.

11.F    If the Employer chooses to work 5 days and pay for 6 days, the sixth day is not overtime.

11.G    Any employee working on a holiday shall be paid at the rate of time and one-half (1 1/2) in addition to the regular day's pay.

11.H   If an employee replaces a regular employee who is absent for reasons other than paid vacation and sick leave, the replacement employee shall be the person to receive the holiday pay if a holiday falls within the time the replacement is working and the replacement is qualified otherwise.

## Section 12 – Sick Leave

See Appendix F-1 for Sick Leave benefits and rules for utilization of Sick Leave in all Bay Area sites.

## Section 13 – Other Benefits and Wages

The following additional provisions apply to Areas and sites in the Bay Area.

13.A   Utility Worker

Defined as an employee whose duties are shampooing of rugs by the utilization of machine operation and/or waxing as defined as a person who wet strips, seals, and finishes floors. Employees designated as a Utility Worker/Waxer shall receive an additional twenty five cents ($0.25) per hour for all hours worked. Employees who are not designated "Utility Worker" but perform the aforementioned duties shall be paid twenty five cents ($0.25) per hour above the Janitor's rate of pay for each hour performing these tasks.

This differential shall also apply to Ride On Power Sweeper.

13.B   Forepersons

Forepersons working in Santa Clara or San Mateo County shall not be paid less than $2.40 per day above the individual's Janitor's scale. Forepersons working in Alameda and Contra Costa County shall not be paid less than $2.00 per day above the individual's Janitor's scale. Forepersons shall be paid the higher rate of foreman/utility worker rate but with no pyramiding. Former working forepersons and/or utility workers shall not continue to receive the utility of foreperson premium after leaving the classification.

13.C   Minimum Wage

All employees covered under this Agreement in the Bay Area shall be paid no less than thirty cents ($0.30) per hour above the Federal Minimum Wage or California State Minimum Wage, whichever is higher.

13.D   Temporary Employee Eligibility for Health and Welfare

The hours of Temporary Employees who relieve permanent employees for paid or unpaid time off will not count for the purposes of Health and Welfare eligibility, unless the position which the temporary employee is replacing extends beyond ninety (90) days, or the temporary employee has qualified for Employee Only

coverage by working twelve consecutive months at the hours for eligibility determined by the site.

13.E   Minimum Value Coverage Pursuant to Health Care Legislation
       See Appendix F-2 to this Agreement for a description of Minimum Value Health and Welfare coverage provided pursuant to Health Care Legislation. It is understood that employee enrollment in this coverage is completely voluntary.

13.F   Children's Coverage.
       All employees covered under Employee Only plans under this Agreement (Plans E28, E33, E25, E60 in the Bay Area) may elect coverage for their children through the age of 26, for which coverage they must pay the difference between the Employer contribution toward the Employee Only plan and the cost of coverage for children. Enrollment in the Children's Coverage specified in this Section is completely voluntary and no employee shall be obligated to enroll in such Children's Coverage.

13.G   Health and Welfare Waiting Periods. The Health and Welfare waiting periods specified above shall apply to all employees, and all existing continuous length of service shall be credited toward the waiting periods. Notwithstanding the preceding sentence, an employee must become eligible for Employee Only coverage and be covered under Employee Only coverage for at least six (6) months prior to being covered under Composite coverage.

       Example: an employee is hired in an Area 1A site on July 1, 2016 with part-time hours and does not qualify for Health and Welfare benefits. This employee achieves a full-time schedule on July 1, 2018. This employees is eligible for an Employer contribution toward Employee Only coverage (Plan E28) upon completion of twelve (12) consecutive months of one hundred thirty (130) hours on July 1, 2019. Even though this employee completed twenty four (24) months of service on July 1, 2018, he/she is not eligible for an Employer contribution toward Composite coverage (Plan C28A) until January 1, 2020 (based on December hours) upon completion of six (6) months of Employee Only coverage.

       Example: an employee is hired in an Area 1C site on July 1, 2016 with full-time hours. The employee becomes eligible for an Employer contribution to Employee Only coverage (Plan E33) on July 1, 2018 after completing twenty four (24) consecutive months of one hundred thirty (130) hours. On January 1, 2019 the employee transfers to an Area 1A site. However, the employee must complete six months of coverage under Employee Only coverage (Plan E28) prior to the initial Employer contribution to Composite coverage (Plan C28A), even though the employee had completed twenty four (24) months of service at the time of the transfer.

## PART FIVE – ADDITIONAL ECONOMIC PROVISIONS

### Section 14 – Training and Industry Funds
The following contributions shall apply to all sites in the Bay Area.

14.A   Leadership Training and Education Fund
The Employer shall contribute the following amounts per straight-time hour worked or paid for into a Taft-Hartley Trust Fund, The Leadership Training and Education Fund, to be established in compliance with law which shall have two (2) Union and two (2) Employer Trustees.

| Effective Date | Contribution |
| --- | --- |
| May 1, 2016 | Two cents ($0.02) per hour |
| May 1, 2018 | Three cents ($0.03) per hour |
| May 1, 2019 | Four cents ($0.04) per hour |

14.B   Maintenance Industry Labor-Management Cooperation Trust Fund
As specified in Appendix D to this Agreement, the Employer shall contribute the following amounts per straight-time worked or paid hour into the Maintenance Industry Labor-Management Cooperation Trust Fund (MCTF) for the purposes specified in the Declaration of Trust of said Trust Fund.

| Effective Date | Contribution |
| --- | --- |
| May 1, 2016 | Three cents ($0.03) per hour |
| May 1, 2017 | Four cents ($0.04) per hour |
| May 1, 2018 | Five cents ($0.05) per hour |

### Section 15 – Window Cleaner Wage Rates

15.A   **Area 1P: Window Cleaners, Santa Clara County (former Zone 1, Area 1)**
Minimum wage rates for Window Cleaners in Area 1(N) shall be as follows:

|  | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
| --- | --- | --- | --- | --- |
| Journeyman | $17.94 | $18.54 | $19.04 | $19.44 |

Window cleaners shall earn fifty cents ($0.50) less than contract rates for their first six (6) months.

Any window cleaner required to work on or from scaffolding of any kind shall be paid a premium of one dollar ($1.00) per hour above his/her regular rate of pay. There shall be two (2) employees required on all jobs where a ladder of eighteen feet (18') or longer is used. It is expressly understood that the employee holding or protecting the base of this ladder does not have to be a window cleaner.

15.B  **Area 1Q: Window Cleaners, San Mateo County plus the City of Palo Alto from the north side or Oregon Expressway and the north side of Page Mill Road (former Zone 4, Area 1):**

Minimum wage rates for Window Cleaners in Area 1(O) shall be as follows:

| Length of Service | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| 0 - 90 days | $15.42 | $16.02 | $16.52 | $16.92 |
| 90 days - 6 months | $15.62 | $16.22 | $16.72 | $17.12 |
| 6 months - 9 months | $15.82 | $16.42 | $16.92 | $17.32 |
| 9 months - 1 year | $16.02 | $16.62 | $17.12 | $17.52 |
| Journeyman | $16.53 | $17.13 | $17.63 | $18.03 |

After completion of one (1) year of employment, Window Cleaners shall be paid at the Journeyman wage rates shown above.

15.C  **Area 1R: Window Cleaners, Alameda and Contra Costa Counties (former Zone 3, Area 9)**

Minimum wage rates for Window Cleaners in Area 1(P) shall be as follows:

| Length of Service | 5/1/2016 | 5/1/2017 | 5/1/2018 | 5/1/2019 |
|---|---|---|---|---|
| First 60 days | $15.42 | $16.02 | $16.52 | $16.92 |
| Next 90 days | $16.70 | $17.30 | $17.80 | $18.20 |
| Next 120 days | $17.96 | $18.56 | $19.06 | $19.46 |
| Next 180 days | $19.25 | $19.85 | $20.35 | $20.75 |
| Journeyman | $20.53 | $21.13 | $21.63 | $22.03 |
| Scaffold | $21.83 | $22.43 | $22.93 | $23.33 |
| Bos'n Chair | $22.13 | $22.73 | $23.23 | $23.63 |

After completion of 450 days of employment, Window Cleaners shall be paid at the Journeyman wage rates shown above. The wage rates shown above for Scaffold and Bos'n Chair shall be paid for each hour worked in those classifications.

## Section 16 – Duration

This Agreement shall be effective May 1, 2016 and shall remain in full force and effect through April 30, 2020 and shall be considered as renewed from year to year thereafter unless either party shall give written notice to the other of its desire to have the same modified or terminated, and such notice must be given at least sixty (60) days prior to May 1, 2020 or May 1 of any year thereafter.

As required by the SEIU National Industry Pension Fund, the parties shall reopen negotiations regarding Pension contributions to be effective May 1, 2019.

## **PART SIX – BAY AREA SIDE LETTERS OF UNDERSTANDING**

See Bay Area Side Letters of Understanding listed below for wages, benefits and conditions at the following locations. Wage and benefit levels shown in the Side Letters apply only to the specific worksite(s) for each Side Letter and shall apply to all Employers. The Bay Area Side Letters are published separately.

| Side Letter Number | Area Designation | Site Name |
| --- | --- | --- |
| SL1 | 1S | Genentech South San Francisco |
| SL2 | 1T | Serramonte Center |
| SL3 | 1U | Google |
| SL4 | 1V | eBay |

The parties may mutually agree to negotiate new Bay Area Side Letters during the term of this Agreement.

## <u>APPENDIX B</u>
## AREA 2: SACRAMENTO AREA ECONOMIC PROVISISONS

<u>Definition</u>
Area 2 consists of the following Counties: Sacramento, Yolo and Placer in the State of California.

Appendix B is divided into the following major Parts:

<u>Page #</u>          <u>Part</u>

P. 91          <u>Part One (5ection 1)</u>
                Part One contains economic provisions applying to Master Contract and Small Master Contract sites.

P. 98          <u>Part Two (Section 2)</u>
                Part Two contains economic provisions applying to Former Non-Union Small Sites.

P. 101         <u>Part Three (Sections 3 through 5)</u>
                Part Three contains eligibility rules and other provisions applying to all wage and benefit levels specified in Sections 1 and 2.

P. 105         <u>Part Four (Section 6)</u>
                Part Four contains a list of Sacramento Appendices specifying economic packages applying to particular sites in the Sacramento Area.

P. 106         <u>Part Five (Sections 7 through 10)</u>
                Part Five contains additional economic provisions which apply to all sites in the Sacramento Area.

## ECONOMIC AREA DESIGNATIONS – SACRAMENTO AREA

**Part One: Master and Small Master Contract Sites**

| Section | Area | Definition |
|---------|------|------------|
| 1 | 2A | Master Contract Sites |
| 1 | 2B | Small Master Contract Sites below 150,000 square feet |

**Part Two: Former Non-Union Sites**

| Section | Area | Definition |
|---------|------|------------|
| 2 | 2C | New and Former Non-Union Sites below 150,000 square feet |

**(Part Three does not contain any additional Economic Areas)**

**Part Four: List of Sacramento Appendix Sites**

| Section | Area | Definition |
|---------|------|------------|
| 6 | 2J | Appendix J – CalEPA Building, Sacramento |
| 6 | 2K | Appendix K – 300 Capitol Mall and 770 L St. Sacramento* |
| 6 | 2L | Appendix L – 11th & "L" Street Building |
| 6 | 2M | Appendix M – Lincoln Plaza and CalPERS Locations, Sacramento |
| 6 | 2N | Appendix N – Apple Inc., Elk Grove* |
| 6 | 2O | Appendix O – Union Halls |
| 6 | 2P | Appendix P – The Ziggurat, West Sacramento |
| 6 | 2Q | Appendix Q – CalSTRS, West Sacramento |
| 6 | 2R | Appendix R – EDD Building, Sacramento |
| 6 | 2T | Appendix T – AT&T Sites, Sacramento Area |

See the appropriate Sections for more exact Area definitions. The former Sacramento Appendices G and H have been renumbered to avoid confusion with the new Appendices added to the regional Northern California Maintenance Contractors Agreement.

## PART ONE – MASTER CONTRACT SITES

## Section 1 – Areas 2A/2B: Master Contract Sites and Small Master Contract Sites

Master Contract Sites include all sites in the Sacramento Area with the exception of Former Non-Union Small Sites (Area 2C) and sites covered under Sacramento Appendices.

1.A   GROUP 1 - MASTER WAGE RATES – AREAS 2A/2B
Group 1 includes all employees who had three (3) years of service or more and were earning the Master wage rate for their classification as of the Ratification date of this Agreement (June 11, 2016). The new minimum rates for the following classifications are as follows: Janitor, Working Foreperson, Day Porter, Waxer.

|  | 5/1/2016 | 1/1/2018 | 1/1/2019 | 1/1/2020 |
|---|---|---|---|---|
| Janitor | $11.25 | $11.90 | $12.65 | $13.40 |
| Working Foreperson | $11.90 | $12.55 | $13.30 | $14.05 |
| Day Porter | $11.30 | $11.95 | $12.70 | $13.45 |
| Waxer | $12.60 | $13.25 | $14.00 | $14.75 |

For employees at the Group 1 Master Wage rate, any increases above those rates will be at the discretion of the Employer only.

1.B   GROUP 2 WAGE INCREASES – AREAS 2A/2B
Group 2 Wage Increases apply to employees with three (3) or more years of service earning above the Master Wage for their classification ($10.75 for Janitor) as of May 1, 2016 (prior to the negotiated Group 1 wage increase of May 1, 2016).

|  | 5/1/2016 | 1/1/2018 | 1/1/2019 | 1/1/2020 |
|---|---|---|---|---|
| Wage Increase | $0.50 | $0.35 | $0.30 | $0.30 |

On each contract wage increase date, employees with 3 years or more of service earning above the Master Wage Rate will receive the Group 2 wage increase shown above, or go the Group 1 Master Wage rate then in effect, whichever will be a higher wage rate. Employees who go to the Group 1 Wage Rate as stated above will thereafter receive the future Group 1 Master Wage rates.

Example: a Janitor with three (3) or more years of service who earned $10.90 per hour as of May 1, 2016 would receive the $0.50 increase effective 5/1/2016 and go to a wage rate of $11.40; on 1/1/2018 this employee would go to the Master Wage rate of $11.90 (an increase of $0.50), and thereafter would be at the Group 1 wage rates.

1.C   NEW HIRE WAGE RATES – AREAS 2A/2B

Effective May 1, 2016, all new employees as well as employees with less than three (3) years of service in Areas 2A/2B, shall be paid no less than twenty five cents ($0.25) above the California Minimum Wage.

Based on expected increases in the California Minimum Wage, minimum wage rates for New Hires will be:

| Effective Date | New Hire Wage Rate |
| --- | --- |
| 5/1/2016 | $10.25 |
| 1/1/2017 | $10.75 |
| 1/1/2018 | $11.25 |
| 1/1/2019 | $12.25 |
| 1/1/2020 | $13.25 |

Effective every January 1st through 1/1/2019, employees who reach 3 years of service during the preceding year will go to the Group 1 Master Wage rate then in effect. Example: a Janitor who reaches 3 years of service on 10/1/2016 will go to the Group 1 Master Wage rate of $11.25 on 1/1/2017. The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above New Hire wage rates. Wage increases for employees with less than 3 years earning above the New Hire rates are not mandatory and are at the discretion of the Employer.

1.D   HEALTH AND WELFARE PLANS – AREA 2A

Area 2A includes all buildings of one hundred fifty thousand (150,000) total square feet or greater; a complex of buildings under same owner, manager or client contract shall be counted as single building for purpose of this provision.

Coverage for eligible employees in Area 2A shall be under the following plans provided through the General Employees Trust Fund. Eligibility for particular plans is based on Date of Hire and Length of Service, as specified in Section 4.E below.

(1)   **PLAN E33 (EMPLOYEE ONLY MEDICAL)**

Indemnity: 80%/50% coverage, 100% coverage after $20,000; no annual maximum (as of 2016)

Prescriptions included as part of Indemnity Medical coverage
Life Insurance: $10,000 benefit

The cost of Plan E33 as of the effective date of this Agreement is $418.24 per month.

(2)   **PLAN C30 (COMPOSITE INDEMNITY WITH DENTAL)**

Indemnity Plan MP115: no annual maximum (as of 2016)

UHC Dental Plan 3
Prescription Solutions Plan H: $10 generic prescription, $30 brand-name
Life Insurance: $10,000 benefit

The cost of Plan C30 as of the effective date of this Agreement is $944.92 per month.

Effective May 2019 (based on March 2019 hours), Dental coverage in Plan C30 will be modified to UHC Plan 1.

(3)   **PLAN C29 (COMPOSITE WITH KAISER OPTION AND DENTAL)**

Medical
Kaiser $25 Non-Deductible Plan (with $100 Emergency Room)
Indemnity Plan MP115: no annual maximum (as of 2016)

UHC Dental Plan 3
Prescription Solutions Plan H: $10 generic prescription, $30 brand-name
Life Insurance: $10,000 benefit

The cost of Plan C29 as of the effective date of this Agreement is $1,207.37 per month.

Effective May 2019 (based on March 2019 hours), Dental coverage in Plan C29 will be modified to UHC Plan 1.

1.E   HEALTH AND WELFARE ELIGIBILITY – AREA 2A

(1)   Eligibility for Current Employees covered under Plan C29

Current employees in Area 2A who had sixty (60) months of service or more as of the Ratification date of the prior Agreement (July 17, 2012) and had selected coverage under Plan C29 (Composite Plan with Kaiser Option and Dental) may continue that coverage based upon the monthly eligibility requirements specified below.

Employees may transfer from Plan C29 to Plan C30 (Composite Indemnity Plan with Dental), but may not transfer back to Plan C29 in the future.

(2)     Eligibility for Current Employees covered under Plan C30

Current employees in Area 2A hired prior to May 1, 2016 who have coverage under Plan C30 (Composite Indemnity Plan with Dental) may elect to transfer to Plan C29 until May 2017, but must pay the full additional premium amount over the Employer contribution toward Plan C30; or they may continue coverage under Plan C30 based upon the monthly eligibility requirements specified below.

Employees may later transfer from Plan C29 to Plan C30 (Composite Indemnity Plan), but may not transfer back to Plan C29 after that.

(3)     Eligibility for All Other Employees

Employee-Only coverage. Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E33) after completing twelve (12) consecutive months at one hundred thirty (130) hours per month.

Composite Coverage. Employees shall be covered under Composite Health and Welfare coverage (Plan C30 or C29) after thirty (30) months of service.

The employee will be required to work one one hundred thirty (130) hour per month for the six (6) months prior to the initial month of a Composite contribution. If the employee does not work one hundred thirty (130) hours in one (1) of the last six (6) months then the employee will restart his/her six (6) consecutive month requirement in the following month in order to qualify for a Composite contribution.

Upon first becoming eligible for Composite coverage, an employee may elect coverage under Plan C30 (Composite Indemnity Plan with Dental) or Plan C29 (Composite Plan with Kaiser Option and Dental), however if the employees elects coverage under Plan C29 he/she must pay the full additional premium amount over the Employer contribution toward Plan C30. Employees may later transfer from Plan C29 to Plan C30, but may not transfer back to Plan C29 after that.

Example. An employee who is hired on January 1, 2017 will be covered under the Employee Only plan (Plan E33) effective February 1, 2018 (with the first Employer contribution due in January 2018 based on December hours) if he/she worked one hundred thirty (130)  hours per month from January through December 2017. This employee will be eligible for Composite coverage (Plan C30 or Plan C29) under the conditions stated above effective August 1, 2019 (with the first Employer contribution due in

July 2019 based on June hours) if he/she worked one hundred thirty (130) hours per month from January through June 2019).

Continuing eligibility shall be based upon working one hundred thirty (130) hours per month. Paid holidays, paid vacation, and all other paid time shall be counted as hours worked for the purpose of eligibility.

President's Day or Washington's Birthday shall be considered as paid time for the purpose of Health and Welfare eligibility.

1.F    HEALTH AND WELFARE PLANS – AREA 2B
Area 2B includes all buildings of less than one hundred fifty thousand (150,000) total square feet; a complex of buildings under same owner, manager or client contract shall be counted as single building for purpose of this provision.

Coverage for eligible employees in Area 2B, except as noted in Section 1.G(1) below, shall be under Plan E33 provided through the General Employees Trust Fund.

See Section 1.D(1) for a description of the benefits under Plan E33. The cost of Plan E33 as of the effective date of this Agreement is $418.24 per month.

1.G    HEALTH AND WELFARE ELIGIBILTY – AREA 2B

(1)    Eligibility for Current Employees
Current employees in Area 2B hired prior to May 1, 2016 who have already qualified for Composite Health and Welfare coverage shall covered under Plan C30 (Composite Indemnity Plan with Dental).

Current employees in Area 2B who had not qualified for Composite coverage as of May 1, 2012 shall qualify only for Employee Only coverage and not for Composite coverage.

(2)    Eligibility for New Employees
Employees in Area 2B hired on or after May 1, 2012 shall be covered under Plan E33 after completing twenty four (24) months of service. The employee will be required to work one hundred thirty (130) hours per month for the twelve (12) months prior to the initial month of an Employee Only contribution.

Example. An employee who is hired on January 1, 2017 will be covered under the Employee Only plan (Plan E33) effective February 1, 2019 (with the first Employer contribution due in January 2019 based on December

hours) if he/she worked one hundred thirty (130)  hours per month from January through December 2018.

Continuing eligibility shall be based upon working one hundred thirty (130) hours per month. Paid holidays, paid vacation, and all other paid time shall be counted as hours worked for the purpose of eligibility.

President's Day or Washington's Birthday shall be considered as paid time for the purpose of Health and Welfare eligibility.

The Employer shall use its best efforts to transfer employees who are affected by this Section, and who so request, to sites covered in Area 2A (150,000 square feet or greater) where they can qualify for Composite Health and Welfare coverage.

When it becomes necessary to transfer employees from Area 2B sites, the employer reserves the right to transfer employees to an equal or greater benefit site in an effort to retain their current benefit status. Those employees who refuse a transfer will be placed on the lay-off list. Notwithstanding, employees current wage rate will not be affected. It is understood that this paragraph applies due to client request for reduction or when the site is in an uncompetitive situation due to non-union bidding on the site.

1.H   <u>HEALTH AND WELFARE EMPLOYER CONTRIBUTIONS – AREAS 2A/2B</u>

The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plans listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E33 (Employee Only) | $418.24 | +6% | +4% | +4% |
| C30 (Comp. w/Dental) | $944.92 | +6% | +4% | +4%+UHC 1 |
| C29 (Comp. w/Kaiser/Dental)** | $1,037.37 | +6% | +4% | +4%+UHC 1 |
| C29 (Comp. w/Kaiser/Dental)*** | $944.92 | +6% | +4% | +4%+UHC 1 |

*(based on March hours)
**(for employees who had elected C29 coverage prior to May 1, 2016)
***(for employees who had not elected C29 coverage prior to May 1, 2016)

Effective April 1, 2017 (based on March hours) the Employer shall increase its contribution for each Plan by six percent (6%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2018 (based on March hours)

the Employer shall increase its contribution for each Plan by four percent (4%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2019 (based on March hours) the Employer shall increase its contribution for each Plan by four percent (4%) or the percentage increase of the Plan premium, whichever is less, and in addition for Plans C30 and C29 the Employer will contribute the additional amount necessary to change from UHC Plan 3 to UHC Plan 1.

1.I    PAID VACATIONS – AREAS 2A/2B
All regular employees who have been in the employ of the Employer for at least one (1) year, shall be entitled to one (1) week of vacation with pay. Such employees shall be entitled to vacation with pay on their anniversary dates of employment. Subsequently, eligibility shall continue to be based on an employee's anniversary date of employment. Employees shall be entitled to one (1) week of vacation annually upon completion of one (1) year of service. Upon completion of four (4) years of service, all regular employees shall be entitled to two (2) weeks of vacation annually. Upon completion of six (6) years of service, all regular employees shall be entitled to three (3) weeks of vacation annually.

See Section 3 (page 101) for Vacation eligibility rules.

1.J    PAID HOLIDAYS – AREAS 2A/2B
All employees in Areas 2A/2B shall be entitled to the following paid holidays: New Year's Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

See Section 4 (page 102) for Holiday eligibility rules.

1.K    PAID SICK LEAVE AND PAID/UNPAID FUNERAL LEAVE
All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

Immediate family shall be described as parent, sibling, child, spouse, grandchild or grandparent, and registered domestic partner.

In addition to the use of Sick Leave for funeral leave as stated above, if a death occurs in an employee's immediate family as defined above, the employee shall be entitled to three (3) days funeral leave, without pay, upon management approval.

## PART TWO – NEW AND FORMER NON-UNION SITES

## Section 2 – Area 2C: New/Former Non-Union Small Sites

The following provisions shall apply to any building serviced by a non-union contractor which is bid by a signatory Employer on or after May 1, 2012. These provisions also apply to buildings under one hundred thousand (100,000) square feet bid by signatory Employers under the Area 2W (New Non-Union Small Sites) provisions of the prior Agreement effective June 1, 2008 through April 30, 2012.

If the Union organizes a job location or has pressured the potential account to accept bids by Union firms only, the Master Agreement shall apply. In order for this section to be operative, the Union must have notified the Employer prior to the bidding process that it is through the Union's efforts that the job is being bid by signatory firms only.

This Section applies only to buildings totaling below one hundred fifty thousand (150,000) square feet; a complex of buildings under same owner, manager or client contract is counted as single building for purpose of this provision.

Employees at buildings covered under this Section 3 shall receive no less than the following wages and benefits:

2.A     Minimum Wage Rates
        Employees in Area 2C sites shall be paid no less than twenty five cents ($0.25) above the California Minimum Wage.

        Based on expected increases in the California Minimum Wage, wage rates for Area 2C sites will be:

|        Effective Date | New Hire Wage Rate |
|-----------------------|--------------------|
| 5/1/2016              | $10.25             |
| 1/1/2017              | $10.75             |
| 1/1/2018              | $11.25             |
| 1/1/2019              | $12.25             |
| 1/1/2020              | $13.25             |

        The parties recognize that the Governor of California has the authority to delay increases in the State Minimum Wage up to 2 times due to economic recession, which would affect the above Area 2C wage rates. Wage increases for employees at Area 2C sites more than $0.25 above the Minimum Wage are not mandatory and are at the discretion of the Employer.

2.B     Health and Welfare

Employees shall be covered under Employee-Only Health and Welfare coverage (Plan E25) after completing four (4) years of continuous employment. The employee will be required to work one hundred thirty (130) hours per month for the twelve (12) months prior to the initial month of an Employee Only contribution.

The benefits under Plan E25 are as follows:

### PLAN E25 (EMPLOYEE ONLY)

Indemnity: 70%/50% coverage, 100% coverage after $50,000; no annual maximum (as of 2016)

Prescriptions included as part of Indemnity Medical coverage

The cost of the above plan E25 as of the effective date of this Agreement is $388.49 per month.

Continuing eligibility shall be based upon working one hundred thirty (130) hours per month. Paid vacation hours shall be counted as hours worked for the purpose of Health and Welfare eligibility.

Example. An employee who was hired on January 1, 2016 will be covered under the Employee Only plan (E33) effective February 1, 2020 (with the first Employer contribution in January 2020 based on December hours), if he/she worked one hundred thirty (130) hours per month from January 2019 through December 2019.

When it becomes necessary to transfer employees from former non-union small sites, the employer reserves the right to transfer employees to an equal or greater benefit site in an effort to retain their current benefit status. Those employees who refuse a transfer will be placed on the lay-off list. Notwithstanding, employees current wage rate will not be affected. It is understood that this paragraph applies due to client request for reduction or when the site is in an uncompetitive situation due to non-union bidding on the site.

The Employer shall contribute up to the following monthly amounts effective the dates listed for the GETF Plan listed in this Section. If the premium cost of a Plan is less than the specified Employer contribution at any time, the Employer is only obligated to pay the premium cost. Any amount of the premium cost above the Employer contribution shall be paid by eligible employees through payroll deduction.

| Plan Number | 5/1/2016 | 4/1/2017* | 4/1/2018* | 4/1/2019* |
|---|---|---|---|---|
| E25 (Employee Only) | $388.49 | +6% | +4% | +4% |

*(based on March hours)

Effective April 1, 2017 (based on March hours) the Employer shall increase its contribution for Plan E25 by six percent (6%) or the percentage increase of the Plan premium, whichever is less. Effective April 1, 2018 and April 1, 2019 (based on March hours) the Employer shall increase its contribution for Plan E25 by four percent (4%) or the percentage increase of the Plan premium for that year, whichever is less.

2.C     Vacations
        Employees at sites covered under this Section shall accrue vacation at a rate of 1 week per year with such vacation time being prorated for part time employees.

        See Section 3 (page 101) for Vacation eligibility rules.

2.D     PAID SICK LEAVE AND PAID/UNPAID FUNERAL LEAVE
        All sick leave provided under this Agreement shall be in compliance with the California Healthy Families, Healthy Workplaces Act of 2014 and as specified in Appendix F-1 to this Agreement.

        If a death occurs in the immediate family of an employee, he/she shall receive three (3) days funeral leave which shall be deducted from any earned sick leave. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time.

        Immediate family shall be described as parent, sibling, child, spouse, grandchild or grandparent, and registered domestic partner.

        In addition to the use of Sick Leave for funeral leave as stated above, if a death occurs in an employee's immediate family as defined above, the employee shall be entitled to three (3) days funeral leave, without pay, upon management approval.

2.E     Wage Rates of Employees Retained from Non-Union Contractors
        Upon the Employer taking over a non-union site where incumbent employee wage rates may be reduced by this provision, the Union may request a meeting with the Employer to discuss such wage rates.

## PART THREE – ELIGBILITY RULES AND OTHER PROVISIONS

The eligibility rules and other provisions in Sections 3 through 5 apply to all sites in the Sacramento Area. See Sections 1 (page 91) and 2 (page 98) for eligibility rules applying to certain types of sites.

## Section 3 – Vacations
The following provisions apply to all Vacation benefits specified in this Appendix B.

3.A    Any employee receiving vacation privileges better than those mentioned in this Agreement shall not have them reduced.

3.B    An employee must give the Employer at least thirty (30) days' notice of his/her desire to take a vacation at a particular time.

3.C    An employee returning from an authorized vacation shall be placed in his/her former job.

3.D    <u>Prorated Vacation</u>. After six (6) months of employment, any employee whose employment terminates as well as any employee who is laid off for lack of work, shall receive pro-rated vacation benefits on the basis of calendar months worked.

3.E    October 1, 1992 shall be considered the earliest start date for vacation accrual for all employees, except for employees at certain Sacramento Appendix sites.

3.F    When two or more employees are seeking vacation time off not already reserved on the same dates and the Employer is unable to accommodate all vacation requests, the most senior employee (provided the Employer determines that it is able to grant his/her vacation request) shall be granted the vacation time off.

3.G    Vacation time off may be accumulated by carrying over one (1) year maximum, however this provision shall not cause any employee to lose vacation accumulated as of the effective date of this Agreement. Previously paid vacation time will count toward hours worked.

3.H    Upon thirty (30) days' notice, an employee may receive his/her accrued vacation pay on the payday immediately preceding his/her anniversary date of employment; or the employee may notify the Employer to pay his/her vacation pay on the payday immediately preceding the date on which he/she starts his/her vacation time off. For each week of such vacation, regular employees shall be paid an amount equal to average earnings for weeks worked. All paid hours shall be counted as hours worked for the purpose of vacation calculation.

3.I    Employees shall be allowed to use earned vacation in a minimum of three day increments.

3.J    Vacation payments shall be made by separate check.

## Section 4 – Holidays

The following provisions apply to all Holiday benefits specified in this Appendix B.

4.A    Employees who work less than full-time shall have Holiday benefits pro-rated based on hours worked.

4.B    Eligibility: All regular employees who have worked for a period not less than sixty (60) working days shall receive holiday pay at the employee's regular straight time hourly rate, even though no work is performed on the above mentioned holidays; provided, further, that such employees must work on both the last regular working day immediately preceding the holiday and on the first regular working day following the holiday and unless the employee so works he shall receive no pay for such holiday unless such absence on the regular working day before and after said holidays is due to the express permission of the Employer, or bona fide illness confirmed by a doctor's certificate.

4.C    If an employee's day off falls on a designated holiday, said employee shall receive an additional day off with pay within two (2) weeks. If a holiday falls during an employee's vacation period, the employee shall receive an additional day's vacation with pay.

4.D    When an Employer starts servicing a new account within seventy-two (72) hours of a paid holiday and the outgoing Employer does not have an obligation to pay the holiday benefit, then the incoming Employer shall be obligated to provide the holiday pay for those affected employees.

4.E    Any employee receiving a greater number of holidays than those named in this Appendix B, excluding those working under site-specific agreements, shall retain such greater number of holidays.

4.F    Any employee working on a holiday shall be paid at straight time (1x) in addition to the regular holiday pay.

4.G    Any holiday falling on either a Sunday or Monday may be celebrated either on Sunday or Monday, at the option of the Employer. A holiday falling on a Friday or Saturday may be celebrated on Friday or Sunday.

4.H    If a building closes during an unpaid holiday and only a partial crew works, seniority shall be waived and available work will be spread throughout the crew based on skills, ability and availability.

## Section 5 – Other Benefits and Wages

5.A    <u>Minimum Wage</u>
All employees covered under this Agreement in the Sacramento Area shall be paid no less than twenty five cents ($0.25) per hour above the Federal Minimum Wage or California State Minimum Wage, whichever is higher.

5.B    <u>Temporary Employee Eligibility for Health and Welfare</u>
Temporary Employees' hours who relieve permanent employees for paid or unpaid time off will not count for the purposes of Health & Welfare eligibility, unless the position which the temporary employee is replacing extends beyond ninety (90) days, or the temporary employee has qualified for Employee Only coverage by working twelve consecutive months at the hours for eligibility determined by the site.

5.C    <u>Minimum Value Coverage Pursuant to Health Care Legislation</u>
See Appendix F-2 to this Agreement for a description of Minimum Value Health and Welfare coverage provided pursuant to Health Care Legislation. It is understood that employee enrollment in this coverage is completely voluntary.

5.D    <u>Children's Coverage</u>.
All employees covered under Employee Only plans under this Agreement (Plans E25, E33, E60 in the Sacramento Area) may elect coverage for their children through the age of 26, for which coverage they must pay the difference between the Employer contribution toward the Employee Only plan and the cost of coverage for children. Enrollment in the Children's Coverage specified in this Section is completely voluntary and no employee shall be obligated to enroll in such Children's Coverage.

5.E    <u>Health and Welfare Waiting </u>Periods. The Health and Welfare waiting periods specified above shall apply to all employees, and all existing continuous length of service shall be credited toward the waiting periods. Notwithstanding the preceding sentence, an employee must become eligible for Employee Only coverage and be covered under Employee Only coverage for at least six (6) months prior to being covered under Composite coverage.

Example: an employee is hired in an Area 2A site on July 1, 2016 with part-time hours and does not qualify for Health and Welfare benefits. This employee achieves a full-time schedule on July 1, 2018. This employees is eligible for an Employer contribution toward Employee Only coverage (Plan E33) upon

completion of twelve (12) consecutive months of one hundred thirty (130) hours on July 1, 2019. Even though this employee completed thirty (30) months of service on January 1, 2019, he/she is not eligible for an Employer contribution toward Composite coverage (Plan C30 or C29) until January 1, 2020 (based on December hours) upon completion of six (6) months of Employee Only coverage.

Example: an employee is hired in an Area 2B site on July 1, 2016 with full-time hours. The employee becomes eligible for an Employer contribution to Employee Only coverage (Plan E33) on July 1, 2018 after completing twenty four (24) consecutive months of one hundred thirty (130) hours. On March 1, 2019 the employee transfers to an Area 2A site. However, the employee must complete six months of coverage under Employee Only coverage (Plan E33) prior to the initial Employer contribution to Composite coverage (Plan C30 or C29), even though the employee had completed thirty (30) months of service at the time of the transfer.

## PART FOUR – SACRAMENTO APPENDIX SITES

## Section 6 – List of Sacramento Appendix Sites

See Sacramento Appendices listed below for wages and benefits at the following locations. Wage and benefit levels shown in the Appendices apply only to the specific worksite(s) for each Appendix and shall apply to all Employers. The Sacramento Appendices are published separately.

| Area | Appendix | Site Name or Address |
|------|----------|---------------------|
| 2J | Appendix J | CalEPA Building, Sacramento |
| 2K | Appendix K | 300 Capitol Mall and 770 L St., Sacramento |
| 2L | Appendix L | 11th & L Street Building, Sacramento |
| 2M | Appendix M | Lincoln Plaza and CalPERS Locations, Sacramento |
| 2N | Appendix N | Apple Inc., Elk Grove |
| 2O | Appendix O | Union Halls |
| 2P | Appendix P | The Ziggurat, West Sacramento |
| 2Q | Appendix Q | CalSTRS, West Sacramento |
| 2R | Appendix R | EDD Building, Sacramento |
| 2T | Appendix T | AT&T Locations, Sacramento Area |

The parties may mutually agree to negotiate new Sacramento Appendices during the term of this Agreement.

## PART FIVE – GENERAL PROVISIONS

### Section 7 – Training and Industry Funds
The following contributions shall apply to all sites in the Sacramento Area:

7.A   Leadership Training and Education Fund
  The Employer shall contribute the following amounts per straight-time hour worked or paid for into a Taft-Hartley Trust Fund, The Leadership Training and Education Fund, to be established in compliance with law which shall have two (2) Union and two (2) Employer Trustees.

  | Effective Date | Contribution |
| --- | --- |
| May 1, 2016 | One cent ($0.01) per hour |

7.B   Maintenance Industry Labor-Management Cooperation Trust Fund
  As specified in Appendix D to this Agreement, the Employer shall contribute the following amounts per straight-time worked or paid hour into the Maintenance Industry Labor-Management Cooperation Trust Fund (MCTF) for the purposes specified in the Declaration of Trust of said Trust Fund.

  | Effective Date | Contribution |
| --- | --- |
| May 1, 2016 | One cent ($0.01) per hour |
| July 1, 2016 | Three cents ($0.03) per hour |
| May 1, 2017 | Five cents ($0.05) per hour |

### Section 8 – Uniforms
For employees required to wear safety shoes, the Employer shall provide such shoes or reimburse employees for the full cost of their purchase, up to a maximum cost of $50 (fifty dollars) per pair.

### Section 9 – Maintenance of Greater Benefits
Any employee receiving a benefit level greater than those indicated above, except for employees working under site-specific agreements, shall continue to receive such greater benefit level.

### Section 10 – Duration
This Agreement shall be effective May 1, 2016 and shall remain in full force and effect through April 30, 2020 and shall be considered as renewed from year to year thereafter unless either party shall give written notice to the other of its desire to have the same modified or terminated, and such notice must be given at least sixty (60) days prior to May 1, 2020 or May 1 of any year thereafter.

## APPENDIX C
## NATIONAL INDUSTRY PENSION FUND APPENDIX FOR COLLECTIVE BARGAINING AGREEMENTS BETWEEN EMPLOYERS AND SEIU LOCALS

### Section 1.   COVERAGE

The ("Employer"), agrees to make periodic contributions on behalf of all employees covered by the Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund ("Fund") in the amounts specified in Section 3 below.

### Section 2.   TERM

The Employer agrees to become and remain a participating employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extensions thereof.

### Section 3.   CONTRIBUTIONS

(a)(1) The Employer agrees to contribute to the Fund the amounts referred to below per paid hour for all eligible employees.

(a)(2)  See Appendix A and the Bay Area Side Letters for pension contributions for employees in the Bay Area, if any. The effective date of pension contributions in the Bay Area shall be May 1, 2016 except where stated otherwise.

(a)(3)  See the Sacramento Appendices for pension contributions for employees in the Sacramento Area, if any. The effective date of pension contributions in the Sacramento Area shall be May 1, 2016 except where stated otherwise.

(b)    Contributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine

(c)    Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Fund or their designee.

(d)    Eligible employees shall be those who (1) work nineteen (19) or more hours per week and have been employed by the Employer for ninety (90) days or (2) casual or temporary employees that have worked 1000 hours within a twelve month period. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Fund. Any employee who has completed the applicable probationary period stated above as of the effective date of the Collective

Bargaining Agreement shall have contributions made on their behalf to the Fund beginning on the effective date of the Agreement without the necessity of meeting any additional eligibility requirement. For those employees who have not completed the applicable probationary period as of the effective date, the Employer shall begin to make contributions beginning with the month following the month during which the employee becomes an eligible employee.

## Section 4.   TRUST AGREEMENT

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may from time to time be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that agreement, including collection policies, receipt of which is hereby acknowledged. The Employer hereby designates the Employer members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board

## Section 5.   COOPERATION

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature, and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act.

## Section 6.   APPROVAL BY TRUSTEES

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided. Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of a Collective Bargaining Agreement. The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

## Section 7.   MISCELLANEOUS

In the event of any inconsistency between this appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

## Section 8. REHABILITATION PLAN

The parties acknowledge that the SEIU National Industry Pension Fund has been certified to be critical status and has adopted a rehabilitation plan containing two (2) schedules of benefit reductions and supplemental employer contributions for which no benefit credit

is given, under the authority of Section 305(b) of ERISA. The bargaining parties adopt the Preferred Schedule of the rehabilitation plan for the Fund. Pursuant to that Preferred Schedule, effective May 1, 2012, the Employer agrees to make base contributions to the Fund for which benefit credit shall be given as stated above, and in addition, supplemental contributions as required by the Preferred Schedule percentages based upon said base rate of contributions per hour worked or paid, for which no benefit credit will be given.

**FOR THE EMPLOYERS:**

By: _____

Date: ___4/22/2017___

**FOR THE UNION:**

**Service Employees International Union, United Service Workers West**

By: _____

Date: ___4 / 17 / 2017___

**APPENDIX D**
**MAINTENANCE INDUSTRY LABOR-MANAGEMENT COOPERATION TRUST FUND**

1.    Effective May 1, 2016, each Employer signatory to this Agreement shall contribute the amounts specified in Appendix A (Section 14.B) and Appendix B (Section 7.B) for each straight-time hour paid for or worked into the Maintenance Industry Labor-Management Cooperation Trust Fund ("Trust") which was established in January 1999. Said contributions shall be subject to, and used solely for the purposes set forth in the Declaration of Trust establishing the Maintenance Industry Labor Management Cooperation Trust Fund dated January 1, 1999 ("Declaration of Trust") and any amendments thereto.

2.    Said Trust and the Employers' obligations to make contributions to said Trust as provided in paragraph 1 of this Appendix D shall continue through, but not beyond the earlier of the following dates: (1) the expiration date of the Collective Bargaining Agreement to which this Appendix D is attached, including any pre-impasse extensions thereof; or (2) the date on which such Trust is terminated pursuant to Article VIII, Section 8.1 of the Declaration of Trust.

3.    The Employers' contributions to the Trust shall be used solely for the purposes set forth in Article I, Section 1.2 of said Declaration of Trust.

**FOR THE EMPLOYERS:**           **FOR THE UNION:**

                                      **Service Employees International Union, United Service Workers West**

By: _____    By: _____

Date: _____    Date: _____

## APPENDIX E
## MINORITY BUSINESS ENTERPRISE SUBCONTRACTORS

In addition to the other provisions of this Agreement, the Union and the Employer hereby agree to permit subcontracting by the Employer in the geographic areas covered by the Northern California Maintenance Contractors Agreement ("Master Agreement") under the following conditions:

(1)     The Employer's client for the work to be subcontracted requires that the work be performed by a Minority Business Enterprise (MBE), the Employer does not satisfy the MBE requirement, and the following conditions will be permitted only while the MBE requirement is in effect;

(2)     For sites or 100,000 square feet or more, the Subcontractor must be signatory to the Master Agreement and perform all work under the terms and conditions of the Master Agreement. For sites of less than 100,000 square feet, if the Subcontractor is not already a signatory Employer, the Subcontractor shall be required to sign and adhere to the Master Agreement only for the sites to be subcontracted pursuant to this Side Letter and shall provide least the following total economic package: minimum wage rate thirty cents ($0.30) above minimum wage, and twenty five cents ($0.25) wage increase each year upon the employee's anniversary date.

The Employers further agree that there will be no claim filed under ARTICLE XXV – MOST FAVORED NATIONS due to this provision.

**FOR THE EMPLOYERS:**

By: _____

Date: ___4/22/2017___

**FOR THE UNION:**

**Service Employees International Union, United Service Workers West**

By: _____

Date: ___4/17/2017___

**APPENDIX F**
**BENEFIT MODIFICATIONS PURSUANT  TO LEGISLATION**

**APPENDIX F-1**
**SICK LEAVE**

**CALIFORNIA HEALTHY WORKPLACES, HEALTHY FAMILIES ACT OF 2014**

Effective July 1, 2015, the following shall modify and supplement all provisions of the Northern California Maintenance Contractors Agreement ("the Master Agreement") to bring the Master Agreement into compliance with the California Healthy Workplaces, Healthy Families Act of 2014 ("HWHFA").  This Appendix F is intended to bring the Master Agreement into HWHFA compliance, but to leave all provisions of the Master Agreement unchanged to the extent that a change is not necessary to comply with the HWHFA.

1.  Bay Area Master Contract Sites of 150,000 square feet or greater (Areas 1A and 1B, and Areas  1C and  1D for employees hired prior to May 1, 2012) and New/Former  Non-Union Sites of 200,000 square feet or greater (Area 1L). Employees in these sites shall accrue Sick Leave based upon the following.

   (a)  First (1st) year of employment. Effective July 1, 2015, an employee who works for thirty (30) or more days within a year from the commencement of his or her employment is entitled to paid sick days in accordance with California law. An employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked.

   An employee's total accrual of paid sick leave in the first (1st) year of employment shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment.

   An employee's use of paid sick leave shall be limited to twenty (24) hours or three (3) days, whichever is greater, in the first (1st) year of employment.

   (b)  Second (2nd) year of employment. An employee shall be entitled to two (2) days of Sick Leave at the beginning of the second (2nd) year of employment and shall be entitled to use such two (2) days of Sick Leave immediately, or may carry over all or part of such two (2) days of Sick Leave to the following year of employment.

   In addition, effective July 1, 2015, an employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked, in addition to any sick leave carried over from the first (1st) year of employment as

stated above in Section 1(a). An employee's total accrual of paid sick leave in the second (2nd) year of employment (including both the accrual based on hours worked and the two (2) days of sick leave entitlement at the beginning of the year) shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment.

An employee's use of paid sick leave shall be limited to twenty (24) hours or three (3) days, whichever is greater, in the second (2nd) year of employment.

(c)     Third (3rd) year of employment. An employee shall be entitled to three (3) days of Sick Leave at the beginning of the third (3rd) year of employment, and shall be entitled to use such three (3) days of Sick Leave immediately, or may carry over all or part of such three (3) days of Sick Leave to the following year of employment.

In addition, effective July 1, 2015, an employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked, in addition to any sick leave carried over from the second (2nd) year of employment. An employee's total accrual of paid sick leave in the third (3rd) year of employment (including both the accrual based on hours worked and the three (3) days of sick leave entitlement at the beginning of the year) shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment.

An employee's use of paid sick leave in the third (3rd) year of employment shall be limited to forty (40) hours or five (5) days, whichever is greater.

(d)     Fourth (4th) and succeeding years of employment. An employee shall be entitled to three (3) days of Sick Leave at the beginning of the fourth (4th) or succeeding year of employment, and shall be entitled to use such three (3) days of Sick Leave immediately, or may carry over all or part of such three (3) days of Sick Leave to the following year of employment.

In addition, effective July 1, 2015, an employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked, in addition to any sick leave carried over from the previous year of employment. An employee's total accrual of paid sick leave in the fourth (4th) or succeeding year of employment (including both the accrual based on hours worked and the three (3) days of sick leave entitlement at the beginning of the year) shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment.

An employee's use of paid sick leave in the fourth (4th) or succeeding year of employment shall be limited the greater of the following:

a.  three (3) days or twenty four (24) hours, whichever is greater; or

b.  sick leave accrued in accordance with the contractual provisions, as follows:

    i.  any sick leave accrued and unused as of July 1, 2015 (to a maximum of 30 days);

    ii.  five (5) days after three (3) years of employment, less any sick leave previously used;

    iii.  eight (8) days after four (4) years of employment, less any sick leave previously used;

    iv.  eleven (11) days after five (5) years of employment, less any sick leave  previously used;

    v.  after each succeeding year after five (5) years of employment, an employee is entitled an additional three (3) days of sick leave (as provided either under the contractual provision or under the HWHFA accrual, but not both), less any sick leave previously used, to a maximum of thirty (30) days, and may use all such accrued sick leave.

If an employee's accrued sick leave at any time falls below forty eight (48) hours, the employee shall resume accruing sick leave at the rate of one (1) hour per every thirty (30) hours to a maximum of forty eight (48) hours, or until the contractual accrual specified above exceeds the accrual required under HWHFA.

(e)  At sites covered under Bay Area Side Letters which do not specify different Sick Leave benefits, employees shall accrue Sick Leave in accordance with subsections (a), (b), (c) and (d) above. Bay Area Side Letter sites with Sick Leave benefits in excess of those provided as stated above shall continue to provide such Sick Leave benefits to the extent that they are greater than those specified above in this Section 1. The same provision shall apply to employees with greater Sick Leave benefits pursuant to the prior Bay Area "Zone" provisions (Areas 1G, 1H, 1J).

2.  <u>Bay Area Sites without Sick Leave benefits prior to July 1, 2015 (Areas 1E, 1F, 1M, 1N, and Areas 1C and 1D for employees hired on or after May 1, 2012)</u>. Effective July 1, 2015, an employee who works for thirty (30) or more days within a year from the commencement of his or her employment is entitled to paid sick days in

accordance with California law. An employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked.

An employee's total accrual of paid sick leave shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment, however, an employee's use of paid sick days shall be limited to twenty (24) hours or three (3) days, whichever is greater, in each year of employment.

An eligible employee may begin using the accrued sick leave beginning on the ninetieth (90th) day of employment.

3.  <u>City of Oakland</u>. The provisions in Sections 1, 2, 3 and 6 set forth herein apply to employees working in the City of Oakland, provided that where Chapter 5.92 (City Minimum Wage, Sick Leave, and Other Employment Standards) of the Oakland Municipal Code  contains a more generous provision regarding sick leave, the more generous provision shall apply, and provided further  that Subsections (A), and (C) through (I) of Section 5.92.050 (Enforcement) of the Oakland Municipal Code are expressly waived in accordance with Section 5.92.050(B) (Waiver) unless the waiver of a specific right in Section 5.92.050 is prohibited by law. The total accrual of paid sick days shall not exceed seventy two (72) hours, or thirty (30) days for sick leave accrued in accordance with the contractual provisions for the Areas referred to above, whichever is greater.

4.  <u>City of Emeryville</u>. The provisions in Sections 1, 2, 4 and 6 set forth herein apply to employees working in the City of Emeryville, provided that where Chapter 37 (Minimum Wage, Paid Sick Leave, and Other Employment Standards) of Title 5 of the Emeryville Municipal Code  contains a more generous provision regarding sick leave, the more generous provision shall apply, and provided further  that Section 5-37.06 (Implementation) and Subsections (a) through (c), (f), and (g) of Section 5-37.07 (Enforcement) of the Emeryville Municipal Code  are expressly waived in accordance with Section 5 37.07(e) (Waiver) unless the waiver of a specific right in Section 5 37.06 or Section 5-37.07 is prohibited by law. The total accrual of paid sick days shall not exceed seventy two (72) hours, or thirty (30) days for sick leave accrued in accordance with the contractual provisions for the Areas referred to above, whichever is greater.

5.  <u>Sacramento Area Sites (Areas 2A, 2B, 2C)</u>. Effective July 1, 2015, an employee who works for thirty (30) or more days within a year from the commencement of his or her employment is entitled to paid sick days in accordance with California law. An employee shall accrue paid sick leave at the rate of one (1) hour per every thirty (30) hours worked.

An employee's total accrual of paid sick leave shall not exceed forty eight (48) hours or six (6) days, whichever is greater, and may be carried over to the following year of employment, however, an employee's use of paid sick days shall be limited to twenty (24) hours or three (3) days, whichever is greater, in each year of employment.

An eligible employee may begin using the accrued sick leave beginning on the ninetieth (90th) day of employment.

Sacramento Appendix sites with Sick Leave benefits prior to July 1, 2015 shall continue to provide such Sick Leave benefits to the extent that they are greater than those specified above in this Section 5.

6.  <u>Provisions required by HWHFA</u>. Except where stated below, the following provisions shall apply to all Sick Leave benefits provided under the Master Agreement and under HWHFA.

   (a)  Reasons for Sick Leave utilization. Upon the oral or written request of an employee, the Employer shall provide accrued paid sick days:

   a.  for the diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or his or her family member (defined as any of the following: (1) a biological, adopted, or foster child, stepchild, legal ward, or a child to whom the employee stands in loco parentis, regardless of age or dependency status; (2)  biological, adoptive, or foster parent, stepparent, or legal guardian of an employee or his or her spouse or registered domestic partner, or a person who stood in loco parentis when the employee was a minor child; (3) spouse; (4) registered domestic partner; (5) grandparent; (6) grandchild; and (7) sibling); or

   b.  for an employee who is a victim of domestic violence, sexual assault, or stalking, (1) to obtain or attempt to obtain any relief, including, but not limited to, a temporary restraining order, restraining order, or other injunctive relief, to help ensure the health, safety, or welfare of the victim or his or her child, (2) to seek medical attention for injuries caused by domestic violence, sexual assault, or stalking, (3) to obtain services from a domestic violence shelter, program, or rape crisis center as a result of domestic violence, sexual assault, or stalking, (4) to obtain psychological counseling related to an experience of domestic violence, sexual assault, or stalking, or (5) to participate in safety planning and take other actions to increase safety from future domestic violence, sexual assault, or stalking, including temporary or permanent relocation.

(b)    <u>Notification to Employer</u>. For Sick Leave utilization of up to twenty four (24) hours or three (3) days per year, whichever is greater, the following shall apply: if the need for paid sick leave is foreseeable, the employee shall provide reasonable advance notification. If the need for paid sick leave is unforeseeable, the employee shall provide notice of the need for the leave as soon as practicable. Employees shall not be required to provide doctors' notes to verify illness or injury.

(c)    <u>No Cash Out of Unused Accrued Paid Sick Leave on Severance of Employment</u>. An employee shall not be paid for accrued, unused paid sick days upon termination, resignation, retirement, or other separation from employment, but if said employee is rehired by the employer within one year from the date of separation, previously accrued and unused paid sick days shall be reinstated and the employee shall be entitled to use those previously accrued and unused paid sick days and to accrue additional paid sick days upon rehiring.

(d)    <u>Payment for Sick Leave</u>. Payment for accrued sick leave taken by an employee shall be made by the Employer no later than the payday for the next regular payroll period after the sick leave was taken. Sick Leave shall be paid at the employee's hourly wage rate.

(e)    <u>No Retaliation or Adverse Action against Employee</u>. The Employer shall not deny an employee the right to use accrued sick days, discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days, filing a complaint or alleging a violation of this Article of the Master Agreement or of the law, cooperating in an investigation or prosecution of an alleged violation of this Article of the Agreement or of the law, or opposing any policy or practice or act that is prohibited by this Article of the Agreement or of the law.

(f)    <u>Employer Notification of Sick Leave Accruals</u>. The Employer shall provide an employee with written notice that sets forth the amount of paid sick leave available for use on either the employee's itemized wage statement or in a separate writing provided on the designated pay date with the employee's payment of wages.

(g)    <u>First Day Paid</u>. For Sick Leave utilization of up to twenty four (24) hours or three (3) days per year, whichever is greater, the following shall apply: all Sick Leave time shall be paid.

(h)    <u>Minimum Utilization</u>. For Sick Leave utilization of up to twenty four (24) hours or three (3) days per year, whichever is greater, the following shall

apply: an employee may determine how much accrued paid sick leave he/she needs to use, but a minimum increment of two (2) hours of paid sick leave must be used, and he/she may not use any paid sick leave in advance of it being accrued.

7.   Provisions specific to the Master Agreement.

(a)   Maximum Accrual. Unless otherwise stated in a Site-Specific Agreement, in Areas and sites which had Sick Leave benefits prior to July 1, 2015, unused Sick Leave accrued under such contractual provisions shall not accumulate beyond a maximum of thirty (30) days.

(b)   Employer Notification and Utilization. For Sick Leave utilization in excess of twenty four (24) hours or three (3) days per year, whichever is greater, the following shall apply. A doctor's certificate or other reasonable proof of illness may be required by the Employer. Such sick leave with pay shall be applicable in cases of bona fide illness of employee or immediate family, defined as spouse and children living at home.

(c)   Payment for Sick Leave. For Sick Leave utilization in excess of twenty four (24) hours or three (3) days per year, whichever is greater, the following shall apply. If an employee is hospitalized, he/she receives pay for his/her first day's absence and for every day thereafter until such leave benefits are exhausted. Employees who have accumulated fifteen (15) or more days of sick leave shall also be paid for the first day of absence due to illness. If an employee has less than fifteen (15) days accumulated sick days or if the employee is not hospitalized, the first workday's absence is not paid for. Succeeding workday's absences, full pay until sick benefit allowance is used up.

For the purposes of this subsection 7(c), full pay shall mean pay for the regular daily schedule for working hours, for those days which the employee would have worked had the disability not occurred, calculated at straight time. The waiting period provided herein provided before full pay commences shall apply for each illness or accident in case the sick benefit allowance has not been used up in the previous illnesses during the same year.

(d)   Minimum Utilization. For Sick Leave utilization in excess of twenty four (24) hours or three (3) days per year, whichever is greater, the following shall apply: employees must utilize accrued Sick Leave in accordance with existing practice.

(e)   <u>Contractor Transitions</u>. In a transition from one signatory Employer to a successor signatory Employer in a covered work location in accordance with the provisions of Article XXVIII (Bay Area) and Article XXIX (Sacramento Area), the successor Employer shall assume responsibility for Sick Leave benefits accrued by the incumbent employees. This applies to Sick Leave accrued under the contractual provisions as well as Sick Leave accordance with HWHFA.

(f)   <u>Utilization of Sick Leave to cover Statutory Absences</u>. In industrial injury cases, Workers' Compensation and sick leave benefit allowance shall be paid separately, but in the event Workers' Compensation payments cover all or part of the period during which sick leave benefit allowances are paid, the sum of the two shall not exceed the sick leave benefit payable for said period. The same rule shall apply to Unemployment Disability payments.

(g)   <u>Funeral Leave</u>. If a death occurs in the immediate family of an employee, he/she shall receive three (3) days of funeral leave which shall be deducted from any earned sick leave to the extent permitted by the HWHFA. If the employee has no accrued sick leave, time off shall be deducted from any accrued vacation time. Employees hired in the Bay Area prior to June 1, 2000 under the former Bay Area "Zone" provisions which contain separate Funeral Leave benefits shall retain such benefits.

8.   This Appendix F-1 establishes minimum requirements pertaining to paid sick days and does not preempt, limit, or otherwise affect the applicability of any other law, regulation, statute or ordinance that provides for greater accrual or use by employees of paid sick days, whether paid or unpaid, or that extends other protections to an employee. In the event of a question regarding how the provisions of this Appendix F-1 or HWHFA affect a particular work location or employee under the Master Agreement, the parties agree to discuss and resolve the question as quickly as possible.

**FOR THE EMPLOYERS:**

By: _____

Date: ____4/22/2017____

**FOR THE UNION:**

**Service Employees International Union, United Service Workers West**

By: _____

Date: ____4/17/2017____

## APPENDIX F-2
## MINIMUM VALUE COVERAGE PURSUANT TO HEALTH CARE LEGISLATION

Any employee of the Employer who is covered by this Agreement and is determined to have full-time status for purposes of Internal Revenue Code Section 4980H liability, but is not eligible for Health and Welfare Plans under the eligibility rules referenced in Section 13.3 of this Agreement, will be offered Minimum Value Coverage as described in this Section 13.8. Minimum Value Coverage is minimum essential coverage offered to the employee (and the employee's dependents, effective January 1, 2016 or when required by law) that constitutes minimum value coverage as those terms are defined for purposes of Internal Revenue Code Section 4980H and will be the coverage option under the General Employees Trust Fund with the lowest total premium cost for employee only coverage, Plan E60, with benefits as stated below. The cost of GETF Plan E60 is $330.39 per month as of the effective date of this Agreement.

> GETF Plan E60 (Employee Only)
> Indemnity: $1,000 Annual Deductible
> 50% coverage in-network, 30% coverage out of network (medical/Rx)
> Annual out-of-pocket maximum (in-network) $6,350
> All preventive in-network covered at 100% (deductible doesn't apply)

Minimum Value Coverage will be offered no later than the first day of the fourth month following the date that the employee is determined to have full-time status. If the employee elects Minimum Value Coverage, the Employer will make a monthly contribution that is equal to the Minimum Value Coverage premium less 9.5% of the employee's Form W-2 wages paid during the month.

The Employer and Employee contributions for Minimum Value Coverage for those employees electing such coverage shall be included in Staffing Information to be provided by the incumbent Employer in the event of job bidding, pursuant to Sections 28.2 and 29.2 of the Agreement.

The Employer will pay this monthly contribution for any month in which Internal Revenue Code Section 4980H applies to the signatory Employer and has not been satisfied through an offer of minimum essential coverage under another plan. In 2016, there will be no Employer contribution if the amount of such monthly contribution would be more than $260; in 2017 and thereafter, the applicable maximum Employer contribution will be the monthly equivalent of the annual penalty to Employers which do not offer Minimum Value Coverage under the Affordable Care Act. The amount of the premium cost above any employer contribution shall be paid by such employee through payroll deduction. Any determination that Internal Revenue Code Section 4980 applies to a signatory Employer, that an offer has been timely made, or that an employee has full-time status shall be made by the signatory Employer consistent with Internal Revenue Code Section 4980H.

Enrollment of employees in Minimum Value Coverage pursuant to this Section shall be subject to the rules of the General Employees Trust Fund. Effective January 1, 2016 or when Employer-provided dependent coverage is required by law, employees shall pay any additional cost necessary to provide coverage for dependents.

The above provisions apply to all Employers signatory to this Agreement, including any Employers which are exempt from Internal Revenue Code Section 4980H.

**FOR THE EMPLOYERS:**                                    **FOR THE UNION:**

**Service Employees International
Union, United Service Workers West**

By: _____              By: _____

Date: ____4/22/2017____                   Date: ____4/17/2017____

**APPENDIX G**
**SPECIAL PROVISIONS REGARDING SEXUAL HARASSMENT OR MISCONDUCT,**
**WAGE AND HOUR PROTOCOL**

A.  <u>Special Provisions Regarding Sexual Harassment or Misconduct.</u> The Union and the Employer agree that male and female workers should have access to information about their rights in the workplace, including rights to be free from sexual harassment in the workplace. Accordingly, the Employer and the Union agree to the following concerning sexual harassment and complaints of sexual harassment in the workplace:

1.  The Employer prohibits sexual harassment in the workplace of its employees and applicants for employment by any employee, non-employee, or applicant. Such conduct may result in disciplinary action up to and including dismissal.

2.  The Employer will not tolerate, condone, or allow sexual harassment, whether engaged in by fellow employees, supervisors, or non-employees who conduct business with the Employer.

3.  Sexual harassment is any behavior that includes unwelcome sexual advances and other verbal or physical conduct of a sexual nature when:

    (a)  Submission to, or rejection of, such conduct is used as the basis for promotions or other employment decisions;

    (b)  The conduct unreasonably interferes with an individual's job performance or creates an intimidating, hostile or offensive work environment.

    (c)  Sexual assault is a criminal offense which may be immediately reported to the police and to the Employer if it is any way work related.

    Employees are entitled to work in an environment free from sexual harassment and a hostile or offensive working environment. Sexual harassment is unlawful discrimination, as is severe and pervasive conduct that belittles or demeans any individual on the basis of race, religious creed, color,
    national origin, ancestry, physical and/or mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual preference, or other similar characteristics or circumstances.

No manager or supervisor shall threaten or imply that an employee's refusal to submit to sexual advances will adversely affect that person's employment, compensation, advancement, assigned duties, or any other term or condition of employment or career development. Sexual joking, lewd pictures, and any conduct that treats employees of one gender as sex objects are prohibited.

4.      Employees who have complaints of sexual harassment may (and are encouraged to) report such complaints to their supervisor. If this person is the cause of the offending conduct, the employee may report the matter directly to the person designated by the Employer to receive such reports or through other proper channels established by the Employer, such as an employee hotline. Employer personnel will abide by proper standards of professionalism and respectful conduct towards employees while taking reports and performing investigations of sexual harassment. Confidentiality of reports and investigations of sexual harassment will be maintained to the greatest extent possible.

In the event that an employee makes a report involving persons not employed by the Employer, e.g. a building tenant or visitor, the Employer will forward copies of such report to the property owner or manager and request that they take immediate and appropriate steps to assure that any harassment stops.

In the case of investigations which involve one (1) or more employees covered under this Agreement, the Employer will make all possible efforts to complete the investigation within two (2) weeks, and both the Employer and the Union shall cooperate with one another in such investigations. Such cooperation shall include full access to all non-privileged investigatory documents prepared by the Employer. The employer shall ensure that the union receives all material information to thoroughly evaluate the underlying facts.

Employer will maintain a hotline through which employees should file initial reports of sexual harassment or work-related assault.

5.      Upon receiving a report of sexual harassment or assault, the Employer will take reasonable steps to ensure the accused does not have contact with the person(s) they are alleged to have harassed or assaulted, until such time as the Employer has completed its investigation and made a determination as to the claim. The Employer may suspend accused employees without pay pending investigation. The Employer also may transfer accused employees between work sites on a temporary basis in order to comply with this Section. If an employee is suspended after being

accused of sexual harassment at work, he/she will be paid for all hours lost if following the investigation the complaint is determined to have been unsubstantiated. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

6.      Any manager, supervisor or employee who, after appropriate investigation, is found to have engaged in sexual harassment of another employee will be subject to disciplinary action, up to and including dismissal. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

7.      Employer will not in any way retaliate against any individual who makes a report of sexual harassment nor permit any employee to do so. Retaliation is a serious violation of this sexual harassment policy and should be reported immediately. Any person found to have retaliated against another individual for reporting sexual harassment will be subject to appropriate disciplinary action, up to and including dismissal. The Union will support the Employer's decisions in this regard consistent with the duty of fair representation.

Examples of such retaliation include, but are not limited to, the following: discipline, unfavorable or disparate treatment, ostracization/isolation, or transfer to another worksite (except for voluntary transfers,). If an employee is suspended after reporting having been the target of sexual harassment at work, he/she will be paid for all hours lost when the report is verified to be correct.

8.      The Employer shall provide to all new bargaining-unit employees an orientation on the policies and rules regarding Sexual Harassment and Sexual Assault reasonably soon after the employees commence employment, within sixty days. Training shall be conducted in conformity with standards to be established by the State of California, Department of Industrial Relations (DIR), and shall cover at least the following topics:

(a)     definitions of workplace sexual harassment and assault;

(b)     potential consequences for perpetrators of workplace sexual harassment and assault;

(c)     information on representatives of the Employer to whom an employee can report cases of workplace sexual harassment and assault;

(d)     community and mental health resources locally available for survivors of workplace sexual harassment or assault; including the East L.A. Women's Center Hotline;

(e)     strategies of defense.

In addition, the Employer shall provide updated training on the topics listed above to all bargaining-unit employees at least once per year.

The Employer shall maintain records to document the trainings listed above and participation by bargaining-unit employees.

9.     The Employer shall provide the trainings listed above to all supervisory personnel, and in addition shall train them on their role in taking corrective action when incidents occur.

10.     The Employer shall adopt and implement a workplace sexual assault and sexual harassment prevention plan which complies with California law, in conjunction with the Union.

11.     The Union will maintain and distribute to its members a list of organizations which provide assistance to survivors of sexual harassment or assault.

12.     Employees who in good faith report sexual harassment or assault will be permitted to take any accrued paid leave time to seek assistance from a listed organization. The Employer may, at its discretion, require written evidence of such assistance.

13.     Employees with supervisory authority as defined by Section 2(11) of the National Labor Relations Act may not engage in sexual or romantic relationships with a subordinate employee.

B.     Wage and Hour Protocol

1.     <u>Introduction</u>

The Parties to this Agreement believe that it is in the best interests of all involved – employees/members, employer, the Union, and the public interest – to promptly, fairly and efficiently resolve through mediation and arbitration all claims alleging violations of wage and hour and/or meal and rest period laws, including but not limited to claims based on the federal Fair Labor Standards Act, the California Labor Code, or any similar local law, ordinance or policy (collectively "Covered Claims"). As to any Covered Claim, each party waives to the maximum extent permitted by law the right to jury trial and to

bench trial, and the right to bring, maintain, or participate in any class, collective, or representative proceeding, including but not limited to under the PAGA or any other applicable similar laws, whether in arbitration or otherwise, to the full extent permitted by applicable law.

The Union will pursue a policy of evaluating such Covered Claims and bringing such claims to arbitration where appropriate. To this end, the parties establish the following system of mediation and arbitration to be the sole and exclusive method of resolving all such Covered Claims, whenever they arise. The Union and the Employer want those covered by this Agreement – and any attorneys representing employees – to be aware of this protocol, which makes mediation and arbitration the sole and exclusive method of resolving all individual or group Covered Claims applicable to bargaining unit employees, even where the Union has declined to bring such Covered Claims to arbitration.

For purposes of this Protocol, the term "Parties" refers to the person asserting the claim and the person responding to or defending the claim. A "Party" may be the Employer, the Union, or the individual employee or group/class of employees in cases where the Union has declined to pursue mediation or arbitration.

2.   Mediation

(a)   Whenever a Party to this Agreement, including a member of the Union, intends to pursue a Covered Claim against another Party/ies to this Agreement, including a member of the Union, notice shall be provided of such claim to the Union, the Employer and the affected employee(s), and the matter shall be submitted to mediation, absent prior resolution through informal means. A notice of claim shall be filed within the applicable statutory statute of limitations, provided that if an employee has timely filed such claim in a forum provided for by statute, the claim will not be considered time-barred (but will nevertheless be subject to this Protocol).

(b)   Promptly following receipt of the notice, the Parties shall make request to the American Arbitration Association ("AAA") for the appointment of a Mediator to mediate the dispute. In all cases Mediators appointed by AAA shall be attorneys with appropriate training and experience in the conduct of mediations, and significant knowledge of employment discrimination statutes. The Union and Employer mutually commit to appointing mediators with appropriate skill and experience, as they view mediation as the important step in which many claims will be resolved.

(c)     As an alternative to the AAA appointment process described above, the Parties – or the Employer and the Employee attorney or representative – may select and appoint their own Mediator upon mutual agreement.

(d)     Within 30 days of being appointed, the Mediator shall notify the parties of his/her appointment and schedule a pre-mediation conference. At the conference, the Parties shall discuss such matters as they deem relevant to the mediation process, including discovery. The Mediator shall have the authority, after consulting with the Parties, to (1) schedule dates for the exchange of information and position statements, and (2) schedule a date for mediation.

Any disputes shall be decided by the Mediator. In the event the Mediator concludes that there has not been good faith compliance with his/her directives, including directives as to the holding of conferences and the conduct of discovery, the Mediator may, after notice and an opportunity to be heard, order appropriate sanctions.

(e)     The entire mediation process is a compromise negotiation for the purposes of the Federal Rules of Evidence and the California Evidence Code.

(f)     At the mediation, each party shall be entitled to present witnesses and/or documentary evidence. The Mediator shall be entitled to meet separately with each Party for the purpose of exploring settlement.

(g)     At the conclusion of the mediation, the Mediator shall be entitled to make a proposal to the Parties of a settlement agreement. Neither Party shall be required to adopt the proposal.

(h)     Mediation shall be completed before the claim is further processed on the merits in arbitration, as provided by Section 3, below. However, if the Union alleges the claim of a violation of the non-discrimination clause, the Union may proceed directly to arbitration as provided in Section 3(a), and bypass this Mediation procedure if it so chooses.

(i)     The fees of the Mediator shall be split equally between the Employer and the Union when the Union is pursuing the Mediation on behalf of an employee or group/class of employees. If the union has declined to pursue the Mediation, the fees of the Mediator shall be borne by the Employer.

3.     <u>Arbitration</u>

(a)   With respect to those circumstances in which the Union has elected to pursue arbitration on behalf of an individual employee's or group/class of employees' Covered Claim(s) under this Appendix G (including claims based on federal or state statute), such arbitration shall be conducted pursuant to "Article XVII – Grievance and Arbitration Procedure" of this Agreement. The arbitrator appointed to decide such claim(s) shall have the same authority as described in Section (b)(ii) below.

(b)   With respect to those circumstances in which the Union has declined to pursue arbitration on behalf of an individual employee's or group/class of employees' Covered Claim(s) under this Appendix G (including claims based on federal or state statute), and the employee or employees are desirous of litigating the claim, the following arbitration process shall be followed exclusively. The arbitration process described herein will be available to employees who are represented by counsel and to those who are unrepresented by counsel, and shall constitute the exclusive method of resolving such disputes.

(c)   The Employer and employee's representative shall obtain from the American Arbitration Association ("AAA") a list of arbitrators who (1) are licensed attorneys, and (2) are qualified to decide employment discrimination cases. In the event that mediation fails and an employee or group/class of employees wish to continue to pursue the claim, in the circumstances described in paragraph (a), above, the list of arbitrators provided by the AAA shall be made available to the individual employee(s) and the Employer by the AAA, and the arbitrator shall be selected according to the AAA National Rules for Employment Disputes ("AAA Rules"), unless otherwise agreed by the parties. The fees of the arbitrator will be paid by the Employer, and any such arbitrations shall be conducted pursuant to the AAA Rules, except as expressly set forth herein, and any disputes about the manner of proceeding shall be decided by the arbitrator selected.

(d)   Any such arbitrations shall be conducted pursuant to the AAA National Rules for Employment Disputes, except those rules pertaining to administration by the AAA and the payment of fees, and any disputes about the manner of proceeding shall be decided by the arbitrator selected. The arbitrator shall apply the substantive law (and the laws of remedies, if applicable) of the state in which the Covered Claims arose, or federal law, or both, as applicable to the Covered Claims, shall apply the Federal Rules of Evidence, and shall apply the Federal Rules of Civil Procedure regarding discovery. The arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The arbitrator can order the same individual remedies that a judge could in a court of

law, including injunctive relief, and has the authority to consider motions to dismiss and motions for summary judgment or summary adjudication. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon the evidence presented. The arbitrator's written decision shall: (i) issue within thirty (30) days of the conclusion of evidence; (ii) state the reasons to support the decision; and (iii) be based on governing law and evidence cited.

(e)     The Union will not be a party to the arbitration described in this subsection 3(b), and the arbitrator shall not have authority to award relief that would require amendment of this Agreement or other agreement(s) between the Union and the Employer, or conflict with such Agreements. Similarly, any mediation and/or arbitration outcome shall have no precedential value with respect to the interpretation of this Agreement or any Appendix F-1s of understanding pertaining thereto.

(f)     This Protocol is governed by and enforceable under the Federal Arbitration Act ("FAA"), the Protocol shall be interpreted under the FAA, and both the Employer and the Union agree that the Employer, its employees and the Union are engaged in interstate commerce as part of the Employer's business.

(g)     Nothing in this Protocol precludes any employee from filing a charge or from participating in an administrative investigation of a charge before an appropriate government commission, body, or agency, be it federal, state or local. Similarly, this agreement does not preclude the parties from conciliating any charge pending before an appropriate government commission, body or agency.


**FOR THE EMPLOYERS:**                    **FOR THE UNION:**

                                          **Service Employees International**
                                          **Union, United Service Workers West**

By: _James Beard_                         By: _M L P Shaw_

Date: _4/22/2017_                         Date: _4/17/2017_

## APPENDIX H
## SIDE LETTER OF AGREEMENT

### WAIVER OF CERTAIN PROVISIONS OF CALIFORNIA LABOR CODE 238.5

California Labor Code § 238.5 imposes joint liability upon the parties to a property service contract for unpaid wages to workers performing work under such a contract. Under California Labor Code § 238.5(b), the joint and several liability created by that section can be waived if the workers are covered by a bona fide collective bargaining agreement and the parties expressly agree to waive the joint and several liability created by that section.

The parties to the collective bargaining agreement (the "Master Agreement") between the Northern California Maintenance Contractors and Service Employees International Union, United Service Workers-West, hereby agree to waive the joint and several liability protections created by Labor Code § 238.5 for the term of their current collective bargaining agreement, commencing on May 1, 2016 through April 30, 2020. This Waiver applies only to work performed by bargaining-unit employees within the jurisdiction of the Master Agreement, and who are employed by Employers signatory to the Master Agreement in the counties of Santa Clara, San Mateo, Alameda, Contra Costa, Sacramento, Yolo and Placer in the State of California.

**FOR THE EMPLOYERS:**

By: _James Beard_

Date: _4/22/2017_

**FOR THE UNION:**

**Service Employees International Union, United Service Workers West**

By: _Mark P. Shane_

Date: _4/17/2017_

**APPENDIX I**
**LIST OF SIGNATORY EMPLOYERS**

**The following Employers are signatory to this Agreement and were represented in the negotiations which resulted in this Agreement.**

1. Able Building Maintenance
2. ABM Industry Groups, LLC
3. Customized Performance
4. C&W Services
5. DMS Facility Services
6. Flagship, Inc.
7. GCA Services
8. Harvard Maintenance
9. IMS Facility Services
10. ISS Facility Services, Inc.
11. Little Giant
12. Nationwide Janitorial Services
13. Pacific Maintenance
14. Platinum Services
15. PowerClean Enterprises
16. Preferred Services
17. Pristine Environments
18. Reynolds Cleaning
19. SBM Site Services
20. Service By Medallion
21. Spencer Building Maintenance
22. United Building Maintenance, Inc.
23. Universal Building Services

**ARTICLE XXXVI - DURATION OF AGREEMENT**

This Agreement shall become effective as of May 1, 2016, and shall remain in effect until April 30, 2020 and shall continue from year-to-year thereafter; provided, however, that each party reserves the right to give notice to the other at least sixty (60) days prior to April 30, 2020 of its desire to change or terminate said Agreement.

**FOR THE EMPLOYER:**
**Merchants Building Maintenance**

By: _____

Date: _____
2/6/18

**FOR THE UNION:**
**Service Employees International Union, United Service Workers West**

By: _____

Date: _____
2/5/18

EXHIBIT D



# GENERAL EMPLOYEES TRUST FUND

TRUST ADMINISTRATIVE OFFICE: 355 GELLERT BLVD, SUITE 100 · DALY CITY, CA 94015

ENGLISH: (650) 570-7300 or (800) 632-4640
ESPAÑOL: (866) 239-0368

### SUBSCRIPTION AGREEMENT
### (Bargaining Unit Employees Only)



RECEIVED
MAR 24 2015
By CD 100007

1.  The undersigned Employer is signatory to a collective bargaining agreement with _____ SEIU- UWWN _____ ("Union") under which the Employer is required to contribute to the General Employees Trust Fund ("Fund") on behalf of the Employer's bargaining unit employees. The Employer may not provide coverage through the Fund for the Employer's non-bargaining unit employees unless it signs a separate subscription agreement for non-bargaining unit employees.

2.  The undersigned Employer hereby acknowledges that it has received a copy of the Restated Trust Agreement for the General Employees Trust Fund, effective September 1, 2010, that it has read and understands its terms, and that it intends and desires to become a participating Employer in the Fund. The undersigned Employer hereby acknowledges that it has received a copy of the Fund's Rules of Participation and that it has read and understands its terms.

3.  The Employer agrees to be bound by the terms and conditions of the Restated Trust Agreement and any and all amendments thereto and restatements thereof and all other rules, regulations and resolutions adopted by the Trustees, both prospectively and retrospectively, including but not limited to the Rules of Participation. The Employer further agrees to be bound by all provisions contained in this Subscription Agreement.

4.  The Employer hereby grants power of attorney to the Employer Trustees now in office, or their successors, to administer the Trust Fund as the representatives of the Employer with full authority to act for the Employer in the administration of the Trust Fund.

5.  The Employer hereby agrees to make available to the Trustees or their agents, upon reasonable notice, all books, records and papers necessary to conduct an audit to verify that all required contributions and other monies have been paid.

6.  In the event that the Employer wishes to make contributions for non-bargaining unit employees, the Employer must execute a separate subscription agreement for those non-bargaining unit employees. Furthermore, the Trustees may, at their sole option, terminate Fund coverage for owners and/or non-bargaining unit employees at any time after the first day on which the Employer fails to pay any contribution required by that separate subscription agreement and/or by any collective bargaining agreement, or otherwise fails to comply with the terms of that separate subscription agreement.

7.  The Employer's contribution rate for each bargaining unit employee is established by the Employer's collective bargaining agreement. If the contribution rate in the collective bargaining agreement is less than the rate set by the Fund, the Employer is responsible for obtaining the difference from each employee and submitting to the Fund the full contribution rate set by the Fund.

Subscription Agreement - Bargaining Unit
Revised February 1, 2012
Page 2 of 2

8.  This Subscription Agreement is not meant to replace the Trust Agreement, amendments
    thereto and restatements thereof, resolutions, rules and regulations of the Board of
    Trustees or the collective bargaining agreement between the Employer and the Union, but
    rather to set forth the general rules for participation.

EMPLOYER ___Merchants Building Maintenance___

By ___Wallace E. Reid___
       Printed Name

Signature _____

Title ___Regional Vice President___

Mailing Address ___606 Monterey Pass Road, Monterey Park___

Date ___3/24/2014___

# EXHIBIT E

*NCS*

NATIONAL COMPLIANCE SERVICES
Burl Business Center
13200 Central Avenue, Suite 1
Boulder Creek, California 95006
*Servicing Pension, Training & Education, Health & Welfare Trust Funds Since 1977*

**VIA EMAIL AND CERTIFIED MAIL**

February 4, 2019

Anita Teh
**MERCHANTS BUILDING MAINTENANCE**
1190 Monterey Pass Road
Monterey Park, CA 91754

RE: GENERAL EMPLOYEES TRUST FUND – FINAL AUDIT REPORT --
EMPLOYER NO's: 106537, 107787, 111291, 111521, 111896, 113158, 113159, 113820

Dear Ms. Teh:

In compliance with the terms of your SEIU-USWW and SEIU Local 87 Collective Bargaining Agreement and the Trust Fund Trust Agreement, we submit the following final audit report. The employer payroll records did not agree with the monthly health and welfare contribution transmittals. Enclosed you will find a copy of our Discrepancy Lists and Summary Report.

In accordance with the General Employees Trust Fund Reporting Policy, we included interest as prescribed by the Trust Fund Trust Indenture[1]. We also included liquidated damages of 10%.[2] Our examination of your payroll records for the period of January through December 2014 and January through December 2016 disclosed a reporting error rate of greater than 10%, therefore, we have included our audit fee.[3]

**Over Reported Contributions:**
With regards to benefit payments paid on behalf of ineligible employees, Kaiser Contributions are not considered for credit.

For your information, $80,432.91 was remitted on behalf of employees enrolled in Kaiser and $104,773.47 was remitted on behalf of un-enrolled participants.

Please be aware that there are certain non-recoverable costs paid out to the carriers that will be deducted from any potential credit if approved by the Board of Trustees. If you would like the Board of Trustees to

---

[1] Section 8.13(c) of the Trust Indenture effective February 1, 1973 and restated September 1, 2010 states: If such audit discloses any deficiency in Contributions and/or other monies owed to the Trust Fund, the Employer shall immediately pay to the Trust Fund the amount found due, plus liquidated damages and interest at the rates set forth above in this Article VIII (simple interest thereon at the greater of (i) seven percent (7%) per annum, or (ii) the rate prescribed by Section 6621(a)(2) of the Internal Revenue Code).

[2] Section 8.06(a) Therefore, it is agreed that the amount of damage to the Trust Fund resulting from any such failure shall be presumed to be (i) $200, if the Contributions or other monies are received by the Trust Fund within two business days of the date on which such monies were due and unpaid, or ten percent (10%) of the Contributions or other monies, if such monies are not received by the Trust Fund within two business days of the date on which they were due and unpaid.

[3] Section 8.13(c) The entire cost of such audit shall be paid by the Trust Fund, except that if the amount found due by the audit is ten percent (10%) or more of the Contributions which should have been made, the costs of such audit shall be paid by the Employer.

review your request for credit for contributions remitted on behalf of un-enrolled participants, we would appreciate it if you would forward your written request directly to the Trust Fund Collection Administrator.

> Mr. Bill Quinteros
> **NORTHWEST ADMINISTRATORS**
> 1000 Marina Blvd., Suite 400
> Brisbane, CA 94005

**Under Reported Contributions:**

We would appreciate your cooperation by remitting your payment within one week for **$333,280.98** along with a copy of this letter to the following address:

> General Employees Trust Fund
> c/o Bill Quinteros, Collection Administrator
> 1000 Marina Blvd., Suite 400
> Brisbane, CA 94005

In the event the Trust Fund Administrator does not receive your payment within one week, the Collections Administrator will proceed to collect the amount due the Trust Fund. If this action is necessary, you will be responsible for the collection cost.

We take this opportunity to express our appreciation to you and your staff for the courtesies and cooperation extended to us during the examination. Please feel free to call our office at 831-338-2023 if you have any questions concerning our report.

Sincerely,

Brian Valdivia, Compliance Auditor
NATIONAL COMPLIANCE SERVICES

Enclosures ( 25 )

cc:  Bill Quinteros, Northwest Administrators
    Celeste Furlough, Northwest Administrators
    Tony Ah-Hing, Northwest Administrators
    Blair Fowler, Northwest Administrators
    Christina Mcdonagh, Northwest Administrators
    Stacie Doran, Northwest Administrators
    Shanna Saldivar, Northwest Administrators
    Tyler Gronsky, Northwest Administrators
    Mark Sharwood, SEIU-USWW
    Denise Solis, SEIU-USWW
    David Huerta, SEIU-USWW
    Olga Miranda, SEIU Local 87

EXHIBIT F

ROBERT BONSALL
GEOFFREY PILLER
CATHERINE E. HOLZHAUSER
JOHN C. PROVOST
ANDREW H. BAKER
SHEILA K. SEXTON
DALE L. BRODSKY
COSTA KERESTENZIS
PETER M. McENTEE
SUSAN K. GAREA
SARAH SANDFORD-SMITH
CHRISTOPHER HAMMER
STEPHANIE PLATENKAMP
LORRIE E. BRADLEY
TONY RICE
SARAH S. KANBAR
KENA C. CADOR
TRAVIS S. WEST

**BEESON, TAYER & BODINE**
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
520 CAPITOL MALL, SUITE 300
SACRAMENTO, CALIFORNIA 95814-4714
(916) 325-2100
FAX (916) 325-2120

OAKLAND OFFICE
483 NINTH STREET, SUITE 200
OAKLAND, CA 94607-4051
(510) 625-9700
FAX (510) 625-8275

DONALD S. TAYER
(1932-2001)

WWW.BEESONTAYER.COM

OF COUNSEL
DUANE B. BEESON



December 12, 2019

cholzhauser@beesontayer.com

Mr. David Haas, President
Merchants Building Maintenance
1190 Monterey Pass Road
Monterey Park, CA 91754

Re:    *Contributions Owed to the General Employees Trust Fund for the
         January 2017 – May 2018 Audit*

Dear Mr. Haas:

As I discussed with Ms. Teh, this law firm represents the General Employees Trust Fund. As Trust Counsel, we have been instructed to take whatever legal measures are necessary to collect contributions, liquidated damages, interest, claims paid and audit fees owed by Merchants Building Maintenance. She indicated that you will be handling this matter on behalf of the company.

An audit of your company's payroll records reveals that for the period of January 1, 2017 through May 31, 2018 certain covered employees were not properly reported. This failure has resulted in a deficiency of **$333,280.98**; $271,074.65 in under-reported contributions, $27,107.47 in liquidated damages, $26,863.35 in interest, $61.51 in claims paid and $8,174.00 in audit fees. For your reference, I have attached a copy of the Summary Report and audit.

On behalf of the Trustees, I am now requesting that you pay the amount due or contact me immediately concerning this matter. Please make your $333,280.98 check payable to General Employees Trust Fund and send it to my office. Thank you for your attention to this matter.

Very truly yours,

Catherine E. Holzhauser

CEH/ak

Enclosures

858628 (1482-0004) A5

ROBERT BONSALL
GEOFFREY PILLER
CATHERINE E. HOLZHAUSER
JOHN C. PROVOST
ANDREW H. BAKER
SHEILA K. SEXTON
DALE L. BRODSKY
COSTA KERESTENZIS
PETER M. MCENTEE
SUSAN K. GAREA
SARAH SANDFORD-SMITH
CHRISTOPHER HAMMER
STEPHANIE PLATENKAMP
LORRIE E. BRADLEY
TONY RICE
SARAH S. KANBAR
KENA C. CADOR
TRAVIS S. WEST

**BEESON, TAYER & BODINE**
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
520 CAPITOL MALL, SUITE 300
SACRAMENTO, CALIFORNIA 95814-4714
(916) 325-2100
FAX (916) 325-2120



OAKLAND OFFICE
483 NINTH STREET, SUITE 200
OAKLAND, CA 94607-4051
(510) 625-9700
FAX (510) 625-8275

DONALD S. TAYER
(1932-2001)

WWW.BEESONTAYER.COM

OF COUNSEL
DUANE B. BEESON

cholzhauser@beesontayer.com

January 31, 2020

Mr. David Haas, President
Merchants Building Maintenance
1190 Monterey Pass Road
Monterey Park, CA 91754

Re:   *Contributions Owed to the General Employees Trust Fund for the*
      *January 2017 – May 2018 Audit*

Dear Mr. Haas:

The Trustees of the General Employees Trust Fund have instructed this law firm to collect the sum of **$333,280.98**; $271,074.65 in under-reported contributions, $27,107.47 in liquidated damages, $26,863.35 in interest, $61.51 in claims paid and $8,174.00 in audit fees owed by Merchants Building Maintenance. This delinquency was brought about by your company's failure to properly report all covered employees as revealed by an audit covering the period of January 1, 2017 through May 31, 2018. I wrote to you on December 12, 2019 requesting payment of this delinquent amount and have not heard back from you.

I hope this matter can be resolved on an informal basis and am therefore requesting once again that you promptly pay the amount due. **Please contact me regarding this delinquency or make your check payable to General Employees Trust Fund and send it to my office.** Thank you.

Very truly yours,

Catherine E. Holzhauser

CEH/ak

cc:   Brian Valdivia

869071 (1482-0004) B5

ROBERT BONSALL
GEOFFREY PILLER
CATHERINE E. HOLZHAUSER
JOHN C. PROVOST
ANDREW H. BAKER
SHEILA K. SEXTON
DALE L. BRODSKY
COSTA KERESTENZIS
PETER M. McENTEE
SUSAN K. GAREA
SARAH SANDFORD-SMITH
CHRISTOPHER HAMMER
STEPHANIE PLATENKAMP
LORRIE E. BRADLEY
TONY RICE
SARAH S. KANBAR
KENA C. CADOR
TRAVIS S. WEST

**BEESON, TAYER & BODINE**
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
520 CAPITOL MALL, SUITE 300
SACRAMENTO, CALIFORNIA 95814-4714
(916) 325-2100
FAX (916) 325-2120



OAKLAND OFFICE
483 NINTH STREET, SUITE 200
OAKLAND, CA 94607-4051
(510) 625-9700
FAX (510) 625-8275

DONALD S. TAYER
(1932-2001)

WWW.BEESONTAYER.COM

OF COUNSEL
DUANE B. BEESON

cholzhauser@beesontayer.com

June 3, 2020

David Haas, President
Merchants Building Maintenance
1190 Monterey Pass Road
Monterey Park, CA 91754

  *Re:*   *Audit by General Employees Trust Fund – January 2017-May 2018*

Dear Mr. Haas:

  As you know, this law firm represents the General Employees Trust Fund. To date, you have not responded to my previous letters to you regarding the $333,280.98 owed to the Fund for the audit of your company for the period of January 1, 2017 through May 31, 2018. This amount includes $271,074.65 in under-reported contributions, $27,107.47 in liquidated damages, $26,863.35 in interest, $61.51 in claims paid and $8,174.00 in audit fees.

  I must advise you that if the Trust Fund is forced to file a lawsuit, it will seek not only the amounts set forth above, but also the costs and attorney fees associated with litigation. Please contact me as soon as possible to avoid that situation. I look forward to your response. Thank you.

    Very truly yours,

    *Catherine E. Holzhauser*
    *(Electronically signed)*

    Catherine E. Holzhauser

CEH/ak

cc: Mark Sharwood, SEIU - United Service Workers West

893966 (1482-0004) C8

# EXHIBIT G

Revised 2/1/2021              **MERCHANTS BUILDING MAINTENANCE**
                                    SUMMARY REPORT

| AUDIT PERIOD 1/1/17 - 5/31/18 | CONTRIBUTIONS DUE | * LIQUIDATED DAMAGES | CLAIMS PAID | ** INTEREST DUE | TOTAL DUE |
|---|---|---|---|---|---|
| SAN FRANCISCO | $ 50,228.69 | $ 10,045.74 | $ - | $ 12,997.93 | $ 73,272.36 |
| AREA 1G/H | $ 64,785.13 | $ 12,957.03 | $ - | $ 15,958.83 | $ 93,700.99 |
| AREA 1A/B | $ 74,089.66 | $ 14,817.93 | $ - | $ 17,971.48 | $ 106,879.07 |
| AREA 1C/D | $ 1,273.89 | $ 254.78 | $ - | $ 269.75 | $ 1,798.41 |
| AREA 1E/F | $ 59,017.40 | $ 11,803.48 | $ 61.51 | $ 14,906.06 | $ 85,788.45 |
| AREA 1M | $ 1,553.96 | $ 310.79 | $ - | $ 431.26 | $ 2,296.01 |
| AREA 2B | $ 2,091.20 | $ 418.24 | $ - | $ 480.38 | $ 2,989.82 |
| | | | | | |
| SUBTOTAL DUE | $ 253,039.93 | $ 50,607.99 | $ 61.51 | $ 63,015.68 | $ 366,725.11 |
| | | | | | |
| AUDIT FEE | | | | $ | 8,174.00 |
| **TOTAL DUE** | | | | $ | **374,899.11** |

**\* - Liquidated Damages calculated at 20%**
**\*\* - Interest Updated Through 1/20/2021**

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JAN '17-MAY '18

SAN FRANCISCO MASTER

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| **EMPLOYEES HIRED PRIOR TO 8/1/12** | | | | | | | | |
| De La Oliva, Sarah F | Jan '17 | 112.5 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 81.49 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-4433 | Feb '17 | 93 | $ 1,370.53 | $ - | $ - | $ 1,370.53 | $ 413.33 | Contractors Association and SEIU Local 87, effective |
| EE ID: 571814 | Mar '17 | 107.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 88.73 | August 1, 2016-July 31, 2020. |
| Job Number: 58179 | Apr '17 | 100.5 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 406.14 | **Eligibility Requirement:** Employees are eligible for |
| Senority Date: 07/09/12 | May '17 | 109 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 84.87 | benefits under Menu Plan C26A in months they work |
| | Jun '17 | 108 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 82.94 | 90 hours. |
| | Jul '17 | 143.25 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 81.01 | **Findings:** The employee completed the eligibility |
| | Aug '17 | 148.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 79.08 | and requirements was eligible for contributions. |
| | Sep '17 | 142.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 77.15 | |
| | Oct '17 | 154 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 75.23 | |
| | Nov '17 | 107.75 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 342.96 | |
| | Dec '17 | 104 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 333.94 | |
| | Jan '18 | 104 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 324.91 | |
| | Feb '18 | 96 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 315.89 | |
| | Mar '18 | 104 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 306.86 | |
| | Apr '18 | 95.5 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 297.84 | |
| | May '18 | 95.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 61.72 | |
| **EMPLOYEES HIRED AFTER 8/1/12** | | | | | | | | |
| Gonzalez, Amanda | Jan '17 | 125 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 81.49 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-4921 | Mar '17 | 135 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 415.17 | Contractors Association and SEIU Local 87, effective |
| EE ID: 571807 | Apr '17 | 120.75 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 406.14 | August 1, 2016-July 31, 2020. |
| Job Number: 59303 | Jul '17 | 107.25 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 379.07 | **Eligibility Requirement:** Employees are eligible for |
| Senority Date: 02/13/13 | Sep '17 | 108 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 77.15 | contributions under Menu Plan C26B in months they |
| | Oct '17 | 108.25 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 75.23 | work 105 hours after completing 4 months of service. |
| | Nov '17 | 105.5 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 342.96 | Employees transfer to C26A after working 3900 hours. |
| | | | | | | | | **Findings:** The employee completed the eligibility |
| | | | | | | | | and requirements was eligible for contributions. |
| Paz, Laura | May '17 | 16 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-5673 | | | | | | | | Contractors Association and SEIU Local 87, effective |
| EE ID: 571705 | | | | | | | | August 1, 2016-July 31, 2020. |
| Job Number: 59185 | | | | | | | | **Eligibility Requirement:** Employees are eligible for |
| Senority Date: 05/02/16 | | | | | | | | contributions under Menu Plan C26B in months they |
| | | | | | | | | work 105 hours after completing 4 months of service. |
| | | | | | | | | Employees transfer to C26A after working 3900 hours. |
| | | | | | | | | **Findings:** The employee completed the eligibility |
| | | | | | | | | and requirements was eligible for contributions. |

Revised 2/1/21   SAN FRANCISCO MASTER

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JAN '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Perez, Rafael | Jan '17 | 166 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 81.49 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-5487 | Feb '17 | 156.5 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 79.79 | Contractors Association and SEIU Local 87, effective |
| EE ID: 571126 | Mar '17 | 172.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 88.73 | August 1, 2016-July 31, 2020. |
| Job Number: 57639 | Apr '17 | 150 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 86.80 | **Eligibility Requirement:** Employees are eligible for |
| Job Number: 59838 | May '17 | 172.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 84.87 | contributions under Menu Plan C26B in months they |
| Senority Date: 09/06/13 | Jun '17 | 166 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 82.94 | work 105 hours after completing 4 months of service. |
| | Oct '17 | 114.25 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 75.23 | Employees transfer to C26A after working 3900 hours. |
| | Nov '17 | 117.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 73.30 | **Findings:** The employee completed the eligibility |
| | Dec '17 | 106.75 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 333.94 | and requirements was eligible for contributions. |
| | Feb '18 | 153.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 67.51 | |
| | Mar '18 | 191.25 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 65.58 | |
| | Apr '18 | 173.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 63.65 | |
| | May '18 | 217.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 61.72 | |
| Sanchez, Hugo | Jan '17 | 140.75 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 340.63 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-1982 | Feb '17 | 130 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 333.54 | Contractors Association and SEIU Local 87, effective |
| EE ID: 571380 | Mar '17 | 116.5 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 326.44 | August 1, 2016-July 31, 2020. |
| Job Number: 57639 | Aug '17 | 140.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 79.08 | **Eligibility Requirement:** Employees are eligible for |
| Senority Date: 10/31/14 | Sep '17 | 141 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 77.15 | contributions under Menu Plan C26B in months they |
| | Oct '17 | 203.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 75.23 | work 105 hours after completing 4 months of service. |
| | Nov '17 | 114.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 73.30 | Employees transfer to C26A after working 3900 hours. |
| | Dec '17 | 167.25 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 71.37 | **Findings:** The employee completed the eligibility |
| | Jan '18 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | and requirements was eligible for contributions. |
| | Feb '18 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | **Findings:** Jan'18-May '18, employees hours were |
| | Mar '18 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | worked at Job #57794, which is Area 1E/F and not |
| | Apr '18 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | eligible for SF contributions. |
| | May '18 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | |
| Segundo, Maria | May '17 | 119.25 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 397.12 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-5654 | Jun '17 | 114.25 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 388.09 | Contractors Association and SEIU Local 87, effective |
| EE ID: 571244 | Oct '17 | 117.5 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 351.99 | August 1, 2016-July 31, 2020. |
| Job Number: 57639 | Dec '17 | 110.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 71.37 | **Eligibility Requirement:** Employees are eligible for |
| Senority Date: 02/10/14 | Jan '18 | 110.5 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 69.44 | contributions under Menu Plan C26B in months they |
| | Feb '18 | 135 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 67.51 | work 105 hours after completing 4 months of service. |
| | Mar '18 | 166.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 65.58 | Employees transfer to C26A after working 3900 hours. |
| | Apr '18 | 152.75 | $ 1,406.55 | $ 1,105.95 | $ - | $ 300.60 | $ 63.65 | **Findings:** The employee completed the eligibility |
| | May '18 | 204 | $ 1,406.55 | $ - | $ - | $ 1,406.55 | $ 288.81 | and requirements was eligible for contributions. |
| Tabares, Patricia | Feb '18 | 150 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 59.42 | **Contract:** Agreement b/w San Francisco Maintenance |
| XXX-XX-3572 | Mar '18 | 162.5 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 57.72 | Contractors Association and SEIU Local 87, effective |

Revised 2/1/21 — SAN FRANCISCO MASTER

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JAN '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| EE ID: 571614<br>Job Number: 59185<br>Senority Date: 11/30/15 | Apr '18 | 158.75 | $ 1,370.53 | $ 1,105.95 | $ - | $ 264.58 | $ 56.02 | August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees are eligible for contributions under Menu Plan C26B in months they work 105 hours after completing 4 months of service. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| **EMPLOYEES HIRED AFTER 8/1/16** | | | | | | | | |
| Alonso Aguirre, Maria J<br>XXX-XX-3347<br>EE ID: 572069<br>Job Number: 59541<br>Senority Date: 05/24/17 | Jan '18 | 109 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee did not complete 2 consecutive months and did not complete the requirement. |
| Bermudez, Julio<br>XXX-XX-9768<br>EE ID: 572213<br>Job Number: 58172<br>Senority Date: 09/16/17 | Mar '18<br>May '18 | 150.75<br>122.5 | $ 1,105.95<br>$ 1,105.95 | $ -<br>$ - | $ -<br>$ - | $ 1,105.95<br>$ 1,105.95 | $ 241.28<br>$ 227.09 | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Garcia, Ovarlyn E<br>XXX-XX-3481<br>EE ID: 571831<br>Job Number: 59837<br>Senority Date: 09/23/16 | Mar '17<br>Nov '17 | 146.5<br>107.25 | $ 1,105.95<br>$ 1,105.95 | $ -<br>$ - | $ -<br>$ - | $ 1,105.95<br>$ 1,105.95 | $ 326.44<br>$ 269.67 | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Hernandez, Sandy | May '18 | 107.75 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 227.09 | **Contract:** Agreement b/w San Francisco Maintenance |

Revised 2/1/21                                                                                                                                    SAN FRANCISCO MASTER

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JAN '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| XXX-XX-4808<br>EE ID: 572113<br>Job Number: 59677<br>Senority Date: 06/12/17 | | | | | | | | Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Lara, Francisco<br>XXX-XX-7250<br>EE ID: 571836<br>Job Number: 58186<br>Senority Date: 09/20/16 | Mar '18<br>May '18 | 0<br>0 | $          -<br>$          - | $          -<br>$          - | $   1,105.95<br>$   1,105.95 | $   1,105.95<br>$   1,105.95 | $          -<br>$          - | $          -<br>$          - | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** Employees hours were worked at Job #57794, which is Area 1E/F and not eligible for SF contributions. |
| Medina Rojas, Jacqueline<br>XXX-XX-5422<br>EE ID: 571833<br>Job Number: 59306<br>Senority Date: 09/22/16 | Jan '17<br>May '17 | 129.75<br>0 | $   1,105.95<br>$          - | $          -<br>$   1,105.95 | $          -<br>$   1,105.95 | $   1,105.95<br>$          - | $   340.63<br>$          - | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Medina, Arturo<br>XXX-XX-6290<br>EE ID: 571834<br>Job Number: 58187<br>Senority Date: 09/22/16 | Jan '17<br>May '17 | 140<br>0 | $   1,105.95<br>$          - | $          -<br>$   1,105.95 | $          -<br>$   1,105.95 | $   1,105.95<br>$          - | $   340.63<br>$          - | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Portillo, Hermalinda | Mar '17 | 108 | $   1,105.95 | $          - | $          - | $   1,105.95 | $   326.44 | **Contract:** Agreement b/w San Francisco Maintenance |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JAN '17-MAY '18

SAN FRANCISCO MASTER

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| XXX-XX-4869<br>EE ID: 571908<br>Job Number: 58171<br>Senority Date: 11/16/16 | May '18 | 108 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 227.09 | Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Portillo, Santos<br>XXX-XX-4363<br>EE ID: 571832<br>Job Number: 59301<br>Senority Date: 09/20/16 | Jan '17 | 125 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 340.63 | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| Ramos, Elizabeth<br>XXX-XX-4504<br>EE ID: 571835<br>Job Number: 58191<br>Senority Date: 09/29/16 | Jan '17 | 116 | $ 1,105.95 | $ - | $ - | $ 1,105.95 | $ 340.63 | **Contract:** Agreement b/w San Francisco Maintenance Contractors Association and SEIU Local 87, effective August 1, 2016-July 31, 2020.<br>**Eligibility Requirement:** Employees hired after 8/1/16, are eligible for contributions under Plan C26B after working two consecutive months of at least 105 hours. Employees transfer to C26A after working 3900 hours.<br>**Findings:** The employee completed the eligibility and requirements was eligible for contributions. |
| **TOTALS** | | | | | | $ 50,228.69 | $ 12,997.93 | |

Revised 2/1/21        **MERCHANTS BUILDING MAINTENANCE**        AREA 1G/H
DISCREPANCY LIST
AUDIT PERIOD: JANUARY 2017-MAY 2018

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Gutierrez, Martin | Jan '17 | 193.75 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1494 | Feb '17 | 178.25 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571757 | Mar '17 | 209.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 6/1/2000 are eligible |
| Job Number: 59201 | Apr '17 | 187.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under C28A after completing 90 hours per month. |
| Senority Date: 05/30/95 | May '17 | 209.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 208.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | was eligible for contributions. |
| | Jul '17 | 193.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | |
| | Aug '17 | 195.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 164.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 206 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 206.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 171 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 169 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Feb '18 | 149.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | |
| | Mar '18 | 175.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 162.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 181 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Hernandez, Martin | Jan '17 | 199.5 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-0365 | Feb '17 | 166 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571880 | Mar '17 | 201 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 6/1/2000 are eligible |
| Job Number: 59371 | Apr '17 | 186 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under C28A after completing 90 hours per month. |
| Senority Date: 10/16/94 | May '17 | 192.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 188.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | was eligible for contributions. |
| | Jul '17 | 191.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | |
| | Aug '17 | 202.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 335.14 | |
| | Sep '17 | 192.75 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 326.97 | |
| | Oct '17 | 191.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 318.79 | |
| | Nov '17 | 187.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 310.62 | |
| | Dec '17 | 180 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 302.44 | |
| | Jan '18 | 187.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 294.27 | |
| | Feb '18 | 173.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 286.09 | |
| | Mar '18 | 202.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 277.92 | |
| | Apr '18 | 187.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 269.75 | |
| | May '18 | 199.75 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 261.57 | |
| Lopez, Olga E | Jan '17 | 143.25 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 378.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7379 | Feb '17 | 131.25 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 370.79 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571748 | Mar '17 | 152.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 6/1/2000 are eligible |
| Job Number: 59356 | Apr '17 | 163.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under C28A after completing 90 hours per month. |
| Senority Date: 06/18/95 | May '17 | 123.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 359.66 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 142.75 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 351.49 | was eligible for contributions. |

Revised 2/1/21 — **MERCHANTS BUILDING MAINTENANCE** — AREA 1G/H
DISCREPANCY LIST
AUDIT PERIOD: JANUARY 2017-MAY 2018

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Aug '17 | 111.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 137.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 132.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Jan '18 | 100.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 294.27 | |
| | Mar '18 | 102 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 94.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| Perez, Ricardo | Jan '17 | 106.25 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2655 | Feb '17 | 101.75 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571744 | Mar '17 | 114.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 6/1/2000  are eligible |
| Job Number: 59250 | Apr '17 | 106.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under  C28A after completing 90 hours per month. |
| Seniority Date: 01/05/96 | May '17 | 113.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 106.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | was eligible for contributions. |
| | Jul '17 | 110.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | |
| | Aug '17 | 114.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 110.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 110.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 102 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 110.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 110.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Feb '18 | 93.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | |
| | Mar '18 | 102 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 115.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 103.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Rodriguez, Lidia | Jan '17 | 230.75 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2011 | Feb '17 | 237.5 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571741 | Mar '17 | 257 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 6/1/2000  are eligible |
| Job Number: 59233 | Apr '17 | 247.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under  C28A after completing 90 hours per month. |
| Seniority Date: 05/05/99 | May '17 | 237.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 217 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | was eligible for contributions. |
| | Jul '17 | 194 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | |
| | Aug '17 | 215.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 193.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 213 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 215.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 262.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 137.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Mar '18 | 184 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 192.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 199 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY 2017-MAY 2018

AREA 1G/H

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Rodriguez, Maribel | Jan '17 | 113.5 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 378.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-9079 | Feb '17 | 101 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 370.79 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1G/H* |
| EE ID: 571746 | Mar '17 | 122.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 376.01 | **Eligibility Requirement:** Employees hired prior to 6/1/2000  are eligible |
| Job Number: 59209 | Apr '17 | 112.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 367.84 | for contributions under  C28A after completing 90 hours per month. |
| Senority Date: 07/20/95 | May '17 | 148.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 359.66 | **Findings:** The employee completed the eligibility requirements and |
| | Jun '17 | 164 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 351.49 | was eligible for contributions. |
| | Jul '17 | 187 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 343.31 | |
| | Aug '17 | 120.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Oct '17 | 204 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 178 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 159.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 148.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Feb '18 | 135.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | |
| | Mar '18 | 158.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 148.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 161 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| | | | **TOTALS** | | | **$ 64,785.13** | **$ 15,958.83** | |

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Cora, Angeles | Apr '17 | 119 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 367.84 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2127 | Aug '17 | 186.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: 570306 | Sep '17 | 168 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59005 | Oct '17 | 176.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | E28 after 12 months of 110 hours per month. |
| Senority Date: 10/01/07 | Nov '17 | 160 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | Employees are eligible for contributions under C28A after 24 months |
| | Dec '17 | 168 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | of service and working 6 consecutive months of 110 hours per month. |
| | Jan '18 | 176.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | **Findings:** The employee completed the eligibility requirements and |
| | Feb '18 | 158.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | was eligible for contributions. |
| | Mar '18 | 182.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 168 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 184 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Graciano, Maria | Jan '17 | 206.75 | $ 620.43 | $ - | $ - | $ 620.43 | $ 191.09 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1811 | Aug '17 | 149 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 335.14 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: 571535 | Sep '17 | 142.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 326.97 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59042 | Oct '17 | 125 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 318.79 | E28 after 12 months of 110 hours per month. |
| Senority Date: 09/01/15 | Nov '17 | 126 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 310.62 | Employees are eligible for contributions under C28A after 24 months |
| | Dec '17 | 148 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 302.44 | of service and working 6 consecutive months of 110 hours per month. |
| | Jan '18 | 155 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 294.27 | **Findings:** The employee completed the eligibility requirements and |
| | Mar '18 | 134 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 277.92 | was eligible for contributions. |
| | Apr '18 | 134 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 269.75 | |
| | May '18 | 134.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 261.57 | |
| Landa Vaca, Noe | Aug '17 | 149.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-3100 | Sep '17 | 137 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: 571342 | Oct '17 | 143 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59012 | Nov '17 | 143.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | E28 after 12 months of 110 hours per month. |
| Senority Date: 07/19/06 | Dec '17 | 137 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | Employees are eligible for contributions under C28A after 24 months |
| | Jan '18 | 143 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | of service and working 6 consecutive months of 110 hours per month. |
| | Feb '18 | 131 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 286.09 | **Findings:** The employee completed the eligibility requirements and |
| | Mar '18 | 143 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 277.92 | was eligible for contributions. |
| | Apr '18 | 137 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 149.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Lopez, Jose | Jan '17 | 249.25 | $ 620.43 | $ - | $ - | $ 620.43 | $ 191.09 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-6767 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: 570887 | | | | | | | | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59042 | | | | | | | | E28 after 12 months of 110 hours per month. |
| Senority Date: 09/01/15 | | | | | | | | Employees are eligible for contributions under C28A after 24 months |
| | | | | | | | | of service and working 6 consecutive months of 110 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1A/B

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Maldonado Macias, Hermila | Aug '17 | 182.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-0243 | Sep '17 | 164 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | with SEIU-USWW May 1, 2016 through April 30, 2020: ***Area 1A/B*** |
| EE ID: 571509 | Oct '17 | 182 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59010 | Nov '17 | 170 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | E28 after 12 months of 110 hours per month. |
| Seniority Date: 10/01/07 | Dec '17 | 168.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | Employees are eligible for contributions under C28A after 24 months |
| | Jan '18 | 176 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | of service and working 6 consecutive months of 110 hours per month. |
| | Feb '18 | 152.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | **Findings:** The employee completed the eligibility requirements and |
| | Mar '18 | 170.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | was eligible for contributions. |
| | Apr '18 | 174 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 178 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Mendez, Jose | Jan '17 | 176 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 378.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7168 | Feb '17 | 151.75 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 370.79 | with SEIU-USWW May 1, 2016 through April 30, 2020: ***Area 1A/B*** |
| EE ID: 571497 | Mar '17 | 184.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 376.01 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59168 | Jun '17 | 176.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 351.49 | E28 after 12 months of 110 hours per month. |
| Seniority Date: 04/30/08 | Jul '17 | 168.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 343.31 | Employees are eligible for contributions under C28A after 24 months |
| | Aug '17 | 183.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | of service and working 6 consecutive months of 110 hours per month. |
| | Sep '17 | 160.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | **Findings:** The employee completed the eligibility requirements and |
| | Oct '17 | 176 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | was eligible for contributions. |
| | Nov '17 | 172 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 290 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| Quintero, Patricia | Aug '17 | 138 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1596 | Sep '17 | 126 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 326.97 | with SEIU-USWW May 1, 2016 through April 30, 2020: ***Area 1A/B*** |
| EE ID: 571515 | Oct '17 | 132 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59009 | Nov '17 | 132 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | E28 after 12 months of 110 hours per month. |
| Seniority Date: 11/01/10 | Dec '17 | 126 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 302.44 | Employees are eligible for contributions under C28A after 24 months |
| | Jan '18 | 137.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 294.27 | of service and working 6 consecutive months of 110 hours per month. |
| | Feb '18 | 114 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 286.09 | **Findings:** The employee completed the eligibility requirements and |
| | Mar '18 | 132 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | was eligible for contributions. |
| | Apr '18 | 126 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 269.75 | |
| | May '18 | 138.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Ramirez, Reina S | Aug '17 | 184 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7030 | Oct '17 | 176.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | with SEIU-USWW May 1, 2016 through April 30, 2020: ***Area 1A/B*** |
| EE ID: 570051 | Nov '17 | 176 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59005 | Dec '17 | 168 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | E28 after 12 months of 110 hours per month. |
| Seniority Date: 10/01/07 | Jan '18 | 176.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | Employees are eligible for contributions under C28A after 24 months |
| | Feb '18 | 152.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | of service and working 6 consecutive months of 110 hours per month. |
| | Mar '18 | 179.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | **Findings:** The employee completed the eligibility requirements and |
| | Apr '18 | 168.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | was eligible for contributions. |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1A/B

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | May '18 | 184 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Sanabria, Marleny | Jan '17 | 168.25 | $ 620.43 | $ 1,229.48 | $ 609.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-5986 | Feb '17 | 160 | $ 620.43 | $ 1,229.48 | $ 609.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: 570852 | Mar '17 | 186.5 | $ 620.43 | $ 1,273.89 | $ 653.46 | $ - | $ - | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59042 | Apr '17 | 173 | $ 620.43 | $ 1,273.89 | $ 653.46 | $ - | $ - | E28 after 12 months of 110 hours per month. |
| Senority Date: 09/01/15 | May '17 | 188.25 | $ 620.43 | $ 1,273.89 | $ 653.46 | $ - | $ - | Employees are eligible for contributions under C28A after 24 months |
| | Jun '17 | 176.25 | $ 620.43 | $ 1,273.89 | $ 653.46 | $ - | $ - | of service and working 6 consecutive months of 110 hours per month. |
| | Jul '17 | 168.5 | $ 620.43 | $ 1,273.89 | $ 653.46 | $ - | $ - | **Findings:** The employee completed the eligibility requirements and |
| | Aug '17 | 186.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | was eligible for contributions. |
| | Sep '17 | 168 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 179.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 176.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Jan '18 | 120 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 294.27 | |
| Villanueva, Maria | Jun '17 | 141.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1950 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: *Area 1A/B* |
| EE ID: | | | | | | | | **Eligibility Requirement:** Employees are eligible for contributions under |
| Job Number: 59697 | | | | | | | | E28 after 12 months of 110 hours per month. |
| Senority Date: 06/10/17 | | | | | | | | Employees are eligible for contributions under C28A after 24 months |
| | | | | | | | | of service and working 6 consecutive months of 110 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements |
| | | | | | | | | and was not eligible for contributions. |
| | | | **TOTALS** | | $ 74,089.66 | $ 17,971.48 | | |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1C/D

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| **EMPLOYEES HIRED PRIOR TO 5/1/12** | | | | | | | | |
| Alvez Guia, Catalina | Aug '17 | 47.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | Contract: Northern California Maintenance Contractors Agreement |
| XXX-XX-1924 | Sep '17 | 43.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1C/D** |
| EE ID: 570017 | Oct '17 | 82 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Eligibility Requirement:** Employees _prior to 5/1/12_ are eligible |
| Job Number: 57561 | Nov '17 | 41.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | for contributions under E33 after 24 months of 110 hours per month. |
| Seniority Date: 04/07/00 | Dec '17 | 42 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | Employees are eligible for contributions under C28A after 36 |
| | Jan '18 | 47.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | consecutive months of 110 hours per month. |
| | Feb '18 | 38 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Findings:** The employee completed the eligibility requirements and |
| | Mar '18 | 44.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | was eligible for contributions. |
| | Apr '18 | 51 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | May '18 | 46.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| Baltazar Morales, Abel Salvador | Apr '18 | 167.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 269.75 | Contract: Northern California Maintenance Contractors Agreement |
| XXX-XX-3060 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1C/D** |
| EE ID: 570577 | | | | | | | | **Eligibility Requirement:** Employees _prior to 5/1/12_ are eligible |
| Job Number: 57561 | | | | | | | | for contributions under E33 after 24 months of 110 hours per month. |
| Seniority Date: 12/01/04 | | | | | | | | Employees are eligible for contributions under C28A after 36 |
| | | | | | | | | consecutive months of 110 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |
| Segura Garnica, Raul | Apr '18 | 84 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | Contract: Northern California Maintenance Contractors Agreement |
| XXX-XX-3873 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1C/D** |
| EE ID: 570578 | | | | | | | | **Eligibility Requirement:** Employees _prior to 5/1/12_ are eligible |
| Job Number: 57561 | | | | | | | | for contributions under E33 after 24 months of 110 hours per month. |
| Seniority Date: 12/01/10 | | | | | | | | Employees are eligible for contributions under C28A after 36 |
| | | | | | | | | consecutive months of 110 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |
| **EMPLOYEES HIRED AFTER 5/1/12** | | | | | | | | |
| Jimenez, Maria | Jan '17 | 174 | $ - | $ 1,229.48 | $ 1,229.48 | $ - | $ - | Contract: Northern California Maintenance Contractors Agreement |
| XXX-XX-0261 | Feb '17 | 152.25 | $ - | $ 1,229.48 | $ 1,229.48 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1C/D** |
| EE ID: 571529 | Mar '17 | 208 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | **Eligibility Requirement:** Employees _hired after 5/1/12_ are eligible |
| Job Number: 59006 | May '17 | 144 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | for contributions under E33 after 24 months of 130 hours per month. |
| Seniority Date: 09/01/15 | Jun '17 | 184 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | Employees are eligible for contributions under C28A after 36 |
| | Jul '17 | 167.75 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | consecutive months of 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements |
| | | | | | | | | and was not eligible for contributions. |

**TOTALS** $ **1,273.89** $ **269.75**

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| **EMPLOYEES HIRED PRIOR TO 5/1/08** | | | | | | | | |
| Carmona, Alma Ivonne | Jan '17 | 155 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-3415 | Feb '17 | 133.75 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020. **Area 1E/F** |
| EE ID: 571758 | Mar '17 | 172.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible |
| Job Number: 59550 | Apr '17 | 145.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | for contributions under E28 after 12 months and C28A after 18 |
| Seniority Date: 07/19/07 | May '17 | 191.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | months. Continuing eligibility will be based on 130 hours. |
| | Jun '17 | 165 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | **Findings:** The employee completed the eligibility requirements and |
| | Jul '17 | 114.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | was eligible for contributions. |
| | Nov '17 | 132.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 147.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Apr '18 | 159.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 170 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Castro, Jose | Feb '17 | 133 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 370.79 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-9335 | Mar '17 | 167.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 376.01 | with SEIU-USWW May 1, 2016 through April 30, 2020. **Area 1E/F** |
| EE ID: 571734 | Apr '17 | 178 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 367.84 | **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible |
| Job Number: 57799 | May '17 | 141 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 359.66 | for contributions under E28 after 12 months and C28A after 18 |
| Seniority Date: 01/29/08 | May '18 | 139.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 261.57 | months. Continuing eligibility will be based on 130 hours. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |
| Gomez, Yolanda | Mar '17 | 194.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2328 | Apr '17 | 193.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020. **Area 1E/F** |
| EE ID: 571740 | May '17 | 177 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible |
| Job Number: 58077 | Jun '17 | 201 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | for contributions under E28 after 12 months and C28A after 18 |
| Seniority Date: 07/18/05 | Jul '17 | 197.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | months. Continuing eligibility will be based on 130 hours. |
| | Aug '17 | 265.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Findings:** The employee did not complete the eligibility requirements |
| | Sep '17 | 139 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | and was not eligible for contributions. |
| | Oct '17 | 130 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| Gonzales, Felix | Mar '17 | 114 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-9127 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020. **Area 1E/F** |
| EE ID: 571751 | | | | | | | | **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible |
| Job Number: 59244 | | | | | | | | for contributions under E28 after 12 months and C28A after 18 |
| Seniority Date: 01/01/01 | | | | | | | | months. Continuing eligibility will be based on 130 hours. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements |
| | | | | | | | | and was not eligible for contributions. |
| Pena, Guadalupe M | Feb '17 | 115 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7642 | Mar '17 | 144 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | with SEIU-USWW May 1, 2016 through April 30, 2020. **Area 1E/F** |
| EE ID: 571762 | Apr '17 | 155.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible |
| Job Number: 58099 | May '17 | 176.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | for contributions under E28 after 12 months and C28A after 18 |
| Seniority Date: 03/01/04 | Jun '17 | 183.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | months. Continuing eligibility will be based on 130 hours. |
| | Jul '17 | 173.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | **Findings:** The employee completed the eligibility requirements and |
| | Aug '17 | 189 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | was eligible for contributions. |
| | Sep '17 | 180.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 176.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Feb '18 | 93 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | Mar '18 | 108.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | May '18 | 124.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| Sanchez, Apolinar<br>XXX-XX-2386<br>EE ID: 570371<br>Job Number: 59281<br>Seniority Date: 04/10/04 | Jan '17 | 142.5 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible for contributions under E28 after 12 months and C28A after 18 months. Continuing eligibility will be based on 130 hours. **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| | Feb '17 | 133 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | |
| | Mar '17 | 150.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | |
| | Apr '17 | 137.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | |
| | May '17 | 163.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | |
| | Jun '17 | 143.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | |
| | Jul '17 | 136.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.30 | |
| | Aug '17 | 155.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 182 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 136.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 148.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 138 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 142.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Mar '18 | 155.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 185.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 144.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Soto Concepcion, Eva<br>XXX-XX-3666<br>EE ID: 571752<br>Job Number: 58087<br>Seniority Date: 06/18/07 | Jan '17 | 150.25 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 378.68 | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible for contributions under E28 after 12 months and C28A after 18 months. Continuing eligibility will be based on 130 hours. **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| | Feb '17 | 131 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 370.79 | |
| | Mar '17 | 144.75 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 376.01 | |
| | Apr '17 | 140.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | |
| | May '17 | 135.75 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 359.66 | |
| | Jun '17 | 217.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | |
| | Jul '17 | 133.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 343.31 | |
| | Aug '17 | 147 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | |
| | Sep '17 | 136.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | |
| | Oct '17 | 137 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 132.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Dec '17 | 136.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | |
| | Jan '18 | 132.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 197.66 | |
| | Mar '18 | 142.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 131.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 138 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Villasenor, Maria N<br>XXX-XX-1925<br>EE ID: 571521<br>Job Number: 59014<br>Seniority Date: 07/02/01 | Mar '17 | 115 | $ - | $ 1,273.89 | $ 1,273.89 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired prior to 5/1/08 are eligible for contributions under E28 after 12 months and C28A after 18 months. Continuing eligibility will be based on 130 hours. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |

**EMPLOYEES HIRED ON OR AFTER 5/1/08**

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Acosta, Alicia | Feb '17 | 215 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-3675 | Mar '17 | 244.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571743 | Apr '17 | 198 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58202 | May '17 | 161.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 07/31/16 | Jun '17 | 160.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jul '17 | 148 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Aug '17 | 172.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | Sep '17 | 157.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Findings:** The employee did not complete the eligibility requirements |
| | Oct '17 | 155.5 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | and was not eligible for contributions. |
| | Nov '17 | 153 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | Dec '17 | 158.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | Jan '18 | 240.5 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | Feb '18 | 203 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| | Mar '18 | 132.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| Alcaraz, Erika | Mar '17 | 162 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-6751 | Apr '17 | 150 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571893 | May '17 | 172 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58224 | Jun '17 | 150 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 09/23/16 | Jul '17 | 156 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements |
| | | | | | | | | and was not eligible for contributions. |
| Ambriz, Laura | Feb '17 | 141.25 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-6728 | Mar '17 | 164.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571810 | Apr '17 | 152.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59363 | May '17 | 164.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 09/17/16 | Jun '17 | 156.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jul '17 | 156.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements |
| | | | | | | | | and was not eligible for contributions. |
| Antonio Basurto, Leticia | Jan '17 | 250.25 | $ 1,229.48 | $ - | $ - | $ 1,229.48 | $ 378.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7311 | Feb '17 | 239.25 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571811 | Mar '17 | 271.25 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59253 | Apr '17 | 206 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.40 | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 09/14/11 | May '17 | 210 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 205 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.34 | months with a certain number of hours per month. Continuing |
| | Jul '17 | 39 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | Aug '17 | 245.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 225.11 | **Findings:** The employee completed the eligibility requirements and |
| | Sep '17 | 232 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 219.62 | was eligible for contributions. |
| | Oct '17 | 172 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 214.13 | |
| | Nov '17 | 246.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | |
| | Feb '18 | 127.25 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Mar '18 | 117 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | |
| Arevalo, Maria Margarita | Jan '17 | 186.25 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-6247 | Feb '17 | 128 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571501 | Mar '17 | 138 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59017 | Apr '17 | 118 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 09/09/15 | May '17 | 138 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 136.75 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 127 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Arriaga, Thelma | Jun '17 | 171.5 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1978 | Jul '17 | 182 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571923 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58256 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 11/18/16 | | | | | | | | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Chavez, Maria J | Jul '17 | 205 | $ 418.24 | $ - | $ - | $ 418.24 | $ 112.72 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1692 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571069 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59276 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 08/01/13 | | | | | | | | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Guzman, Claudia | Jun '17 | 144.25 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2654 | Jul '17 | 200.5 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 570435 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59563 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 12/20/09 | | | | | | | | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Hernandez, Jose Maria | Jan '17 | 163.75 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-8606 | Feb '17 | 149 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571852 | Mar '17 | 185.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58136 | Apr '17 | 155.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Senority Date: 10/01/16 | | | | | | | | shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Hernandez, Sarai | Apr '17 | 139.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2332 | May '17 | 149 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571750 | Jul '17 | 115.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59245 | Mar '18 | 110 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 07/30/16 | | | | | | | | shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Miguel, Lorena | Feb '17 | 132.25 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2893 | Mar '17 | 132.25 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571602 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59036 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 11/12/15 | | | | | | | | shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Macias De Hernandez, Rosa | Jan '17 | 140.25 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.45 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-4398 | Feb '17 | 137 | $ 1,229.48 | $ 1,224.76 | $ - | $ 4.72 | $ 1.42 | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571848 | Mar '17 | 158.75 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.43 | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58039 | Apr '17 | 141.25 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 367.84 | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 08/23/11 | May '17 | 155.5 | $ 1,273.89 | $ 1,269.05 | $ - | $ 4.84 | $ 1.37 | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 138.5 | $ 1,273.89 | $ - | $ - | $ 1,273.89 | $ 351.49 | months with a certain number of hours per month. Continuing |
| | Jul '17 | 29.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | Nov '17 | 143.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 208.64 | **Findings:** The employee completed the eligibility requirements and |
| | Dec '17 | 144 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 203.15 | was eligible for contributions. |
| | Feb '18 | 138 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 192.16 | |
| | Mar '18 | 155.25 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 186.67 | |
| | Apr '18 | 187.75 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 181.18 | |
| | May '18 | 199.5 | $ 1,273.89 | $ 418.24 | $ - | $ 855.65 | $ 175.69 | |
| Montiel, Azaet | Jun '17 | 68 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-7963 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59265 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 02/27/17 | | | | | | | | shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Mora, Hortensia<br>XXX-XX-2597<br>EE ID: 571504<br>Job Number: 59020<br>Senority Date: 04/30/12 | Feb '17<br>Mar '18 | 125<br>145 | $ -<br>$ 418.24 | $ 418.24<br>$ - | $ 418.24<br>$ - | $ -<br>$ 418.24 | $ -<br>$ 91.25 | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month.<br>**Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Mora, Lizet<br>XXX-XX-2610<br>EE ID: 571588<br>Job Number: 59020<br>Senority Date: 11/01/15 | Feb '17<br>Mar '17<br>Apr '17<br>May '17<br>Jun '17<br>Sep '17 | 137<br>166.5<br>144.25<br>165.25<br>161<br>154.5 | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | $ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24 | $ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24 | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | -<br>-<br>-<br>-<br>-<br>- | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month.<br>**Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Palma, Juana Elda<br>XXX-XX-0789<br>EE ID: 571754<br>Job Number: 59265<br>Senority Date: 07/30/16 | May '17 | 0 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month.<br>**Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Perez, Ma Guadalupe<br>XXX-XX-6447<br>EE ID: 571742<br>Job Number: 59254<br>Senority Date: 12/02/08 | Apr '18 | 105.25 | $ - | $ 418.24 | $ 418.24 | $ - | - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month.<br>**Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Perez, Oscar<br>XXX-XX-8883<br>EE ID: 571756<br>Job Number: 59241 | Jan '17<br>Feb '17<br>Mar '17<br>Apr '17 | 209.25<br>190<br>217.75<br>200 | $ -<br>$ -<br>$ -<br>$ - | $ 1,224.76<br>$ 1,224.76<br>$ 1,269.05<br>$ 1,269.05 | $ 1,224.76<br>$ 1,224.76<br>$ 1,269.05<br>$ 1,269.05 | $ -<br>$ -<br>$ -<br>$ - | -<br>-<br>-<br>- | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Senority Date: 07/30/16 | May '17 | 216.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 208.5 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 191.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Pulido Muñoz, Arturo XXX-XX-1642 EE ID: 570466 Job Number: 58055 Senority Date: 04/09/10 | Jul '17 | 98 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Pureco Ramos, Karina XXX-XX-3235 EE ID: 571493 Job Number: 57799 Senority Date: 09/01/15 | Jun '17 | 0 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| | Jul '17 | 0 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | |
| Ramos, Maria De La Luz XXX-XX-0386 EE ID: 571376 Job Number: 59452 Senority Date: 10/15/14 | Oct '17 | 175 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Rangel, Olivia XXX-XX-7654 EE ID: 571879 Job Number: 58214 Senority Date: 01/07/10 | Jan '17 | 181 | $ 418.24 | $ 1,224.76 | $ 806.52 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** **Eligibility Requirement:** Employees hired on or after 5/1/08 are eligible for contributions under E33 after 48 months of service. The shall be no requirement to work a certain number of consecutive months with a certain number of hours per month. Continuing eligibility will be based on 130 hours per month. **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| | Feb '17 | 159.5 | $ 418.24 | $ 1,224.76 | $ 806.52 | $ - | $ - | |
| | Mar '17 | 188.5 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | |
| | Apr '17 | 181.25 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | |
| | May '17 | 196 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | |
| | Jun '17 | 189 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | |
| | Jul '17 | 188.75 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | |
| | Aug '17 | 196.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 110.03 | |
| | Sep '17 | 189 | $ 418.24 | $ - | $ - | $ 418.24 | $ 107.35 | |
| | Oct '17 | 179.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 104.66 | |
| | Nov '17 | 182.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 101.98 | |

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Dec '17 | 193 | $ 418.24 | $ - | $ - | $ 418.24 | $ 99.30 | |
| | Jan '18 | 148.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 96.61 | |
| | Feb '18 | 170.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 93.93 | |
| Raygoza, Pedro | Jan '17 | 184 | $ 418.24 | $ 1,229.48 | $ 811.24 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-8795 | Feb '17 | 160 | $ 418.24 | $ 1,229.48 | $ 811.24 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 570669 | Mar '17 | 184 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 57568 | Apr '17 | 160 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 05/01/12 | May '17 | 184 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 175.75 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 168 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | Aug '17 | 184 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | **Findings:** The employee completed the eligibility requirements and |
| | Sep '17 | 168 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | was eligible for contributions. |
| | Oct '17 | 176 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Nov '17 | 176 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Dec '17 | 168 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Jan '18 | 184.75 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Feb '18 | 160.25 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Mar '18 | 176 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | Apr '18 | 168.5 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| | May '18 | 184 | $ 418.24 | $ 1,273.89 | $ 855.65 | $ - | $ - | |
| Rendon, Fabiola | Sep '17 | 156.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 107.35 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-2533 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 570520 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58205 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 08/16/10 | | | | | | | | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |
| Reyes, Hugo | Jan '17 | 176 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-4672 | Feb '17 | 152 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571531 | Mar '17 | 184 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59004 | Apr '17 | 160 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 02/01/09 | May '17 | 184 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 120 | $ - | $ 620.43 | $ 620.43 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 163 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | May '18 | 169 | $ 418.24 | $ - | $ - | $ 418.24 | $ 85.88 | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Rios, Josefina | Jan '17 | 157 | $ 418.24 | $ - | $ - | $ 418.24 | $ 128.82 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-3572 | Feb '17 | 134.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 126.13 | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571745 | Mar '17 | 163.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 123.45 | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59213 | Apr '17 | 143.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 120.77 | eligible for contributions under E33 after 48 months of service. The |
| Senority Date: 07/21/09 | May '17 | 156.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 118.08 | shall be no requirement to work a certain number of consecutive |

Revised 2/1/21

AREA 1E/F

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Jun '17 | 160 | $ 418.24 | $ - | $ - | $ 418.24 | $ 115.40 | months with a certain number of hours per month. Continuing |
| | Jul '17 | 149.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 112.72 | eligibility will be based on 130 hours per month. |
| | Aug '17 | 149.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 110.03 | **Findings:** The employee completed the eligibility requirements and |
| | Sep '17 | 151.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 107.35 | was eligible for contributions. |
| | Oct '17 | 153.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 104.66 | |
| | Nov '17 | 145.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 101.98 | |
| | Dec '17 | 149.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 99.30 | |
| | Jan '18 | 149.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 96.61 | |
| | Mar '18 | 162.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 91.25 | |
| | Apr '18 | 142 | $ 418.24 | $ - | $ - | $ 418.24 | $ 88.56 | |
| | May '18 | 144.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 85.88 | |
| Rivera, Dante<br>XXX-XX-5177<br>EE ID: 571528<br>Job Number: 59019<br>Seniority Date: 07/19/11 | Jan '17 | 171.25 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| | Feb '17 | 152.25 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| | Mar '17 | 184 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| | Apr '17 | 160.5 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| | May '17 | 184 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 176.25 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 169 | $ 418.24 | $ 620.43 | $ 202.19 | $ - | $ - | eligibility will be based on 130 hours per month. |
| | May '18 | 183.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 85.88 | **Findings:** The employee completed the eligibility requirements and |
| | | | | | | | | was eligible for contributions. |
| Sanchez, Kassandra<br>XXX-XX-6276<br>EE ID:<br>Job Number: 58169<br>Seniority Date: 10/13/17 | Mar '18 | 120 | $ - | $ 1,105.95 | $ 1,105.95 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement<br>with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are<br>eligible for contributions under E33 after 48 months of service. The<br>shall be no requirement to work a certain number of consecutive<br>months with a certain number of hours per month. Continuing<br>eligibility will be based on 130 hours per month.<br>**Findings:** The employee did not complete the eligibility requirements<br>and was not eligible for contributions. |
| Segura, Jose<br>XXX-XX-0680<br>EE ID: 571829<br>Job Number: 58032<br>Seniority Date: 04/08/11 | Mar '17 | 115.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement<br>with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F**<br>**Eligibility Requirement:** Employees hired on or after 5/1/08 are<br>eligible for contributions under E33 after 48 months of service. The<br>shall be no requirement to work a certain number of consecutive<br>months with a certain number of hours per month. Continuing<br>eligibility will be based on 130 hours per month.<br>**Findings:** The employee did not complete the eligibility requirements<br>and was not eligible for contributions. |
| Soriano, Martin<br>XXX-XX-8541<br>EE ID: 570875<br>Job Number: 58011<br>Seniority Date: 03/12/13 | Jan '17 | 121.5 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| | Feb '17 | 111 | $ - | $ 1,224.76 | $ 1,224.76 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| | Mar '17 | 135 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| | Apr '17 | 127.25 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | eligible for contributions under E33 after 48 months of service. The |
| | May '17 | 178.5 | $ 418.24 | $ 1,269.05 | $ 850.81 | $ - | $ - | shall be no requirement to work a certain number of consecutive |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
PRELIMINARY REPORT
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 1E/F

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| | Jun '17 | 166.5 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 138.75 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | eligibility will be based on 130 hours per month. |
| | Mar '18 | 143 | $    418.24 | $      - | $      - | $    418.24 | $    91.25 | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Valdivias, Teodora | Mar '17 | 229.75 | $      - | $    1,269.05 | $    1,269.05 | $      - | $      - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-8862 | Apr '17 | 205.5 | $      - | $    1,269.05 | $    1,269.05 | $      - | $      - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571738 | May '17 | 216.25 | $      - | $    1,269.05 | $    1,269.05 | $      - | $      - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59295 | Jun '17 | 170.5 | $      - | $    1,269.05 | $    1,269.05 | $      - | $      - | eligible for contributions. The |
| Seniority Date: 07/30/16 | Jul '17 | 165.5 | $      - | $    1,269.05 | $    1,269.05 | $      - | $      - | shall be no requirement to work a certain number of consecutive |
| | Aug '17 | 172.75 | $      - | $    418.24 | $    418.24 | $      - | $      - | months with a certain number of hours per month. Continuing |
| | Sep '17 | 165 | $      - | $    418.24 | $    418.24 | $      - | $      - | eligibility will be based on 130 hours per month. |
| | Oct '17 | 152.25 | $      - | $    418.24 | $    418.24 | $      - | $      - | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Vasquez, Teresa | Jan '17 | 167.5 | $    418.24 | $    1,224.76 | $    806.52 | $      - | $      - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-5477 | Feb '17 | 147 | $    418.24 | $    1,224.76 | $    806.52 | $      - | $      - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 571755 | Mar '17 | 164.5 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 59246 | Apr '17 | 136.75 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | eligible for contributions under E33 after 48 months of service. The |
| Seniority Date: 03/03/09 | May '17 | 166.75 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | shall be no requirement to work a certain number of consecutive |
| | Jun '17 | 184.25 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | months with a certain number of hours per month. Continuing |
| | Jul '17 | 204.25 | $    418.24 | $    1,269.05 | $    850.81 | $      - | $      - | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |
| Villanueva, Gabriel | May '17 | 184.25 | $    418.24 | $      - | $      - | $    418.24 | $    118.08 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1254 | | | | | | | | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1E/F** |
| EE ID: 570908 | | | | | | | | **Eligibility Requirement:** Employees hired on or after 5/1/08 are |
| Job Number: 58029 | | | | | | | | eligible for contributions under E33 after 48 months of service. The |
| Seniority Date: 05/08/13 | | | | | | | | shall be no requirement to work a certain number of consecutive |
| | | | | | | | | months with a certain number of hours per month. Continuing |
| | | | | | | | | eligibility will be based on 130 hours per month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |

TOTALS                    $    59,017.40    $   14,906.06

Revised 2/1/21 — **MERCHANTS BUILDING MAINTENANCE** — AREA 1M
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Arce, Cristian | May '17 | 154.5 | $ 388.49 | $ - | $ - | $ 388.49 | $ 109.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-3712 | Jun '17 | 115.75 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1M** |
| EE ID: 570747 | Jul '17 | 122 | $ - | $ 1,269.05 | $ 1,269.05 | $ - | $ - | **Eligibility Requirement:** Employees are eligible for contributions |
| Job Number: 59439 | Feb '18 | 111.5 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | under Plan E25 after completing 48 months of service and having |
| Senority Date: 01/05/99 | Mar '18 | 126.75 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | worked 130 hours in the prior month. |
| | | | | | | | | **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Pardo, Cecilia | May '17 | 164.75 | $ 388.49 | $ - | $ - | $ 388.49 | $ 109.68 | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-5313 | Jun '17 | 173.5 | $ 388.49 | $ - | $ - | $ 388.49 | $ 107.19 | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 1M** |
| EE ID: 571648 | Jul '17 | 168 | $ 388.49 | $ - | $ - | $ 388.49 | $ 104.70 | **Eligibility Requirement:** Employees are eligible for contributions |
| Job Number: 59176 | | | | | | | | under Plan E25 after completing 48 months of service and having |
| Senority Date: 10/28/12 | | | | | | | | worked 130 hours in the prior month. |
| | | | | | | | | **Findings:** The employee completed the eligibility requirements and was eligible for contributions. |

**TOTALS**     $ 1,553.96   $ 431.26

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 2B

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| **EMPLOYEES HIRED PRIOR TO 5/1/12** | | | | | | | | |
| Alvarez, Maria | Jan '17 | 161 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-1157 | Feb '17 | 148 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** |
| EE ID: 571527 | Mar '17 | 126.5 | $ - | $ 944.92 | $ 944.92 | $ - | $ - | **Eligibility Requirement:** Employees _**hired prior to 5/1/12**_ who have |
| Job Number: 59112 | Apr '17 | 133.25 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | already qualified for composite coverage shall be covered under C30 |
| Seniority Date: 10/01/07 | May '17 | 123.5 | $ - | $ 944.92 | $ 944.92 | $ - | $ - | after completing 60 months of sevice. |
| | Jun '17 | 140 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Findings:** Based on the work history from the prior contractor, the |
| | Aug '17 | 160.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 110.03 | employee did not completed the requirements for composite |
| | Oct '17 | 133.75 | $ 418.24 | $ - | $ - | $ 418.24 | $ 104.66 | contributions and is only eligible for employee-only. |
| | Mar '18 | 165 | $ 418.24 | $ - | $ - | $ 418.24 | $ 91.25 | |
| | Apr '18 | 158.5 | $ 418.24 | $ - | $ - | $ 418.24 | $ 88.56 | |
| | May '18 | 170.25 | $ 418.24 | $ - | $ - | $ 418.24 | $ 85.88 | |
| | | | | | | | | |
| Drobot, Vasyl | Feb '18 | 151 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-5518 | Mar '18 | 170 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** |
| EE ID: 570357 | | | | | | | | **Eligibility Requirement:** Employees _**hired prior to 5/1/12**_ who have |
| Job Number: 58146 | | | | | | | | already qualified for composite coverage shall be covered under C30 |
| Seniority Date: 11/15/09 | | | | | | | | after completing 60 months of sevice. |
| | | | | | | | | **Findings:** Based on the work history from the prior contractor, the |
| | | | | | | | | employee did not completed the requirements for composite |
| | | | | | | | | or employee-only contributions. |
| | | | | | | | | |
| Flores, Gustavo | Jan '17 | 174.75 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-5935 | Feb '17 | 151.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** |
| EE ID: 571526 | Mar '17 | 185.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Eligibility Requirement:** Employees _**hired prior to 5/1/12**_ who have |
| Job Number: 59112 | Apr '17 | 159.75 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | already qualified for composite coverage shall be covered under C30 |
| Seniority Date: 07/01/07 | May '17 | 184 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | after completing 60 months of sevice. |
| | Jun '17 | 185.25 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Findings:** Based on the work history from the prior contractor, the |
| | Jul '17 | 167.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | employee did not completed the requirements for composite |
| | | | | | | | | contributions and is only eligible for employee-only. |
| | | | | | | | | |
| Lee, Jin Sup | Jan '17 | 168.75 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-4212 | Feb '17 | 152.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** |
| EE ID: 571498 | Mar '17 | 187 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Eligibility Requirement:** Employees _**hired prior to 5/1/12**_ who have |
| Job Number: 59082 | Apr '17 | 162 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | already qualified for composite coverage shall be covered under C30 |
| Seniority Date: 10/01/07 | May '17 | 188 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | after completing 60 months of sevice. |
| | Jun '17 | 181.25 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Findings:** Based on the work history from the prior contractor, the |
| | Jul '17 | 171.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | employee did not completed the requirements for composite |
| | | | | | | | | contributions and is only eligible for employee-only. |
| | | | | | | | | |
| Nicorici, Rodica | Jan '17 | 173.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement |
| XXX-XX-9855 | Feb '17 | 154 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** |
| EE ID: 591503 | Mar '17 | 184.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Eligibility Requirement:** Employees _**hired prior to 5/1/12**_ who have |
| Job Number: 59115 | Apr '17 | 164.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | already qualified for composite coverage shall be covered under C30 |
| Seniority Date: 10/01/07 | May '17 | 186.75 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | after completing 60 months of sevice. |
| | Jun '17 | 179.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | **Findings:** Based on the work history from the prior contractor, the |
| | Jul '17 | 151.5 | $ 418.24 | $ 944.92 | $ 526.68 | $ - | $ - | employee did not completed the requirements for composite |
| | | | | | | | | contributions and is only eligible for employee-only. |

Revised 2/1/21

**MERCHANTS BUILDING MAINTENANCE**
DISCREPANCY LIST
AUDIT PERIOD: JANUARY '17-MAY '18

AREA 2B

| EMPLOYEE | MONTH WORKED | HOURS WORKED | CONTRIBUTIONS DUE | CONTRIBUTIONS PAID | OVER REPORTED CONTRIBUTIONS | UNDER REPORTED CONTRIBUTIONS | INTEREST DUE THE FUND | AUDITOR COMMENTS |
|---|---|---|---|---|---|---|---|---|
| Reyes, Delma<br>XXX-XX-1395<br>EE ID: 571536<br>Job Number: 59112<br>Seniority Date: 10/01/07 | Jan '17<br>Feb '17<br>Mar '17<br>Apr '17<br>May '17<br>Nov '17<br>Dec '17 | 155.75<br>132<br>126<br>132.5<br>123.25<br>130.5<br>138.5 | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | $ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 418.24<br>$ 418.24 | $ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 418.24<br>$ 418.24 | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area 2B** **Eligibility Requirement:** Employees *hired prior to 5/1/12* who have already qualified for composite coverage shall be covered under C30 after completing 60 months of sevice. **Findings:** Based on the work history from the prior contractor, the employee did not completed the requirements for composite or employee-only contributions. |
| **EMPLOYEES HIRED AFTER 5/1/2012** | | | | | | | | |
| Gutierrez Padilla, Marta<br>XXX-XX-0785<br>EE ID: 571842<br>Job Number: 58141<br>Seniority Date: 10/01/16 | Jan '17<br>Jul '17 | 137.5<br>143 | $ -<br>$ - | $ 418.24<br>$ 1,269.05 | $ 418.24<br>$ 1,269.05 | $ -<br>$ - | $ -<br>$ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area B** **Eligibility Requirement:** Employees hired on or after 5/1/12 are eligible for contributions under E33 after 24 months of 130 hours per month and completing 12 consecutive months of 130 hours per month. working 6 consecutive months of 133 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Martinez, Alberto<br>XXX-XX-9965<br>EE ID: 571500<br>Job Number: 59118<br>Seniority Date: 02/16/15 | Jan '17<br>Feb '17<br>Mar '17<br>Apr '17<br>May '17<br>Jun '17<br>Jul '17 | 168<br>150.5<br>184.25<br>160<br>184.25<br>177.75<br>160.5 | $ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24<br>$ 418.24 | $ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92<br>$ 944.92 | $ 526.68<br>$ 526.68<br>$ 526.68<br>$ 526.68<br>$ 526.68<br>$ 526.68<br>$ 526.68 | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | $ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ -<br>$ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area B** **Eligibility Requirement:** Employees hired on or after 5/1/12 are eligible for contributions under E33 after 24 months of 130 hours per month and completing 12 consecutive months of 130 hours per month. working 6 consecutive months of 133 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| Vega, Maria S<br>XXX-XX-1940<br>EE ID: 571507<br>Job Number: 58288<br>Seniority Date: 09/01/15 | Nov '17 | 177.5 | $ - | $ 418.24 | $ 418.24 | $ - | $ - | **Contract:** Northern California Maintenance Contractors Agreement with SEIU-USWW May 1, 2016 through April 30, 2020: **Area B** **Eligibility Requirement:** Employees hired on or after 5/1/12 are eligible for contributions under E33 after 24 months of 130 hours per month and completing 12 consecutive months of 130 hours per month. working 6 consecutive months of 133 hours per month. **Findings:** The employee did not complete the eligibility requirements and was not eligible for contributions. |
| | **TOTALS** | | | | | $ 2,091.20 | $ 480.38 | |

Page 26 of 26